UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KATERI LYNN DAHL,                    ]
                                     ]
        Plaintiff,                   ]
                                     ]
v.                                   ]        No.: 2:22-cv-00072-KAC-JEM
                                     ]
CHIEF KARL TURNER, et al.,           ]
                                     ]
        Defendants.                  ]

**ANSWER OF THE DEFENDANTS**

Come now the Defendants, City of Johnson City, Tennessee, and Chief Turner, in his

individual capacity, to *Answer* the *Complaint* filed against them and would respond as follows:

**First Defense**

With respect to the First Amendment retaliation claim, even if Dahl could prove that she

engaged in protected activity and that this activity was known to the decisionmaker, under the *Mt.*

*Healthy* defense there was a sufficient basis to non-renew Dahl's contract regardless of her

engagement in any protected activity.

**Second Defense**

Dahl's Fourteenth Amendment procedural due process claim fails to state a claim upon

which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). To the extent Dahl is

alleging a property interest, she did not have a property interest in having her contract renewed.

*See Hardy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012).  To the extent Dahl

is alleging a liberty interest, there was no conduct by Johnson City or Chief Turner, individually,

that triggered a liberty interest. Alternatively, even if there were a liberty interest, Dahl never

requested a name-clearing hearing.

1

## **Third Defense**

Dahl's Fourteenth Amendment substantive due process claim fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A substantive due process claim based on a right to free speech is duplicative of a First Amendment retaliation claim. Furthermore, regarding the "shocks the conscience" standard, where the alleged "shocking" behavior is the termination of employment due to the exercise of free speech rights, then that allegation is insufficient as a matter of law to support a substantive due process claim. *See Hardy-Clay*, *supra*, at 547-48.

## **Fourth Defense**

Dahl, an attorney tasked to the Johnson City Police Department to advise and pursue criminal prosecutions, held a "category-three" position under the *Elrod-Branti* exception. *See Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 267 (6th Cir. 2005). While the Defendants deny knowledge of Dahl's alleged protected activity and deny that the non-renewal of her contract was based on her engaging in any protected activity, the non-renewal of her contract was not a violation of the First Amendment under the *Elrod-Branti* exception.

## **Fifth Defense**

With respect to the First Amendment retaliation claim, Chief Turner is entitled to qualified immunity for several alternative reasons. First, to the extent that Dahl is considered an employee and she was complaining about matters related to her job duties, then she has not engaged in protected speech. Second, to the extent Dahl has engaged in speech that she claims was protected, Chief Turner does not know what that speech was, and reserves the right to argue that it was not protected speech. Third, at the time of the non-renewal of Dahl's contract, Chief Turner did not know Dahl had engaged in alleged protected speech. Therefore, he could not have retaliated

against her for having engaged in protected speech.  Fourth, even if Chief Turner had known that Dahl was engaging in otherwise protected speech, but was making allegations that a reasonable person would realize were frivolous, then either that speech was not protected or the alleged employer's interest in promoting the efficiency of public services that it performs through its employees outweighs the right of Dahl to make baseless, frivolous allegations against those persons whom she is advising regarding the pursuit of criminal prosecutions. In the further alternative, a reasonable police chief could have believed under the facts of this case that his recommendation not to renew Dahl's contract was not in violation of her First Amendment rights.

<u>**Sixth Defense**</u>

With respect to the Fourteenth Amendment procedural due process claim based on the allegation of a property interest, Chief Turner is entitled to qualified immunity as a matter of law. Dahl did not have a property interest in the renewal of her contract.  Alternatively, there was no clearly established law that would have placed every reasonable police chief on notice that Dahl was entitled to procedural due process based on a property interest in the renewal of her contract. In the further alternative, to the extent that Dahl was entitled to procedural due process, her meeting with Chief Turner complied with procedural due process and/or a reasonable police chief could have believed it complied with procedural due process.

<u>**Seventh Defense**</u>

With respect to the Fourteenth Amendment procedural due process claim based on an alleged liberty interest, Chief Turner is entitled to qualified immunity as a matter of law.  There are no facts supporting a liberty interest.  In the alternative, Dahl never requested a name-clearing hearing.  In the further alternative, there is no clearly established law that would have placed every reasonable police chief on notice that Dahl was entitled to a name-clearing hearing based on a

3

liberty interest under the facts of this case; and/or there was no clearly established law that would have placed every reasonable police chief on notice that there was an obligation to provide a name-clearing hearing where no name-clearing hearing had been requested.

## Eighth Defense

With respect to the Fourteenth Amendment substantive due process claim, Chief Turner is entitled to qualified immunity because Dahl has not stated a substantive due process claim for the reasons set forth in the Third Defense. Alternatively, there is no clearly established law that would have placed every reasonable police chief on notice that he was violating Dahl's substantive due process rights under the facts of this case.

