UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION
GREENEVILLE

| | |
|---|---|
| KATERI LYNNE DAHL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHIEF KARL TURNER, )<br>*in his individual capacity only, et al.,* )<br>)<br>Defendants. ) | No. 2:22-cv-00072-KAC-JEM |

**Plaintiff's Motion for Relief from E.D. Tenn. Local Rule 83.2
to permit counsel to speak publicly as permitted by Tenn. Sup. Ct. R. 3.6(c)**

Plaintiff Kateri Lynne Dahl, by counsel Hugh A. Eastwood and Alexis I. Tahinci, moves for relief from E.D. Tenn. Local Rule 83.2 to permit all counsel of record to speak publicly as permitted by Tenn. Sup. Ct. R. 3.6(c):

**I.      Introduction**

On June 22, 2022, plaintiff Kat Dahl filed her Complaint in this case. The gravamen of her allegations is that she lost her job as a special federal prosecutor assigned to Johnson City because she pushed its then-Police Chief Karl Turner and his officers to investigate and seize Sean Williams, a local business and real estate owner suspected of drug trafficking and sexually assaulting dozens of women whom he lured to his apartment and drugged. She alleges that out of either corrupt motive or reckless incompetence, Chief Turner and Johnson City bungled their execution of a search warrant on Williams' apartment, and later allowed Williams to flee by effectively tipping him off outside the door to his condo that there was a warrant for his arrest. When Dahl spoke out about these baffling events to the FBI and other third parties, Chief Turner suddenly fired Dahl by not renewing her annual contract with the local U.S. Attorney's Office.

After Dahl's filing, a flurry of activities occurred outside of the four corners of this case. All those activities, however, added to the wide publicity and sensational nature of Dahl's case. *See generally* Local Rule 83.2(c). For example, local community activists pushed Johnson City to fire its Police Chief (he and other senior police department leadership took retirement incentive packages several months later), and to investigate its handling of sexual assaults (the City retained an outside expert to perform a review). Williams was eventually seized in North Carolina, and finally charged with extreme and heinous sex crimes in this Court and in Tennessee state court. Video evidence has come to light in search warrant affidavits showing Williams sexually assaulting 52 incapacitated female adults as well as two children aged eight and one years. The City's own retained expert Eric Daigle issued a blistering report finding that the City's handling of sexual assault cases meets neither industry standards nor legal requirements, and that the City holds an existing bias and belief of stereotypes about women within its police department that hurt the quality of sexual assault investigations.[1]

Since then, nine Jane Doe sexual assault victims of Williams have sued the City in this Court alleging that multiple Johnson City police officers were part of a sex trafficking conspiracy.[2] And further questions have been raised in other related federal and state cases related to Johnson City's handling of both sexual assault complaints against Williams particularly, and sexual assault complaints generally.

In other words, events have borne out the truth of many of Dahl's allegations.

---

[1] The 45-page audit looked at over 300 sexual assault cases handled by the JCPD from 2018 through 2022 and found several key issues including poor record keeping, inconsistent, ineffective and incomplete investigations, flaws with the closing of investigations, insufficient training and department policies and procedures. It is widely publicized, and a copy is attached as Exhibit 2.

[2] *Jane Does 1-10 v. City of Johnson City, et al.,* No. 2:23-cv-71-TRM-CRW (E.D. Tenn.).

2

Critical to this motion, however, Johnson City (through its City Manager Cathy Ball) and Sean Williams himself have given interviews that have been published in both local and national outlets. Some of their statements cast doubt on the truth and accuracy of Dahl's allegations. To date, there are no published statements by either Dahl or her counsel of record in this matter.[3] Nor, commendably, have defense counsel for Johnson City and Chief Turner made public statements to the press.

Dahl now seeks leave of Court to fashion an Order relieving her counsel from Local Rule 83.2 and permitting all counsel of record to speak.

## II. Legal Standard

The Local Rules of this Court have expressly adopted the Rules of Professional Conduct promulgated by the Supreme Court of Tennessee. LR 83.6 provides:

> LR83.6 Rules of Professional Conduct
>
> The Rules of Professional Conduct adopted by the Supreme Court of Tennessee are hereby adopted as rules of professional conduct insofar as they relate to matters within the jurisdiction of this court.

