UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION
GREENEVILLE

| | |
|---|---|
| KATERI LYNNE DAHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22−cv−00072−KAC−JEM |
| | ) |
| CHIEF KARL TURNER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### Plaintiff's Opposition to Defendants' "Motion in Limine to exclude evidence related to Eric Daigle's investigation or audit"

Plaintiff Kateri Lynne Dahl, by counsel Hugh A. Eastwood and Alexis I. Tahinci, states as follows for her Opposition to Defendants' "Motion in Limine to exclude evidence related to Eric Daigle's investigation or audit":

I. Questions Presented

Are Johnson City documents related to the investigation by Johnson City's expert Eric Daigle for his public government report discoverable by Dahl pursuant to Plaintiff's Second RFP No. 5? And, may Dahl depose Daigle after she timely designated him as a non-retained expert, and asked Defendants to depose him at least five times?

II. Introduction

Dahl filed her complaint on June 24, 2022, alleging that she was fired by Johnson City and its then-Police Chief Karl Turner after she spoke out to the FBI and other third parties about Johnson City's failures in investigating and seizing Sean Williams—either because of incompetence or corruption. Since then, a flurry of activities outside the four corners of this case have confirmed that Dahl's speech—which was as to a matter of public concern, made as a

citizen outside of her employment, and implicated no *Pickering* concerns—was not just true and accurate, but worse than she had feared. It turns out from multiple federal and state court filings that there is probable cause that Williams filmed himself sexually assaulting at least 52 women, and at least two children, and that Johnson City had myriad failings as to its investigations of both Williams particularly and sexual assault victims generally, as well as a pervasive bias against women. Williams has since fled custody under suspicious circumstances. In other words, the failures of former Chief Turner and Johnson City (and its partners) are baffling and horrific.

Public outcry was overwhelmingly negative toward Johnson City's failures. Johnson City hired a police practices expert, Eric Daigle, to investigate and audit its handling of sexual assaults. As already briefed to this Court, Johnson City denied in public statements any connection between Dahl's complaint and Daigle's audit. Now in court filings, however, Johnson City tries to directly connect the two. More importantly, Daigle's public report is blistering as to Johnson City's failings. And it is squarely admissible under Fed. R. Evid. 804(8)(A)(iii).

Johnson City has improperly claimed that discovery as to the Daigle report is attorney-client privileged despite its public nature, has objected to a written request for production for discoverable documents, and ignored at least five written requests to depose Daigle. Given the pending discovery deadline of December 1, this appears to be an attempt to run out the clock on discovery. Good practice in fall football is not the same in federal court litigation. After months of professional courtesy between counsel, Dahl now today subpoenas Daigle for his testimony and file. Further, Dahl responds that Defendants' "Motion in Limine to exclude evidence related to Eric Daigle's investigation or audit" is procedurally defective and inapplicable at the

2

discovery phase. The Federal Rules of Civil Procedure and the Sixth Circuit do not recognize a motion in limine to prohibit discovery.

III. Procedural History

As already briefed to the Court in Dahl's "Motion for Relief from E.D. Tenn. Local Rule 83.2 to permit counsel to speak publicly as permitted by Tenn. Sup. Ct. R. 3.6(c)" [Doc. 42], Johnson City announced on August 22, 2022 that it had retained Eric Daigle to perform an independent review of its police department's handling of sexual assault investigations. Four days later, Johnson City filed its Answer [Doc. 18] to Dahl's original complaint, and stated in a press conference that the Daigle review should not be conflated with the Dahl litigation.[1]

Counsel in this case have had a discovery dispute over Eric Daigle and the government report Daigle prepared for Johnson City at least since Dahl served her Second Requests for Production on Johnson City on May 10, 2023. When Johnson City responded to those requests on June 12, it objected to Dahl's Second RFP No. 5 on the basis of attorney-client privilege and incompleteness:

> 5. Please produce all documents provided by you to the Daigle Law Group, and any draft reports made to you by the Daigle Law Group. Please include any contracts and engagement communications and documents.
>
> **RESPONSE: A copy of the public document engaging the Daigle Law Group, LLC as legal counsel to conduct an investigation as defined in the contract is provided. This investigation is incomplete and ongoing. Attorney Daigle's work product and privileged communications are in his possession. [Bates Stamp Nos. 1486 - 1489].**

---

[1] "I can see how our community could be very confused," [Johnson City City Manager Cathy] Ball said of the potential for conflating the Dahl lawsuit with the external review. "In our response, we say of the cases around Mr. Voe, those have been reviewed by our attorney (and found to have been handled properly)." Jeff Keeling, *Johnson City Files 'Voe' Federal Lawsuit Response,* WJHL (Aug. 26, 2022), available at
https://www.wjhl.com/news/local/city-files-voe-lawsuit-response (last accessed Nov. 6, 2023).

