UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| KATERI LYNEE DAHL, | ] | |
|---|---|---|
| Plaintiff, | ] | |
| v. | ] | No. 2:22-cv-00072-KAC-CRW |
| | ] | JURY DEMAND |
| CHIEF KARL TURNER, OFFICER JOHN DOES 1 THROUGH 3, and CITY OF JOHNSON CITY, TENNESSEE, | ] | |
| Defendants. | ] | |

**REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ERIC DAIGLE'S INVESTIGATION OR REPORT**

**I. NARROWING OF ISSUES**

The defendants, City of Johnson City ("Johnson City") and Karl Turner, in his individual capacity, withdraw their argument that the plaintiff should not be able to take the deposition of Eric Dagle. By doing so, the defendants are not conceding that Eric Daigle is a properly designated non-retained expert by the plaintiff. The defendants are merely acknowledging that the plaintiff can take his deposition before the expiration of the discovery cut off.

Therefore, the only issue is whether the Daigle Audit and any testimony related to the Daigle Audit should be excluded from evidence under Federal Rule of Evidence 407[1] as a subsequent remedial measure where the plaintiff seeks to rely on this evidence in an attempt to prove liability of the defendants. *Doc. 47, PageID #: 673.*

---

[1] This Motion in Limine only addresses Fed. R. Evid. 407. The Defendants are not waiving any arguments as to the relevancy of this evidence under any other Federal Rules of Evidence, including Fed. R. Evid. 401 and Fed. R. Evid. 402.

## II.   REPLY TO PLAINTIFF'S ARGUMENTS ON ISSUE OF SUBSEQUENT REMEDIAL MEASURES

A.   <u>Plaintiff's argument that the City's position is that there is no connection between the *Dahl* lawsuit and the Daigle Audit</u>

*i. Plaintiff's response*

Ms. Dahl asserts in her Response that "Johnson City denied in public statements any connection between Dahl's complaint and Daigle's audit." *Id. at PageID #: 664.* In support of her conclusion, Ms. Dahl asserts as follows:

> Johnson City announced on August 22, 2022 that it had retained Eric Daigle to perform an independent review of its police department's handling of sexual assault investigations. Four days later, Johnson City filed its Answer [Doc. 18] to Dahl's original complaint, and stated in a press conference that the Daigle review should not be conflated with the Dahl litigation.[1]

---

[1] "I can see how our community could be very confused," [Johnson City City Manager Cathy] Ball said of the potential for conflating the Dahl lawsuit with the external review. "In our response, we say of the cases around Mr. Voe, those have been reviewed by our attorney (and found to have been handled properly)." Jeff Keeling, *Johnson City Files 'Voe' Federal Lawsuit Response,* WJHL (Aug. 26, 2022), available at https://www.wjhl.com/news/local/city-files-voe-lawsuit-response (last accessed Nov. 6, 2023).

*See Doc. 47, PageID #: 665.*

*ii. Defendants' reply*

The decision to employ a third party to investigate the allegation that officers with the Johnson City Police Department were not properly conducting sexual assault investigations is directly linked to the filing of Ms. Dahl's lawsuit. The facts are as follows:

On June 23, 2022 Ms. Dahl filed her lawsuit. *See Doc. 1*. In her lawsuit, she accuses officers of the Johnson City Police Department ("JCPD") of improperly handling sexual assault investigations. *Id.*

On July 1, 2022, John Tye, an attorney who founded Whistleblower Aid (who happens to be a good friend of attorney Hugh Eastwood from law school[2]), was reported by WJHL to have stated that he was assisting Ms. Dahl in her whistleblower complaints "regarding her firing and other alleged actions by the Johnson City Police Department (JCPD)." He was further quoted as saying: "if people have important information that could support the allegations of potential corruption by police in the "Robert Voe" case, it can be more valuable to his organization and to the DOJ if they avoid sharing it publicly." *See* https://www.wjhl.com/news/investigations/prominent-whistleblower-group-steps-into-jc-police-allegations-seeks-additional-information-from-people/ (last accessed November 11, 2023).

On July 7, 2022, protestors gathered at City Hall – obviously responding to the publicity from the *Dahl* lawsuit as highlighted by the Whistleblower Aid interview. As the WJHL report stated: "People gathered Thursday outside of Johnson City's city hall to protest in response to the alleged inconsistent handling of sexual assault cases, brought to public eye in a lawsuit filed by a former federal investigator who claimed she was fired by Turner in retaliation for repeatedly trying to build a stronger case against a man referred to in documents as 'Robert Voe.'" *See* https://www.wjhl.com/news/local/protesters-gather-in-johnson-city-calling-for-police-chiefs-suspension/ (last accessed November 11, 2023).

