UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| KATERI LYNNE DAHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00072-KAC-JEM |
| CHIEF KARL TURNER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### Response of City of Johnson City to Plaintiff's First Requests for Admission

### Global Objection

Counsel for Johnson City makes an objection applicable to Requests for Admission 1-39 on the ground that the Daigle Report is not admissible in evidence as a subsequent remedial measure pursuant to Federal Rule of Evidence 407. The Daigle Group was employed to audit the handling of sexual assault cases by officers in the Johnson City Police Department ("JCPD") in response to the filing of this lawsuit and the accusations of this lawsuit. The City has implemented most of the recommendations contained in the Daigle Report for purposes of improving the handling of sexual assault investigations into the future. Therefore, the Daigle Report should not be admitted into evidence – and consequently, these Answers to Requests for Admission should not be admitted into evidence. Without waiving this objection, the City responds to the Requests for Admission as follows:

### Requests for Admission

Pltf. Ex. 6

1.  Daigle Law Group was retained by the City to investigate its handling of over 325 sexual assault investigations based on reports received by the City between January 2018 and December 2022.

    RESPONSE: Denied as stated. The Daigle Law Group was retained on July 28, 2022 to conduct an investigation and produce an analysis with recommendations regarding the handling of sexual assault investigations by the Johnson City Police Department based upon allegations made by Kateri Dahl in the lawsuit styled <u>Kateri Lynne Dahl v. Chief Karl Turner, et al.,</u> Civil Action No.2:22-cv-0072-KAC-JEM, United States District Court, Eastern District of Tennessee. There was no directive as to the number of files to be reviewed or for a specific time period in the contract as to the documents to be reviewed.

2.  Daigle Law Group, through its team of highly qualified experts, has extensive experience with comprehensive review of law enforcement policing operations.

    RESPONSE: Denied as stated. The Daigle Law Group was retained based upon knowledge of Eric Daigle making presentations to law enforcement organizations regarding police procedures. The City has no knowledge of the persons relied upon or employed by Mr. Daigle.

3.  The Daigle Report sets out factual findings from an investigation legally authorized by the City.

    RESPONSE: Admitted.

4. The Daigle Report has sound and reliable methodology for its factual investigation of the City's handling of over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied as stated. The City does not believe that the Daigle Group reviewed all files in the database provided to the Daigle Group. Further answering, the City assumes that with respect to the files reviewed, that the Daigle Group employed sound and reliable methodology.

5. The Daigle Report is a statement of the City as to its handling of over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied. The Daigle Report is not the statement of the City. Furthermore, it is believed that the Daigle Group did not review all files in the database provided to the Daigle Group.

6. The Daigle Report is a fair and accurate assessment of the City's handling of over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied as stated. It is believed that the Daigle Group did not review all files in the database provided to it. Further answering, the City takes issue with the Daigle Report to the extent that it can be interpreted as opining that the training of officers and the policies of the Johnson City Police Department failed to comply with Tennessee law or the United States Constitution.

7. The Daigle Report is a trustworthy statement of its findings and conclusions as to the City's

3

handling of over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied as stated. It is believed that the Daigle Group did not review all files in the database provided to it. Further answering, the City takes issue with the Daigle Report to the extent that it can be interpreted as opining that the training of officers and the policies of the Johnson City Police Department failed to comply with Tennessee law or the United States Constitution.

8. The City has accepted the findings and conclusions of the Daigle Report as to the City's handling of over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied as stated. It is believed that the Daigle Group did not review all files in the database provided to it. Further answering, the City has implemented and is continuing to implement recommendations made by the Daigle Group, but that does not mean that the City accepts all findings and conclusions to the extent that those findings and conclusions were made without reviewing all files in the database provided to the Daigle Group and to the extent that the Daigle Report can be interpreted as opining that the training of officers and the policies of the Johnson City Police Department failed to comply with Tennessee law or the United States Constitution.

9. Between January 2018 and December 2022, the City maintained poor record keeping as to over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied. As an initial matter, it is believed that the Daigle Group did not

4

review all files in the database provided to it. Further answering, while the records maintained by investigators and other officers in the JCPD are City records, it is incorrect from a legal standpoint to say that the City engaged in the conduct that resulted in any conclusion of poor record keeping in instances involving particular officers/investigators. Furthermore, it is denied that the Daigle Report found that that the City (or its employees) maintained poor record keeping in over 325 reports of sexual assault. The Daigle Report found problems with record keeping in some cases without identifying the number. Moreover, the Daigle Report found that "City-wide support for a new Records Management System further reinforces their commitment to improving their response." *See Daigle Report at p. 15.* The new Records Management System was approved for purchase and implementation by the Board of Commissioners on September 21, 2023.

