UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| KATERI LYNEE DAHL, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] No. 2:22-cv-00072-KAC-CRW |
| | ] |
| CHIEF KARL TURNER, and | ] |
| CITY OF JOHNSON CITY, TENNESSEE, | ] |
| | ] |
| Defendants. | ] |

## DECLARATION OF KARL TURNER

Comes Karl Turner and declares as follows:

1. My name is Karl Turner. I am over 18 years of age and I am competent to make this Declaration. I am a citizen and resident of Carter County, Tennessee. This Declaration is based upon my personal knowledge and/or the records of the Johnson City Police Department ("JCPD").

2. At the time of the events in question, I was the Police Chief for the JCPD. The JCPD is part of the municipal government for the City of Johnson City, Tennessee ("Johnson City"). I served in this position until February 28, 2023 when I retired. I have been a law enforcement officer with the JCPD since May, 1991. During my time as a law enforcement officer, I had all of the training and certification required by Tennessee's Peace Officer Standards and Training Commission ("POST Commission").

3. In 2022, Johnson City offered an additional six-months of compensation to any City employee who was already eligible for full retirement if that employee would retire by February 28, 2023. At the time the offer was made, I was already eligible for full retirement, and I decided to accept the offer. Neither the City's offer nor my decision to accept the City's offer had anything to do with

1

this lawsuit.

4. For several years prior to the time that I became Police Chief, the City had participated in a federal program sponsored by the United States Department of Justice ("DOJ") that provided grant money to Johnson City to allow it to have a "Special Assistant United States Attorney" ("SAUSA") assigned to assist Johnson City in prosecuting federal crimes.

5. A SAUSA works out of the United States Attorney's Office in Greeneville, Tennessee.

6. In 2019 there was a vacancy in the SAUSA position for Johnson City because the prior SAUSA, Tom McCauley, had accepted a permanent position as an Assistant United States Attorney in the Greeneville Office.

7. I was on the interview committee to find a replacement. Assistant United States Attorney Wayne Taylor, who was the supervisor in charge of the United States Attorney's Office in Greeneville, also participated – as well as a representative from Tennessee's First Judicial District Attorney General's Office.

8. I believed that AUSA Taylor preferred Kateri ("Kat") Dahl ("Ms. Dahl") as the next SAUSA. Again, he was in charge of the U.S. Attorneys' Office in Greeneville and had supervised some of the previous SAUSAS; was himself an experienced prosecutor and for these reasons I agreed with his recommendation.

9. The employment of a SAUSA was pursuant to a Memorandum of Understanding ("MOU") that was not drafted by me. The MOU was for one year. I understood that part of the salary was paid out of a DOJ grant, which was also subject to renewal each year.

10. Ms. Dahl's MOU was initially renewed in June of 2020. I do not recall having received any complaints at that point regarding Ms. Dahl.

11. Criminal cases would be sent to Ms. Dahl for consideration for federal prosecution. Cases could come from an investigator in JCPD's Criminal Investigation Division ("CID"), a patrol officer

2

or an investigator in the Special Investigations Squad ("SIS") of CID. For example, if a patrol officer during a traffic stop found a person who was a convicted felon in possession of a firearm, then that could be referred to Ms. Dahl for consideration for prosecution. Most of the cases sent to Ms. Dahl would be drug cases or a felon in possession of a weapon case. There were several investigators in SIS and the officer in charge of SIS was Sgt. Jeff LeGault. SIS investigators would be investigating more serious and/or complex drug cases, but if they had a dangerous criminal who was subject to a federal charge – like a felon in possession of a firearm – then they might refer that case to the SAUSA in an effort to get that criminal off the streets for several years.

12. Sometime in the latter part of 2020, Captain Peters, the head of CID, and I began receiving complaints about Ms. Dahl's lack of communication and/or lack of progress on the cases she was presented for prosecution. These complaints came from Sgt. LeGault, and involved his cases and/or cases of other SIS officers.

13. I know that Sgt. LeGault was making oral complaints prior to December 11, 2020 because on that date he sent an email to Captain Peters and me with an attached list entitled: "Federal Cases for 2019-2020." This list contained JCPD criminal investigations known to Sgt. LeGault that fell within the purview of Ms. Dahl's MOU. The creation of this written list was triggered by oral complaints from Sgt. LeGault that Ms. Dahl was failing to move forward on JCPD cases to the extent that investigators had stopped sending to her cases that could have been sent to her. I do not recall whether I specifically requested this list in writing or whether Captain Peters (with my knowledge) specifically requested this list in writing. But this list was requested from Sgt. LeGault based on his oral complaints. A copy of Sgt. LeGault's December 11, 2020 email and attached list is Exhibit "A".

14. In Sgt. LeGault's written list, he divided the cases into three categories:

    1.    "***Current Cases that SAUSA Kat Dahl has files on"

    2.    "***Cases that SAUSA Kat Dahl received the reports for

3

prosecution via email"

3.    "***Cases we stopped sending that could be prosecuted."

My understanding of these categories was as follows. The first category consisted of cases that Sgt. LeGault believed Ms. Dahl was evaluating or planning to prosecute. The second category consisted of cases that had been sent to Ms. Dahl by email for consideration of prosecution. The third category consisted of cases that had not been sent to Ms. Dahl (as far as Sgt. LeGault knew) because of her lack of progress on the cases in the first two categories.

