UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KATERI LYNEE DAHL,                           ]
                                             ]
        Plaintiff,                           ]
                                             ]
v.                                           ]    No.  2:22-cv-00072-KAC-CRW
                                             ]    JURY DEMAND
CHIEF KARL TURNER, and                       ]
CITY OF JOHNSON CITY, TENNESSEE, ]
                                             ]
        Defendants.                          ]

**DECLARATION OF DENIS "PETE" PETERSON**

        Comes Denis "Pete" Peterson and declares as follows:

        1.  My name is Denis "Pete" Peterson. I am over 18 years of age and I am competent to

make this Declaration. I am a citizen and resident of Washington County, Tennessee. This

Declaration is based upon my personal knowledge.

        2.  From December, 2005 to December, 2021, I was the City Manager for the City of

Johnson City, Tennessee ("Johnson City"). I retired on January 2, 2022.

        3.  In June of 2021, Police Chief Karl Turner ("Chief Turner") discussed with me concerns

that he had about the work performance of Kateri Dahl, who was a Special Assistant United States

Attorney ("SAUSA") pursuant to a Memorandum of Understanding ("MOU") wherein her

primary responsibility was to assist the Johnson City Police Department ("JCPD") in prosecuting

federal crimes.  Chief Turner had previously advised me sometime during the timeframe of

February, March, or April, 2021 that he had concerns about Ms. Dahl's work productivity.

        4.  As of June 2021, I was aware of the fact that the MOU was for a term of one year and

that it was up for renewal at the end of June 2021. As City Manager I had the authority to decide

whether to present the MOU to the Johnson City City Commission ("City Commission") for

renewal. In other words, I had the authority to allow the current contract to expire. However, in order for the contract to be renewed, then I had to recommend the renewal to the City Commission and the City Commission had to vote to renew the contract.

5.  When Chief Turner expressed concerns to me in June of 2021, I was aware of the fact that he had asked the City's Attorney, Sunny Sandos, whether it would be possible for the City to renew the one-year contract effective July 1, 2021, but then terminate the contract a few months later if Ms. Dahl's work performance had not improved. I was also aware of the fact that Attorney Sandos had advised that the better course of action would be for the City to not renew the contract as opposed to attempting to terminate a one-year contract early. Based on that information, Chief Turner recommended to me that the contract not be renewed, and I followed his recommendation.

6.  After the U.S. Attorney's Office learned of the non-renewal decision, I was advised a request had been made that Ms. Dahl be allowed to stay beyond June 30, 2021 for the purpose of transitioning her files to other Assistant United States Attorneys. On behalf of the City, I agreed that the City would directly compensate Ms. Dahl for one month's salary in order to allow time for this transition. I signed a contract to that effect.

7.  At no time prior to the non-renewal of Ms. Dahl's contract was I aware of any allegations of corruption in the Johnson City Police Department ("JCPD").

8.  At no time prior to the non-renewal of Ms. Dahl's contract was I aware that she had reported any concerns about the JCPD to any official at the Federal Bureau of Investigation ("FBI"), the United States Attorney's Office or any other person (including any person at Johnson City or any other entity or government agency).

9.  In fact, at no time prior to the non-renewal of Ms. Dahl's contract was I aware that she had any concerns about the JCPD.

2

10. At no time prior to the non-renewal of Ms. Dahl's contract did I have any knowledge that Ms. Dahl was refusing to participate in or remain silent about "illegal activities." Consistent therewith, I had no knowledge of Ms. Dahl reporting any alleged illegal activities to any person, entity, or government agency.

11. In making the statement in paragraph 10, an attorney for the City asked me to rely on the following definition of "illegal activities":

> (3) "Illegal activities":
>
> (A) Means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety, or welfare; and
>
> (B) Does not include activities prohibited under title 4, chapter 21, § 8-50-103, or federal laws prohibiting discrimination in employment.

*See Tennessee Code Annotated § 50-1-304(a).*

12. In addition to having no knowledge of Ms. Dahl refusing to participate in or remain silent about "illegal activities" up to the point in time of the decision to not renew her contract, I also had no knowledge of any illegal activities in the JCPD or the City government of Johnson City during that same time period.

Pursuant to 28 U.S.C. § 1746, I, Denis "Pete" Peterson, certify under penalty of perjury that the foregoing is true and correct. Executed January 11, 2024.

DENIS "PETE" PETERSON

3