IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


KATERI LYNNE DAHL,                          *
          Plaintiff,                        *
                                            *
VS.                                         *        CASE NO.
                                            *   2:22-CV-00072-KAC-CRW
CHIEF KARL TURNER, in his individual        *
capacity only; OFFICER JOHN DOES 1-3,       *
in their individual capacities only;        *
and CITY OF JOHNSON CITY,                    *
          Defendants.                       *


DEPOSITION OF

## KATERI LYNNE DAHL

(Taken June 20-21, 2023)



APPEARANCES:

COUNSEL FOR THE PLAINTIFF:        HUGH A. EASTWOOD
                                  Attorney at Law
                                  7911 Forsyth Blvd., Ste. 300
                                  St. Louis, MO  63105-3825

                                  ALEXIS I. TAHINCI
                                  TAHINCI LAW FIRM
                                  105 Ford Avenue, Ste. 3
                                  Kingsport, TN  37663


*** THIS STYLE PAGE CONTINUES ***

---

*COURT REPORTING AND VIDEO SERVICES*

P. O. Box 7481                      TELEPHONE: (423) 230-8000
Kingsport, TN  37664                REBECCA@COURTREP.NET

| | | |
|---|---|---|
| 1 | | made. |
| 2 | Q. | So would that be in the server of the U.S. Attorney's |
| 3 | | Office? |
| 4 | A. | I believe so. |
| 5 | Q. | You have a -- you have provided us a recording of a |
| 6 | | meeting that you had with Chief Turner on May the 19th, |
| 7 | | 2021. |
| 8 | A. | Correct. |
| 9 | Q. | And Captain Peters was present for that as well, correct? |
| 10 | A. | Yes. |
| 11 | Q. | This was secretly recorded. |
| 12 | A. | This was recorded without their knowledge. |
| 13 | Q. | Where did you put your recording device? Was it a |
| 14 | | telephone? |
| 15 | A. | It was just my cell phone in my purse, not anything |
| 16 | | sophisticated. |
| 17 | Q. | Government issued cell phone or your personal cell phone? |
| 18 | A. | My personal -- my personal cell phone. |
| 19 | Q. | On that day, on May the 19th when you were meeting with |
| 20 | | Chief Turner and Captain Peters, we have recorded here |
| 21 | | they went over cases with you similar to the cases that |
| 22 | | you saw that we looked at just in the last exhibit |
| 23 | | forwarded to you on December 16th by Wayne Taylor, |
| 24 | | correct? |
| 25 | A. | Correct. |

KATERI LYNNE DAHL                                        DIRECT - HERRIN

22

| | | |
|---|---|---|
| 1 | | suppose, correct? |
| 2 | A. | Correct. |
| 3 | Q. | And that was on Page 109 of your May 19th recording if you |
| 4 | | want to take a look at that. |
| 5 | A. | Okay. |
| 6 | Q. | Have you seen these transcripts of your recordings? |
| 7 | A. | Yes. |
| 8 | Q. | And to clarify about these recordings, these were secret |
| 9 | | recordings, correct? |
| 10 | A. | Yes. I did not inform the parties in the room that I was |
| 11 | | recording. |
| 12 | Q. | And here you are indicating on Page 109 of the May 19th, |
| 13 | | can generally say that conservatively speaking, it's a |
| 14 | | good bet I can get at least 30 minutes, if not an hour, |
| 15 | | for most grand juries. I would say -- then I could |
| 16 | | probably do three single count defendants in 30 minutes, |
| 17 | | and so I could do five or six of those in an hour. Do you |
| 18 | | recall that that's -- is that accurate information? |
| 19 | A. | I was. However, this was me trying to explain the |
| 20 | | spectrum of the grand jury process. |
| 21 | Q. | I'm just asking you, is that accurate information? |
| 22 | A. | Yes. |
| 23 | Q. | Okay. Were the Johnson City SIS officers or CID officers, |
| 24 | | did they contact in the U.S. Attorney's Office any other |
| 25 | | prosecutors if they had a case that they wanted prosecuted |

