IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KATERI LYNNE DAHL,
    Plaintiff,

VS.

CHIEF KARL TURNER, in his individual capacity only; OFFICER JOHN DOES 1-3, in their individual capacities only; and CITY OF JOHNSON CITY,
    Defendants.

CASE NO.
2:22-CV-00072-KAC-CRW

DEPOSITION OF

# WAYNE TAYLOR

(Taken October 18, 2023)

APPEARANCES:

COUNSEL FOR THE PLAINTIFF:    HUGH A. EASTWOOD
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, MO 63105-3825

ALEXIS I. TAHINCI
TAHINCI LAW FIRM
105 Ford Avenue, Ste. 3
Kingsport, TN 37663

***THIS STYLE PAGE CONTINUES***

---

**COURT REPORTING AND VIDEO SERVICES**

P. O. Box 7481
Kingsport, TN 37664

TELEPHONE: (423) 230-8000
REBECCA@COURTREP.NET

```
 1        to me for review very late in the game.  And so you're
 2        giving her examples of some things that she has been doing
 3        incorrectly more than once.
 4   MR. EASTWOOD:  Object to the form.
 5   Q.   Correct?  It's a trend.
 6   MR. EASTWOOD:  Objection.
 7   A.   Yes, that was my exact word.
 8   Q.   Okay.  Do you recall as we sit here today, I know this was
 9        more than two years ago, but do you recall getting
10        complaints from probation?
11   A.   Yes, I recall that very well.
12   Q.   And you recall getting more than one complaint from
13        probation?
14   A.   Numerous, repeated complaints.
15   Q.   Repeated complaints from probation.
16   A.   Yes.
17   Q.   Okay.  And help educate me a little bit.
18   A.   Yes.
19   Q.   So an attorney in your office obtains an indictment, then
20        I've seen E-mails where probation wants identifiers for
21        the person who was just indicted, so is that like Social
22        Security, date of birth, some way to identify that
23        person?
24   A.   Correct.
25   Q.   Okay.  When a SAUSA or Assistant U.S. Attorney in your
```

```
 1      office obtains an indictment, do they send that
 2      information without request to probation or do they wait
 3      to get a request from probation?
 4   A. No, there is no wait for request from probation.  Someone
 5      from our office will send the identifiers to probation so
 6      they have that and they can do their work-up on that
 7      particular defendant ahead of time and be prepared for
 8      them to hit the building.  We don't wait on a request.
 9      That's something pro forma that usually a support person,
10      but however it's worked out, a support person or the
11      attorney will send to probation.
12   Q. Do you know any reason that Ms. Dahl repeatedly would not
13      have -- would have had communication problems with
14      probation?
15 MR. EASTWOOD:  Objection.
16   Q. Or not responding to requests from probation?
17   A. No, I think that's part of this E-mail here.  And I don't
18      think what I'm talking about here is identifiers.  That
19      may have played some smaller role in it, but the main
20      complaint that I would get from probation would just be an
21      overall lack of responsiveness that they would reach out
22      to try to talk to Kat about a given case.  And the thing I
23      would normally recall is that they would reach out, you
24      know, after a defendant is convicted, but prior to that
25      defendant being sentenced there may be certain
```

```
1      something I feel incredibly strong about is
2      unresponsiveness.  We all have smart phones.  We're
3      available all the time.  And if we're not responding to
4      probation, probation is also an arm of the court, and that
5      just affects our overall credibility as an office.  It
6      hurts our reputation, and that's not something that I'm
7      going to allow to continue to happen.  So that's kind of
8      the nature of what is going on here is to address this and
9      make sure this stops and that the communication and
10     responsiveness improves at that point.
11  Q. And in that second sentence of the second paragraph, I
12     want your -- and this is kind of going over what you just
13     said basically.  I want your reputation and the reputation
14     of this office to remain very high, correct?
15  A. It is.  And that's a good point, I'm obviously concerned
16     about Kat's own reputation at that point, so absolutely,
17     yes.
18  Q. And you are putting this sentence in the E-mail trying to
19     get her attention, yes?
20  A. That's fair.
21  Q. Okay.  You've talked to her and it hadn't seemed to fix,
22     so now you're putting something in writing, as you said a
23     minute ago, kind of taking it up a notch.
24  A. Yes.
25  Q. Is that fair?
```

