UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| KATERI LYNEE DAHL, | ] |
| Plaintiff, | ] |
| v. | ] No. 2:22-cv-00072-KAC-CRW |
| CHIEF KARL TURNER, and<br>CITY OF JOHNSON CITY, TENNESSEE, | ] |
| Defendants. | ] |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL [DOC. 59]**

Comes the City of Johnson City ("the City") and Karl Turner, in his individual capacity, and responds as follows in opposition to the Plaintiff's Motion to Compel [Doc. 59]. As set forth below, Plaintiff's Motion to Compel should be denied.

**I.   QUESTION PRESENTED**

A.   Is the Plaintiff entitled to discover the work-product of the Defendants' non-retained, consulting expert, Eric Daigle, which includes information regarding 325 sexual assault investigative files, excel spreadsheets of the files, and notes prepared by the non-retained consulting expert?

The Plaintiff represents to the Court that the parties have "whittled down" the scope of the instant discovery request. However, that statement mischaracterizes the scope of what the Plaintiff is seeking from Daigle. While it is correct that the Plaintiff is only seeking two broad categories of information from Daigle, the scope of the information contained in those two categories is broad, as the Plaintiff is ultimately seeking *all* of Daigle's work product, including information concerning all of the sexual assault files investigated by Daigle, in the form of work-product

1

spreadsheets created by Daigle based on his review of more than 325 sexual assault files and notes created by Daigle as he conducted his audit.

      B.      Can the Plaintiff compel the Defendants to produce documents that (1) were not requested in a discovery request and (2) not part of an agreement reached between the parties regarding the scope of a subpoena?

The Plaintiff is seeking to compel the Defendants based on a Request for Production that does not seek the information now being sought. The Plaintiff is also seeking to compel production of documents based on a subpoena; however, the parties reached an agreement regarding the scope of the subpoena, and the documents that are the subject of the instant Motion to Compel were explicitly excluded from the agreement.

## II.    BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff is seeking discovery of information protected from disclosure as a subsequent remedial measure under Fed. R. Evid. 407 and based on the non-testifying consulting expert "safe harbor" found in Fed. R. Civ. P. 26(b)(4)(B). The target of Plaintiff's discovery request is the work product of Eric Daigle, a non-testifying, consulting expert retained by the City after Ms. Dahl filed her lawsuit.

      A.  <u>Facts related to the City's decision to retain Daigle as a non-testifying, consulting expert.</u>

Based on the allegations made by Ms. Dahl that the Johnson City Police Department ("JCPD") was not properly conducting sexual assault investigations, City Manager Cathy Ball recommended that Johnson City, through its City attorney, engage an outside expert to review how sexual assault investigations were handled by the JCPD. Attached hereto as **Exhibit 1** is a copy of Ms. Ball's Declaration, which was previously filed with the Court as Doc. 45-1. On August 4, 2022, Johnson City's City Attorney retained Attorney Eric Daigle of Connecticut and his company

Daigle Law Group to serve as a non-testifying, consulting expert to conduct that review. (**Exhibit 1**: Ball Declaration, ¶ 4; **Exhibit 2:** Daigle Contract). The Contract with Daigle, which is attached hereto as **Exhibit 2**, is very clear as to the scope of work to be performed by Daigle (**Exhibit 2**, § 1 and Appendix A to Exhibit 2).

Daigle's audit of sexual assault cases over a five (5) year period was released on or about July 18, 2023. (**Exhibit 1**: Ball Declaration, ¶ 5). As part of his audit, Daigle made recommendations for how the City could improve sexual assault investigations. (**Exhibit 1**: Ball Declaration, ¶ 5-8. As of this date, the City has implemented (or has allocated funding for) all of the recommendations in the Daigle Audit except for part of recommendation number 3, which pertains to investigating "complaints." (**Exhibit 1**: Ball Declaration, ¶ 8). Daigle recommended that Internal Affairs investigations be conducted for all complaints, and the practice of the City is to not conduct Internal Affairs investigations simultaneously and parallel with a pending lawsuit. (**Exhibit 1**: Ball Declaration., ¶ 8-9).

The City Manager's decision (and the City Commission's acceptance of her recommendation) to retain an outside consultant during the pendency of this litigation to investigate and address the harm alleged in Ms. Dahl's Complaint was a voluntary decision. (**Exhibit 1**: Ball Declaration, ¶ 10).