## Ninth Defense

With respect to the claim of "civil conspiracy to violate constitutional rights," Dahl's theory is that Chief Turner was in a conspiracy with Officers John Doe 1 through 3. This claim fails to state a claim upon which relief can be granted based on the intracorporate conspiracy doctrine. Alternatively, Chief Turner is entitled to qualified immunity because: (1) he had no knowledge or involvement in the decision of Officer Jason Lewis to go to "Voe's" condo building after the issuance of the BOLO on May 5, 2021, (2) he had no knowledge of Officer Lewis calling for backup and Officer Vanessa McKinney responding, and (3) he had no knowledge of the person in Voe's condo calling 911 and requesting a supervisor, which resulted in Sgt. Jim Talmadge arriving on the scene. Finally, Chief Turner had no knowledge of a decision by a supervisor to have these officers vacate the premises. Based on these facts, Chief Turner is entitled to qualified immunity because there is no evidence that Chief Turner was engaged in a conspiracy with these three officers, and/or there is no clearly established law that would have placed a reasonable police chief on notice that he could be liable for engaging in a civil conspiracy with persons who were

4

engaged in conduct of which he had no knowledge.

## Tenth Defense

With respect to Dahl's state law claim brought against Johnson City under Tennessee Code Annotated § 50-1-304, it fails for the following alternative reasons: (1) Dahl was not an employee of Johnson City, and (2) the decision to not renew Dahl's contract was not based on her failure to remain silent about illegal activities, much less the sole reason.

## ANSWER

1.      Admitted in part and denied in part.  It is admitted that the Plaintiff served as a Special Assistant United States Attorney [Special Prosecutor] pursuant to a Memorandum of Understanding (MOU) from September 12, 2019 until June 30, 2021.  It is admitted that Dahl's contractual directive included for her to "identify investigations best prosecuted in federal court" with her primary focus being as follows: "possession of firearms by prohibited persons including convicted felons, illegal aliens, and other prohibited individuals who endanger the community by their possession of firearms … use of a firearm in relation to drug trafficking or violent crime … violent crimes prosecutable under federal law … pharmacy robbery … robbery of a business involved in interstate commerce … bank robbery; and all violations of Title 21, involving illegal trafficking of controlled substances." It is denied that Dahl provided the Johnson City Police Department (JCPD) any "substantial evidence" related to "Robert Voe" so as to initiate criminal charges against him for dealing drugs, rapes, sexual assaults or homicide.  It is admitted Dahl ultimately obtained an indictment for Voe for possession of ammunition by a felon on April 13, 2021.  The remaining allegations contained in paragraph one (1) of the *Complaint* are denied with the exception it is admitted "Voe" fled and remains at large.

2.      It is denied that Dahl received any type of performance review by any

representative of the City of Johnson City, and none was contemplated in her contract to serve as a Special Prosecutor. It is admitted that after Dahl met with Chief Turner and Captain Peters on May 19, 2021 that Chief Turner expected Dahl's contract to be renewed. It is admitted that her contract was renewed for a one (1) year term after she had served as a Special Prosecutor for approximately nine (9) months. The remaining allegations contained in paragraph two (2) of the *Complaint* are denied with the exception it is admitted "Voe" has fled and remains at large.

3.      Upon information and belief, it is admitted Dahl is a resident of Washington County, Tennessee. It is admitted that Dahl was a contracted Special Prosecutor assigned to the Office of the U.S. Attorney located in Greeneville, Tennessee. With respect to Dahl's primary job duties, the Defendants adopt by reference the list included in answer to paragraph 1 of her Complaint. It is denied that Dahl was under contract as a Special Prosecutor for twelve (12) months after September 2019 but admitted she did execute a contract with a term from July 1, 2020 to June 30, 2021.

4.      It is admitted that Karl Turner is currently, and at all times relevant, has been the appointed Chief of Police for the City of Johnson City. It is denied that Chief Turner was the final policymaker for Johnson City with respect to the contract related to Dahl serving as a Special Prosecutor. It is admitted that Chief Turner did have some measure of supervisory authority as to Dahl with respect to her performance obligations to Johnson City. It is noted that the claims brought against Chief Turner are in his individually capacity.

5.      Johnson City notes the Plaintiff's purported basis for asserting claims against Johnson City Officers John Does 1-3.

6.      Admitted with the clarification that the City of Johnson City operates pursuant to a Charter issued by the State of Tennessee.

7.     Admitted.

8.     Jurisdiction with this Court as to the federal claims asserted is admitted.

9.     It is acknowledged that this Court may discretionarily exercise supplemental jurisdiction over state law claims but denied that this Court should do so prior to the disposition of the federal claims.

10.    Proper venue with this Court is admitted.

11.    The first sentence of paragraph eleven (11) of the *Complaint* is admitted. Deny the second sentence as stated.

12.    The Plaintiff's demand for a jury is noted and the Defendants likewise request a jury trial.

13.    Admitted, with the exception that Dahl served as a Special Prosecutor under a multi-agency contract from September 12, 2019 to June 30, 2021.

14.    Admitted.

15.    Admitted, with the exception that the effective date of the contract was September 12, 2019.

16.    Admitted, in part. Admitted Dahl was contractually identified as an independent contractor of Washington County and received a 1099 tax document from the County. Denied that Dahl's contract provided she was to "work closely with the Police Chief of Johnson City." Denied that Dahl met all criteria for employee status and her contract specifically precluded such a classification.