The Tennessee Rules of Professional Conduct provide in relevant part that:

> Rule 3.6 Trial Publicity

---

[3] As part of her whistleblowing, Dahl did speak with investigative reporter Ronan Farrow, who in the past has covered prominent sexual assault cases involving film producer Harvey Weinstein and former NBC anchor Matt Lauer. No outlet has yet run any stories by Farrow about this case generally, nor statements by Dahl particularly. And Dahl's Washington, D.C. counsel—who assisted her with whistleblowing to the U.S. Department of Justice Office of Inspector General—have made general statements calling for justice for Sean Williams' victims, and for accountability for the Johnson City Police Department. *See, e.g.,* Jeff Keeling, *Whistleblower's lawyer: JCPD audit buttresses case,* WJHL (Jul. 20, 2023), available at https://www.wjhl.com/news/local/sean-williams-case/whistleblowers-lawyer-jcpd-audit-buttresses-case/ (last accessed Sept. 20, 2023); Audrey Conklin, *Tennessee businessman suspected of recording sexual assaults of more than 50 women says he's innocent,* Fox News (Sept. 12, 2023), available at https://www.foxnews.com/us/tennessee-businessman-accused-recording-sexual-assaults-more-50-women-says-hes-innocent (last accessed Sept. 20, 2023).

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

(b) Notwithstanding paragraph (a), a lawyer may state:

(1) the claim, offense, or defense involved and, except when prohibited by law, the identity of the persons involved;

(2) information contained in a public record;

(3) that an investigation of a matter is in progress;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest;

…

**(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.**

…

Tenn. R. Prof. Conduct Rule 3.6 (emphasis added).

The Local Rules of this Court, however, are more restrictive, providing in relevant part:

(a) Civil Proceedings. No lawyer or law firm associated with a civil action shall, during its investigation or litigation, make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and if such dissemination relates to:

(1) evidence regarding the occurrence or transaction involved;

4

(2) the character, credibility, or criminal record of a party, witness, or prospective witness;

(3) the performance or results of any examinations or tests or the refusal or failure of a party to submit to such;

(4) the attorney's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule; and

(5) any other matter reasonably likely to interfere with a fair trial of the action.

…

(c) Provisions for Special Orders in Widely Publicized or Sensational Civil and Criminal Cases. **In a widely publicized or sensational civil or criminal case, the Court, on motion of either party or its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the parties or the rights of the accused to a fair trial by an impartial jury**; the seating and conduct in the courtroom of spectators and news media representatives; the management and sequestration of jurors and witnesses; and any other matters which the Court may deem appropriate for inclusion in such an order.

(d) Exceptions to This Rule. Nothing in this rule is intended (1) to preclude the formation or application of more restrictive rules relating to the release of information about juvenile or other offenders, (2) to preclude the holding of hearings or the lawful issuance of reports by legislative, administrative, or investigative bodies, or (3) to preclude any lawyer from replying to charges of misconduct that are publicly made against him or her.

*See* LR83.2 Public Statements by Attorneys (emphases added).

### III.     Discussion

This is a widely publicized and sensational case attracting increasing publicity, both locally and now nationally. *See* Exhibit 1 – Media Index[4]. Undersigned counsel for Plaintiff has not commented publicly when contacted by reporters other than to refer them to Local Rule 83.2 and standing by the pleadings. *See, e.g.,* Anita Wadhwani, *Johnson City roiled over allegations police botched sexual assault investigations,* Tennessee Lookout (May 22, 2023), available at

---

[4] The Media Index is underinclusive of every news report that has been published or broadcast about this case.

https://tennesseelookout.com/2023/05/22/johnson-city-roiled-over-allegations-police-botched-sexual-assault-investigations (last accessed Oct. 24, 2023) ("Hugh Eastwood, Dahl's St. Louis-based attorney, declined to comment on the case, citing local court rules barring public statements.").