3

On June 28, Dahl's counsel sent a meet-and-confer letter stating that the information sought was not privileged in that (1) Daigle was not providing legal advice, (2) Daigle was preparing a public government report admissible under Fed. R. Evid. 803(8)(A)(iii), and (3) various case law holds that the underlying materials for a government investigation and report are discoverable.

On July 3, counsel for Johnson City responded with a letter suggesting that the issue would be better reviewed by counsel after Daigle's report was complete and publicly issued. Counsel for Dahl agreed to table the issue in a reply dated July 10. Then, on July 18, the Daigle report was issued to the City and publicly released. It was scathing in its findings as to Johnson City's handling of over 300 sexual assault cases between 2018 and 2022, Johnson City's failures to meet industry standards and legal requirements, as well as to a general culture of bias and stereotypes toward women that hurt the quality of such investigations. It also found that case records were lacking or missing related to Johnson City's Sean Williams investigation.

Dahl subsequently designated Eric Daigle as a non-retained expert on August 30, 2023 in her First Amended Rule 26 Disclosures, which is timely under the Scheduling Order [Doc. 24]. Dahl also sent written First Requests for Admissions to Johnson City, all directly related to the Daigle Report. Dahl has since through counsel asked at least five times to schedule the deposition of Mr. Daigle. Dahl has relied on professional courtesy up until now in seeking discovery, and has not been dilatory. Accordingly, Dahl has issued today a subpoena directly to Mr. Daigle for his testimony and file, and will seek also to obtain production of documents from Johnson City responsive to her Second RFP No. 5.

This past Friday evening, Defendants Johnson City and Chief Turner filed a "Motion in Limine to exclude evidence related to Eric Daigle and the Daigle audit" [Doc. 44]. That motion

4

directly contradicts the City Manager's August 2022 public statement to the press that the Daigle audit and the Dahl complaint should not be conflated[2], and now characterizes Daigle's work as a subsequent remedial measure.  *See, e.g.,* "[T]he decision to retain Mr. Daigle was triggered by the allegations in this lawsuit." [Doc. 44]; "The reason that Attorney Daigle was employed to conduct this review was based on the allegations made in Ms. Dahl's lawsuit, those allegations then triggering citizen concerns that the JCPD was not properly conducting sexual assault investigations."  Cathy Ball Affidavit at ¶11, dated Nov. 2, 2023 [Doc. 45].

Notably, Johnson City's motion does not differentiate between the Daigle audit and report itself, and Johnson City's representation that it made subsequent independent decisions to adopt certain of Daigle's recommendations in order to make reforms.

IV. <u>Standard of Review</u>

Federal Rule of Civil Procedure 26(b)(1) states:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. <u>Information within this scope of discovery need not be admissible in evidence to be discoverable.</u>

(emphasis added)

---

[2] On August 26, 2022, City Manager Cathy Ball stated: "I can see how our community could be very confused," Ball said of the potential for conflating the Dahl lawsuit with the external review. "In our response, we say of the cases around Mr. Voe, those have been reviewed by our attorney (and found to have been handled properly)." Jeff Keeling, *Johnson City Files 'Voe' Federal Lawsuit Response,* WJHL (Aug. 26, 2022), available at https://www.wjhl.com/news/local/sean-williams-case/city-files-voe-lawsuit-response/ (last accessed Nov. 6, 2023).

5

A party "resisting discovery bears the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Int'l (N.A.), Inc. v. Paas,* 244 F.R.D. 374, 380 (W.D. Ky. 2007) (quoted in *Hunley v. Glencore Ltd.,* No. 3:10-CV-455, at *4 (E.D. Tenn. Apr. 17, 2013)). To resist discovery that appears relevant, the respondent "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Invesco Int'l,* 244 F.R.D. at 380 (citing *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323, 326 (S.D. Fla. 1985). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

True, the scope of discovery is not unlimited. Fed. R. Civ. P. 26(b)(1) and (b)(2)(C) outline limitations on discovery. Under Rule 26(c), the court may issue protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by placing limitations on discovery, including the taking of depositions. Fed. R. Civ. P. 26(c)(1). The party who seeks a protective order from the court bears the burden of showing that good cause exists. *EEOC v. Tepro, Inc.,* 38 F. Supp. 3d 883, 886 (E.D. Tenn. 2014) (citing *Nix v. Sword,* 11 F. App'x 498, 500 (6th Cir. 2001)). In order to demonstrate the required good cause, the party seeking the protective order "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citations and internal quotation marks omitted).