On July 19, 2022, Attorney John Tye gave a second interview to WJHL in which it was reported that he stated he was representing her in her whistleblower complaints and in which he represented that not a single allegation in her Federal Court lawsuit had been called into question. *See* https://www.wjhl.com/news/local/sean-williams-case/whistleblower-aid-evidence-for-doj-complaint-growing-in-jcpd-voe-case/ (last accessed November 12, 2023).

---

[2] *See Exhibit A.*

On July 20, 2022, the City Manager of Johnson City, Cathy Ball, publicly announced that the City was in the process of seeking an expert to conduct a review as to how sexual assault investigations were handled by officers of the JCPD. *See Doc. 45-1, PageID ##: 610-11 at ¶ 4.*

On August 4, 2022, the City Manager publicly announced that attorney Eric Daigle of Connecticut would be employed by the City to conduct that review. *Id.*

Eric Daigle was not hired to investigate Ms. Dahl's allegations related to her. Mr. Daigle was hired to investigate the allegation in Ms. Dahl's lawsuit that the City was not properly conducting sexual assault investigations. *See Doc. 45-1, PageID #: 610 at ¶ 4.* Therefore, the decision to hire Mr. Daigle to investigate how officers conduct sexual assault investigations was directly linked to the alleged harm to the public set forth in Ms. Dahl's Complaint. *Id.*

### B. Plaintiff's argument re Federal Rule of Evidence 803(8)(A)(iii)

#### i. Plaintiff's argument

> Factual findings from a legally authorized investigation are properly admissible in a civil case under the hearsay exception. Fed. R. Evid. 803(8)(A)(iii). Here, the Daigle report is squarely the type of investigation that is admissible. *See Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 162-63 (1988) (reviewing public reports under the rule and holding them admissible). The Sixth Circuit has cited *Beech Aircraft* in holding that is an abuse of discretion to exclude such reports. *See Simpkins v. Boyd Cnty. Fiscal Court,* 48 F.4th 440 (6th Cir. 2022) (abuse of discretion to exclude DOJ Report).

*See Doc. 47, PageID #: 670.*

#### ii. Defendants' reply

Plaintiff is arguing why the Daigle Audit is not hearsay. The issue before the Court is whether the Daigle Audit should be excluded as a subsequent remedial measure under Rule 407. Defendants do not concede that Rule 803(8)(A)(iii) applies to a report prepared by a private person engaged by a governmental entity to investigate a matter; but for purposes of the pending Motion, this issue is not before the Court.

4

Case 2:22-cv-00072-KAC-JEM   Document 51   Filed 11/13/23   Page 4 of 8   PageID #: 734

C. Plaintiff's additional arguments

  i. *Plaintiff's arguments*

The plaintiff argues that: (1) the doctrine subsequent remedial measures does not extend to internal investigations, (2) initial steps towards ascertaining if a remedial measure is required are not subsequent remedial measures, and (3) a post-event investigation is not a subsequent remedial measure. *Doc. 47, PageID ##: 670-71.* The plaintiff relies on cases out of the Ninth Circuit and the District Courts of New York as well as 2 Weinstein's Federal Evidence § 407.06[1]. *Id.*

  ii. *Defendants' reply*

Closer to home, in *Thomas v. Univ. Med. Ctr., Inc.*, 620 S.W.3d 576 (Ky. 2020), the Kentucky Supreme Court looked to Sixth Circuit law as to Federal Rule of Evidence 407 regarding the application of Kentucky Rule of Evidence 407. As the Court explained:

> This Court has not yet addressed the question of whether post-incident investigatory reports like the RCA in this case qualify as a subsequent remedial measure under this rule. However, KRE 407 largely mirrors Federal Rule of Evidence ("FRE") 407. Accordingly, we consult federal case law interpreting FRE 407 when interpreting our own KRE 407.

*Id.* at 583 (footnote omitted).

The Kentucky Supreme Court then went on to hold:

> On this point, we note again that the investigatory report is a "prerequisite to any remedial safety measure." *Martel*, 525 N.E.2d at 664. It is the first step in the remedial process, and without more, the process is incomplete. Once those recommended remedial steps are taken, however, the remedial process is completed, and *587 the report is no longer a mere prerequisite. We hold that, at that point, the report is so inextricably intertwined with the subsequent remedial measure that it must be excluded as such under KRE 407.