10. Between January 2018 and December 2022, the City conducted inconsistent, ineffective and incomplete investigations into over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied. As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. Furthermore, the City does not conduct sexual assault investigations. Officers within the JCPD conduct sexual assault investigations. The Daigle Report did not find that the City conducted inconsistent and incomplete investigations into over 325 reports of sexual assault. With respect to investigations conducted by JCPD officers, the Daigle Report found that "many of the investigations reviewed were good." *See Daigle Report at p. 15.* With respect to problems identified in the Daigle Report as to "inconsistent, ineffective, and incomplete" investigations, the Daigle Report did not quantify any numbers.

11. Between January 2018 and December 2022, the City had flaws with the closing of investigations into over 325 reports of sexual assault made to the City between January 2018 and December 2022.

RESPONSE: Denied. As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. Furthermore, it is incorrect from a legal standpoint to say the City engaged in flawed closing of sexual assault investigations in instances involving particular officers/investigators. Further answering, the Daigle Report did not find flaws with the closing of investigations into over 325 reports of sexual assault. The Daigle Report found flaws in some closings without quantifying any numbers.

12. Between January 2018 and December 2022, the City had insufficient training procedures as to sexual assault investigations that did not meet industry standards and legal requirements.

RESPONSE: Denied as stated. In Tennessee, the legal requirements for officer training are established by Tennessee's Peace Officers Standards and Training Commission. Johnson City's training of its officers complied with Tennessee law. The Daigle Report did not identify specific industry standards for sexual assault investigations. For example, the Daigle report states that "CALEA does not provide law enforcement standards specifically related to sexual assaults investigations," and the Tennessee Law Enforcement Accreditation Standards, "does not include separate standards specifically related to sexual assault investigations." *See Daigle Report at pp. 42, 45.*

13. Between January 2018 and December 2022, the City had insufficient department policies and procedures as to sexual assault investigations that did not meet industry standards and legal requirements.

RESPONSE: Denied.

14. Between January 2018 and December 2022, there was an existing bias and belief of stereotypes about women within the Johnson City Police Department that hurt the quality of sexual assault investigations.

RESPONSE: Denied as stated. As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. Further answering, the Daigle Report found evidence of bias and belief of stereotypes about women, but it is denied that all investigations were adversely impacted by evidence of bias and belief of stereotypes about women, especially where many investigations during the time period at issue were conducted by a female investigator with the Johnson City Police Department.

15. The investigation into the sexual assault complaint of Jane Doe 9 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. The City provided Daigle with sexual assault investigative files during a five (5) year time period. It is unknown if the Daigle Group reviewed a complaint pertaining to Jane Doe 9.

7

16.     The investigation into the fall of Jane Doe 1 from the apartment of Sean Williams was among the cases reviewed by the Daigle Report.

   RESPONSE: As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. The City provided Daigle with sexual assault investigative files during a five (5) year time period. At this time it cannot be determined if the file involving Jane Doe 1 was included in the files provided to Daigle. It is unknown if the Daigle Group reviewed a complaint pertaining to Jane Doe 1.

17.     The investigation into the sexual assault complaint of Jane Doe 2 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

   RESPONSE: As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. The City provided Daigle with sexual assault investigative files during a five (5) year time period. It is unknown if the Daigle Group reviewed a complaint pertaining to Jane Doe 2.

18.     The investigation into the sexual assault complaint of Jane Doe 15 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

   RESPONSE: As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. The City provided Daigle with sexual assault investigative files during a five (5) year time period. It is unknown if the Daigle Group reviewed a complaint pertaining to Jane Doe 15.

19. The investigation into the sexual assault complaint of Jane Doe 3 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: As an initial matter, it is believed that the Daigle Group did not review all files in the database provided to it. The City provided Daigle with sexual assault investigative files during a five (5) year time period. It is unknown if the Daigle Group reviewed a complaint pertaining to Jane Doe 3.

20. The investigation into the sexual assault and death of Jane Doe 7 and the involvement of Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

21. The investigation into the sexual assault complaint of Jane Doe 5 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied..

22. The investigation into the sexual assault complaint of Jane Doe 6 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

23. The investigation into the sexual assault complaint of Jane Doe 8 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

9

24.     The investigation into the sexual assault complaint of Jane Doe 11 against Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

25.     The investigation into the "Raped List" discovered in the safe of Sean Williams during the execution of a search warrant by the City in Williams' apartment on or around September 23, 2020 was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE:   Denied as stated.  The "raped list" was not discovered in the safe of Sean Williams. Further answering, it is unknown if the Daigle Group reviewed the "raped list" as part of the report.