15.    On December 15, 2020, I sent an email to Assistant United States Attorney, Wayne Taylor, Ms. Dahl's supervisor, in which I forwarded Sgt. LeGault's email and attached list. In my email, I made the following inquiry:

> Wayne,
>
> These are cases we would like information on regarding prosecution. I understand the complications with the federal grand jury and COVID-19. If Kat could send an update I will pass the information on to SIS. Thank you for assisting us in this matter.
>
> Best,
>
> Karl

A copy of my December 15, 2020 email is Exhibit "B".

16.    I continued to receive oral complaints from Sgt. LeGault in 2021. I did not make notes of the complaints I received. I do not remember whether all oral complaints from Sgt. LeGault came to me through Captain Peters. In this declaration I am focusing on complaints of which there is a written record. However, I do know that Sgt. LeGault's continued oral complaints triggered the creation of a revised written list of cases that was very similar to the list Sgt. LeGault had prepared on December 11, 2020.

17.    On March 23, 2021, Sgt. LeGault sent the following email (and attached list) to me, and he copied Captain Peters:

4

Chief here is a current list of cases that Kat has access to as well as cases we have stopped trying to prosecute due to her not prosecuting the current case (sic) we have sent her. If you need any more information please let me know.

A copy of Sgt. LeGault's email and attached list is Exhibit "C". The list attached to the March 23, 2021 had three categories like the three categories listed for the December 11, 2020 email. The only difference is that the second category on the list attached to the March 23, 2021 email was phrased a little differently: "***Cases that SAUSA Kat Dahl received the reports for prosecution via email but has not prosecuted." I do not recall taking any action regarding the March 23, 2021 email at that time.

18. I do recall that at some point during the timeframe of late winter or early spring 2021 that I advised the City Manager that I had received complaints and had concerns regarding Ms. Dahl's work performance.

19. On April 22, 2021, Sgt. LeGault sent an email to Captain Peters copying me with the subject line: "**Subject:** SAUSA Dahl". That email read as follows:

Yesterday April 21, 2021, a subject named Delvin Stevens/Robinson was arrested by plt 2 for Felon in Possession. He was on video displaying and pointing a weapon at a vehicle. This subject is the one that ran over Deputy Daugherty several years ago in the county. Inv. Barron spoke with SAUSA Kat Dahl about doing a complaint on him. She stated that she would check to see if a judge was available. Inv. Barron took it one step further and messaged SAUSA Dahl and stated that he would type the complaint to expedite and help Kat Dahl with the process. She agreed this would help and stated she would get back to Inv. Barron about a judge. Inv. Barron completed the complaint and messaged SAUSA Dahl stating it was finished just waiting for her to tell him what judge would be available. Kat Dahl never replied back. Inv. Barron reached out about 10:00 a.m. this date still inquiring about a judge and at this time of the email [1:01 p.m.] has still not heard from SAUSA Dahl. We have went above and beyond on the last several complaints by typing them ourselves and it still seems impossible to get much to happen. I'm not in her shoes so I don't know what is happening in Greenville (sic) but I feel we at least need to be responded back on cases that are of priority.

A copy of this email is Exhibit "D". When an investigator is requesting that a complaint be obtained, he is concerned that someone needs to be in custody (or remain in custody) before the next Federal Grand Jury. However, the fact that an investigator wanted a complaint issued does not mean that Ms. Dahl had to obtain a complaint. I understood that the reason for seeking a complaint on Dalvin

5

Robinson was that he was a dangerous person who was incarcerated in the Washington County Jail on a state charge, and if a federal complaint were obtained, then that would prevent him from being released on bond. Furthermore, I understood Sgt. LeGault's criticism to be that Ms. Dahl had indicated to Investigator Barron that she would seek a complaint, but then she was not responsive.

20. On May 1, 2021, Sgt. LeGault sent me and Captain Peters a follow up email on Dalvin Robinson. Sgt. LeGault's email read as follows:

> Cheif (sic) and Captain. We typed the complaint for Kat and as you can see she never followed through with getting a judge or filing the complaint from a few weeks ago when he was in custody. This one will fall on Kat Dahl.

A copy of that email is Exhibit "E".

21. Sgt. LeGault's email of May 1, 2021 to me and Captain Peters was forwarding an email from Sgt. Jim Tallmadge to all JCPD officers warning them about "Dalvin Stephens (or Robinson)." In Sgt. Tallmadge's email he also forwarded a BOLO ("be on the lookout") that had been sent out on May 1, 2021 by Washington County Tennessee 911. Sgt. Tallmadge's email and the BOLO read as follows:

> Use extreme caution with this subject! For those of you who don't know or remember, he's the one who hit WCSO Deputy Gary Daugherty with his car as he and two other people were trying to evade Deputies after an attempted robbery in 2013. Stephens was the driver and deliberately swerved toward Daugherty to avoid the spike strips Daugherty was attempting to deploy. He's had multiple other charges since then as well.

A copy of that email is Exhibit "E" (red type and enlarged font size in original).