KATERI LYNNE DAHL                                    DIRECT - HERRIN

18

| | | |
|---|---|---|
| 1 | | down there? |
| 2 | A. | I'm only aware of one incident, and that is where Chief |
| 3 | | Turner contacted Tom McCauley in response to an indictment |
| 4 | | or a case that I had turned down. And Chief Turner |
| 5 | | contacted Tom, because he had previously been in my |
| 6 | | position, to get a second opinion because he didn't like |
| 7 | | my first opinion. |
| 8 | Q. | But as a general proposition, one, you've indicated you |
| 9 | | can turn down a case, I assume with Wayne Taylor's |
| 10 | | approval or not? |
| 11 | A. | I did seek... |
| 12 | Q. | Okay. |
| 13 | A. | ...Wayne's approval when I turned down cases, but |
| 14 | | apparently my answer wasn't good enough. |
| 15 | Q. | So is it fair enough to say that you were the gatekeeper |
| 16 | | for the SIS officers and CID officers if they wanted to |
| 17 | | prosecute a case? They couldn't just call another Tom |
| 18 | | McCauley, for example. |
| 19 | A. | I wouldn't characterize it like that at all. They were, |
| 20 | | you know, certainly free to speak to whoever they could, |
| 21 | | and they also were free to speak to anyone within the DA's |
| 22 | | office. |
| 23 | Q. | I understand that, but what I'm saying is you were the |
| 24 | | designated SAUSA... |
| 25 | A. | Correct. |

KATERI LYNNE DAHL                                        DIRECT - HERRIN

19

```
1   Q.  ...to prosecute cases.

2   A.  But I didn't have a choke hold on cases.

3   MR. GARLAND:  Why don't we try not to talk over each other.

4   A.  Okay.

5   MR. GARLAND:  I'm sorry, but...

6   A.  No, that's okay.

7   MR. EASTWOOD:  No, I agree, I agree, I agree.  We'll do

8       question and answer, if that's okay, just so we've got a

9       clean transcript.

10  A.  I've got you.  I did not have a choke hold on cases.

11  Q.  I'm not saying choke hold.  I'm saying you were a

12      gatekeeper that our officers in the City of Johnson City

13      would come to you to try to seek an indictment or a

14      complaint, and you were the designated SAUSA for that

15      purpose.  Is that accurate?

16  A.  Yes, and they could also go to a number of other people.

17  Q.  Are you aware if they ever did?  Did anybody prosecute a

18      Johnson City case during your time as a SAUSA other than

19      you?

20  A.  Not that I am aware of, but again, it's been three years

21      and there were a lot of odd situations that go on in a

22      U.S. Attorney's office.

23  Q.  We'll make this -- we'll make this Exhibit 1, and Exhibit

24      2 is the Page 109 of the transcript.

25  EXHIBIT #2:  Dahl recordings transcript, Page 109.


KATERI LYNNE DAHL                           DIRECT - HERRIN

                            20
```

1   MR. EASTWOOD:  You did, you did.  Thank you, Rebecca.

2   MR. GARLAND:  Yeah, so this will be two.  I'm sorry.

3   MS. TAHINCI:  Do you want her to keep the marked copy for now

4       or do you want to give it back to the court reporter?

5   MR. EASTWOOD:  Could we go off the record or stay on the

6       record, do you want the witness, or you, or who is this

7       marked copy for?

8   COURT REPORTER:  I'll hold onto it, if that's okay.

9   MR. EASTWOOD:  Great, we prefer that.

10  Q.  Yeah.  She likes to hold onto them.

11  MR. EASTWOOD:  Better her than me.  Thank you.

12  Q.  When Wayne Taylor would approve a prosecution memo that

13      you had prepared, correct...

14  A.  Correct.

15  Q.  ...would that go into the U.S. Attorney's Office system

16      where it would be known when he approved it?

17  A.  It would go into, yes, the case file.  I don't remember if

18      the ones that are saved in the case filed were dated when

19      they were approved without having looked at it.

20  Q.  If he would have changes or suggestions for either the

21      memorandum -- prosecution memorandum, or the indictment,

22      or the complaint, would that be recorded in such a way

23      that you would know if changes were needed?