WAYNE TAYLOR                                    DIRECT - GARLAND

34

Case 2:22-cv-00072-KAC-JEM   Document 61-5   Filed 01/16/24   Page 4 of 9   PageID #: 1052

```
 1   Q.  And this would indicate to you that there was no response
 2       from Kat Dahl to the earlier E-mail of April 16, 2021,
 3       correct?
 4   A.  That's interesting.  That's certainly the way it appears
 5       for over a month period.
 6   Q.  So as we discussed, the probation office shouldn't be
 7       having to reach out to her at all, but here they're making
 8       the same request more than a month apart, correct?
 9   A.  Correct.  And again, that's unacceptable, and that's goes
10       to the relationship with probation that was developing at
11       that time, the lack of responsiveness.
12   Q.  If we look back to your -- let's go back to Exhibit 111,
13       your February 18 E-mail.  That one.  Let's look at that
14       one just a second.  So we're looking at Exhibit 111.  So
15       we're looking at the second paragraph again, and so you
16       were talking about not responding quickly enough to
17       probation.  We've talked about that.  You said completing
18       trainings at the last moment.  Is this, like, online
19       training?
20   A.  We are given a lot of mandatory training, as you can
21       imagine, and again, when I have reached this point to send
22       this E-mail, it's not a first time having a conversation
23       with Kat because we all have deadlines to complete those
24       mandatory trainings, and if we get close to that deadline,
25       oftentimes I'll get a call or notification, even from our
```

WAYNE TAYLOR                                        DIRECT - GARLAND

37

```
 1    U.S. Attorney, hey, can you talk to Kat or whoever the
 2    person would be that still hadn't completed the trainings,
 3    or sometimes I would get notifications, you know, this
 4    many people still haven't done their trainings.  With Kat,
 5    unfortunately, that was a trend that I would need to talk
 6    to her, and remind her, and tell her often the day before,
 7    or things like that, that she still needed to do the
 8    training.
 9 Q. And there's no reason that she could not have completed
10    the training earlier?
11 A. No.  These trainings were posted and notified many months
12    ahead of time as to when their due date is.
13 Q. I'm checking to see how I'm doing time wise.
14 MR. HERRIN:  Is Exhibit 113 the last one?
15 COURT REPORTER:  Yes.
16 Q. Okay.
17 EXHIBIT #113:  E-mail from Shauna McCullough-Walker to Kat
18    Dahl, dated 6/3/21, DOJ No. 0002389.
19 Q. This is document 1499 DOJ production.  I'll give you a
20    second to read it.
21 A. Okay, I'm ready.
22 Q. Okay.  This is a January 2021 E-mail from you to Kat Dahl,
23    correct?
24 A. It is.
25 Q. Okay.  And this is please respond to -- I forgot how to
```

WAYNE TAYLOR                                       DIRECT - GARLAND

38

```
 1   COURT REPORTER:  118.
 2   EXHIBIT #118:  E-mails between Gretchen Mohr, Donna Qualls
 3        and Kat Dahl, dated 5/7/21, 5/10/21 and 5/11/21,
 4        DOJ No. 0000049.
 5   Q.   Did you receive complaints about Ms. Dahl's lack of
 6        responsiveness from other persons in the federal
 7        government that we haven't talked about?
 8   A.   I don't know in the federal government.  We talked about
 9        probation, I guess, extensively.  Certainly there were
10        complaints from other defense attorneys, which is
11        definitely not a common occurrence that I would get
12        complaints or comments from defense attorneys that would
13        come to me.  That did occur.
14   Q.   Is that with respect to her producing documents she was
15        required to produce or what would that be?
16   A.   More on the lines of responsiveness as well.  Most defense
17        attorneys would couch it in the term of I don't want to
18        get somebody in trouble and would feel very bad, I think,
19        about doing it, but were having trouble reaching Kat.  I
20        think we already talked about the clerk's office, I mean,
21        which obviously is federal.  I think those would be the
22        main folks I would hear complaints from, probation, the
23        clerk's office, and defense attorneys.
24   Q.   Did you get any complaints from within your office?
25   A.   About what?
```