As a public entity, Johnson City, to its credit, chose to release the Daigle Audit to the public on July 18, 2023. The City does not, and has not, taken the position that now released Daigle Audit Report retained any attorney-client privilege as was initially an option under the Daigle Contract. (Exhibit 2, Daigle Contract). The Plaintiff is attempting to use the Daigle Audit as a cudgel even though her claim is a First Amendment retaliation claim and Daigle, expressly, did not investigate Ms. Dahl's retaliation claim. [Doc. 59-3; Daigle Audit Page ID# 931]

3

B. <u>Facts related to the discovery dispute at issue.</u>

The discovery dispute before the Court involves certain "work product" materials created by Daigle as part of his Audit. The discovery request at issue involves Plaintiff's Second Request for Production of Documents, No. 5, asking the Defendants to produce "all documents provided ***by you to the Daigle Law Group***, and any draft reports made to you by the Daigle Law Group. Please include any contracts and engagement communications and documents." *See* Exhibit 1 to Plaintiff's Motion to Compel, Doc. 59-1, PageID # 921 (emphasis added). Thus, the original request propounded to the Defendants was for materials the City provided to Daigle and not for "work product" materials prepared by Daigle[1].

Notwithstanding the narrow scope of Request No. 5 as it pertains to materials the City provided to Daigle, the parties conferred in good faith regarding what portions of Daigle's file might be produced. At no point did the Defendants indicate that they were waiving any objections they had to producing Daigle's work product. This point is made more than clear as set out in the correspondence between counsel, that served ultimately to resolve the discovery dispute, and is attached hereto as **Exhibit 3**. **Exhibit 3** includes email exchanges of December 7, 2023; December 11, 2023; December 13; and December 16.

As the parties continued to negotiate in good faith, counsel to the Plaintiff agreed, in writing, through an email sent on November 6, 2023, that Plaintiff would limit Request for Production No. 5 to "Sean Williams cases and/or cases in which Dahl herself worked." A copy of

---

[1] In a December 7, 2023 email to counsel for the Defendants, Ms. Dahl's attorneys confirmed that Request for Production No. 5 only sought three (3) categories of documents: "(1) all documents provided by JC to the Daigle Law Group (2) any draft reports made by JC to Daigle Law Group (3) engagement communications and documents." A copy of this email is attached hereto as **Exhibit 8**. In this same email, counsel for Ms. Dahl acknowledges that the parties already agreed to limit RFP No. 5 "to that which was provided to Daigle as to Williams victims." *See* **Exhibit 8**.

4

this email is attached hereto as **Exhibit 4**. A**s** consideration to the agreement reached with counsel for the Plaintiff, on December 16, 2023, Defendants produced all the documents specified in the agreement negotiated and compromised in good faith by both parties. A copy of the December 16, 2023 transmittal email to counsel for the Plaintiff is attached hereto as **Exhibit 5.** The clear and unequivocal objections are set forth in their Amended Response and Objection to Plaintiff's Request for Production. *See* Exhibit 1 to Plaintiff's Motion to Compel, Doc. 59-4, PageID # 975, and were never waived.

In a further attempt to avoid involving the Court in a discovery dispute, the Defendants agreed to schedule Daigle's deposition. As Plaintiff's counsel acknowledged in an October 22, 2023 email, "[w]e anticipate that you will object generally to his testimony, but we still want to take Daigle's depo ***subject to such an objection***.[2]" (emphasis added). A copy of the October 22, 2023 email from Plaintiff's counsel to counsel for the Defendants is attached hereto as **Exhibit 6.**

Prior to Daigle's depositions, the parties again confirmed that Plaintiff was limiting her request of Daigle's materials to information related to Sean Williams, as well as a few non-privileged communications between Daigle and City Attorney Sandos, such as edits to the contract with Daigle which was, by all accounts, a public document since it involved the expenditure of public funds. In a December 13, 2023 email to Daigle, counsel for the Plaintiff wrote, "counsel in the Dahl case have been diligently working through discovery issues as to what is in the City file as to your engagement and report. We have agreed as to the underling sex case files ***to cabin our request to the Sean Williams complainants***." (emphasis added). A copy of the December 13, 2023 email from Plaintiff's counsel is attached hereto as **Exhibit 7.**

---

[2] As the saying goes, "no good deed goes unpunished," and the Plaintiff now claims that the Defendants waived any objections to Daigle's testimony by participating in his deposition. *See* Doc. 59, PageID # 917.