17.    Admitted.

18.    With respect to conversations between the Plaintiff and Assistant U.S. Attorney Wayne Taylor, the Defendants cannot admit or deny any such conversations due to a lack of

7

knowledge or information. Answering further, the Defendants would admit that a task in Dahl's contract was to make an effort to assist the Johnson City Police Department by identifying investigations for federal prosecution.

19.     Upon information and belief, it is admitted that the Plaintiff had very little contact with the District Attorney's Office or any contact with Johnson City's Mayor or its City Manager. It is admitted that under the structure of the Plaintiff's contract these individuals did sign the contract that established the terms and purpose of the work she was expected to perform. It is denied that Chief Turner had final decision-making authority with all aspects of Dahl's job and, on the contrary, interacted with her only on limited occasions regarding specific concerns about which he had been advised by others.

20.     It is admitted that Dahl's Special Prosecutor contract terminated after twelve (12) months on June 30, 2021. It is admitted that the contract was subject to extension only by the concurrence of all the various agencies signatures, any one of which could decline to participate when the contract's term ended.

21.     Admitted that Dahl's contract was renewed during the initial COVID outbreak, and no analysis of Dahl's performance was conducted.

22.     The Defendants are unaware of any job performance reviews conducted by the U.S. Attorney's Office and therefore cannot admit or deny the contents of any such review. It is admitted Dahl's contract was renewed for a specified one (1) year term from July 1, 2020 to June 30, 2021.

23.     It is admitted that on November 12, 2020, Johnson City Investigator Toma Sparks communicated with the Plaintiff seeking Dahl's assistance in obtaining federal prosecution for a felon in possession of ammunition. It is denied that the request was considered unusual or would

8

not be of interest to the U.S. Attorney's Office since it was the only clear means of obtaining a conviction of "Voe." It is admitted Dahl considered this available criminal charge against "Voe" to be insubstantial.

24.     It is admitted there were compelling reasons to charge "Voe" as soon as possible with the available criminal violation of a felon in possession of ammunition. Answering further, it is admitted that Detective Sparks advised Dahl that there were rumors that "Voe" held parties in which the participants used cocaine and that there was additional speculation regarding whether "Voe" might be selling cocaine. It is admitted that in mid-November, 2020, there were two (2) claims of sexual assault by "Voe."

25.     Admitted, with the exception that the note was photographed as part of photographing the scene.

26.     With respect to the allegations in paragraph 26, while Dahl agreed to pursue the case, it took five months before she obtained an indictment of Voe. Based on lack of information, these defendants can neither admit nor deny the allegations relative to Dahl's communications with either Supervisory Assistant U.S. Attorney Taylor or Assistant U.S. Attorney Tom McCauley.

27.     Deny the allegations that Johnson City officers had made errors in their investigation to date. Answering further, the Defendants do not have sufficient information to address Dahl's conversations with Assistant U.S. Attorney Taylor and therefore the allegations contained in paragraph twenty-seven (27) of the *Complaint* are neither admitted or denied at this time.

28.     It is admitted that Dahl held the opinion that the two (2) or three (3) year potential prison time of "Voe" for the ammunition in possession of a felon criminal charge was "minimal" and that she wanted to build a broader case against "Voe" for more serious charges. The

Defendants cannot admit or deny Dahl's undisclosed thoughts as to how these more serious criminal charges could be developed against "Voe." It is admitted that Chief Turner and CID Captain Peters became aware of Dahl's interest in building a case against "Voe" instead of promptly obtaining an indictment based on the evidence in hand. Answering further, denied that there was "substantial evidence" of attempted homicide, but admitted the incident was the subject of an open investigation.

29. Denied as stated. Dahl's contract provided Dahl could "prosecute any type of criminal case, [but] the primary focus of her position would be in the areas quoted by the Defendants in their answer to paragraph 1 of the Complaint, which is adopted by reference. Answering further, Dahl had been advised of rumors of cocaine trafficking and had been provided irrefutable evidence to support a federal charge of a felon in possession of ammunition. Therefore, investigating "Voe" for all potential crimes could lead to evidence of cocaine trafficking or felon in possession of a weapon. As a result, it is denied that Dahl was acting outside the scope of her contract.

30. The Defendants are without sufficient knowledge or information to admit or deny the allegations contained in paragraph thirty (30) of the *Complaint*.

31. The allegations in the first sentence are denied. It is admitted that a rape report was made by a Jane Doe on November 24, 2020. Answering furthering, that report was investigated, and the District Attorney's Office declined to prosecute. Chief Turner had no involvement in the investigation or in the decision of the District Attorney's Office to not prosecute.

32. The Defendants are without sufficient knowledge or information involving conversations Dahl had with Assistant U.S. Attorney Taylor related to scheduling a meeting with a TBI agent and therefore cannot admit or deny the allegations contained in paragraph thirty-two

(32) of the *Complaint* at this time.

33.     It is admitted that Chief Turner, on December 3, 2020, upon being informed that a TBI investigation was potentially underway related to an investigation that was ongoing within the Criminal Investigation Division of the Johnson City Police Department, contacted Assistant U.S. Attorney Taylor to determine if two separate law enforcement agencies were investigating the same criminal allegations without coordination.  It is denied that Chief Turner was angry about any involvement by the TBI.  Unrelatedly, it is admitted that Turner, thereafter, scheduled a meeting with Dahl and Captain Peters to discuss the "Voe" case and the plan to have him prosecuted based on the existing evidence sufficient to obtain an indictment.