Johnson City, however, through its City Manager Cathy Ball and through press releases, has made numerous on-the-record statements to the press and held press briefings discussing both this litigation and other cases involving Sean Williams and Johnson City officials. As detailed below, some of those statements are false and/or misleading and/or will cause substantial undue prejudicial effects to Dahl. That alone should permit plaintiff's counsel to make statements designed to mitigate the effects of Johnson City's statements, particularly since those statements were not initiated by plaintiff's counsel of record, or Dahl herself, outside of court filings.

Under Tennessee law, statements from government officials about official conduct tend to carry significant weight because Tennessee has long recognized the presumption that public officials perform their duties in the manner prescribed by law. *See Watson v. Garza,* 316 S.W.3d 589 (Tenn. Ct. App. 2008), citing *Wartrace v. Wartrace Beech Grove Turnpike Co.*, 42 Tenn. (2 Cold.) 515, 519 (1865). "Public officials … are presumed to perform their duty in good faith." *Trusty v. Robinson,* No. M2000-01590-COA-R3-CV, at *1 (Tenn. Ct. App. Feb. 6, 2001). In other contexts, however, the Sixth Circuit has declined to immunize officials who make misleading statements about public safety when such conduct rises to the level that shocks the conscience. *Guertin v. Michigan,* 912 F.3d 907, 933 (6th Cir. 2019) (declining to immunize officials who misled the public about the safety of contaminated public water supply in Flint, Michigan). As applied here, statements by the Johnson City Manager carry great weight both

6

legally and in the court of public opinion, where potential jurors read the newspaper and watch television news. But if the City Manager's statements are false, misleading, contradictory, or will otherwise cause substantial undue prejudicial effects to Dahl, then that can deny plaintiff Dahl a fair trial. Cathy Ball's statements as City Manager fit the bill for statements warranting relief from the Local Rule.

Here, those statements include at least the following:

- In July 2022, City Manager Ball cast aspersions on Dahl's allegations by stating that the city's own internal reviews haven't shown evidence in police records of multiple women reporting sexual assault allegations against one individual, as the William suit alleges. Jeff Keeling, *Johnson City Manager on Police Conduct Review: 'We Take This Very, Very Seriously'*, WJHL (Jul. 20, 2022), available at: https://www.wjhl.com/news/local/johnson-city-manager-on-police-conduct-review-we-take-this-very-very-seriously/
  - Ball's statement was false or misleading. The City's Answer to the Complaint filed August 25, 2022 states as much:
    - Paragraph 31. It is admitted that a rape report was made by a Jane Doe on November 24, 2020. Answering further, that report was investigated, and the District Attorney's Office declined to prosecute. Chief Turner had no involvement in the investigation or in the decision of the District Attorney's Office to not prosecute.
    - Paragraph 36(a). Jane Doe 3 reported to the responding officer that she had been raped by "Voe"[5]; (b) on June 24, 2020, Jane Doe 3 was interviewed by Investigator Debbie Dunn, and she denied she had been raped, but claimed to have been sexually assaulted;
    - Paragraph 45. The described *modius operandi* of "Voe" is generally considered correct and admitted based on the available Jane Doe victim reports.
    - Paragraph 51. It is admitted that sometime in January, 2021, a woman, Jane Doe 4, left a voicemail message on Johnson City's tip line claiming to have been sexually assaulted by "Voe." This resulted in an investigator's effort to solicit further contact. Jane Doe 4 did not thereafter respond or identify herself.

---

[5] Since Williams had not yet been arrested and arraigned on the sealed federal indictment at that time, the pleadings referred to Williams by the pseudonym "Robert Voe" or "Voe" by leave of this Court. Doc #13. Once Williams was arrested and processed, the Court granted leave to name Williams. Doc #28.