By contrast to a discovery motion brought under Rule 26, a motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States,* 469 U.S. 38, 40 n. 2 (1984). "[A]

6

motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.,* 718 F.3d 556, 561 (6th Cir. 2013) (citing *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069 (3d Cir. 1990)). In other words, a motion in limine is an evidentiary device that "provides a useful adjunct to other devices for truncating the trial such as motions for summary judgment." 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5037.10 (2005).

It does not appear to Dahl that a motion in limine has any role related to discovery under Rule 26, or the case law of the Sixth Circuit and this District Court. Similarly, Fed. R. Evid. 403 and 407 go to the *admissibility* of evidence at trial, and not discovery or summary judgment practice.

V. <u>Analysis</u>

Defendants have chosen a curious procedural path to try to prohibit Dahl from obtaining discovery on Daigle, whom she has timely sought to depose, and as to Johnson City from which she has timely attempted to obtain written discovery as to Daigle. A motion in limine is an interlocutory pre-trial order as to the admissibility of evidence at trial, and not a method of preventing discovery. *Louzon,* 718 F.3d at 561; *see also, e.g., Reynolds v. Knox Cnty. Gov't,* No. 3:17-CV-79-HSM-DCP at *6 (E.D. Tenn. Oct. 16, 2018).

The Sixth Circuit and this District Court have held that Rule 26(c)(1) is the correct procedure for a party to seek limitations on discovery by seeking a protective order for good cause. *Tepro,* 38 F. Supp. at 886; *Nix,* 11 F. App'x at 500. The burden is on the movant to "articulate specific facts showing clearly defined and serious injury from the discovery sought." *Id.*; *see also* Rule 26(c)(1) (stating grounds for entry of a protective order).

7

Defendants have not moved for a protective order, and so their motion in limine is premature under the Scheduling Order for pre-trial motions. Defendants' motion is inapplicable at the discovery phase to forbid the production of non-privileged documents and the taking of one non-retained expert deposition. Even if Defendants had followed Rule 26(c), however, such a motion would be futile.

Factual findings from a legally authorized investigation are properly admissible in a civil case under the hearsay exception. Fed. R. Evid. 803(8)(A)(iii). Here, the Daigle report is squarely the type of investigation that is admissible. *See Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 162-63 (1988) (reviewing public reports under the rule and holding them admissible). The Sixth Circuit has cited *Beech Aircraft* in holding that is an abuse of discretion to exclude such reports. *See Simpkins v. Boyd Cnty. Fiscal Court,* 48 F.4th 440 (6th Cir. 2022) (abuse of discretion to exclude DOJ Report).

Moreover, the Daigle report and the underlying investigation on which it is based are discoverable. The doctrine of subsequent remedial measures does not extend to internal investigations. *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 817 n.2 (9th Cir. 1989) (per curiam); *Gray v. Golden Gate Nat. Recreational Area,* 866 F.Supp.2d 1129, 1141 (N.D. Cal. 2011). Subsequent remedial measures include <u>only the actual remedial measures themselves</u> and not the initial steps toward ascertaining if a remedial measure is required. *In re Aircrash,* 871 F.3d at 817 n.2 (emphasis added). Internal investigations and reports that are created to determine if a remedial measure is required do not fall within the scope of Rule 407 because they are not themselves remedial measures. *Aranda v. City of McMinnville,* 942 F.Supp.2d 1096, 1103 (D. Or. 2013); *see also Rigsbee v. City of Honolulu,* No. 17-00532 HG-RT, at *4-5 (D. Haw. Mar. 6, 2019).

8

Further, a post-event investigation is not a subsequent remedial measure precluded by the Federal Rules of Evidence. *See* 2 Weinstein's Federal Evidence § 407.06[1] (2018) ("Post-Event Investigations") ("Post-event tests or reports are generally outside the scope of Rule 407, and thus admissible, on the basis that they are conducted or prepared for the purpose of investigating the cause of the accident, and can rarely be characterized as 'measures' which, if conducted previously, would have reduced the likelihood of the accident. It is only if changes are implemented as a result of the tests that the goal of added safety is furthered; and, even then, it is only evidence of those changes that is precluded by the rule."); *see also M.T. v. City of N.Y.,* 325 F. Supp. 3d 487, 498 (S.D.N.Y. 2018) (admitting a government report) (citing *Westmoreland v. CBS Inc.,* 601 F. Supp. 66, 67-68 (S.D.N.Y. 1984)).