> We believe that this holding aligns with the policy rationale behind KRE 407, namely, to encourage defendants to take remedial measures. *See Werner*, 628 F.2d at 857 (describing policy rationale behind FRE 407). Alleged tortfeasors should be encouraged to not only conduct self-critical analyses but to perform the recommended remedial measures because doing so can prevent the full investigatory report from being used in a subsequent civil suit to prove liability.

5

> We also believe that this holding aligns with the limited Sixth Circuit precedent addressing this issue. For example, in *Wilson v. Beebe*, 770 F.2d 578 (6th Cir. 1985), the Court found that a post-shooting report, in which a police officer was found to have acted contrary to his training, was *not* excludable under FRE 407. *Id.* at 590. That Court briefly explained, "The report did not recommend a change in procedures following the shooting; it was a report of that incident and nothing more." *Id.*
>
> Later, in *In re Air Crash*, the Sixth Circuit considered the applicability of FRE 407 to an internal memorandum drafted two months after an airplane crash. The memorandum explained that a flight crew check of the takeoff warning system on board that particular plane model was not necessary because the system's fail light should warn crews about any system failure. 86 F.3d at 531-32. The report also discussed the company's recommendation to buyers of another plane model to perform such a system check prior to take off. *Id.* at 531. This recommendation had been made in response to an earlier plane crash. *Id.* The Sixth Circuit held that the memorandum should be excluded, explaining, "It is obvious that the memorandum is part of a discussion about whether [the airplane manufacturer] should recommend the check in the future—and such a change in policy is a subsequent remedial measure within the meaning of Fed.R.Evid. 407." *Id.* at 532 (citing *Hall v. American Steamship Co.*, 688 F.2d 1062, 1066 (6th Cir. 1982)). Thus, the Sixth Circuit has drawn a distinction between reports that recommend changes in procedure, which thereby become "part of" that discussion, and reports that make no such recommendation.

*Id.* at 586-87.

This analysis is entirely consistent with the position of the defendants in the case at bar.

In summary, the City Manager voluntarily employed an outside third party to conduct an independent investigation in response to the allegations made in the *Dahl* Complaint, and the public's reaction to those allegations.

The outside third party issued a report that made several recommendations. The City has implemented or is in the process of implementing each recommendation with the exception of part of recommendation number 3 – wherein Mr. Daigle recommends that the City conduct an internal affairs investigation as to any complaint – even when the matter is in litigation. *Doc. 45-1, PageID #: 611 at ¶ 8.*

6

Because Mr. Daigle's analysis of the bases for the recommendations is intertwined with the recommendations themselves, the entire Daigle Audit should be excluded under Rule 407 as to all recommendations that the City has implemented or is in the process of implementing. *See Doc. 45-1, PageID ##: 613-658.*

To hold otherwise would dissuade a governmental entity from voluntarily having a third party conduct a review and make recommendations for improvement during pending litigation for fear that the review and/or recommendations would be used as evidence against the entity for purposes of proving liability.

As the Sixth Circuit explained in *Frye v. CSX Transportation, Inc.*, 933 F.3d 591 (6th Cir. 2019):

> Whatever harm may have been caused already, and regardless who is at fault for that harm, a party should not be dissuaded from minimizing the risk of future harm for fear that such remedial measures will be used against the party to establish its liability for the originating accident. Put more simply, a good deed should go unpunished.

*Id.* at 604.

### D. Plaintiff argues Motion in Limine is premature

Finally, the plaintiff argues that this Motion in Limine is premature. The defendants recognize that this Court may choose to hold this Motion in abeyance; but there is no prohibition against filing the Motion in Limine at this juncture based on an assertion that the Daigle Audit and any testimony thereon are barred by Rule 407.[3]

### III. CONCLUSION

Based on the foregoing, the defendants request that their Motion in Limine be granted.

---

[3] The defendants reserve any other objections to this evidence should this matter proceed to trial.

7

Respectfully submitted,

*s/ Emily C. Taylor*
Emily C. Taylor, BPR # 27157
WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
Phone: (865) 637-1700
Fax: (865) 525-2514
Email: etaylor@watsonroach.com

*s/ K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
HERRIN, McPEAK & ASSOCIATES
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
MILLIGAN & COLEMAN PLLP
P.O. Box 1060
Greeneville, TN 37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
Email: tgarland@milligancoleman.com

Attorneys for Defendants