26.     The evidence seized during the execution of search warrants by the City on the apartment of Sean Williams on or around September 23, 2020 was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

27.     The investigation into the four phones, four computers and three memory cards belonging to Sean Williams and discovered during the execution of search warrants by the City on the apartment of Sean Williams on or around September 23, 2020 in Williams' apartment was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

28. The investigation into the "Raped List" belonging to Sean Williams and discovered during the execution of search warrants by the City on the apartment of Sean Williams on or around September 23, 2020 in Williams' apartment was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied as stated. The City adopts its response to *Request for Admissions* No. 25.

29. The investigation into currency belonging to Sean Williams and seized during the execution of search warrants by the City on the apartment of Sean Williams on or around September 23, 2020 in Williams' apartment was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied.

30. Evidence discovered during the execution of search warrants by the City on the apartment of Sean Williams on or around September 23, 2020 was among the cases reviewed by the Daigle Report where evidence was lost, missing, or otherwise destroyed or unaccounted for.

RESPONSE: Denied that evidence related to Sean Williams was "lost, missing, or otherwise destroyed or unaccounted for."

31. Particularly and specifically, currency seized during the execution of search warrants by the City on the apartment of Sean Williams on or around September 23, 2020 is among the cases reviewed by the Daigle Report where currency was the evidence that was lost, missing, or otherwise destroyed or unaccounted for" in the execution of a Williams search warrant.

11

RESPONSE: Denied that currency was "lost, missing, or otherwise destroyed or unaccounted for in the execution of a Williams search warrant."

32. The 52 women identified as sexual assault victims of Sean Williams by First Judicial District Criminal Investigator Mike Little in his search warrant application dated on or around May 31, 2022 were among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Without knowledge or information sufficient to form a belief to answer this Request for Admission. The Daigle Report only investigated cases in which a report of sexual assault was made. Johnson City has no knowledge of the names of the "52 women identified as sexual assault victims of Sean Williams," and Johnson City does not know how many of these victims made reports of sexual assault. Finally, Johnson City does not believe that the Daigle Group reviewed every report in the database provided to the Daigle Group by Johnson City.

33. The two children identified as sexual assault victims of Sean Williams by First Judicial District Criminal Investigator Mike Little in his search warrant application dated on or around May 31, 2022 were among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Without knowledge or information sufficient to form a belief to answer this Request for Admission. The Daigle Report only investigated cases in which a report of sexual assault was made. Johnson City has no knowledge of the names of the "two children identified as sexual assault victims of Sean Williams." Johnson City does not know whether reports of sexual assault were made to the City on behalf of these two children. Finally, Johnson City does not believe that the Daigle Group reviewed every report in the database provided to the Daigle Group by Johnson City.

34. The investigation(s) of Sean Williams was among the sexual assault cases reviewed by the Daigle Report.

RESPONSE: Denied as stated. There were sexual assault complaints involving Sean Williams contained in the database provided to the Daigle Group. It is unknown whether those specific complaints were among the complaints reviewed in preparation of the Daigle Report.

35. The Daigle Report found that there are records of sexual assault complaints against Sean Williams to the City are missing or unaccounted for.

RESPONSE: Denied.

36. The City did not open any internal affairs investigation in its officers' handling of the investigation(s) of Sean Williams before the issuance of the Daigle Report on or around July 18, 2023.

RESPONSE: Admitted.

37. To date, the City has not opened any internal affairs investigation in its officers' handling of the investigation(s) of Sean Williams.

RESPONSE: Admitted.

38. The City did not open any internal affairs investigation into the Complaint of Plaintiff Kateri Lynne Dahl filed in this case as to City officers' handling of the investigation(s) of Sean Williams before the issuance of the Daigle Report on or around July 18, 2023.

RESPONSE: Admitted.

39. To date, the City has not opened any internal affairs investigation into the Complaint of Plaintiff Kateri Lynne Dahl filed in this case as to City officers' handling of the investigation(s) of Sean Williams.

RESPONSE: Admitted.

Respectfully submitted,

**CITY OF JOHNSON CITY**

By: /s/ K. Erickson Herrin
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*Attorney to Defendant, City of Johnson City*

CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, a copy of the foregoing *Response of City of Johnson City to Plaintiff's First Requests for Admission* were served upon counsel for the Plaintiff by electronic mail to:

Hugh Eastwood - heastwood@eastwoodlawstl.com
Alexis Tahinci - alexis@tahincilaw.com

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**

14