The BOLO contained in the email reads in pertinent part as follows:

> ***SUBJ IS ARMED WITH BLUE HANDGUN** MAKING HOMICIDAL AND SUICIDAL COMMENTS
>
> 10-5 FROM WCSO    FELONY AGG ASSAULT & 3 COUNTS FELONY RECKLESS ENDANGERMENT
>
> BOLO: DALVIN STEPHENS, ALSO GOES BY DALVIN ROBINSON
>  B/M  6TF  165-170LBS

6

LAST SEEN WEARING DOORAG ON HEAD/BLK-RED SHIRT & WHT PANTS

DRIVING GLD CHEV IMPALA     TN REG #1X35K7

MALE WAS IN 1041 WITH EX GIRLFRIEND/MOTHER OF 2 OF HIS
CHILDREN. HE HELD A GUN TO HIS OWN HEAD WHILE HOLDING ONE OF
THE CHILDREN. HE HAD 3 CHILDREN IN VEHICLE AND LEFT. CALLED
ADVISED HE WAS POSSIBLY ENROUTE TO PARK PLACE APTS ON BELL
RIDGE RD #400, THIS IS HIS MOTHER'S RESD.

The reference to "10-5 FROM WCSO" means "receiving information." The reference to "MALE WAS
IN 1041" means "domestic disturbance or assault."

22. On May 19, 2021, Captain Peters and I met with Ms. Dahl to review the March 23, 2021
list of cases. This meeting was at my request based on the continued complaints I had received from
Sgt. LeGault about Ms. Dahl's work performance. I did not know that Ms. Dahl was secretly tape
recording this meeting. The purpose of the meeting was to review JCPD cases submitted to her for
potential prosecution and to determine what her plans were going forward with these cases.

23. At the beginning of the May 19, 2021 meeting, Captain Peters provided me and Ms. Dahl
with a copy of the March 23, 2021 list from Sgt. LeGault in which Captain Peters had handwritten the
names of the persons being investigated. I will refer to that list as the May 19, 2021 list. A copy is
attached as Exhibit "G". On this copy of the list, the names of five individuals have been redacted and
are identified as "Potential Criminal Defendant ("PCD") 1, PCD 2, PCD 3, PCD 4, and PCD 5).

24. During the May 19, 2021 meeting, Ms. Dahl stated that she would seek indictments on
the following cases during the next round of the Grand Jury (which would be in June). Below I am
quoting from a transcript prepared by a court reporter that I believe to be a true and accurate transcript
of the conversation on Ms. Dahl's secret recording. Again, anonymous labels are substituted for the
actual names:

MR. TURNER: So is "POTENTIAL CRIMINAL DEFENDANT 5" – this is for the next Grand
Jury.

7

MS. DAHL:  Uh-huh (Affirmative).

MR. TURNER:  We're looking at [POTENTIAL CRIMINAL DEFENDANT 5].

MS. DAHL:  Yes, [POTENTIAL CRIMINAL DEFENDANT 5], [POTENTIAL CRIMINAL
DEFENDANT 1].

MR. TURNER:  [POTENTIAL CRIMINAL DEFENDANT 1]. Okay.

MS. DAHL:  [POTENTIAL CRIMINAL DEFENDANT 2].

MR. TURNER:  [POTENTIAL CRIMINAL DEFENDANT 2].  I see that, yeah.

MS. DAHL:  [POTENTIAL CRIMINAL DEFENDANT 3].

MR. PETERS:  She's the second list.

MS. DAHL:  And then [POTENTIAL CRIMINAL DEFENDANT 4].

MR. PETERS:  That's on the second page.

MR. TURNER:  "POTENTIAL CRIMINAL DEFENDANT 4.".

*Motion for Summary Judgment, May 19, 2021 Transcript, p. 102 line 6 to p. 103, line 25.* Even though
"POTENTIAL CRIMINAL DEFENDANT 4" was in the category of cases not sent to Ms. Dahl (Sgt.
Legault's list), I have since learned that that case involved a 2020 offense that had been sent to Ms.
Dahl by a CID investigator, Joe Jaynes.

25.  During the May 19, 2021 meeting, Captain Peters then requested that Ms. Dahl report
directly back to him on the indictments obtained because he told her that there were apparently some
communication issues and he wanted to know directly from her the indictments obtained. She agreed
to do so:

MR. PETERS:  I think what we're having is a lot of communication problems.

MS. DAHL:  Uh-huh (Affirmative).

MR. PETERS:  Things are not getting back to us.

MS. DAHL:  Okay.

8

MR. PETERS: So I'm not trying to cause you any more work or anything like that, but let's say this June indictment goes in.

MS. DAHL: Uh-huh (Affirmative).

MR. PETERS: Can you just send me an E-mail on who got indicted and then that way I can get in with the Chief and we know where we stand on these cases and everything?

MS. DAHL: Sure, sure.

MR. PETERS: Because evidently the information is not flowing to us.

MS. DAHL: Okay, yeah. I'm fine with that …

*Motion for Summary Judgment, May 19, 2021 Transcript, p. 114 line 24 to p. 115, line 12.*

26. During the May 19, 2021 meeting, Captain Peters penciled in checkmarks beside the cases that Ms. Dahl said she would take to the Grand Jury in June.

27. At the conclusion of that meeting, I expected Ms. Dahl to seek indictments during the June Grand Jury on the five cases that she said she would seek indictments on. I also expected Ms. Dahl to report back to Captain Peters regarding the indictments obtained during the June Grand Jury.