24  A.  I usually saved a final copy that included all changes,

25      but I did not mark, say, in red what changes had been

KATERI LYNNE DAHL                              DIRECT - HERRIN

21

| 1 | | made. |
|---|---|---|
| 2 | Q. | So would that be in the server of the U.S. Attorney's |
| 3 | | Office? |
| 4 | A. | I believe so. |
| 5 | Q. | You have a -- you have provided us a recording of a |
| 6 | | meeting that you had with Chief Turner on May the 19th, |
| 7 | | 2021. |
| 8 | A. | Correct. |
| 9 | Q. | And Captain Peters was present for that as well, correct? |
| 10 | A. | Yes. |
| 11 | Q. | This was secretly recorded. |
| 12 | A. | This was recorded without their knowledge. |
| 13 | Q. | Where did you put your recording device? Was it a |
| 14 | | telephone? |
| 15 | A. | It was just my cell phone in my purse, not anything |
| 16 | | sophisticated. |
| 17 | Q. | Government issued cell phone or your personal cell phone? |
| 18 | A. | My personal -- my personal cell phone. |
| 19 | Q. | On that day, on May the 19th when you were meeting with |
| 20 | | Chief Turner and Captain Peters, we have recorded here |
| 21 | | they went over cases with you similar to the cases that |
| 22 | | you saw that we looked at just in the last exhibit |
| 23 | | forwarded to you on December 16th by Wayne Taylor, |
| 24 | | correct? |
| 25 | A. | Correct. |

KATERI LYNNE DAHL                                    DIRECT - HERRIN

22

| | | |
|---|---|---|
| 1 | Q. | And this was a copy of what Chief Turner and Captain |
| 2 | | Peters went over with you on this date of May 19th, 2021, |
| 3 | | right? |
| 4 | A. | Correct. |
| 5 | MS. MCCLANAHAN: | Can I interpose -- I don't know if this is an |
| 6 | | objection or what, but just as far as an overall agreement |
| 7 | | that I don't know as we sit here if these people were |
| 8 | | ultimately prosecuted or if the cases are public and |
| 9 | | unsealed, presumably if they're in custody, so you know if |
| 10 | | there's issues like that, Privacy Act concerns, we'll all |
| 11 | | agree to redact the transcript, correct? |
| 12 | MR. GARLAND: | Yes. |
| 13 | Q. | We can. |
| 14 | MR. EASTWOOD: | Sure. |
| 15 | Q. | Okay.  You see these -- you see these check marks beside |
| 16 | | these cases? |
| 17 | A. | Yes. |
| 18 | Q. | And are we in agreement that these are the cases that you |
| 19 | | told Chief Turner and Captain Peters that you would seek |
| 20 | | indictments on at the June grand jury? |
| 21 | A. | I believe I told them that, yes, those were the ones that |
| 22 | | I was looking at.  As it so happens, I was supposed to be |
| 23 | | in trial. |
| 24 | Q. | We'll come back to that. |
| 25 | A. | Okay. |

KATERI LYNNE DAHL                                    DIRECT - HERRIN

23

```
 1  Q.  I'm just asking you now about -- I want to make sure that
 2      I'm understanding that these check marks are the cases,
 3      and we've got a transcript here if we want to look at
 4      that, but these were the cases that you agreed to Chief
 5      Turner and Captain Peters that you would seek indictments
 6      on.
 7  A.  I believe -- I believe that is the case, but again, it's
 8      been three years.
 9  Q.  Okay.  We better look at the transcript.  I'll show the
10      witness a transcript of Pages 102 and 103 of the May 19th
11      secret recording.
12  A.  Then yes, that is the case.
13  Q.  Correct?  Have you looked at it?
14  A.  Correct.
15  Q.  So this transcript Page 102 and 103 verifies that these
16      cases right here are the ones that you said that you were
17      looking to have indicted in the June grand jury.
18  A.  Correct.
19  Q.  Okay.  Thank you.  We can mark that as the next exhibit.
20  MR. GARLAND:  I'll just give her a copy.
21  COURT REPORTER:  That's number three.
22  EXHIBIT #3:  Dahl recordings transcript, Pages 102-103.
23  MR. EASTWOOD:  Are we not marking this?
24  MR. GARLAND:  We should have.
25  Q.  Not yet.  We're getting back.
```