WAYNE TAYLOR                                      DIRECT - GARLAND

47

Case 2:22-cv-00072-KAC-JEM   Document 61-5   Filed 01/16/24   Page 7 of 9   PageID #: 1055

```
 1   COURT REPORTER:  118.
 2   EXHIBIT #118:  E-mails between Gretchen Mohr, Donna Qualls
 3        and Kat Dahl, dated 5/7/21, 5/10/21 and 5/11/21,
 4        DOJ No. 0000049.
 5   Q.   Did you receive complaints about Ms. Dahl's lack of
 6        responsiveness from other persons in the federal
 7        government that we haven't talked about?
 8   A.   I don't know in the federal government.  We talked about
 9        probation, I guess, extensively.  Certainly there were
10        complaints from other defense attorneys, which is
11        definitely not a common occurrence that I would get
12        complaints or comments from defense attorneys that would
13        come to me.  That did occur.
14   Q.   Is that with respect to her producing documents she was
15        required to produce or what would that be?
16   A.   More on the lines of responsiveness as well.  Most defense
17        attorneys would couch it in the term of I don't want to
18        get somebody in trouble and would feel very bad, I think,
19        about doing it, but were having trouble reaching Kat.  I
20        think we already talked about the clerk's office, I mean,
21        which obviously is federal.  I think those would be the
22        main folks I would hear complaints from, probation, the
23        clerk's office, and defense attorneys.
24   Q.   Did you get any complaints from within your office?
25   A.   About what?
```

WAYNE TAYLOR                                      DIRECT - GARLAND

# CERTIFICATE

I, Rebecca Overbey, Licensed Court Reporter in and for the State of Tennessee, do hereby certify that the foregoing deposition of WAYNE TAYLOR was taken at the time and place and for the purpose as stated in the Caption; that the witness was duly sworn by me before deposing; that the said deposition was recorded electronically and was later transcribed to typewriting, using computer technology; and that the foregoing is a true and accurate transcript of the proceedings to the best of my knowledge, ability and understanding.

WITNESS my hand and official seal at my office in Kingsport (Sullivan County) Tennessee on this the 24th day of October, 2023.

Rebecca Overbey
LICENSED COURT REPORTER
State of Tennessee
LCR #078

My License Expires:
   June 30, 2024

***CERTIFIED ONLY IF AFFIXED SEAL IS GREEN***



W. Taylor
DEPOSITION EXHIBIT
#111

To: Dahl, Kat (USATNE)[KDahl@usa.doj.gov]
From: Taylor, Wayne (USATNE)
Sent: Thur 2/18/2021 9:13:29 PM
Subject: Your complaint and your Superseding Indictment

Kat,

I understand from the Clerks' Office that your complaint from yesterday did not have a cover sheet and did not have an arrest warrant. Then, on your superseding indictment, it did not get entered because it was to be sealed, and there was no motion or order to seal provided. I know you have been busy this week with teaching and getting these two things ready, but please make sure that you have everything in your packets to go to the clerks office or to the grand jury. And that you have allocated a sufficient amount of time to make sure you get everything done that you need to. If you are not sure, please ask me or anyone else here. Typically, those supporting documents are what our support staff does for you. I don't know if ▓▓▓▓ is not doing them for you or not. But regardless, as the SAUSA on the case, it is your responsibility.

These issues seem to fit the recent trend of not responding quickly enough to Probation, completing trainings at the last moment and often getting documents to me for review very late in the game. I want your reputation and the reputation of this office to remain very high. I know there is a continued learning curve and that there is a lot to learn but if there is anything you would like to discuss with me, please feel free. As for now, if not done already, please make sure you rectify the issues on the complaint and superseding indictment. Thanks.

Wayne