5

Consistent with this agreement with counsel, the parties agreed to extend discovery through January 10, 2024, for the "limited purpose of accomplishing the referenced discovery depositions [of Daigle, Kevin Peters, and Toma Sparks]." Doc. 53: Joint Motion for Extension of Discovery Cutoff; PageID # 744. The deadline to complete discovery, other than the depositions of Daigle, Peters, and Sparks, ran on December 1, 2023. *See* Doc. 24: Scheduling Order, PageID # 236. There was no agreement to extend the discovery deadline beyond December 1, 2023 so the Plaintiff could obtain additional discovery of Daigle's work product. On the contrary, the extension of discovery agreement expressly stated, "10. Extension of discovery is therefore requested only for the limited purpose of accomplishing the referenced discovery depositions." [Doc. 53, Page ID# 746, § 10]

At the start of Daigle's deposition, counsel for the Defendants made a statement on the record regarding the Defendants' objections, and counsel for the Defendants informed Plaintiffs' counsel that the Defendants were not waiving any objections by allowing the deposition to proceed.[3]

At no point in this discovery dispute did the Defendants indicate that they were waiving any objections they had to Daigle's work product or testimonial evidence. The Defendants, despite their objections, attempted to resolve the discovery dispute by providing limited documents and information to the Plaintiff all of which was marked, consistent with the Protective Order [Doc. 26] as "Highly Confidential – Attorney Eyes Only" and subject to their clear continuing objections. The Plaintiff, after agreeing to limit her discovery request, now seeks to ignore the agreement reached by compromise and seeks information never previously discussed and beyond what was

---

[3] In an unrecorded conference call between counsel for the parties, counsel for the Defendants again stated that by allowing the Daigle deposition to proceed, the Defendants were not waiving any objections related to Daigle. Counsel for the Plaintiff acknowledged an understanding of the Defendants' position.

6

negotiated between the parties, after the discovery deadline has passed and contrary to the parties' commemorated understanding. Furthermore, the additional information sought is not discoverable, as the safe harbor found in Fed. R. Civ. P. 26(b)(4)(D) applies, and because the evidence also pertains to a subsequent remedial measure under Fed. R. Evid. 407. For the foregoing reasons, Plaintiff's Motion to Compel should be denied.

III. <u>LAW AND ARGUMENT</u>

    A. **THE MOTION TO COMPEL MUST BE DENIED, BECAUSE THE PLAINTIFF CANNOT COMPEL THE DEFENDANTS TO PRODUCE INFORMATION THAT WAS NOT PART OF HER WRITTEN DISCOVERY REQUEST OR WAS OUTSIDE THE NEGOTIATED SCOPE OF A SUBPOENA.**

The Plaintiff cannot compel the Defendants to produce documents based on a Request for Production that does not seek the information now being sought. The Plaintiff, through the Request for Production at issue seeks, "all documents *provided by you to the Daigle Law Group*, and any draft reports made to you by the Daigle Law Group. Please include any contract and engagement communications and documents." *See* Exhibit 1 to Plaintiff's Motion to Compel, Doc. 59-1, PageID # 921 (emphasis added). The Plaintiff did not request Daigle's work-product. The Plaintiff cannot compel the City to produce documents she never requested.

The Plaintiff also relies on the subpoena issued to Daigle to support her Motion to Compel. While the subpoena may have included the information sought by the Plaintiff in her Motion to Compel, the parties explicitly reached an agreement regarding the scope of the subpoena, and the agreement ***did not*** include the materials and documents the Plaintiff now seeks to compel. *See* **Exhibits 4, 5 and 7**. The Plaintiff agreed to limit the scope of the Daigle subpoena to "Sean Williams complainants." *See* **Exhibit 7**. Now, the Plaintiff is attempting ignore the agreement reached by the parties and compel the Defendants to produce information concerning all 325 sexual

7

assault files reviewed by Daigle. The Plaintiff cannot seek to compel based on a subpoena that her counsel agreed to limit in scope.