34.     Admitted that Chief Turner and Captain Peters, in December, on a date currently unknown, participated in a meeting consistent with the allegations contained in paragraph thirty-four (34) of the *Complaint.*  Answering further, Chief Turner and Captain Peters expressed the view to Dahl that the best course of action would be to obtain the federal court indictment which would then facilitate the investigation of the other potential criminal charges.

35.     Deny the allegations in paragraph thirty-five (35) of the *Complaint* except and to the extent that they are consistent with the following averments: (a) Chief Turner did not believe that the list, by itself, established probable cause to arrest; (b) Chief Turner and Captain Peters tried to explain to Dahl, who had no known experience investigating rape and sexual assault cases, that these cases are more difficult to prove if there is a basis for the criminal defendant to allege that the sex was consensual; (c) with respect to the investigation that Jane Doe 1 had been pushed out the window, at this point in time, a friend of Jane Doe 1, who was present in the condo, had given a statement that he watched her fall out the window and that no one was within ten (10) feet of her when this occurred; and (d) admitted that Captain Peters expressed doubt as to the credibility

11

of Jane Doe 2 considering the statement she provided.

36. Deny the allegations in paragraph thirty-six (36) of the *Complaint* except and to the extent that those allegations are consistent with the following averments: (a) Jane Doe 3 reported to the responding officer that she had been raped by "Voe"; (b) on June 24, 2020, Jane Doe 3 was interviewed by Investigator Debbie Dunn, and she denied she had been raped, but claimed to have been sexually assaulted; (c) Jane Doe 3 informed Investigator Dunn on the same date she did not wish to pursue criminal charges; (d) based on Jane Doe 3's decision to not pursue charges, on this same date Investigator Dunn recommended the file be closed; (e) on December 15, 2020, Jane Doe 3 gave a statement to Investigator Toma Sparks, Special Prosecutor Dahl, and an Assistant U.S. Attorney believed to be Tom McCauley that was consistent with her earlier statement to Investigator Dunn on June 24, 2020; and (f) it is explicitly denied that Jane Doe 3 on December 15, 2020 reported she had been raped.

37. The Defendants are without sufficient information to admit or deny allegations related to private conservations between Dahl and Assistant U.S. Attorney Taylor regarding Dahl's unilateral contacting of sexual assault victims.

38. The defendants adopt by reference their answer to paragraph thirty-six (36) of the *Complaint*.

39. It is admitted that on June 2, 2020 Jane Doe 3 encountered two (2) Johnson City police officers who had responded to a 911 call, but denied this encounter occurred in the lobby. It is admitted that Jane Doe 3 was in distress and recounted, at that time, that she had been raped, to include vaginal penetration, while upstairs in "Voe's" condominium. It is denied that the responding officers transported Jane Doe 3 to her parents' home and further denied that Jane Doe 3 was not offered the opportunity for a DNA/Rape Kit test at a hospital. It is further denied that

12

there was no follow up with Jane Doe 3 by a Johnson City Police Department Investigator. It is admitted that a statement from "Voe" was not sought by the responding officers. To the extent Dahl is implying that "Voe" should have been questioned, it is denied that "Voe" should have been questioned at the scene by responding officers where "Voe" was not present outside the building and the decision as to when to question a person accused of sexual assault/rape is best left to an investigator. Investigator Dunn would not question a suspect until after taking a statement from the alleged victim and ensuring that the victim wished to pursue charges, which did not occur in this case.

40.     Denied there was a failure to investigate. Denied that Dahl had the experience or training to form a "professional judgment" as to how a sexual assault claim should be investigated. Answering further, all other allegations are denied.

41.     Denied.

42.     The Defendants are without sufficient knowledge or information to admit or deny the substance of a private conversation between Dahl and Assistant U.S. Attorney Taylor. It is admitted that Chief Turner on a date that has not been identified at this time, discussed with Assistant U.S. Attorney Wayne Taylor Dahl's lack of prompt communication with officers and a lack of a deliverable work product in several Johnson City federal criminal cases.

43.     Admitted Dahl, at a time when she was upset regarding criticism of her job performance, contacted the identified CID (SIS) officers, but denied any officer stated they "did not know why Chief Turner had made [an] allegation [expressing concerns about her job performance]." Answering further, it is admitted the officers were not candid with Dahl as to their knowledge of Dahl's shortcomings with respect to timely moving their case files forward.

44.     Denied.

45.     The Defendants have no knowledge or information from which to admit or deny allegations regarding an unidentified sexual assault victim or any statement she may have provided to Dahl.  The described *modius operandi* of "Voe" is generally considered correct and admitted based on the available Jane Doe victim reports.

46.     Deny the allegation, except and to the extent that it was known that Dahl hoped to continue seeking evidence on alleged sexual assaults before obtaining a federal indictment on "Voe."