7

- At least six women made complaints to Johnson City about Williams's sexual assaults in the time period relevant to Dahl's service as SAUSA, all alleging the same *modus operandi*.[6]
- JCPD failed to follow its own General Order 600.13 as to those complaints in multiple material ways, from dispatch and responding officer responsibilities, to investigatory and supervisor roles, to evidence collection, storage and testing.
- The Daigle Report[7] found the same or similar failings.
  - "Following the denial of a criminal investigation, JCPD should have moved forward with an internal investigation to address the misconduct allegations. Since September 1, 2022, we have received no information that JCPD is conducting an internal investigation into the allegations. During our interview with Chief Karl Turner in December 2022, he confirmed that an investigation had not been initiated. The purpose of the investigation may have assisted us in locating or identifying documents specific to the JCPD's investigation of sexual-related cases that were not discovered during the DLG audit." Daigle Report at 32.
  - The Daigle Report was essentially incomplete as to the Sean Williams victims. *Id.*
  - After notice, JCPD failed to conduct an Internal Affairs investigation into Dahl's Complaint, thereby violating its own General Order 300.08-13 (4.1.7) as well as CALEA accreditation standards.
- The Daigle Report—again, the City's own retained expert—also found that:
  - The Records Management System and records process at Johnson City is inadequate to support the effective operation of the Department.
  - Sexual assault investigations conducted by Johnson City have material deficiencies that can hinder the ability to collect necessary evidence for a complete and accurate investigation.
  - Johnson City's investigations of sexual assault reports were found to be inconsistent, ineffective, and incomplete.
  - Johnson City's process of closing investigations of sexual assault is flawed and inaccurate.
  - Complaints of misconduct against Johnson City, including anonymous complaints, are not all timely investigated.
  - Supervision within Johnson City of sexual assault investigations was insufficient to ensure full, fair and complete investigations.
  - Johnson City policies and procedures do not meet industry standards and legal requirements to investigate sexual assault investigations.
  - Johnson City training is insufficient to effectively conduct unbiased sexual assault and related investigations. Between January 2018 and December

---

[6] The Court has entered a Protective Order [Doc. 26], under which some discovery is accordingly sealed at this time from public disclosure as "Confidential" or higher protective designation as defined by that Order. This motion does not disclose any discovery that is marked "Confidential" or higher designation.

[7] *See* Daigle Report, Ex. 2, at 33.

8

2022, there was an existing bias and belief of stereotypes about women within Johnson City that hurt the quality of sexual assault investigations.
- At least one of the sex crimes that Williams has since been charged with—the aggravated rape of a child on December 23, 2020—occurred shortly *after* Dahl pushed for JCPD to further investigate Williams, and *after* she was first retaliated against by Chief Turner and JCPD officers. *See United States v. Williams,* 2:23-cr-00111-JRG-CRW-1 (E.D. Tenn). Specifically, Chief Turner incorrectly assumed that Dahl had arranged a TBI investigatory meeting into Williams on December 8, 2020, when in fact it was her supervisor, AUSA Wayne Taylor, who arranged the TBI meeting. Complaint ¶¶ 32-35. A week later, Chief Turner then accused Dahl of poor communication with his officers, and relayed to same to Taylor. *Id.* ¶¶ 42-44.

- On August 26, 2022, Cathy Ball stated: "I can see how our community could be very confused," Ball said of the potential for conflating the Dahl lawsuit with the external review. "In our response, we say of the cases around Mr. Voe, those have been reviewed by our attorney (and found to have been handled properly)." Jeff Keeling, *Johnson City Files 'Voe' Federal Lawsuit Response,* WJHL (Aug. 26, 2022), available at https://www.wjhl.com/news/local/city-files-voe-lawsuit-response.
  - This statement was also false or misleading.
    - As noted above, JCPD's handling of the Sean Williams sexual assault complaints did not meet its own General Orders and CALEA accreditation standards. *See* General Orders 300.08-13 (4.1.7) and 600.13 (sexually oriented crimes), as well as CALEA accreditation standard 26.
    - JCPD closed the Sean Williams cases by extraordinary means, in violation of its General Order 600.01, TBI's Tennessee Incident Based Reporting System (TIBRS), and CALEA accreditation standards 42.
    - As noted above, after notice of Dahl's Complaint, the Daigle Report at 32 found failures by JCPD both in failing to open an Internal Affairs investigation, and as to its mishandling of records and/or evidence related to the Sean Williams sexual assault investigation. *Compare* Internal Affairs General Orders 300.08-13 (4.1.7) and 600.13 (sexually oriented crimes), as well as CALEA accreditation standard 26.