Even if Fed. R. Evid. 407 did apply, however, that would properly be decided at pre-trial motion practice after discovery was taken—not as a bar to discovery itself. "[A]lthough evidence of subsequent remedial measures may not be admissible at trial, the mere fact that documentary or testimonial evidence relates to a remedial measure does not render it undiscoverable. Nor is evidence of a remedial measure privileged by nature." *Klosin v. E.I. Du Pont De Nemours & Co.,* No. 19-CV-109 (EAW)(MJR), 2023 WL 1097859, at *6 (W.D.N.Y. Jan. 30, 2023); *see also Trinidad v. Roman Catholic Diocese of Brooklyn*, 21-CV-4405 (DG)(MMH), at *7 (E.D.N.Y. June 13, 2023) (holding discovery objection to be premature, that discovery is more expansive than admissible trial evidence, citing Fed. R. Civ. P. 26(b)(1)).

Defendants do not cite in their "motion in limine" to any authorities that review the above issues. Rather, they cite to two cases involving whether subsequent remedial measures—which the Daigle investigation and report are not—are admissible at trial. That is not the question presented here at the discovery phase. *Frye v. CSX Transportation,* for example, involves

9

whether or not photographs of a resurfaced railroad crossing were properly excluded from the jury at trial. 933 F.3d 591, 604 (6th Cir. 2019). The Sixth Circuit held that the resurfacing was done under compulsion by Michigan regulators, and not voluntarily, and therefore the subsequent remedial measures exclusionary doctrine did not apply. *Id.*

*Genesco, Inc. v. Visa USA, Inc.* involves a breach-of-contract case where the issue was whether remedial measures *themselves*—not a retained expert's report or investigation itself—were discoverable. 302 F.R.D. 168, 189 (M.D. Tenn. 2014). Both the cause of action, and the discovery sought, are highly distinguishable.

The issue is not whether subsequent remedial measures taken are admissible under Fed. R. Evid. 407, or whether ones not taken are admissible under Fed. R. Evid. 403. That is an issue for pre-trial motion practice and is premature. Further, Dahl notes that Fed. R. Evid. 401 sets very low bar for relevancy, and that at least one district court within the Sixth Circuit had compiled cases from the 1st, 3rd, 4th, 5th, 6th, 7th, 9th, 10th, and 11th Circuits to show a robust consensus that similar subsequent incidents can be probative and material of what policies, practices, or accepted customs existed at the time of the incident at issue. *Abdur-Rahim v. City of Columbus,* No. 2:17-cv-601, at *3 (S.D. Ohio Apr. 26, 2019) (citing, *inter alia, Cratty v. City of Allen Park,* No. 17-11724, 2018 WL 7351683 (E.C. Mich. May 21, 2018), *affirmed* 2018 WL 3983806 (finding evidence of citizens' subsequent complaints and the city's treatment of them are discoverable for the plaintiff's claim that the city had an official policy to disregard alleged violations of citizens' rights)).

Moreover, it is worth bearing in mind that the gravamen of Dahl's case is that she was fired by Johnson City because of her speech to the FBI and others outside of JCPD about Johnson City's failures at to Sean Williams particularly and sexual assault cases generally. In

10

such First Amendment retaliation cases, the Sixth Circuit has held that reporting suspected police corruption or incompetence to the FBI is a matter of public concern. *See v. City of Elyria,* 502 F.3d 484, 493 (6th Cir. 2007). In such circumstances, a government entity such as Johnson City has no adequate justification for treating an employee such as Dahl differently from any other member of the public based on the government's needs as an employer. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006) (discussing *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968)). Further, the fact that the Daigle investigation and report wholly support the truth of Dahl's allegations as to Johnson City's misconduct *increases* the value and public concern of her speech, and "empties" any governmental interest in regulating the employee's speech. *Lane v. Franks,* 573 U.S. 228, 242 (2014).

VI. <u>Attempts to Resolve</u>

The parties have conferred in writing multiple times about the Daigle discovery issues, and counsel have generally extended professional courtesies throughout the discovery process. It has been more complex and lengthy than originally anticipated under the Scheduling Order by the fact that Dahl and at least one other witness are DOJ prosecutors and therefore subject to *Touhy* and its regulations that require DOJ approval. 28 C.F.R. §16.22 *et seq.*

Dahl has conferred in good faith about the Daigle issue with Defendants five times both in writing, and verbally—including in responding to objections on the issue at depositions[3]. Dahl was caught off-guard, however, by Defendants' "motion in limine" filing, and fears that this is an attempt to run out the clock on discovery. In seeking to obstruct discovery on the Daigle investigation and report, and to refuse to produce its own expert for deposition after Dahl

---

[3] Defendants made repeated speaking objections during depositions that the Daigle Report was a subsequent remedial measure. *See, e.g.,* Taylor Depo. at 142:15-19; Gryder Depo. at 79:14-18; Legault Depo. at 148:5-9; McKinney Depo. at 60:7-13; Stillwagon Depo. at 69:5-7.