28. Because I expected that Ms. Dahl would do what she represented she would do, as of the date of the May 19, 2021 meeting, I expected to recommend that Ms. Dahl's contract (the MOU) be renewed for another year effective July 1, 2021.

29. The five cases on which Ms. Dahl said she would seek indictments on were cases that were on the December 11, 2020 list prepared by Sgt. LeGault. As shown on the secret tape recording, I did not insist that those five cases or that any particular cases be prosecuted. The purpose of the May 19, 2021 meeting was to review the cases to see where we were and to learn Ms. Dahl's plans. It was Ms. Dahl's decision that she would seek indictments on those five cases.

30. On June 9, 2021, I learned from Captain Peters that Ms. Dahl had not sought indictments on any of those cases and that Ms. Dahl had not reported back to Captain Peters. A copy of the email I received from Captain Peters is Exhibit "H".

9

31. I found Captain Peters' report troubling. If Ms. Dahl was unable to present those five cases for some reason – or even if she changed her mind about doing so – that did not change the fact that she had agreed in the May 19, 2021 meeting to update Captain Peters directly on the outcome of the June Grand Jury so that he could update me. At some point I also learned that Captain Peters went the extra step of sending Ms. Dahl an email on June 8, 2021 asking about the outcome of the Grand Jury, and she still failed to respond, was concerning. *Exhibit "F", June 8, 2021 email.*

32. Therefore, I asked City Attorney Sandos whether it would be possible for the City to renew Ms. Dahl's contract (which I knew would be for another year), but then terminate it a few months later if Ms. Dahl's work performance did not improve. Attorney Sandos advised me that the better course of action would be to not renew Ms. Dahl's contract.

33. I decided to follow Attorney Sandos's advice and I recommended to the City Manager that Ms. Dahl's contract not be renewed. The City Manager agreed with my recommendation. Attorney Sandos advised me that there was no need to advise the other parties to the MOU. Attorney Sandos prepared the non-renewal letter and presented it to me for my signature and I signed it.

34. I deny that I recommended the non-renewal of Ms. Dahl's contract based on any retaliatory motive. As I have already said, I was willing to recommend the renewal, but I wanted the ability to recommend that the City terminate the one-year contract early if I continued to receive complaints. However, I received legal advice against following that course of conduct.

35. In Ms. Dahl's First Amended Complaint, she makes the following allegations against me:

162. Dahl engaged in protected First Amendment activities outside of her chain of command by making allegations to multiple third parties, including the FBI, about Johnson City Police Department's failures to investigate and seize Williams, and the substantial likelihood that Johnson City Police Department was either corrupt or plainly incompetent.

163. Dahl's communications about sex crimes and public corruption were not expressions made pursuant to her duties as a SAUSA under the MOU (which limited the scope of her employment as prosecuting violent, firearms and drug trafficking

10

crimes).

164. The MOU did not contemplate that Dahl would investigate and make protected communications to one of her supervisors, Chief Turner, and/or a partner agency under the MOU, Johnson City. Those actions and communications were therefore not made pursuant to her employment duties as a SAUSA under the MOU.

165. Dahl's protected activities and communications played at least a part in defendant Chief Turner's decision to tell the Mayor and City Manager of Johnson City not to extend the MOU for Dahl's employment.

*Doc. 56, PageID #: 803.*

36. At the time I recommended to the City Manager that Ms. Dahl's contract not be renewed, I had absolutely no knowledge that Ms. Dahl had made any complaints to the FBI or any third party alleging "Johnson City Police Department's failures to investigate and seize Williams, and the substantial likelihood that Johnson City Police Department was either corrupt or plainly incompetent." Likewise, during that same time frame I had no knowledge that Ms. Dahl was allegedly investigating me or Johnson City.

37. Similarly, at no time prior to the non-renewal of Ms. Dahl's contract did I have any knowledge that Ms. Dahl was refusing to participate in or remain silent about "illegal activities." Consistent therewith, I had no knowledge of Ms. Dahl reporting any alleged illegal activities to any person, entity or government agency at any time prior to the City's decision to not renew her contract.

38. In making the statement in paragraph 37, I have been asked to rely on the following definition of "illegal activities":

> (3) "Illegal activities":
>
> > (A) Means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety, or welfare; and
> >
> > (B) Does not include activities prohibited under title 4, chapter 21, § 8-50-103, or federal laws prohibiting discrimination in employment.

*See Tennessee Code Annotated § 50-1-304(a).*

11

39. In addition to addressing the facts related to the non-renewal decision, there are a few other subjects that I need to address. First, I believed that Ms. Dahl was an independent contractor under the terms of the MOU. Her supervisor was Assistant United States Attorney Wayne Taylor. I viewed Ms. Dahl as a member of the United States Attorney's Office, whose primary responsibility was to prosecute cases arising out of JCPD criminal investigations.