KATERI LYNNE DAHL                              DIRECT - HERRIN

24

```
 1    MR. EASTWOOD:  Okay.

 2    COURT REPORTER:  We haven't yet.

 3    MR. GARLAND:  Okay.

 4  Q. Now, let's let at these federal cases with the check marks

 5      on them.

 6  A. Okay.

 7  Q. So we're in agreement that the check marks reflect the

 8      cases that were discussed with you, and Peters, and Turner

 9      on the 19th.

10  A. Correct.

11  Q. Now, let's look at the Exhibit 1 that we have previously

12      reviewed.  She may want to look at the original exhibit.

13      This is a copy of it.  I have written at the top December

14      15th list.

15    MR. GARLAND:  That's -- the December 16 E-mail is Exhibit 1.

16  Q. Yeah, but it's got the cases with it.

17    MR. GARLAND:  Yeah.

18  Q. Yeah.  Do you want to -- you can verify if you wish.  I'm

19      just going to put that right there.

20  A. Okay.

21  Q. It may help you because I want to talk about these

22      cases...

23  A. Okay.

24  Q. ...that I have highlighted.  I didn't have all of them

25      highlighted.  Okay.  The December 15th list that we are
```

KATERI LYNNE DAHL                              DIRECT - HERRIN

25

| | |
|---|---|
| 1 | looking at, if you want to, Ms. Dahl, you can verify it, |
| 2 | but this is the same thing as you looked at on Exhibit 1. |
| 3 | A.  Okay. |
| 4 | Q.  You'll see from the case numbers, those are Johnson City |
| 5 |     case numbers, correct? |
| 6 | A.  Correct. |
| 7 | Q.  Okay.  And you will see that the first one, W20007121 gun |
| 8 |     case 6/28 [sic] -- 6/18/2020 is the first case on the |
| 9 |     December 15th list, as well as on the one we're looking at |
| 10 |    now from the May 19th, 2021 list, right? |
| 11 | A.  Uh-huh (Affirmative). |
| 12 | MR. GARLAND:  Yes? |
| 13 | A.  Yes.  I'm sorry, yes. |
| 14 | Q.  And so that one is the first one on your May 19th, 2021 |
| 15 |     list... |
| 16 | A.  Okay. |
| 17 | Q.  ...that has a check mark. |
| 18 | A.  Okay. |
| 19 | Q.  And this first case is marked ███████ ████████, right? |
| 20 | A.  Yes. |
| 21 | Q.  ████████ ████████ was not indicted in June 2021, correct? |
| 22 | A.  No, because I was supposed to be in trial. |
| 23 | Q.  And that would have been the Chism case? |
| 24 | A.  Correct. |
| 25 | Q.  Is it your recollection that the Chism case pled out on |

KATERI LYNNE DAHL                                    DIRECT - HERRIN

26

```
 1        June the 3rd, 2021?

 2   A.   Yes, it pled out, I think, five days before we were

 3        supposed to go to trial.

 4   Q.   Is it your recollection though that the grand jury in June

 5        was June the 9th?

 6   A.   Correct.

 7   Q.   Okay.  Considering the Wayne Taylor suggestion to you as

 8        made in the December 16th, 2020 E-mail about preparing

 9        status and also memorandums and draft indictments during

10        the downtime of COVID, do you recall that in Wayne Taylor

11        your supervisor's memorandum?

12   A.   Yes.

13   Q.   Prior to June 2021, had you prepared a prosecution memo on

14        Dustin Mitchell?

15   A.   I don't believe so, but I don't remember.

16   Q.   If not, why not?

17   A.   Probably because I was prioritizing other cases, and

18        writing pros memos, and indicting other cases.

19   Q.   Prior to June 2021, with respect to the Dustin Mitchell

20        case that we're looking at on both lists, had you prepared

21        a draft indictment?

22   A.   I don't remember.  I'm not sure.

23   Q.   If not, why not?

24   A.   Again, probably because I was prioritizing other cases.

25   Q.   If you had done that, if you had prepared a draft memo, a
```