For these reasons, the Motion to Compel must be denied.

**B.     UNDER FED. R. CIV. P. 26(b)(2)(D), THE PLAINTIFF IS NOT ENTITLED TO DISCOVER THE WORK-PRODUCT OF THE DEFENDANTS' NON-RETAINED, CONSULTING EXPERT**

The Plaintiff is impermissibly attempting to obtain information from the City's non-testifying, consulting expert, in violation of Fed. R. Civ. P. 26(b)(4)(D). Federal Rule of Civil Procedure 26(b)(4)(D) provides that "a party may not, by interrogatories or depositions, discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." This "non-testifying expert" privilege is distinct from the work-product doctrine and the attorney-client privilege. *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189, 2014 WL 935329 (M.D. Tenn. 2014) (citing *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 30 (D.Mass.2006)). Absent a showing of extraordinary circumstances, this rule restricts discovery of facts known and opinions held by non-testifying experts and is designed to prevent the unfairness of counsel benefiting from an adversary's retention and financing of an expert. *Genesco*; 302 F.R.D. 168 at 189; 2014 WL 935329 at *189 (citing *Vanguard Sav. & Loan Ass'n, VSL Service Corp. v. Banks*, No. Civ. A. 93–4627, 1995 WL 71293, *2 (E.D. Pa. Feb. 17, 1995); *Sloan Valve Co. v. Zurn Indus.*, No. 10 C 204, 2012 WL 5499412, *2–*3 (N.D. Ill. Nov. 13, 2012).

Courts have recognized three purposes for Fed. R. Civ. P. 26(b)(4)(D). First, the rule "promote[s] fairness by precluding a party from using an opponent's expert to build his own case." *Roach v. Hughes*, No. 4:13CV-00136-JHM, 2015 WL 13022807, at *4 (W.D. Ky. Jan. 8, 2015). The second reason is to "prevent a party from benefitting from the effort expended and costs

8

incurred by the opposing party while preparing for litigation." The third reason is to "protect an important interest in allowing counsel to obtain the expert advice they need ... without fear that every consultation with an expert may yield grist for the adversary's mill." *Ferrell v. Liberty Mut. Grp., Inc.*, No. 7:12-112, 2014 U.S. Dist. LEXIS 97721, at *7 (E.D. Ky. July 18, 2014)

In *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189, 2014 WL 935329 (M.D. Tenn. 2014), Judge Haynes addressed a situation similar to the case at bar, after the defendant, Visa, subpoenaed the plaintiff's non-testifying, consulting expert and served discovery requests on the plaintiff for information related to the consulting expert's investigation. The *Genesco* court, citing a decision from the Northern District of Iowa, summarized the applicable law as follows:

> A party seeking discovery of facts or opinions held by a non-testifying consulting expert bears the burden of showing exceptional circumstances. *Hartford Fire Ins. Co. v. Pure Air On The Lake Ltd.,* 154 F.R.D. 202, 207–08 (N.D.Ind.1993). Courts have interpreted exceptional circumstances to mean that the party cannot obtain equivalent information from another source. *In re Shell Oil Refinery,* 132 F.R.D. 437, 442 (E.D.La.1990). For example, in *In re Shell Oil,* the court denied the plaintiff's request to see results of tests conducted by Shell because the plaintiffs *190 could obtain the same information by using their own experts. *Id.* at 443. Similarly, in *Sara Lee Corp. v. Kraft,* the court found exceptional circumstances lacking where the party seeking discovery had retained an expert to testify on the same subject. *Sara Lee Corp.* [*v. Kraft Foods Inc.* ], 273 F.R.D. [416] at 420 [ (N.D.Ill.2011) ].
>
> However, courts have found exceptional circumstances where the object or condition at issue cannot be observed by experts of the party seeking discovery. *Hartford Fire Ins. Co.,* 154 F.R.D. at 208. For example, in *Delcastor, Inc. v. Vail Associates, Inc.,* 108 F.R.D. 405, 409 (D.Colo.1985), the court found exceptional circumstances where only the defendant's expert had an opportunity to investigate the cause of a mud slide before conditions at the site changed. *Id.* The court noted that exceptional circumstances exist when "circumstances precluded all but one of the party's experts from gaining a first hand observation of the object of condition." *Id.*

9

*Id.* at *189 (quoting *Precision of New Hampton, Inc. v. Tri Component Products Corp.*, No. C12–2020, 2013 WL 2444047 (N.D. Iowa. June 05, 2013)). (*See also, Morningware, Inc. v. Hearthware Home Products, Inc.,* No. 09–C–4348, 2012 WL 3721350 at *6 (N.D. Ill. Aug. 27, 2012) ("Consulting experts do not offer testimonial evidence during a litigation proceeding, and parties are therefore not entitled to discovery from consulting experts.")).