47.     Denied.  Each complaint of sexual assault or rape was properly investigated.  The cases of the Jane Doe victims known to the Johnson City Police Department were not pursued to an indictment because either the Jane Doe victim decided she did not want to pursue the matter or the District Attorney's Office decided not to prosecute the matter.  Further answering, with respect to the quotes in paragraph forty-seven (47) of the *Complaint*, these defendants cannot admit or deny those allegations because, while Dahl provided the statements in quotes, she did not provide the name of the alleged speaker.

48.     Denied that "Dahl reasonably became concerned and confused by Johnson City's failure to investigate 'Voe'" because Dahl had no training or experience investigating rape and sexual assault cases.  Therefore, Dahl had no reasonable basis to conclude that Jane Doe complaints were not being properly investigated.  With respect to the alleged quotation from a "male investigator," throughout her Complaint Dahl provides quotes and intentionally does not disclose the identity of the alleged speaker.  Therefore, these defendants cannot admit or deny the quoted statement.

49.     Denied.

50.     It is admitted that Dahl requested investigators obtain a certified copy of "Voe's"

14

felony conviction from North Carolina which would be needed for the indictment of "Voe" for the ammunition in possession of a felon prosecution. It is denied that an investigative sergeant did not attempt to obtain what he thought Dahl needed.

51.     It is admitted that sometime in January, 2021, a woman, Jane Doe 4, left a voicemail message on Johnson City's tip line claiming to have been sexually assaulted by "Voe." This resulted in an investigator's effort to solicit further contact. Jane Doe 4 did not thereafter respond or identify herself. Defendants cannot admit or deny at this time if Dahl was or was not made aware of this anonymous and untraceable call.

52.     It is admitted that sometime in January, 2021, someone wrote the word "Rapist" as graffiti on "Voe's" garage door. The Defendants cannot admit or deny the private conservations between Dahl and intentionally unidentified Johnson City officers.

53.     Johnson City cannot admit or deny Dahl's receipt of rumors or allegations regarding "Voe" from intentionally unidentified individuals.

54.     It is admitted that Dahl ultimately sought and obtained an indictment for "Voe" on April 13, 2021 for the ammunition in his possession which had been seized by Johnson City officers in September, 2020, pursuant to a search warrant of "Voe's" condominium. It is admitted the indictment and resulting federal warrant were issued under seal.

55.     It is admitted that Dahl considered the "Ammo FIP" criminal charge to be insignificant because it would result in the incarceration of "Voe" for only two (2) to three (3) years. It is further admitted that Chief Turner and Captain Peters considered a prompt indictment of "Voe" on the "Ammo FIP" charge to be the most feasible option to facilitate further investigation of potential charges for cocaine trafficking, gun possession or sexual assault.

56.     This responding Defendant is not aware of any informal policies within the

Greeneville U.S. Attorney's Office and can neither admit or deny the existence of any such policy at this time. It is unclear at this time if Johnson City was the primary agency with responsibility for apprehending "Voe" on a federal warrant; therefore, the allegation regarding Johnson City's designation as the responsible agency is neither admitted or denied. It is admitted that the Johnson City Police Department was the investigating agency of "Voe" and was the agency which had confiscated the ammunition that was in the possession of "Voe" that led to his criminal indictment. It is denied Investigator Sparks informed Dahl that Johnson City's Special Investigative Squad (SIS) would execute the federal arrest warrant.

57. Admitted that Dahl, after April 13, 2021, made several communications with Investigator Sparks and SIS officers expressing her anxiousness to have "Voe" arrested. It is denied her concerns were ignored, but admitted officers were attempting to spot "Voe" out and about in the downtown area instead of staging an apprehension. At this time the Defendants are still gathering information, and therefore cannot admit or deny the allegation regarding the number of times that Dahl communicated with Johnson City officers.

58. The Defendants have been unable to verify any communications by Dahl on May 4, 2021, but admit and adopt by reference their answer to paragraph fifty-seven (57) of the *Complaint* regarding her interest and communications regarding the apprehension of "Voe."

59. It is admitted that on May 6, 2021, Dahl received a voicemail from Lieutenant Don Shepard with the Johnson City Police Department, CID. It is further admitted that Lieutenant Shepard communicated that three (3) Johnson City officers, not SIS officers, had communicated with a person inside Williams's condominium the previous evening. Since Lieutenant Shepard was not relaying information based on personal knowledge of the events, the remaining allegations contained in paragraph fifty-nine (59) of the *Complaint* are denied at this time.

16

60.     Denied except and to the extent that Dahl's allegations are consistent with the following averments: (a) the responding officers on the scene had conflicting information as to whether "Voe" was the person communicating with them; (b) the initial officer on the scene does not recall if any reference about the existence of a warrant was made; (3) the two (2) officers who arrived afterwards have no recollection of the warrant being mentioned in their presence; (d) the senior officer contacted his supervisor who advised to vacate the building because they could not verify that "Voe" was the person in the condo; (e) the allegations contained in the third sentence are admitted; and (f) all other allegations are denied.

61.     It is admitted that "Voe" has fled and has not been apprehended, but it is neither admitted or denied when "Voe" fled or if any credible actionable social media posts reflecting his whereabouts exist.