- On May 15, 2023, upon news of Williams' arrest, Ball stated "We have assisted the U.S. Marshal's Service for more than two years in the search for Williams." Jeff Keeling & John Jenco, *Advocate, city manager speak on JCPD progress after Sean Williams arrest,* WJHL (May 15, 2023), available at https://www.wjhl.com/news/local/sean-williams-case/advocate-city-manager-speak-on-jcpd-progress-after-sean-williams-arrest/ (last accessed Sept. 19, 2023).
  - This statement was false and misleading, and undermined Dahl's allegations that JCPD botched its execution of both search and arrest warrants on Williams, and sought to shut down further investigation of Williams.

9

- As noted above, JCPD closed the Sean Williams cases by extraordinary means, in violation of its General Order 600.01, TBI's Tennessee Incident Based Reporting System (TIBRS), and CALEA accreditation standard 42.
- There is no evidence that JCPD took *any efforts* after Williams fled or did *anything* to seize or otherwise further investigate Williams.
- The Daigle Report, to the extent it reviewed Williams's cases, showed no efforts by JCPD to do anything.
- Indeed, JCPD's failures to apprehend Williams were so stark that Williams was brazenly able to sell three of his downtown Johnson City condominium units on May 27, 2022 while he was at large and on the run,[8] to discuss the sale on Facebook with a local redevelopment authority official appointed by Johnson City, and even to visit the local Recorder of Deeds office the month before, also while on the lam.[9]
- Probable cause statements filed by a Washington County D.A. investigator in state court show that JCPD more likely than not sat on evidence in its possession of Williams's sex crimes for nearly three years—evidence seized during the search warrant on Williams's condo, including video evidence of at least 52 sexual assaults of incapacitated women, and at least two children. *See State of Tennessee v. Sean Christopher Williams,* Nos. 90CC1-2023-CR-49570, 90CC1-2023-CR-49571 and 90CC1-2023-CR-49572 (each filed Sept. 14, 2023 in Washington County, Tenn.).
- As stated above, Williams has since been indicted in this Court for three counts of manufacturing child pornography, including at least one child who was sexually abused by Williams *after* Dahl pushed JCPD to follow up on the evidence it had already seized from Williams' condo, and *after* Chief Turner and Johnson City officers first retaliated against Dahl for pursuing a TBI investigation. *See United States v. Williams,* 2:23-cr-00111-JRG-CRW-1 (E.D. Tenn).

- On June 22, 2023, after Williams' arrest, when "[a]sked if the JCPD would consider reviewing any past cases, whether related to Williams or not, [Cathy] Ball said 'our police department does not have that discretion, nor would any good police department decide whether or not they're going to revisit, open. That's all decided by the district attorney's office, by the criminal justice system. So those are not things that are flexible necessarily within our system. What I will tell you is, we want today to encourage victims to come forward and report crimes.'" Murry Lee & Jeff Keeling, *Johnson City*

---

[8] Jeff Keeling, *Sean Williams indicted for child porn production,* WJHL (Sept. 12, 2023), available at https://www.wjhl.com/news/local/sean-williams-case/fugitive-alleged-rapist-voe-made-scene-at-county-office-in-april/ (last accessed Sept. 20, 2023).

[9] Jeff Keeling & Ashley Sharp, *Fugitive alleged rapist 'Voe' made scene at county office in April,* WJHL (Jul. 8, 2022), available at https://www.wjhl.com/news/local/sean-williams-case/fugitive-alleged-rapist-voe-made-scene-at-county-office-in-april/ (last access Sept. 20, 2023).