11

designated him, Defendants appear to be forcing Dahl to bring a motion to compel. Defendants did not schedule a conference call with the Court before filing their "motion in limine," despite the Court's requirement to do so as to discovery disputes under Section 4(g) of the Scheduling Order and Fed. R. Civ. P. 37(a)(1). If the court grants Defendants' "motion to limine," Dahl will be forced to file a motion to compel pursuant to the Scheduling Order. Dahl accordingly is filing this opposition briefing, and simultaneously contacting chambers to schedule a conference call.

Dahl notes that her request to depose Mr. Daigle is hardly burdensome even though Mr. Daigle resides in Connecticut, Dahl's lead counsel resides in Missouri, and Dahl resides in Alabama. Dahl intends to conduct the deposition remotely for a limited time period of three hours pursuant to Fed. R. Civ. P. 30(b)(4) (providing for remote depositions upon stipulation by the parties or by motion and court order). Since Covid-19, courts are increasingly granting leave to permit remote depositions, particularly when the witness's credibility is not at issue as here. *See, e.g., Henry v. Tacoma Police Department, et al.,* No. 3:22-CV-0553-LK, 2023 WL 5530201 (W.D. Wash. Aug 28, 2023) (applying two-pronged test for determining whether deposition that be done remotely or in person, court granted pro se plaintiff's request that defendant depose him remotely, rather than forcing plaintiff to travel 2,600 miles to Tacoma, Washington from Jonesboro, Georgia; rejecting defense argument that credibility assessment was reason enough to force an in-person deposition); *Brower v. McDonald's Corp.,* No. 2:19-CV-02099-GMN-BNW, 2021 WL 3573633 (D. Nev. May 28, 2021) (providing that "leave to permit remote depositions should generally be granted liberally"; analyzing the suitability of remote deposition using a two-step procedure, saying that "first, the proponent must advance a legitimate reason for seeking a remote deposition; and second, if the movant articulates a legitimate reason, then the burden shifts to the opposing party to make a particularized showing that conducting the deposition by

12

remote means would be prejudicial"); *Vargas v. Evergreen Professional Recoveries, Inc.,* No. 2:21–CV–00926–RSL–JRC, 2022 WL 856991 (W. D. Washington March 23, 2022) (applying two-step analysis articulated in Brower, supra). *See also* C. Robertson and M. Shammas, The Jury Trial Reinvented, 9 Tex. A&M L. Rev. 109 (Fall 2021).

VII.  Conclusion

Defendants' "motion in limine to exclude evidence related to Eric Daigle's investigation or audit" is procedurally defective, and unsupported by the case law. The questions presented are whether the written discovery sought in response to Dahl's Second Requests for Production No. 5 as to the Daigle report, and Dahl's five written requests to take the deposition of her non-retained expert Eric Daigle are well founded. They are.

WHEREFORE Plaintiff Kateri Lynne Dahl prays the Court DENY Defendants' "motion in limine to exclude evidence related to Eric Daigle's investigation or audit"; and to grant such other relief as may be just, meet and reasonable.

Dated: November 6, 2023              Respectfully submitted,

                                     Counsel for Plaintiff Kateri Lynne Dahl

                                     /s/ Hugh A. Eastwood
                                     Hugh A. Eastwood, E.D. Mo. Bar No. 62058MO,
                                     *admitted pro hac vice pursuant to L.R. 83.5(b)(1)*
                                     Attorney at Law
                                     7911 Forsyth Blvd., Ste. 300
                                     St. Louis, Missouri 63105-3825
                                     hugh@eastwoodlawstl.com
                                     (314) 809 2343
                                     (314) 228 0107 eFax

                                     /s/ Alexis I. Tahinci
                                     Alexis I. Tahinci, TN BPR No. 031808
                                     Tahinci Law Firm PLLC
                                     105 Ford Ave., Suite 3
                                     Kingsport, TN 37663
                                     (423) 840-1350

13

(423) 815-1728 eFax
alexis@tahincilaw.com

## Certificate of Service

The undersigned certifies that on November 6, 2023 (s)he filed this document with the District Clerk to be served by operation of the Court's CM/ECF system upon all counsel of record.

*/s/ Hugh A. Eastwood, 62058MO, pro hac vice*