40. With respect to whether Ms. Dahl was an employee of Johnson City, Johnson City did not control Ms. Dahl's work. It was up to Ms. Dahl and the United States Attorney's Office in Greeneville whether criminal cases sent to her would be prosecuted in federal court. Likewise, I did not exercise any control over her work hours. I was asked by AUSA Wayne Taylor to approve Ms. Dahl taking time off for vacation; but otherwise, where she worked, when she worked, and how she worked were all left up to Ms. Dahl and her supervisor, AUSA Taylor. Consistent therewith, any staff that assisted Ms. Dahl or any other Assistant United States Attorneys who assisted Ms. Dahl were decisions made by Ms. Dahl or AUSA Taylor. I had no control over these matters.

41. With respect to tools and equipment, Johnson City provided office space if she needed it. My understanding is that she was also provided office space by the United States Attorney's Office and that she would at times work from home due to Covid-19.

42. At no time after the non-renewal of Ms. Dahl's contract did I (or anyone else to my knowledge) receive a request that the City conduct a hearing on the non-renewal decision. If I had received such a request, I would have sought the advice of the City Attorney. Also, at no time did I make any statements critical of Ms. Dahl, other than expressing concerns about her work performance – for example, statements to the City Manager and City Attorney.

43. With respect to my December 8, 2020 meeting with Ms. Dahl, prior to that meeting I had been informed that Ms. Dahl had reached out to the Tennessee Bureau of Investigation ("TBI") regarding Sean Williams. I met with Ms. Dahl because it was concerning that two law enforcement

12

agencies might potentially undertake an investigation on the same matter with one of the agencies not knowing that that was occurring. As proven by the recording and the transcript, when I met with Ms. Dahl she explained that AUSA Wayne Taylor had reached out to the TBI because they believed that one of the females involved in the Sean Williams' investigation was involved in a similar TBI investigation in Chattanooga, Tennessee. During our discussion on December 8, 2020, I brought in Captain Peters and we discussed with Ms. Dahl whether it would be better to go ahead and indict Sean Williams on the federal felon in possession of ammunition charge, and then work from there on the sexual assault allegations – or to work on the sexual assault allegations and wait on a federal indictment. Ms. Dahl's preference was to wait on the federal indictment, and that was her decision to make.

44. With respect to the involvement of the TBI, that would be a decision with the District Attorney. If that had occurred, it would have been Captain Peters responsibility to coordinate between CID and the TBI.

45. During that December 8, 2020 meeting, the subject came up of obtaining a search warrant for Sean Williams' computer and SIM card. I specifically asked Ms. Dahl what "Wayne thought." I was referring to her supervisor, AUSA Taylor. Ms. Dahl told me that both she and AUSA Taylor were "50/50" – which I interpreted as meaning that they were not entirely confident there was sufficient probable cause for a search warrant to be approved.

46. That fact notwithstanding, Ms. Dahl agreed to assist Investigator Toma Sparks in drafting a search warrant.

47. Next, Ms. Dahl has made allegations relative to me regarding the fact that three officers were at the door of Sean Williams' condominium on the evening of May 5, 2021, and that Sean Williams disappeared after that. I had no knowledge that any officer was going to Sean Williams' door on the evening of May 5, 2021. I only learned about this event after the fact.

13

48.   Finally, with respect to how investigators with the JCPD conducted sexual assault investigations during my tenure as Police Chief, I was not a trained sexual assault investigator. At the time I became Police Chief, I knew that the JCPD was an accredited agency by the Commission on Accreditation for Law Enforcement Agencies, Inc. ("CALEA"). My understanding was that there was a rigorous process that the JCPD underwent in order to obtain this accreditation and in order to maintain this accreditation. More specifically, based on this accreditation, I believed that the JCPD's policies and training met not only the standards required by Tennessee's POST Commission, but CALEA standards as well.

49.   Therefore, based on that accreditation, during the time frame that Ms. Dahl was working as a SAUSA, I believed that the manner in which JCPD conducted sexual assault investigations (and all other types of criminal investigations) met CALEA standards. Similarly, I believed that sexual assault investigators had all of the training required by Tennessee's POST Commission and any additional training that might have been required by CALEA.

50.   With respect to the size and structure of the Department as of June 2021, I had approximately 140 certified law enforcement officers under my command and approximately 30 civilian employees under my command.

Pursuant to 28 U.S.C. § 1746, I, Karl Turner, certify under penalty of perjury that the foregoing is true and correct. Executed January **14**, 2024.

Karl Turner

KARL TURNER

14

K. Turner
DEPOSITION
EXHIBIT
# 52

PENGAD 800-631-6989

| | |
|---|---|
| From: | LeGault, Jeff |
| Sent: | Friday, December 11, 2020 12:24 PM |
| To: | Turner, Karl |
| Cc: | Peters, Kevin |
| Subject: | 2019-2020 Federal Cases |
| Attachments: | Federal Cases for 2019.docx |

**EXHIBIT "A"**

Chief here is a list of the cases that SIS has either given to Kat and she has all the materials or sent her reports of cases we wanted prosecuted. I'm certain that I am missing a few but these are the ones that I discussed with SIS and am certain of at this time. If you need anything else just let me know.

Sergeant Jeff Legault
Johnson City Police Department
601 E. Main St.
Johnson City, T.N. 37601

Office Phone 423-434-6110
Cell Phone 423-557-4200

Think green. Only print this e-mail and any attachment if necessary.