KATERI LYNNE DAHL                              DIRECT - HERRIN

27

| 1 | | prosecution memo, or a draft indictment, that would have |
| 2 | | been sent to Wayne Taylor, correct? |
| 3 | A. | Correct. |
| 4 | Q. | And if you were busy with other cases, indictments, and |
| 5 | | complaints, there was a grand jury that met in March, |
| 6 | | April, May, and June. Is that correct? |
| 7 | A. | Correct, and I believe I had other indictments. |
| 8 | Q. | Those will show up in the PACER system if we want to |
| 9 | | determine what was -- who was indicted by you? |
| 10 | A. | I believe so. |
| 11 | Q. | Okay. The second check mark, you've got both of the -- |
| 12 | | do you see the second case, W2007526 meth case? Over here |
| 13 | | on the December list, the same case number, meth case that |
| 14 | | we're going to look at. That is Nathan Tucker... |
| 15 | A. | Okay. |
| 16 | Q. | ...according to the list -- the May 19th list that you |
| 17 | | had. |
| 18 | A. | Yes. |
| 19 | Q. | Was Nathan Tucker indicted on June the 21st of... |
| 20 | MR. | GARLAND: June 9th. |
| 21 | Q. | I'm sorry, June 9th, 2021... |
| 22 | A. | I don't... |
| 23 | Q. | ...grand jury? |
| 24 | A. | I don't believe so. |
| 25 | Q. | If not, why not? |

KATERI LYNNE DAHL                                    DIRECT - HERRIN

28

| 1 | A. | Again, I was prioritizing other cases.  Case priorities |
| 2 |  | shift during the course of however many months and |
| 3 |  | depending on what is going on. |
| 4 | Q. | And we had discussed Wayne Taylor's E-mail to you on |
| 5 |  | December 16th, 2020, five months earlier, he had suggested |
| 6 |  | that you prepare prosecution memos and draft indictments |
| 7 |  | during any downtime of COVID.  You recall that, correct? |
| 8 | A. | I do, and that list is not an exhaustive one of cases that |
| 9 |  | were brought to me. |
| 10 | Q. | Okay.  Prior to June 20 -- June 9th, 2021, had you |
| 11 |  | prepared a prosecution memo for ███████████? |
| 12 | A. | I don't remember. |
| 13 | Q. | If not, why not? |
| 14 | A. | Again, probably because case priorities shift. |
| 15 | Q. | Okay.  On June the 9th, 2021 or prior to that, had you |
| 16 |  | prepared a draft indictment for ███████████? |
| 17 | A. | I don't believe so.  I don't remember. |
| 18 | Q. | If not, why not? |
| 19 | A. | Again, case priorities shift. |
| 20 | Q. | All right.  The third check mark, looking again at both of |
| 21 |  | these what's marked federal cases for 2019 and 2020, the |
| 22 |  | third checked case, again, you had provided some |
| 23 |  | assurances to Chief Turner and Captain Peters, as we |
| 24 |  | looked at in the recorded statement or recorded |
| 25 |  | transcript. |

KATERI LYNNE DAHL                              DIRECT - HERRIN

29

```
 1   A.   I would not say they were assurances.  I would say that
 2        they were tentative plans.
 3   Q.   Well, maybe we need to look at that a little closer.  Have
 4        we marked Page 102 yet?
 5   COURT REPORTER:  Yes, that's number three.
 6   Q.   Okay.  This is it right here.
 7   A.   Okay.
 8   Q.   Chief Turner at the bottom of the page, so is Dustin
 9        Mitchell -- this is for the next grand jury.  Ms. Dahl:
10        Uh-huh.  So we're looking at Dustin Mitchell?  Yes.  You
11        say, yes, Dustin Mitchell, Nathan Tucker.  Mr. Turner:
12        Nathan Tucker.  Okay.  Ms. Dahl says, Kacei Pierce.  Mr.
13        Turner:  Kacei Pierce.  I see that, yeah.  Line 8 on Page
14        103, Danika [sic] Wilson.  Mr. Peters:  She's the second
15        list.  10, Ms. Dahl says, and then Tommy Nelson.  That's
16        on the second page.
17   A.   Yes.
18   Q.   Okay.  I'll show you Page 114 of the secret recording of
19        the May 19th meeting.  At the bottom of Page 114, Captain
20        Peters says, so I'm not trying to cause you any more work
21        or anything like that, but let's say this June indictment
22        goes in.  You say, uh-huh.  Can you just send me an E-mail
23        on who got indicted and then that way I can get in touch
24        with the chief and we know where we stand on these cases
25        and everything?
```