Judge Haynes also dismissed Visa's argument that the consulting expert was a fact witness and held that "[the expert] would necessarily be applying his or her specialized knowledge. Thus, Visa's characterization of its…discovery requests as involving a fact witness is inappropriate. To accept that characterization would effectively eviscerate and undermine the core purpose of Fed. R. Civ. P. 26(b)(4)(D)." *Id*.

Remarkably, the United States District Court of the District of Wyoming addressed the same issue in this case, particularly since Daigle was also retained as a non-testifying consulting expert in a related, but separate, matter. In *Hinkel v. Colling*, 2021 WL 1341357 (D. Wyoming, April 9, 2021), the plaintiff, Debra Hinkel, filed a civil rights and wrongful death lawsuit against Albany County and Deputy Colling after her son, Robert Ramirez, was shot by Colling during a traffic stop. *Id*. The Albany County District Attorney began impaneling a grand jury to investigate the shooting and determine if the shooting was justified. *Id*. In preparation for the grand jury, Eric Daigle was retained by the State of Wyoming to provide testimony to the grand jury regarding Mr. Colling's actions as compared to the national standards of use of force by law enforcement officers. *Id*. To prepare Daigle to testify, the District Attorney provided Daigle with a substantial amount of material. *Id*.

Hinkel served upon Mr. Daigle and the Daigle Law Group subpoenas to produce essentially everything they had related to their role as experts in the grand jury hearing. The Defendants filed a motion to quash the subpoena and a motion for a protective order.

The *Hinkel* court held that Fed. R. Civ. P. 26(b)(4)(D) creates a "safe harbor[,] whereby facts and opinions of non-testifying consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." *Id*. at *5 (citing *Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007)). The *Hinkel* court noted that some courts "have construed 26(b)(4) as creating a privilege against disclosure," and the Court reasoned that, "the idea is that while discovery with respect to testifying experts is essential to allow opposing counsel to adequately prepare for cross-examination, and to eliminate surprise at trial, "there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course litigation should take." *Id*.

Significantly, the *Hinkel* Court designated Daigle a Rule 26(b)(2)(D) consulting expert despite the fact that he was not retained in anticipation of the civil litigation at bar. Daigle was retained for purposes of the Grand Jury Investigation; however, the Court still applied the safe harbor provision of Rule 26(b)(2)(D). The *Hinkel* Court reasoned that, since Daigle was clearly not a testifying expert in the civil action, he was more properly categorized as a consulting expert under Fed. R. Civ. P. 26(b)(2)(D). *Hinkel*, 2021 WL 1341357 at *5-*6.

Thus, the *Hinkel* Court held that pursuant to Fed. R. Civ. P. 26(b)(4)(D), Daigle was a non-testifying expert consultant, despite the fact that he was not retained in anticipation of the civil litigation, and his reports and files should be withheld from the Plaintiff, including any communications between attorneys working on behalf of Defendants and the experts. *Id*.

Plaintiff argues that *Hinkel* is distinguishable because the Plaintiff has designated Daigle as a "non-retained expert" that will testify at trial. *See* Doc. 59: Motion to Compel, PageID # 918. Plaintiff's argument is inconsistent with the meaning and intent of Fed. R. Civ. P. 26(b)(2)(D). If the Court were to accept Plaintiff's argument that an opposing party can nullify the safe harbor provision in Rule 26(b)(4)(D) by simply designating the opposing party's consulting expert as a testifying expert, there would never be a safe harbor provision.