62.     Denied.

63.     Denied with the exception that it is admitted "Voe" has fled, and Dahl was concerned.

64.     Admitted that Dahl contacted Sergeant Gryder and Sergeant LeGault following the officers having made contact with someone located in "Voe's" condominium on May 5, 2021. The conversations with Gryder and LeGault are denied with the exception that Dahl was extremely upset.

65.     Denied as stated.

66.     The Defendants have no knowledge that Dahl made any such report to an intentionally unidentified FBI agent on May 11, 2021.  And, therefore, at this time cannot admit or deny any such communication occurred.

67.     It is admitted that on May 19, 2021, Dahl met with Chief Turner and Captain Peters

to review a backlog of ongoing criminal cases that had been previously distributed and assigned to Dahl for her further handling and prosecution. Answering further, Chief Turner and Captain Peters do not recall whether there was any discussion involving "Voe" which was not the purpose of this meeting, and the allegation cannot be admitted or denied at this time.

68.     The allegations in paragraph sixty-eight (68) of the *Complaint* are denied except and to the extent that they are consistent with the following averments: (a) Chief Turner does not recall if the contract was discussed, (b) regardless of whether the renewal was addressed or not, as of May 19, 2021, Chief Turner expected Dahl to fulfill the commitments that she made in that meeting, and based on that assumption, he expected her contract would be renewed, and (c) it is denied that Chief Turner could unilaterally renew Dahl's contract.

69.     With respect to the allegations in the first sentence, it is admitted that some officers were aware Dahl became increasingly obsessed with the "Voe" case. Deny there was any reasonable basis to believe there was "deliberate misconduct" on the part of the officers of the Johnson City Police Department. With respect to the allegations in the second sentence, the following allegation of Dahl makes no sense and therefore is denied: "[c]onsistent with all laws and policies, but beyond the facial terms of the MOU, Dahl began …" With respect to the remaining allegations in this paragraph as to Dahl's conduct of which she apparently failed to inform either officers with Johnson City Police Department or her supervisor at the United States Attorneys' Office or the District Attorneys' Office, these Defendants are without knowledge or information sufficient to form a belief as to the truth of those allegations.

70.     The Defendants cannot admit or deny any communications between Dahl and unidentified assault victim, Jane Doe 5, on June 14, 2021, due to a lack of information at this time.

71.     Deny the allegations in paragraph seventy-one (71) of the *Complaint* and deny that

there was any rational basis for Dahl's alleged concerns.

72. With respect to the allegations in paragraph seventy-two (72) of the *Complaint* the assertions that Dahl's "investigation" was "consistent with all laws and policies" makes no sense and is therefore denied. With respect to the remaining allegation the Defendants adopt by reference their answer to paragraph twenty-nine (29) of the *Complaint*.

73. Admitted Dahl was not tasked under her contract to investigate her speculative and factually unsupported allegation of public corruption. Answering further, these Defendants adopt by reference their answer to paragraph twenty-nine (29) of the *Complaint*.

74. The Defendants are without knowledge or information sufficient to admit or deny that Dahl investigated or prosecuted the Johnson City Police Department, Chief Turner or the officers with whom she worked most closely. Answering further, admitted she was not tasked with this responsibility under her contract.

75. The Defendants are without knowledge or information from which to admit or deny if Dahl spoke with intentionally unidentified third parties or if she described her unfounded concerns regarding Johnson City's Police Department or Chief of Police.

76. The Defendants cannot admit or deny due to a lack of information what Dahl may have communicated to Assistant U.S. Attorney McCauley or other federal prosecutors in November and December 2020, and any responses she may have received as to her speculative comments.

77. The Defendants are without knowledge or information to admit or deny any communications between Dahl and her three (3) intentionally unidentified female friends in December 2020.

78. The Defendants are without sufficient knowledge or information to admit or deny

19

if Dahl reported her unfounded concerns regarding the Johnson City Police Department to an intentionally unidentified FBI agent.

79.    Admitted, with the exception that it is denied the assigned officer regularly communicated with Chief Turner.

80.    Denied.

81.    It is admitted that on or about June 25, 2021, Chief Turner called Dahl to inform her that a decision had been made that her contract would not be renewed and that the contract would therefore terminate pursuant to its terms.

82.    Denied, except and to the extent that Dahl's allegations are consistent with the following averments: (a) are without knowledge or information as to Dahl's mindset, (b) admit that Chief Turner had given no previous indication that her contract might not be renewed, but Chief Turner had a sit down meeting with Dahl on May 19, 2021 to obtain assurances that particular cases would be moving forward promptly; (c) admit that Chief Turner reviewed several of Dahl's cases with her on May 19, 2021, but is not aware if this list constituted her caseload; (d) without knowledge or information if she had a trial set in September, 2021; and (e) Chief Turner does not recall if he told Dahl on May 19, 2021 if she could expect a "smooth renewal," however, as of May 19, 2021, Chief Turner expected that Dahl would move certain cases forward as she represented in that meeting, and her contract would be renewed.

83.    The Defendants cannot admit or deny any communications Dahl had with third parties regarding the expiration of her contract.  It is denied that Chief Turner could have unilaterally decided to not renew her contract.  Answering further, it is admitted that no signatory was notified in advance of Johnson City's decision to not renew Dahl's contract.