10

*addresses Sean Williams-centric lawsuit,* WJHL (Jun. 22, 2023), available at https://www.wjhl.com/news/local/sean-williams-case/johnson-city-to-address-sean-williams-centric-lawsuit/.
- o This statement was false and misleading as a matter of both law and policy.
  - ▪ Any police department in Tennessee can lawfully re-open an investigation into a sexual assault case based on having reasonable suspicion that a crime occurred.
  - ▪ As noted above, JCPD failed to refer the Sean Williams investigation to Internal Affairs as required by its own General Order 300.08-13 (4.1.7) and CALEA accreditation standard 26.
  - ▪ After closing the Williams sexual assault investigations by extraordinary means, JCDP violated CALEA accreditation standard 42 when it failed to re-open these investigations once Williams was seized, and additional or new evidence was obtained.
  - ▪ As noted above, the Daigle Report at 32 found failures by JCPD as to its mishandling of records and/or evidence related to the Sean Williams sexual assault investigation, failing to meet both industry standards and CALEA accreditation standards 82.1 and 84.1, as well as General Order 600.13 (sexually oriented crimes).
  - ▪ Ball's statement that victims should come forward was belied by her immediately prior statement that the Sean Williams sexual assault cases would not and could not be re-opened by JCPD but rather only by the District Attorney's Office. It is axiomatic and almost every layperson knows that it is the function of the police to *investigate* crimes, whereas it is the function of prosecutors to *prosecute* crimes upon a showing of probable cause. *See, e.g., Rieves v. Town of Smyrna,* 959 F.3d 678, 691 (6th Cir. 2020) (differentiating investigative and prosecutorial functions).
  - ▪ The City in the course of this litigation has since undermined the Daigle Report by stating that Daigle did not review all files in the database the City provided to him, that it does not accept all of the Daigle Report's findings and conclusions, that it denies that had deficient training and policies under Tennessee law and the United States Constitution, that it denies that the City maintained poor record keeping, and denies that the City had flaws with how it closed sexual assault investigations. *Compare* Exhibit 3 - Plaintiff's Requests for Admission to City at Request Nos. 6, 8, 9, 11.
  - ▪ The City has even denied that Johnson City conducts sexual assault investigations, instead claiming that its officers conduct such investigations. *Id.* at Request No. 10.
  - ▪ The City also denied that all sexual investigations were adversely affected by evidence of bias and belief of stereotypes about women, since "many" investigations were conducted by a female investigator. *Id.* at Request No. 14.
  - ▪ The City also appears either not to know or to deny that the Daigle Report reviewed cases involving the victims of Sean Williams. *Compare id.* at Request Nos. 15, 16, 17, 18, 19, 20, 21, 22, 23, 24.

11

- - The search warrant that the City executed at the apartment of Sean Williams on or around September 23, 2020 was not reviewed by the Daigle Report. *Compare id.* at Request Nos. 26, 27, 29.
    - The City admits that it never opened an Internal Affairs investigation into its handling of the Sean Williams investigation(s). *Compare id.* at Request Nos. 36, 37, 38, 39.

- On July 23, 2023, Cathy Ball stated: "There was no indication of any corruption, any willful intent or any illegal activity," Ball said. "We think that's very important to point out." Jayonna Scurry & Slater Teague, *City manager presents JCPD sexual assault audit to city commissioners,* WJHL (Jul. 23, 2023), available at https://www.wjhl.com/news/local/sean-williams-case/city-manager-presents-jcpd-sexual-assault-audit-to-city-commissioners/ (last accessed Sept. 20, 2023).
  - This statement was misleading.
    - The City's retained expert Eric Daigle was tasked to review over 300 sexual assault complaints over four years, not to review corruption, willful intent or any illegal activity by Johnson City officers. The Daigle Report does not include such an investigation or audit within its scope, nor did Daigle's contract for his work.
    - As noted above, no Internal Affairs investigation was ever opened by JCPD, which the Daigle Report criticizes as a failure by JCPD, as well as a violation of JCPD's own General Order 300.08-13 (4.1.7) and CALEA accreditation standard 26.
    - Further, as reviewed above, the Daigle Report implies that documents and evidence related to Sean Williams' sexual assaults cannot be identified or located—which belies both industry standards and CALEA accreditation standards 82.1 and 84.1.