# Federal Cases for 2019-2020

***Current Cases that SAUSA Kat Dahl has files on

-W20007121- Gun case, 6/18/20

-I-190039- Meth and Gun conspiracy case, 11/15/19

-W20007526- Meth case, 6/26/20

-W20011539- Meth and Gun case, 9/24/20

-W20004593- Meth case- 4/23/20

-W20004702- Meth Case- 4/26/20

-W20012240- Gun and Meth case- 10/09/20

-I-200001- Meth and Gun- 1/29/20

-W20014774- Gun and Meth case- 12/09/20


*** Cases that SAUSA Kat Dahl received the reports for prosecution via email

W19005438- Gun case- 5/14/19

W20001928- Gun case- 2/15/20

W20002527- Gun case- 2/25/20

W20002798- Gun case- 3/06/20

W20006010- Gun Case- 5/24/20

W20006053- Gun Case- 5/25/20

W20007567- Gun case- 6/27/20


***Cases we stopped sending that could be prosecuted

I-200009- Meth and Gun Case- 9/10/20

W20010717- Gun Case- 9/04/20

W20002297- Gun Case- 2/25/20

W20006962- Gun Case- 6/15/20

W20007578- Gun Case- 6/27/20

W20013730- Gun Case- 11/12/20

| From: | Turner, Karl |
| Sent: | Tuesday, December 15, 2020 4:08 PM |
| To: | Taylor, Wayne (USATNE) |
| Subject: | FW: 2019-2020 Federal Cases |
| Attachments: | Federal Cases for 2019.docx |

**EXHIBIT "B"**

Wayne,

These are cases we would like information on regarding prosecution. I understand the complications with the federal grand jury and COVID-19. If Kat could send an update I will pass the information on to SIS. Thank you for assisting us in this matter.

Best,
Karl

**From:** LeGault, Jeff <Jlegault@johnsoncitytn.org>
**Sent:** Friday, December 11, 2020 12:24 PM
**To:** Turner, Karl <kturner@johnsoncitytn.org>
**Cc:** Peters, Kevin <kpeters@johnsoncitytn.org>
**Subject:** 2019-2020 Federal Cases

Chief here is a list of the cases that SIS has either given to Kat and she has all the materials or sent her reports of cases we wanted prosecuted. I'm certain that I am missing a few but these are the ones that I discussed with SIS and am certain of at this time. If you need anything else just let me know.

Sergeant Jeff Legault
Johnson City Police Department
601 E. Main St.
Johnson City, T.N. 37601

Office Phone 423-434-6110
Cell Phone 423-557-4200

Think green: Only print this e-mail and any attachment if necessary.

# Federal Cases for 2019-2020

***Current Cases that SAUSA Kat Dahl has files on

-W20007121- Gun case, 6/18/20

-I-190039- Meth and Gun conspiracy case, 11/15/19

-W20007526- Meth case, 6/26/20

-W20011539- Meth and Gun case, 9/24/20

-W20004593- Meth case- 4/23/20

-W20004702- Meth Case- 4/26/20

-W20012240- Gun and Meth case- 10/09/20

-I-200001- Meth and Gun- 1/29/20

-W20014774- Gun and Meth case- 12/09/20


*** Cases that SAUSA Kat Dahl received the reports for prosecution via email

W19005438- Gun case- 5/14/19

W20001928- Gun case- 2/15/20

W20002527- Gun case- 2/25/20

W20002798- Gun case- 3/06/20

W20006010- Gun Case- 5/24/20

W20006053- Gun Case- 5/25/20

W20007567- Gun case- 6/27/20


***Cases we stopped sending that could be prosecuted

I-200009- Meth and Gun Case- 9/10/20

W20010717- Gun Case- 9/04/20

W20002297- Gun Case- 2/25/20

W20006962- Gun Case- 6/15/20

W20007578- Gun Case- 6/27/20

W20013730- Gun Case- 11/12/20

**From:** LeGault, Jeff
**Sent:** Tuesday, March 23, 2021 5:22 PM
**To:** Turner, Karl <kturner@johnsoncitytn.org>
**Cc:** Peters, Kevin <kpeters@johnsoncitytn.org>
**Subject:** Federal Cases



**EXHIBIT "C"**

Chief here is a current list of cases that Kat has access to as well as cases we have stopped trying to prosecute due to her not prosecuting the current case we have sent her. If you need any more information please let me know.

### Sergeant Jeff Legault



Johnson City Police Department
Criminal Investigation/Special Investigation Squard
423.434.6110 o./423.557.4200 c