KATERI LYNNE DAHL                          DIRECT - HERRIN

30

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | Do you recall that? |
| 3 | A. | I do. |
| 4 | Q. | Did you send Captain Peters an E-mail? |
| 5 | A. | No, and that was my mistake, but I E-mailed Sergeant |
| 6 | | Legault instead. And I did that because of the |
| 7 | | instructions of Chief Turner and Captain Peters. |
| 8 | Q. | Okay. We're going to come back to that, but you say you |
| 9 | | sent an E-mail about the... |
| 10 | A. | It was either an E-mail or a text. |
| 11 | Q. | Okay. About the June 9th, 2021 grand jury? |
| 12 | A. | I did. |
| 13 | Q. | But you did have a specific request from Captain Peters |
| 14 | | that you E-mail him. And so I think what you're telling |
| 15 | | me is that it was your mistake, or you forgot, or it |
| 16 | | didn't happen. |
| 17 | A. | It was my mistake because it had been previously |
| 18 | | communicated to me that -- excuse me -- that Sergeant |
| 19 | | Legault should be my pri' -- like, my main point of |
| 20 | | contact when it came to cases, and so I followed up in |
| 21 | | that manner. |
| 22 | Q. | Is it fairer to say that there was discussion of |
| 23 | | prioritizing cases after the June 9th, 2021 grand jury, |
| 24 | | but that here it was clear that you were to report to |
| 25 | | Captain Peters about these indictments, that's the reason |

KATERI LYNNE DAHL                                    DIRECT - HERRIN

31

1    he wanted the E-mail?

2  A.  I'm not sure what you're asking there.

3  Q.  You're saying that during this May 19th, 2021 meeting you

4      had with Chief Turner and Captain Peters that the decision

5      was that you would be reporting indictments and priority

6      cases with Sergeant Legault and not Peters or Turner?

7  A.  Yes.  I believe, and I don't remember at what point of the

8      conversation it was, that there was an exchange where they

9      were saying that Sergeant Legault should be the main point

10     of contact when it came to case statuses.

11 Q.  Or prioritizing cases.

12 A.  Correct.

13 Q.  And that was to start after this discussion in great

14     detail of what you were going to indict in June?

15 A.  I did not take it as it was supposed to start after the

16     indictment.  There was no instruction of you are to

17     communicate with Legault after the grand jury.

18 Q.  Though we do have Captain Peters asking you specifically

19     to send him an E-mail, not Legault, send him an E-mail of

20     what you accomplished at the grand jury in June.

21 A.  Yes, and that was then my mistake.  I communicated it to

22     Legault as per the instructions.

23 Q.  Now, you also received an E-mail from Captain Peters dated

24     June the 8th, 2021, correct?

25 A.  Yes.


KATERI LYNNE DAHL                          DIRECT - HERRIN

                          32

```
 1   Q.   And he was saying directly, can you send me information
 2        about the grand jury indictments so that I can update the
 3        chief, right?
 4   A.   Yes.
 5   Q.   So did you ever respond to that E-mail of Captain Peters?
 6   A.   I don't remember.  I thought I followed up in some
 7        fashion.  I might have mistaken my following up to
 8        Sergeant Legault as sufficient, but I can't recall the
 9        exact order of events with that.
10   Q.   So we've got a request here directly for Peters and Chief
11        Turner, and again on the 8th reminding you about their
12        interest in these cases that we're looking at with check
13        marks, and you did not respond to Captain Peters in any
14        way?
15   A.   No.  I followed up with the previous instructions.
16   Q.   No, Captain Peters.
17   A.   Correct.
18   Q.   Did you respond directly to Captain Peters?
19   A.   I don't remember.
20   Q.   All right.  Check mark number three on these cases, let's
21        see.  As to not get confused, let's -- what did we look
22        at, Page 109?
23   A.   Okay.
24   Q.   No, sorry, 114 -- 114 and 115.  Let's mark that as the
25        next exhibit.  That's the May 19th meeting with Captain
```