Daigle's file and any work product he prepared while serving as a consulting expert for the City in this case are not subject to disclosure consistent with Fed. R. Civ. P. 26(b). Even if the Court finds Daigle was not retained as a consulting expert for the litigation at issue, as the Court held in *Hinkel*, the provisions of Rule 26(b)(2)(D) still apply, because Daigle is a non-testifying expert retained by the City. The burden is on the Plaintiff to show that exceptional circumstances exist that warrant discovery of information regarding the City's non-testifying, consulting expert. The Plaintiff has not met this burden. The Plaintiff cannot, under Rule 26, benefit from the City's retention and financing of Daigle.

### C. THE SAFE HARBOR CREATED BY FED. R. CIV. P. 26(B)(2)(D) CANNOT BE WAIVED.

The Plaintiff argues that the Defendants waived any objections to the discovery based on Fed. R. Civ. P. 26(b)(4)(D), since this objection was not initially set out in its discovery responses. First, there can be no waiver related to the discovery request, because the discovery request did not seek the information currently being sought, as set out in Section III.A., *supra*. Furthermore, in making this argument, the Plaintiff has misconstrued applicable precedent from this District. Moreover, the Plaintiff is ignoring that her written discovery request for production served prior to the discovery cut-off date of December 1, 2023 and extended only for three (3) specified depositions [Doc. 53] did not include Daigle's work product. [Doc. 59-1, Page ID # 921].

Belatedly, Plaintiff now seeks additional discovery beyond the Scheduling Order's cut-off date. [Doc. 24, Scheduling Order, Page ID # 236].

In *Genesco*, Judge Haynes unequivocally holds that the protections of Fed. R. Civ. P. 26(b)(4)(D) cannot be waived, "[a]ssuming a waiver based upon disclosure of the Stroz report, the limitation on the nontestifying expert consultant would still bar the Stroz discovery, as that protection arises under Rule 26(b)(D)(4) that serves different purposes ***and does not permit of waiver***." *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 195, 2014 WL 935329 (M.D. Tenn. 2014) (citing *Precision of New Hampton, Inc. v. Tri Component Products Corp.*, No. C12–2020, 2013 WL 2444047 (N.D.Iowa. June 05, 2013), at *3 ("where a party enjoys protection under Rule 26(b)(4)(D), the protection is not subject to waiver.")).

Thus, consistent with *Genesco*, the City has not waived the protections of Fed. R. Civ. P. 26(b)(4)(D), since it cannot be waived, and the non-testifying, consulting expert rule bars the discovery sought by the Plaintiff.

### D. THE DAIGLE AUDIT AND ANY WORK-PRODUCT RELATED THERETO ARE INADMISSIBLE AS A SUBSEQUENT REMEDIAL MEASURE PURSUANT TO FED. R. EVID. 407.

Not only is discovery of documents related to Daigle's audit inadmissible under Fed. R. Civ. P. 26(b)(4)(D), but the information is also protected from disclosure as it is a subsequent remedial measure pursuant to Rule 407 of the Tennessee Rules of Evidence. Rule 407 reads as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
>
> • culpable conduct;

> - a defect in a product or its design; or
>
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

In *Frye v. CSX Transportation, Inc.*, 933 F.3d 591 (6th Cir. 2019), the Sixth Circuit explained:

> Frye argues that the district court erred in invoking Federal Rule of Evidence 407, which limits the grounds for admitting evidence of "subsequent remedial measures," to exclude from evidence photographs of the resurfaced crossing. A trial court's evidentiary decisions are reviewed for abuses of discretion and are not lightly overturned. *Nolan v. Memphis City Sch.*, 589 F.3d 257, 264–65 (6th Cir. 2009).
>
> Ordinarily, evidence of a subsequent remedial measure is not admissible at trial to establish a party's negligence or culpable conduct. *See* Fed. R. Evid. 407; *see also Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 292 (6th Cir. 2015). That is so, we and many others have observed, because the risk of such admission might discourage a party from otherwise remedying a potential safety hazard. *Smith v. United Broth. of Carpenters and Joiners of Am.*, 685 F.2d 164, 169–70 (6th Cir. 1982) (Keith, J., concurring); *see also* Advisory Committee's Notes on **\*604** Fed. R. Evid. 407. Whatever harm may have been caused already, and regardless who is at fault for that harm, a party should not be dissuaded from minimizing the risk of future harm for fear that such remedial measures will be used against the party to establish its liability for the originating accident. Put more simply, a good deed should go unpunished.
>
> Resurfacing a hazardous railroad crossing following an accident might strike one as a quintessential subsequent remedial measure. But Frye, to her credit, has a counterpoint. The remedial measure, she notes, seemingly was not done voluntarily, but rather by order of the Michigan Department of Transportation, a regulatory authority. And where a subsequent remedial action is compelled, not voluntary, the remedying party has not undertaken a good deed, at least not without compulsion.