84.    Denied as stated.  Answering further, no signatory outside of Johnson City was

20

notified in advance of Johnson City's decision to not renew Dahl's contract.

85.     It is admitted that Assistant U.S. Attorney Taylor contacted Chief Turner and requested a two (2) week extension of Dahl's contract.  Johnson City chose to allow Dahl to work for one (1) month to facilitate the transition of case files.

86.     Admitted.

87.     Admitted.

88.     Chief Turner does not recall exactly what was discussed during this meeting, but believes he discussed with Dahl her lack of communication and failure to move cases forward. Answering further, admitted that Chief Turner had previously raised his concerns with Assistant U.S. Attorney Wayne Taylor about Dahl's job performance based on information that was provided to Chief Turner at that time.  Admitted Dahl did not agree with Chief Turner's conclusions regarding her job performance.

89.     It is admitted Chief Turner made a phone call to Sergeant LeGault.  Denied the phone call, while not prearranged, was "out of the blue," or pertained to a subject matter about which LeGault was not familiar.  Denied Chief Turner was seeking LeGault's opinion as to Dahl's job performance during the phone call since Chief Turner had previously received a list of criminal case files from LeGault reflecting Dahl's inattention to those cases.  Admitted LeGault was less than forthright with Dahl at the time because Dahl was upset and angry and LeGault sought to end his encounter with Dahl as quickly as possible.

90.     The Defendants are without sufficient knowledge or information to admit or deny allegations in the first sentence except and to the extent that prior to her departure Dahl had a discussion with Gryder about the non-renewal of her contract and that Gryder referenced her assurances to Chief Turner and Captain Peters that certain Johnson City cases would be indicted

during the June grand jury. The Defendants cannot admit or deny any further aspects of the conversation between Gryder and Dahl due to a lack of sufficient information.

91.     Denied that Sergeant Gryder had any knowledge or ability to determine the truth or falsity of Chief Turner's and Captain Peter's discussions of the Johnson City criminal cases with Dahl on May 19, 2021 and Dahl's responses to their concerns. Further denied that Sergeant Gryder had specific knowledge of why Dahl had not fulfilled her commitments she made in the May 19, 2021 meeting.

92.     The Defendants can neither admit nor deny conversations Dahl may have had with Assistant U.S. Attorney Taylor.

93.     The Defendants cannot admit or deny the allegations in paragraph ninety-three (93) of the *Complaint* due to a lack of knowledge or information.

94.     The Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph ninety-four (94) of the *Complaint.*

95.     The Defendants cannot admit or deny the allegations contained in paragraph ninety-five (95) of the *Complaint* due to a lack of sufficient knowledge or information with the exception that Johnson City is still searching its records to see if any record exists of the phone call referenced in paragraph (b). Answering further, any allegation of wrongful conduct directed to Johnson City officers is denied.

96.     It is admitted that Johnson City officers first sought to have Dahl seek an indictment of "Voe" for the "Ammo FIP" charge in November, 2020, but deny that any additional investigation was needed to initiate this criminal charge. The unreasonable conclusions drawn by Dahl are denied. Answering further, the Defendants do not know if a call was received by an officer on November 12, 2020.

22

97.     The unreasonable conclusions in paragraph ninety-seven (97) of the *Complaint* are denied.

98.     In paragraph ninety-eight (98) of her Complaint, Dahl accuses unnamed Johnson City officers of receiving pay offs by "Voe." Dahl's "evidence" is as follows: First, Dahl alleges that several unnamed witnesses and Jane Doe 8 "expressed a concern" that "Voe" was able to get away with his behavior by paying off Johnson City police officers. This is no "evidence" whatsoever. Second, Dahl alleges:

> Jane Doe 8 stated that she had witnessed Johnson City officers at "Voe's" condo for unexplained reasons unrelated to criminal investigations or community caretaking, that she had "witnessed exchanges of unknown things between "Voe" and Johnson City [officers] at "Voe's" condo that seemed inappropriate, and that she was fearful that "Voe" was bribing law enforcement at Johnson City. Jane Doe 8 gave detailed descriptions to Dahl of some officers' appearances and voices that corroborate Dahl's knowledge of those officer's identities.

Dahl is alleging that Jane Doe 8 witnessed potentially corrupt behavior by Johnson City police officers based upon descriptions provided by Jane Doe 8 and that Dahl, herself, can identify some of the officers. Presumably, Dahl has already reported her alleged "evidence" of corruption to either the District Attorney's Office or the Tennessee Bureau of Investigation. If she has not done so, then Johnson City and Chief Turner demand that she do so immediately. Consistent herewith, Johnson City and Chief Turner are sending a letter to the District Attorney drawing his attention to paragraph ninety-eight (98) of the *Complaint*. In that letter Johnson City and Chief Turner will request that Dahl and Jane Doe 8 be interviewed in order for a determination to be made whether there is evidence that would support opening an investigation into alleged corruption by certain Johnson City police officers.

99.     The Defendants cannot admit or deny the allegations contained in paragraph ninety-nine (99) of the *Complaint* due to a lack of sufficient knowledge or information.