- On August 25, 2023, Cathy Ball stated of the Jane Does' Complaint: "There are allegations that are made by Jane Does, and in that factual information that they provide it indicates that they consumed and partook of illegal drugs during the course of that time period with visit, and that is contained within the information that they provided in the lawsuit. So as part of the defense under a civil lawsuit, our attorneys are using comparative fault as a fact that is included within that." Murry Lee, *Johnson City files answer to 'Jane Doe' lawsuit,* WJHL (Aug. 25, 2023), available at https://www.wjhl.com/news/local/sean-williams-case/johnson-city-files-answer-to-jane-doe-lawsuit/ (last accessed Sept. 20, 2023).
- Ball also stated "However, I want to point out very clearly, and it is really for us – we want to make sure the public understands this – there is a civil case against the city. There's the way our police department handles criminal cases, and in criminal cases, there is never any good reason that anybody ever deserves to be raped." *Id.* Ball went on to say that the Johnson City Police Department (JCPD) investigates all rape and sexual assault allegations without bias. *Id.*
  - These statements were confusing and misleading, and in one case false.

12

- The City implied that nine Jane Doe victims were comparatively at fault for their sexual assaults by Williams. This belies the statement at the same press conference that "there is never any good reason that anybody ever deserves to be raped." It also confirms the observations of the City's own expert who found "Statements by JCPD investigators and Department leadership to women reporting sexual assault frequently reflect assumptions that women reporting non-stranger sexual assault are lying, and that such assaults are less severe and traumatic to victims than other serious crimes. These assumptions appear to be based at least in part on stereotypes of female victims of sexual assault and interfere with the objective investigative process." Daigle Report at 24.
- Four of the Jane Does have clarified that they did not partake of illegal drugs while they visited Williams' condo, and do not allege as much; the other five have clarified that they were drugged by Williams without their knowledge or consent before they were sexually assaulted. *Does 1-9 v. City of Johnson City,* No. 2:23-cv-71-TRM-CRW (E.D. Tenn.) (Doc # 18 filed Sept. 1, 2023) at **1, 4-6, 7-8.
- The statement that JCPD investigates all rape and sexual assault allegations without bias is false. The City's own expert "found that JCPD's interactions with women reporting sexual assault all too often reflect reliance on gender- based stereotypes and bias, and that this discrimination is responsible in part for the deficiencies in JCPD's response to sexual assault." Daigle Report at 24.
- Finally, it is inconsistent for the City to take the position as to the same sexual assault cases that the victims are comparatively at fault in a civil case, but they are not at fault in the criminal prosecution of their rapist/sexual assailant. On information and belief, nine of the ten Jane Doe victims who filed their own lawsuit are victims of Sean Williams, as may be other members of the class action in that separate civil litigation. This may be a reason that Johnson City is no longer involved in any cases related to Sean Williams's sexual assault victims, and why the U.S. Department of Justice has dismissed the ammo FIP case against Williams indicted by Dahl since it is based on the testimony of JCPD investigator Toma Sparks.

It is not just Johnson City that made statements to the press through its City Manager. Sean Williams recently gave a jailhouse interview to the Fox News national cable network in which he made the following statements:

- Williams described Dahl as a "the fired federal prosecutor with a chip on her shoulder" who started a "smear campaign" against him [Williams] and engaged in a "witch hunt." *See* Audrey Conklin, *Tennessee businessman suspected of recording sexual assaults of more than 50 women says he's innocent,* Fox News, available at

13

https://www.foxnews.com/us/tennessee-businessman-accused-recording-sexual-assaults-more-50-women-says-hes-innocent (last accessed Sept. 20, 2023).
- "It wasn't about assaults, it was about drug money and extortion coverup [*sic*], and Kat [Dahl] knew it," Williams said. *Id.*
- Williams also disparaged the credibility of the sexual assault victims, whom Dahl believed and whom Johnson City found lacking in credibility to move forward. For example, Williams stated they "had a vendetta against him for various reasons, including 'Spite for being banned from my parties,' a '[s]tatus upgrade by associating themselves with me or insinuating that I was attracted to them,' 'potential settlement money from the [Johnson City Police Department] to avoid an expensive lawsuit' or 'simple fame or a moment in the spotlight.'" *Id.*