# Federal Cases for 2019-2020

***Current Cases that SAUSA Kat Dahl has files on

-W20007121- Gun case, 6/18/20

-I-190039- Meth and Gun conspiracy case, 11/15/19

-W20007526- Meth case, 6/26/20

-W20011539- Meth and Gun case, 9/24/20

-W20004593- Meth case- 4/23/20

-W20004702- Meth Case- 4/26/20

-W20012240- Gun and Meth case- 10/09/20

-I-200001- Meth and Gun- 1/29/20

-W20014774- Gun and Meth case- 12/09/20

-W21002862- Ammunition case- 3/15/2021

-W21002695- Gun case-3/11/2021

-W20014774- Gun Case-


*** Cases that SAUSA Kat Dahl received the reports for prosecution via email but has not prosecuted

W19005438- Gun case- 5/14/19

W20001928- Gun case- 2/15/20

W20002527- Gun case- 2/25/20

W20002798- Gun case- 3/06/20

W20006010- Gun Case- 5/24/20

W20006053- Gun Case- 5/25/20

W20007567- Gun case- 6/27/20

W21000438- Gun and Meth- 1/13/21

W21000373- Gun and drugs- 1/11/21

W21000202- Gun case- 1/07/21

\*\*\*Cases we stopped sending that could be prosecuted

I-200009- Meth and Gun Case- 9/10/20

W20010717- Gun Case- 9/04/20

W20002297- Gun Case- 2/25/20

W20006962- Gun Case- 6/15/20

W20007578- Gun Case- 6/27/20

W20013730- Gun Case- 11/12/20

W21002333- Gun Case- 3/02/2021

W21001876- Gun and Meth case- 2/17/2021

W21001563- Gun Case- 2/10/2021



From: LeGault, Jeff
Sent: Thursday, April 22, 2021 1:01 PM
To: Peters, Kevin <kpeters@johnsoncitytn.org>
Cc: Turner, Karl <kturner@johnsoncitytn.org>
Subject: SAUSA Dahl

**EXHIBIT "D"**

Yesterday April 21, 2021 a subject named Delvin Stevens/Robinson was arrested by plt 2 for Felon in Possession. He was on video displaying and pointing a weapon at a vehicle. This subject is the one that ran over Deputy Daugherty several years ago in the county. Inv. Barron spoke with SAUSA Kat Dahl about doing a complaint on him. She stated that she would check to see if a judge was available. Inv. Barron took it one step further and messaged SAUSA Dahl and stated that he would type the complaint to expedite and help Kat Dahl with the process. She agreed this would help and stated she would get back to Inv. Barron about a judge. Inv. Barron completed the complaint and messaged SAUSA Dahl stating it was finished just waiting for her to tell him what judge would be available. Kat Dahl never replied back. Inv. Barron reached out about 10:00 am this date still inquiring about a judge and at this time of the email has still not heard from SAUSA Dahl. We have went above and beyond on the last several complaints by typing them ourselves and it still seems impossible to get much to happen. I'm not in her shoes so I don't know what is happening in Greenville but I feel we at least need to be responded back on cases that are of priority.

## Sergeant Jeff Legault



Johnson City Police Department
Criminal Investigation/Special Investigation Squard
423.434.6110 o./423.557.4200 c

**From:** LeGault, Jeff <Jlegault@johnsoncitytn.org>
**Sent:** Saturday, May 1, 2021 7:21 PM
**To:** Peters, Kevin <kpeters@johnsoncitytn.org>; Turner, Karl <kturner@johnsoncitytn.org>
**Subject:** FW: [EXTERNAL] WC911-BOLO **OFFICER SAFETY** DALVIN STEPHENS (OR ROBINSON)

Cheif and Captain. We typed the complaint for Kat and as you can see she never followed through with getting a judge or filing the complaint from a few weeks ago when he was in custody. This one will fall on Kat Dahl.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: "Tallmadge, Jim" <jtallmadge@johnsoncitytn.org>
Date: 5/1/21 6:54 PM (GMT-05:00)
To: PDA <PDA@johnsoncitytn.org>
Subject: FW: [EXTERNAL] WC911-BOLO **OFFICER SAFETY** DALVIN STEPHENS (OR ROBINSON)

**Use extreme caution with this subject! For those of you who don't know or remember, he's the one who hit WCSO Deputy Gary Daugherty with his car as he and two other people were trying to evade Deputies after an attempted robbery in 2013. Stephens was the driver and deliberately swerved toward Daugherty to avoid the spike strips Daugherty was attempting to deploy. He's had multiple other charges since then as well.**

**From:** wc911bolo-owner@wc911.org <wc911bolo-owner@wc911.org> **On Behalf Of** Malissa Harold
**Sent:** Saturday, May 1, 2021 6:26 PM
**To:** BOLO WC 911 <wc911bolo@wc911.org>
**Subject:** [EXTERNAL] WC911-BOLO **OFFICER SAFETY** DALVIN STEPHENS (OR ROBINSON)

**\*\*CAUTION: External Email\*\*** This email originated from outside of Johnson City's e-mail servers. DO NOT click links or open attachments unless you recognize the sender and know the content is safe.

***SUBJ IS ARMED WITH BLUE HANDGUN** MAKING HOMICIDAL AND SUICIDAL COMMENTS

10-5 FROM WCSO   FELONY AGG ASSAULT & 3 COUNTS FELONY RECKLESS ENDANGERMENT

BOLO: DALVIN STEPHENS, ALSO GOES BY DALVIN ROBINSON
  B/M  6FT  165-170LBS
  LAST SEEN WEARING DOORAG ON HEAD/BLK-RED SHIRT & WHT PANTS

DRIVING GLD CHEV IMPALA    TN REG #1X35K7

MALE WAS IN 1041 WITH EX GIRLFRIEND/MOTHER OF 2 OF HIS CHILDREN. HE HELD A GUN TO
HIS OWN HEAD WHILE HOLDING ONE OF THE CHILDREN. HE HAD 3 CHILDREN IN VEHICLE AND LEFT.
CALLER ADVISED HE WAS POSSIBLY ENROUTE TO PARK PLACE APTS ON BELL RIDGE RD #400, THIS
IS HIS MOTHER'S RESD.