KATERI LYNNE DAHL                              DIRECT - HERRIN

33

```
 1        indictments in June.  We discussed that and I think you
 2        said that it was a mistake on your part or you thought you
 3        were confused, you were going to communicate to Legault,
 4        right?
 5   A.   Correct, I reached out to him.
 6   Q.   But you don't recall making any response whatsoever to
 7        Kevin Peters in response to this June 8th E-mail?
 8   A.   I don't remember if I did or not.
 9   Q.   Okay.  If not, why not?
10   A.   Again, because I had communicated to Legault and if I
11        didn't, then that was my mistake that I thought that
12        communicating to Legault was sufficient.
13   Q.   And Kevin Peters is Legault's supervisor, correct?
14   A.   Correct.
15   Q.   He's a captain and Legault is a sergeant, right?
16   A.   Correct.
17   Q.   We'll make that the next numbered exhibit, please.
18   COURT REPORTER:   Number six.
19   EXHIBIT #6:  E-mail from Kevin Peters to Ms. Dahl, dated
20        6/8/21, Bates Stamp No. 0201.
21   Q.   Okay.  Do we have this marked as an exhibit?  This is the
22        May 19th -- it's got handwriting and check marks on it.
23   MR. EASTWOOD:   That's Bates 462?
24   Q.   Thank you, yes, Bates 0462.
25   MR. EASTWOOD:   I don't believe we do.
```

KATERI LYNNE DAHL                                    DIRECT - HERRIN

40



K. Dahl
DEPOSITION
EXHIBIT
# 6

From:       Peters, Kevin
Sent:       Tuesday, June 8, 2021 2:02 PM
To:         'Kat.dahl@usdoj.gov'
Subject:    Federal Grand Jury Cases

Kat,

Chief Turner wanted me to reach out to you and to see what Johnson City cases have been or will be presented to the Federal Grand Jury. If none have been presented, could you provide a date when they will be presented

Thanks,

Kevin

## Captain Kevin Peters



Johnson City Police Department
Criminal Investigation Division Commander
City of Johnson City, Tennessee.
423.434.6166 o./423.434.6119 d// www.johnsoncitytn.org

# C E R T I F I C A T E

I, Rebecca Overbey, Licensed Court Reporter in and for the State of Tennessee, do hereby certify that the foregoing deposition of KATERI LYNNE DAHL was taken at the time and place and for the purpose as stated in the Caption; that the witness was duly sworn by me before deposing; that the said deposition was recorded electronically and was later transcribed to typewriting, using computer technology; and that the foregoing is a true and accurate transcript of the proceedings to the best of my knowledge, ability and understanding.

WITNESS my hand and official seal at my office in Kingsport (Sullivan County) Tennessee on this the 7th day of July, 2023.

Rebecca Overbey
**Rebecca Overbey**
**LICENSED COURT REPORTER**
**State of Tennessee**
**LCR #078**

My License Expires:

June 30, 2024

***CERTIFIED ONLY IF AFFIXED SEAL IS GREEN***

323



K. Dahl
DEPOSITION
EXHIBIT
# 6

From:       Peters, Kevin
Sent:       Tuesday, June 8, 2021 2:02 PM
To:         'Kat.dahl@usdoj.gov'
Subject:    Federal Grand Jury Cases

Kat,

Chief Turner wanted me to reach out to you and to see what Johnson City cases have been or will be presented to the
Federal Grand Jury. If none have been presented, could you provide a date when they will be presented.

Thanks,

Kevin

## Captain Kevin Peters



Johnson City Police Department
Criminal Investigation Division Commander
City of Johnson City, Tennessee
423.434.6166 o./423.434.6119 d./ www.johnsoncitytn.org