*Id.* at 603-04.

On the issue of engaging in discovery as to subsequent remedial measures, the Middle District of Tennessee has held:

> Genesco next objects to Visa's discovery requests on changes to Genesco's computer system after the Intrusion, citing Federal Rule of Evidence 407 as barring admissibility of certain subsequent remedial measures. Genesco cites this rule as barring the discovery of this evidence citing *Vardon Golf Co. v. BBMG Golf Ltd.,* 156 F.R.D. 641, 653 (N.D.Ill.1994) (denying motion to compel discovery of subsequent remedial measures because the "evidence sought is not reasonably calculated to lead to the discovery of any other evidence but that relating to the culpability of Dunlop for allegedly infringing on the Raymont patent."); *Kakule v. Progressive Cas. Ins. Co.,* 2008 WL 1902201 at *4-5 (E.D. Pa. April 30, 2008) (issuing protective order because information sought in deposition would be barred by Fed. R. Evid. 407).
>
> Visa responds that Fed. R. Evid. 407 limits only the admissibility of certain evidence at trial, not discovery. Moreover, Fed. R. Evid. 407 does not apply to involuntary remedial measures. *In re Aircrash in Bali, Indon.,* 871 F.2d 812, 817 (9th Cir.1989) (FRE 407 not implicated when remedial measures are involuntary) or where necessary to prove causation. *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 429 (5th Cir.2006).
>
> Any remedial measures that were taken by Genesco to comply with the Trustwave report must be produced by Genesco. The Trustwave report reflects remedial measures that Genesco **was required to make** and, in fact, implemented those remedial measures. Thus, for discovery purposes, as to Topic Nos. 19, 20, and 25 seeking information on Genesco's remediation of its security system based upon the Trustwave report, Genesco's objection is overruled, as "evidence of a party's analysis of its product," is discoverable. *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 430 (5th Cir.2006) (quoting *Prentiss & Carlisle Co. v. Koehring–Waterous Div. of Timberjack, Inc.,* 972 F.2d 6 (1st Cir.1992)). Yet, consistent with the Court's earlier ruling on relevancy, any other remedial changes that Genesco made to its computer system **that were not required by the Trustwave report**, are inappropriate for discovery.

*See Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189 (M.D. Tenn. 2014) (emphasis added).

It is difficult to imagine a scenario that would fit more squarely within the protections of Rule 407 than the facts of this case. The harm alleged in Ms. Dahl's Complaint was that JCPD

officers were mishandling sexual assault investigations. *See e.g.,* Compl., Doc. 15 at ¶¶ 27, 39 and 40; Doc. 21, PageID # 234, at ¶ 251-283.

In response, the City voluntarily retained an outside consultant, an attorney**,** to investigate this issue. **Exhibit 1:** Ball Decl., ¶ 4. The outside consultant, Eric Daigle, issued a report to the City containing certain criticisms and recommendations. **Exhibit 1**: Ball Decl., ¶¶ 6-8. The City began implementing all of Mr. Daigle's recommendations (with one exception as to Internal Affair investigations during related pending litigation). **Exhibit 1**: Ball Decl., ¶ 8. The City began that implementation during the pendency of this litigation. *Id.*

As the Sixth Circuit has explained: "a good deed should go unpunished." *See Frye*, *supra*, at 604. If this Court were to allow discovery of information related to the Daigle Audit, including Daigle's work product materials, then it is difficult to imagine that some other local governmental entity in the future would be willing to voluntarily retain an outside consultant to investigate an issue and make recommendations during the pendency of litigation.

**E. THE DEFENDANTS WERE NOT REQUIRED TO DISCLOSE DAIGLE AS A NON-TESTIFYING, CONSULTING EXPERT IN ORDER TO RECEIVE THE PROTECTIONS OF FED. R. CIV. P. 26(b)(2)(D).**

In her Motion to Compel, the Plaintiff argues that Daigle cannot be considered a non-testifying, consulting expert, since the Defendants did not initially designate him as such. Under the Federal Rules of Civil Procedure, parties are not obligated to disclose non-testifying, consulting experts. Pursuant to Fed. R. Civ. P. 26(a)(2), "…a party must disclose the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Here, the Defendants will not be calling Daigle as a witness at trial; therefore, the Defendants were not required to make any disclosure to the Plaintiff.