100.    The Defendants cannot admit or deny the allegations contained in paragraph one hundred (100) of the *Complaint* due to a lack of sufficient knowledge or information.

101.    Denied.

102.    The Defendants have no knowledge regarding Dahl's complaints to the U.S. Department of Justice urging the Department to initiate an investigation into her speculative allegations against the Johnson City Police Department and its Chief of Police and therefore cannot admit or deny the allegations.

103.    Denied.

104.    (a-f)  Denied except and to the extent that if Dahl made a report to the FBI, that report might possibly be protected activity, but at this time the Defendants lack sufficient knowledge or information as to whether any such report was made and the substance of any alleged report.  Answering further, even if a report was made to the FBI, Chief Turner had no knowledge of any alleged report prior to the conclusion of Dahl's contract.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied that Dahl lost any meaningful paid employment, due to any alleged wrongful conduct on the part of the Defendants.

111.    Admit the allegation in the first sentence.  Deny the allegations in the second sentence.

112.    Denied that Dhal has suffered emotional distress, due to any alleged wrongful

24

conduct on the part of the Defendants.

113. Denied.

114-15. Denied Dahl is entitled to recover attorney's fees and costs under federal or state law.

116. The Defendants incorporate by reference their answers and defenses to all previous allegations in the *Complaint* as a response to paragraph one hundred sixteen (116).

117. The allegation contained in paragraph one hundred seventeen (117) of the *Complaint* is admitted in part and denied in part. It is denied that Chief Turner terminated Dahl's employment, but admitted that Chief Turner recommended to Johnson City's City Manager that Dahl's special prosecutor contract be allowed to conclude by its terms.

118. With respect to the allegation regarding the FBI the Defendants adopt by reference their previous answer to paragraph one hundred four (104).

119. Denied.

120. The defendants are not aware of any investigation or alleged "protected communications" that Dahl made regarding Chief Turner or Johnson City. The defendants admit that investigating Chief Turner and Johnson City was not contemplated in Dahl's contract. However, the allegations in the second sentence are denied.

121. Denied, including the allegation that Dahl engaged in protected activities or communications. Answering further with respect to the FBI the Defendants adopt by reference their answer to paragraph one hundred four (104).

122. Denied.

123. Denied. Answering further, the Defendants adopt their answer to paragraph one hundred twenty-one (121) and paragraph one hundred four (104) of the *Complaint* as to the FBI.

124. Denied.

125. Denied.

126. The Defendants incorporate by reference all previous responses and defenses to all preceding paragraphs in the *Complaint*.

127. Admitted.

128. Denied.

129. The allegations contained in paragraph one hundred twenty-nine (129) of the *Complaint* are a statement of law to which no response is required. To the extent a response may be required, the assertion is admitted.

130. Denied that Dahl had a property interest so as to warrant due process by Johnson City.

131. Denied that Dahl had a property interest so as to warrant due process by Johnson City.

132. Denied.

133. Denied.

134. Denied with the exception that it is admitted that other parties to the contract were not aware Johnson City had decided not to renew Dahl's contract.

135. Denied Dahl was terminated. Denied that she was entitled to any type of hearing, including a name clearing hearing. Denied she requested a name clearing hearing.

136. Denied.

137. Denied.

138. Denied.

139. The Defendants incorporate their prior responses and defenses.

140.     Denied.

141.     Denied that any such purposes existed.

142.     (a-f)  Denied.

143.     Denied.

144.     The allegation in paragraph one hundred forty-four (144) of the *Complaint* is a legal assertion to which no response is required.  Further answering, it is denied John Doe 1 through 3 were acting at the direction of Chief Turner.

145.     The Defendants are without sufficient knowledge or information at this time to admit or deny the alleged reports made by the Plaintiff to intentionally unidentified third parties or an intentionally unidentified FBI agent.

146.     Denied.

147.     Denied.

148.     The Defendants incorporate by reference all prior responses and defenses to the allegations in the *Complaint.*

149.     The allegations contained in paragraph one hundred forty-nine (149) of the *Complaint* asserts a statement of law to which no response is required.  To the extent a response may be required, the legal assertion is admitted.

150.     Denied.

151.     Dahl's stipulation contained in paragraph one hundred fifty-one (151) of the *Complaint* is accepted and admitted.

152.     Denied.

153.     Denied.

154.     Denied.

155.    Denied.

156.    The Defendants incorporate by reference all responses and defenses previously asserted.

157.    The allegations contained in paragraph one hundred fifty-seven (157) of the *Complaint* is a statement of law to which no response is required.

158.    Denied.

159.    Denied as stated.  Answering further, it is admitted Johnson City provided funding to Washington County in a sufficient amount to satisfy payments of compensation to Dahl.

160.    Denied, with respect to Dahl.

161.    Denied.

162.    Denied.

163.    Denied.

164.    It is denied that Dahl is entitled to a judgment against Johnson City or Chief Karl Turner, in his individual capacity.

Now having fully responded to the allegations in the *Complaint*, the Defendants would assert a general denial to any allegation not heretofore expressly admitted.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN  37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*

Thomas J. Garland, Jr., BPR # 011495
**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN  37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
tgarland@milligancoleman.com

*Attorneys to Defendants*