Under the circumstances, undersigned counsel for plaintiff believe that plaintiff may suffer substantial undue prejudicial effect from the combination of both 2022 and more recent 2023 publicity. The above statements cast aspersions on "(1) evidence regarding the occurrence … involved," and "(2) the character, credibility, or criminal record of a party, witness, or prospective witness." *See* LR 83.2(a)(1) and (2). They are likely to interfere with a fair trial of this action. LR83.2(a)(3). Particularly, the statements by Johnson City are false or misleading as to the evidence regarding the City's failures to investigate and seize Williams, the City's overall handling of sexual assault cases including those of Williams' victims who made reports to JCPD, the City's failure to initiate an Internal Affairs investigation, and the City sitting on evidence of Williams' sex crimes for nearly three years. The truth of those issues goes to the credibility and accuracy of Dahl's allegations against the City. And, the statements by Williams himself cast doubts on Dahl's motivation and credibility in pursuing additional sex crimes charges against Williams.

Neither the City's press statements and press conferences, nor Williams' jailhouse interview, were initiated by the plaintiff's counsel of record or plaintiff. But plaintiff's counsel of record cannot respond to the City's statements, or to Williams' interview. Plaintiff's counsel

of record believes that under Tennessee Rule 3.6(c) they have a duty to issue a statement "limited to such information as is necessary to mitigate the recent adverse publicity."

Judge Guyton of this Court has previously held that counsel can be relieved from the "more restrictive" Local Rule in favor of the Tennessee Rules with respect to public statements. *See United States v. Oakley,* No. 3:07-CR-88 at *3-4 (E.D. Tenn. July 20, 2007). And, this is not a case where there is a lack of wide publicity or sensational attention, and so the motion for relief is unfounded. *Cf. Williams v. Redflex Traffic Systems, Inc.,* No. 3:06-CV-400 at *5-6 (E.D. Tenn. Mar. 15, 2007).

Local Rule 83.2 does not permit or otherwise provide for such statements that may fall within the purview of Tennessee Rule 3.6(c). To the extent that Local Rule 83.2 is more restrictive than the Rules of Professional Conduct adopted by the Supreme Court of Tennessee, undersigned counsel for Plaintiff moves the Court for relief from compliance with the more restrictive local rule. Under principles of fairness, undersigned counsel for Plaintiff believes that all counsel in this case should be governed by Tennessee Rule 3.6(c) with respect to public statements as described in that rule.

IV. **Conclusion and Prayer**

This is a widely publicized and sensational civil case where extrajudicial statements to the press by Johnson City and Sean Williams require plaintiff's counsel of record to be able to make limited statements to protect plaintiff from the substantial undue prejudicial effect of recent publicity not initiated by plaintiff or her counsel.

WHEREFORE for good cause shown Plaintiff Kateri Lynne Dahl moves this Court for relief from E.D. Tenn. Local Rule 83.2 to permit counsel to speak publicly as permitted by Tenn. Sup. Ct. R. 3.6(c), and for such other relief as may be just, meet and reasonable.

Dated: October 24, 2023                    Respectfully submitted,

Lead Counsel for Plaintiff Kateri Lynne Dahl

/s/ Hugh A. Eastwood
Hugh A. Eastwood, *admitted pro hac vice pursuant to L.R. 83.5(b)(1)*,
E.D. Mo. Bar No. 62058MO,
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3825
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

Co-Counsel for Plaintiff Kateri Lynne Dahl

/s/ Alexis I. Tahinci
Alexis I. Tahinci, TN BPR No. 031808
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
(423) 406-1151
(423) 815-1728 Fax
alexis@tahincilaw.com


**Certificate of Service**

The undersigned certifies that on October 24, 2023 that (s)he filed this document with the District Clerk to be served by operation of the Court's CM/ECF system upon all counsel of record.

*/s/ Hugh A. Eastwood*