*Malissa Harold*
*Supervisor - Shift 2*
*Washington County ECD*
*Johnson City, TN*
*(423) 979-1500*
*Malissa.harold@wc911.org*

Think green: Only print this e-mail and any attachment if necessary.

**EXHIBIT "F"**

**Peters, Kevin**

| | |
|---|---|
| **From:** | Peters, Kevin |
| **Sent:** | Tuesday, June 8, 2021 2:02 PM |
| **To:** | 'Kat.dahl@usdoj.gov' |
| **Subject:** | Federal Grand Jury Cases |

Kat,

Chief Turner wanted me to reach out to you and to see what Johnson City cases have been or will be presented to the Federal Grand Jury. If none have been presented, could you provide a date when they will be presented.

Thanks,

Kevin

## Captain Kevin Peters



Johnson City Police Department
Criminal Investigation Division Commander
City of Johnson City, Tennessee
423.434.6166 o./423.434.6119 d. / www.johnsoncitytn.org

1

# Federal Cases for 2019-2020

***Current Cases that SAUSA Kat Dahl has files on

✔ -W20007121- Gun case, 6/18/20 - [POTENTIAL CRIMINAL DEFENDANT 5]

-I-190039- Meth and Gun conspiracy case, 11/15/19

✔ -W20007526- Meth case, 6/26/20 - [POTENTIAL CRIMINAL DEFENDANT 1]

-W20011539- Meth and Gun case, 9/24/20 - ARTHUR SANDERS

-W20004593- Meth case- 4/23/20 - BENJAMIN ELROD

✓ -W20004702- Meth Case- 4/26/20 - [POTENTIAL CRIMINAL DEFENDANT 2]

-W20012240- Gun and Meth case- 10/09/20 - ASHIA NADEAU + JONATHAN PARLIER

-I-200001- Meth and Gun- 1/29/20

-W20014774- Gun and Meth case- 12/09/20

-W21002862- Ammunition case- 3/15/2021 - SEAN WILLIAMS

-W21002695- Gun case-3/11/2021 - YEZAVIS WILLIAMS (CRACK + FIREARM) } INDICTED

-W20014774- Gun Case- DAKOTA SHASTEEN

*** Cases that SAUSA Kat Dahl received the reports for prosecution via email but has not prosecuted

— W19005438- Gun case- 5/14/19 - DEONTE BRISTOL (ROBBERY)

✔ W20001928- Gun case- 2/15/20 - [POTENTIAL CRIMINAL DEFENDANT 3]

W20002527- Gun case- 2/25/20 - JOSEPH BLACK

W20002798- Gun case- 3/06/20 - DOMINIQUE ADEYINKA

W20006010- Gun Case- 5/24/20 - DARIUS WOODBURY

· W20006053- Gun Case- 5/25/20 - JUAN GONZALES

— W20007567- Gun case- 6/27/20 - JERAMIE GRIGGS & APRIL SMILEY (ROBBERY)

W21000438- Gun and Meth- 1/13/21 - RICHARD TAHLOR

W21000373- Gun and drugs- 1/11/21 — CHEYENNE LOWERY

W21000202- Gun case- 1/07/21 — JONATHAN JOHNSON + NICOLE LONN       > INDICTED

***Cases we stopped sending that could be prosecuted

I-200009- Meth and Gun Case- 9/10/20

W20010717- Gun Case- 9/04/20 - BRITTNEY HAMM

W20002297- Gun Case- 2/25/20 - JOEY LONSE

W20006962- Gun Case- 6/15/20 — ANTONIO WATTERSON

✓W20007578- Gun Case- 6/27/20 -   [POTENTIAL CRIMINAL DEFENDANT 4]

W20013730- Gun Case- 11/12/20 - DAVID CUMMINGS

W21002333- Gun Case- 3/02/2021 - TODD BRIGGS

W21001876- Gun and Meth case- 2/17/2021 — MIRANDA SWISS + KEION PERKINS

W21001563- Gun Case- 2/10/2021 — CURTIS PAUL

✓ - TO BE INDICTED NEXT

**EXHIBIT "H"**

**Peters, Kevin**

| | |
|---|---|
| **From:** | Peters, Kevin |
| **Sent:** | Wednesday, June 9, 2021 3:25 PM |
| **To:** | Turner, Karl (kturner@johnsoncitytn.org) |
| **Subject:** | FW: Federal Grand Jury |

Still haven't heard anything from her. Don't suspect that I will.

**From:** LeGault, Jeff <Jlegault@johnsoncitytn.org>
**Sent:** Wednesday, June 9, 2021 3:09 PM
**To:** Peters, Kevin <kpeters@johnsoncitytn.org>
**Cc:** Turner, Karl <kturner@johnsoncitytn.org>
**Subject:** Federal Grand Jury

Kirt attended Federal Grand Jury today. The only case taken through was a 2018 case that was originally given to Tom McCauley and was passed to her. Demetrious Bolden. No cases on the list that I provided were taken through.

## Sergeant Jeff Legault



Johnson City Police Department
Criminal Investigation/Special Investigation Squard
423.434.6110 o./423.557.4200 c

Think green: Only print this e-mail and any attachment if necessary.

Peters documents 0041