**F. THE MOTION TO COMPEL SHOULD BE HELD IN ABEYANCE PENDING RESOLUTION OF THE MOTIONS FOR SUMMARY JUDGMENT.**

As present, the Defendants have Motions for Summary Judgment pending. *See* Docs. 61, 62, 66, 67. The information sought in the Motion to Compel is not material to the issues raised in those motions. The City has also raised with this Court previously the issue of subsequent remedial measures. *See* Docs. 44, 45. At a minimum, the Defendants request that the Court hold the Motion to Compel in abeyance pending a ruling on the Motions for Summary Judgment.

**G. THE PLAINTIFF IS NOT ENTITLED TO AN AWARD OF ATTORNEY'S FEES.**

Although the Defendants oppose the Plaintiff's Motion to Compel and argue that it should be denied, even if this Court grants the Motion, the Plaintiff is not entitled to an award of attorney's fees. Under Fed. R. Civ. P. 37(a), an award of attorney's fees is not appropriate if the opposing party's objections were substantially justified. *See* Fed. R. Civ. P. 37(a) Advisory Committee Notes to 1970 Amendment (where "the dispute over discovery is genuine, though ultimately resolved one way or the other by the court ... the losing party is substantially justified in carrying the matter to court."). Here, the Defendants objections to producing the work product of its non-testifying, consulting expert were justified, particularly in light of the holding from *Genesco*. *See Whitt v. K-VA-T Food Stores, Inc.*, No. 3:17-CV-254-TWP-HBG, 2019 WL 332401, at *3 (E.D. Tenn. Jan. 25, 2019) ("The Court declines to award attorney's fees at this time because the parties genuinely disputed whether Defendant's responses were deficient.").

**IV. <u>CONCLUSION</u>**

The Plaintiff's Motion to Compel should be denied, as the Plaintiff cannot compel the Defendants to produce documents she never requested and/or documents outside the scope of an agreement negotiated by the parties. The Motion to Compel must also be denied, because the

17

discovery sought is protected pursuant to Fed. R. Civ. P. 26(b)(4)(D), and the non-testifying, consulting expert provisions of this Rule cannot be waived. The information sought is also not discoverable, as it pertains to subsequent remedial measures under Fed. R. Evid. 407. Alternatively, the Defendants ask the Court to hold the Motion to Compel in abeyance, pending a resolution of the Defendants' Motions for Summary Judgment. Finally, in the event the Court grants Plaintiff's Motion to Compel, an award of attorney's fees is not warranted, as the Defendants were justified in resisting the discovery sought.

RESPECTFULLY submitted this 24th day of January, 2024.

*s/ Emily C. Taylor*
Emily C. Taylor, BPR # 27157
WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
Phone: (865) 637-1700
Fax: (865) 525-2514
Email: etaylor@watsonroach.com

*s/ K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
HERRIN, McPEAK & ASSOCIATES
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
MILLIGAN & COLEMAN PLLP
P.O. Box 1060
Greeneville, TN 37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
Email: tgarland@milligancoleman.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

   I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system:

| | |
|---|---|
| Hugh A. Eastwood | Alexis I. Tahinci |
| Attorney at Law | TAHINCI LAW FIRM, PLLC |
| 7911 Forsyth Blvd., Suite 300 | 105 Ford Avenue, Suite 3 |
| St. Louis, Missouri 63105-3825 | Kingsport, Tennessee 37663 |

   Dated this 24th day of January, 2024.

                *s/ Emily C. Taylor*
                Emily C. Taylor, BPR # 27157
                WATSON, ROACH, BATSON &
                LAUDERBACK, P.L.C.
                P.O. Box 131
                Knoxville, TN 37901-0131
                Phone: (865) 637-1700
                Fax: (865) 525-2514
                Email: etaylor@watsonroach.com

19

Case 2:22-cv-00072-KAC-JEM  Document 74  Filed 01/24/24  Page 19 of 19  PageID #: 1616