UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KATERI LYNNE DAHL,                     ]
                                        ]
        Plaintiff,                      ]
                                        ]
v.                                      ]        No.: 2:22-cv-00072-KAC-JEM
                                        ]
CHIEF KARL TURNER, et al.,              ]
                                        ]
        Defendants.                     ]


**ANSWER TO FIRST AMENDED COMPLAINT ON BEHALF OF THE CITY OF
JOHNSON CITY, TENNESSEE AND CHIEF KARL TURNER, IN HIS INDIVIDUAL
CAPACITY**

Come now the Defendants, City of Johnson City, Tennessee ("City" or "Johnson City")
and Karl Turner in his individual capacity ("Chief Turner") to *Answer* the *First Amended
Complaint* filed against them and would respond as follows:

**FIRST DEFENSE**

With respect to the First Amendment retaliation claim, even if Kateri Lynne Dahl ("Dahl"
or "plaintiff") could prove that she engaged in protected activity and that this activity was known
to the decisionmaker, under the *Mt. Healthy* defense there was a sufficient basis to non-renew
Dahl's contract regardless of her engagement in any protected activity.

**SECOND DEFENSE**

Dahl's Fourteenth Amendment procedural due process claim fails to state a claim upon
which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). To the extent Dahl is
alleging a property interest, she did not have a property interest in having her contract renewed.
*See Hardy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012). To the extent Dahl
is alleging a liberty interest, there was no conduct by Johnson City or Chief Turner, individually,

1

that triggered a liberty interest. Alternatively, even if there were a liberty interest, Dahl never requested a name-clearing hearing.

**THIRD DEFENSE**

Dahl's Fourteenth Amendment substantive due process claim fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A substantive due process claim based on a right to free speech is duplicative of a First Amendment retaliation claim. Furthermore, regarding the "shocks the conscience" standard, where the alleged "shocking" behavior is the termination of employment due to the exercise of free speech rights, then that allegation is insufficient as a matter of law to support a substantive due process claim. *See Hardy-Clay*, *supra*, at 547-48.

**FOURTH DEFENSE**

Dahl, an attorney tasked to the Johnson City Police Department to advise and pursue criminal prosecutions, held a "category-three" position under the *Elrod-Branti* exception. *See Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 267 (6th Cir. 2005). While the Defendants deny knowledge of Dahl's alleged protected activity and deny that the non-renewal of her contract was based on her engaging in any protected activity, the non-renewal of her contract was not a violation of the First Amendment under the *Elrod-Branti* exception.

**FIFTH DEFENSE**

With respect to the First Amendment retaliation claim, Chief Turner is entitled to qualified immunity for several alternative reasons. First, to the extent that Dahl is considered an employee and she was complaining about matters related to her job duties, then she has not engaged in protected speech. Second, to the extent Dahl has engaged in speech that she claims was protected, Chief Turner does not know what that speech was, and reserves the right to argue that it was not

2

protected speech. Third, at the time of the non-renewal of Dahl's contract, Chief Turner did not know Dahl had engaged in alleged protected speech. Therefore, he could not have retaliated against her for having engaged in protected speech. Fourth, even if Chief Turner had known that Dahl was engaging in otherwise protected speech, but was making allegations that a reasonable person would realize were frivolous, then either that speech was not protected or the alleged employer's interest in promoting the efficiency of public services that it performs through its employees outweighs the right of Dahl to make baseless, frivolous allegations against those persons whom she is advising regarding the pursuit of criminal prosecutions. In the further alternative, a reasonable police chief could have believed under the facts of this case that his recommendation not to renew Dahl's contract was not in violation of her First Amendment rights.

## SIXTH DEFENSE

With respect to the Fourteenth Amendment procedural due process claim based on the allegation of a property interest, Chief Turner is entitled to qualified immunity as a matter of law. Dahl did not have a property interest in the renewal of her contract. Alternatively, there was no clearly established law that would have placed every reasonable police chief on notice that Dahl was entitled to procedural due process based on a property interest in the renewal of her contract. In the further alternative, to the extent that Dahl was entitled to procedural due process, her meeting with Chief Turner complied with procedural due process and/or a reasonable police chief could have believed it complied with procedural due process.

## SEVENTH DEFENSE

With respect to the Fourteenth Amendment procedural due process claim based on an alleged liberty interest, Chief Turner is entitled to qualified immunity as a matter of law. There are no facts supporting a liberty interest. In the alternative, Dahl never requested a name-clearing

hearing. In the further alternative, there is no clearly established law that would have placed every reasonable police chief on notice that Dahl was entitled to a name-clearing hearing based on a liberty interest under the facts of this case; and/or there was no clearly established law that would have placed every reasonable police chief on notice that there was an obligation to provide a name-clearing hearing where no name-clearing hearing had been requested.

## EIGHTH DEFENSE

With respect to the Fourteenth Amendment substantive due process claim, Chief Turner is entitled to qualified immunity because Dahl has not stated a substantive due process claim for the reasons set forth in the Third Defense. Alternatively, there is no clearly established law that would have placed every reasonable police chief on notice that he was violating Dahl's substantive due process rights under the facts of this case.

## ANSWER

1.      With respect to the allegations contained in paragraph One (1) of the *First Amended Complaint*, the allegations in the first sentence are admitted. The allegations in the second sentence are denied to the extent that Dahl is alleging that she gathered such evidence during her tenure as a Special Assistant United States Attorney ("SAUSA") or at any time known to the defendants. The allegations in the third and fourth sentences are denied. The allegations in the fifth sentence regarding the fact that Dahl obtained a sealed federal indictment and arrest warrant for Sean Williams ("Willams") are admitted. It is denied that the federal charge against Williams, which was a felony, was "relatively minor." It is denied that Johnson City police officers unreasonably delayed the execution of the warrant. These defendants had no involvement in the incident with certain officers being at the door of Sean Williams' residence on May 5, 2021, and the allegations are denied as stated.

2.      With respect to the allegations in paragraph Two (2), the allegations in the first sentence are admitted that Dahl's annual employment MOU had previously been renewed and that in a May 19, 2021 meeting – of which a secret recording by Dahl exists – that Chief Turner indicated that he expected her contract to be renewed. The allegations in the second sentence are denied. The allegations in the third sentence are denied – except and to the extent that it is admitted that prosecutors, not police, decide which cases to present for indictment – and as proven by Dahl's own secret recording of the May 19, 2021 meeting, she decided that she would present five (5) cases at the June 2021 Federal Grand Jury and she decided which five cases that would be. The allegations in the fourth sentence are denied. The allegations in the fifth sentence are admitted that she did not present the five (5) cases she said she would present. The allegations that the one case she did indict was a case "Johnson City police deemed a priority" is false. The allegations in the sixth sentence are denied. Chief Turner did not "identify" the cases, and it is unknown why three of the cases were never indicted in Federal Court. The allegations in the seventh sentence seven paragraph are denied. The allegations in eighth sentence are denied on the basis that Chief Turner was not the decisionmaker. The allegations in the ninth sentence are denied.

3.      Admitted City Attorney Sunny Sandos contracted with the Daigle Law Firm to conduct an Audit of sexual assault files and serve as a consulting expert. The Daigle Audit was released to the public and speaks for itself. The summary of the Audit contained in paragraph three (3) of the *Amended Complaint* is incomplete and inaccurate and therefore denied.

4.      The allegations in paragraph 4 are denied as stated. Even Dahl, herself, was asked by Chief Turner during a meeting on December 8, 2020 whether she and her supervisor, Assistant United States Attorney Wayne Taylor, thought there was sufficient evidence to seek a search warrant for the contents of Williams' computer, and Dahl stated that they thought it was "50/50."

5

This is proven by Dahl's own secret recording of the December 8, 2020 meeting with Chief Turner and Captain Kevin Peters. Further answering, the Defendants are without knowledge or information sufficient to form a belief as to any allegation as to what the First Judicial District Attorney has discovered on the computer that was in the possession of the Johnson City Police Department.

5. It is admitted that a second lawsuit related to Williams has been filed by Jane Doe victims alleging conspiracy and sex traffic claims. Such allegations are frivolous and have been made without any evidence whatsoever. The remaining allegations in paragraph (5) are denied.

6. Denied, except that a pole camera was erected and it is noted Dahl is now asserting a claim under the National Defense Authorization Act.

7. Denied.

8. Denied except and to the extent that the United States Attorney's Office has dismissed the federal ammunition charge.

9. Admitted to the extent that Williams escaped custody on October 18, 2023, from a transport van provided by a Kentucky detention center and that the local U.S. Marshals office is investigating if Williams had insider assistance in his escape.

10. The allegations contained in paragraph Ten (10) are denied except and to the extent it is admitted that Dahl's supervisor in the U.S. Attorney's Office, Wayne Taylor, has testified that Dahl's work performance was below standard in a manner that was consistent with the complaints raised by Johnson City officers who depended on Dahl for the prosecution of their criminal cases.

**Parties**

11. Admitted.

12. Admitted that Karl Turner was the Chief of Police for Johnson City at all relevant

6

times. It is denied that Chief Turner was the final policy maker with respect to the renewal of Dahl's MOU and further denied that he was responsible for supervising Dahl. It is admitted that the City offered a citywide retirement incentive for any employee eligible for full retirement benefits and that more than thirty (30) people throughout the City accepted the offer, including Chief Turner.

13. Admitted.

## Jurisdiction and Venue

14. Dahl's asserted causes of the action are noted.

15. Federal jurisdiction with this Court is admitted.

16. Admitted that Court has the discretion to adjudicate state law claims under supplemental jurisdiction.

17. Venue with this Court is admitted.

## Color of State Law

18. Admitted that the Defendants at all times acted under color of state law. The allegations in the second sentence of paragraph (18) are denied to the extent that the Plaintiff is alleging that any action taken by "all defendants" was pursuant to a policy or custom.

## Jury Demand

19. It is noted Dahl demands a jury trial on her claims for damages and these responding Defendants likewise request a jury trial.

## Facts

## Dahl's employment under the MOU

20. Admitted with the exception that the MOU expired effective June 30, 2021. From July 1, 2021 through July 30, 2021, Dahl was continuing to serve in a limited capacity for the

7

purpose of transitioning her cases to other Assistant United States Attorneys in the Greeneville Office under contract with the City.

21.    Admitted. Further answering, in the December 8, 2020 meeting with Chief Turner, Dahl had explained that if she proceeded with the federal prosecution at that time, Williams, with his criminal history, would make bond. This fact is established by Dahl's own secret recording of the December 8, 2020 meeting.

22.    Admitted.

23.    Admitted with the exception that it is denied Dahl met the criteria for being an employee of the City of Johnson City.

24.    Admitted.

25.    These responding Defendants are without sufficient knowledge or information as to what Dahl's supervisor in the U.S. Attorney's Office may have told her, but it is denied that Dahl was supervised by anyone other than AUSA Wayne Taylor.

26.    Admitted that Dahl had little contact, if any, with the District Attorney's Office or had any contact or interaction with the County Mayor or City Manager of Johnson City. It is again denied that Chief Turner was a final decision maker with authority as to Dahl's job duties under the terms of the contract provided as Exhibit One (1) to the *Amended Complaint.*

27.    Admitted.

28.    Denied as stated.

29.    Admitted only to the extent Dahl's contract was extended for twelve (12) months as of June 30, 2020.

## The Sean Williams Investigation

30.    It is admitted that on November 13, 2020, Detective Toma Sparks initiated a request

for assistance of SAUSA Dahl related to a potential federal charge of felon in possession of ammunition against Sean Williams. This request was a part of Sparks' criminal investigation of Williams in an attempted homicide investigation. These responding Defendants can neither admit or deny as to the existence of any informal policies within the Greeneville U.S. Attorney's Office due to a lack of sufficient knowledge or information.

31.     Admitted that the reason Dahl's assistance was sought by Investigator Sparks was because Williams was under investigation for attempted homicide after Jane Doe One (1) who had fallen from Williams' fifth-floor apartment on September 19, 2020. Admitted Williams was a convicted felon based on a manufacturing marijuana charge in North Carolina and was a suspect in two (2) sexual assault cases arising in Johnson City. Upon information and belief, it is admitted that Detective Sparks did discuss with Dahl rumors related to Williams involving his hosting of parties that involved cocaine, but it is denied that evidence existed at that time to conclude Williams was considered to be a cocaine trafficker.

32.     Admitted with the exception that it is denied a handwritten note was seized, but admitted a photograph of such a note was obtained.

33.     These responding Defendants cannot admit or deny due to a lack of sufficient knowledge or information regarding the steps Dahl may have taken following her agreement with Detective Sparks to assist him in obtaining a search warrant for Williams' computer equipment.

34.     The allegations contained in paragraph thirty-four (34) of the *Amended Complaint* are neither admitted or denied due to a lack of sufficient knowledge or information as to Dahl's conversations with others or her conduct.

35.     These responding Defendants cannot admit or deny due to a lack of sufficient knowledge or information any conversations between Dahl and Detective Sparks due to a lack of

9

sufficient knowledge or information. It is admitted that in a tape recording secretly produced by Dahl, she explained her interest to Chief Turner and Captain Peters as to her preference to build a larger case against Williams instead of first proceeding with an indictment for the felon in possession of ammo charge as was suggested as an option. As shown by Dahl's own secret recording, she never expressed a concern that Williams would try to flee or destroy evidence after being released on bond. But again, Dahl did represent that she would expect Williams to be released on bond.

36. Denied as stated. Dahl's contract provided Dahl could prosecute any type of criminal case, [but] the primary focus of her position would be in areas identified in paragraph one (1) of the *Amended Complaint*. Answering further, Dahl had been advised of rumors of cocaine trafficking and irrefutable evidence of a felon in possession of ammunition. Investigating Williams could lead to additional federal charges and therefore it is denied that Dahl was or would be acting outside the scope of her contract. Moreover, her supervisor, AUSA Taylor, did not view the Williams' matter as outside the scope of her job duties.

37. Admitted sexual assaults and rape are normally prosecuted by the local District Attorney's Office under state criminal statutes. The remaining allegations contained in paragraph thirty-seven (37) of the *Amended Complaint* are statements of law to which no response is required or made.

38. These responding Defendants were without sufficient knowledge or information to admit or deny if the fact that Dahl, having been subjected to a sexual assault or her belief that her assault case had been mishandled by a northern Virginia police department impacted her conduct related to the Williams case. These responding Defendants are likewise without knowledge or information to determine the impact these events may have had as to Dahl's approach, strategy

10

and objectivity with respect to the Williams' investigation and prosecution.

39.     These responding Defendants are without sufficient knowledge or information involving Dahl's request of files from Detective Sparks to admit or deny the allegations, but at this time, the Defendants are aware that files involving Williams were sent to Dahl in November 2000.

40.     Prior to the non-renewal decision of Dahl's contract, these responding Defendants were without sufficient knowledge or information to admit or deny the allegations contained in paragraph forty (40) of the *Amended Complaint.*  Based on pre-trial discovery conducted in Dahl''s lawsuit, it is admitted Peters did receive and send the referenced email on December 4, 2020.

41.     With respect to the allegations in paragraph (41), these Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence. The allegations in the second sentence are admitted. With respect to the third sentence, it is admitted that Chief Turner requested to meet with Dahl to see how she wished to proceed with the prosecution of Williams.

42.     Denied since the allegations in paragraph forty-two (42) are consistent with the secret recording produced by Dahl commemorating her meeting with Chief Turner and Captain Peters on December 8, 2020.

43.     It is again denied that the allegations contained in paragraph forty-three of the *Amended Complaint* accurately reflect the secret recording produced by Dahl during her meeting with Chief Turner and Captain Peters on December 8, 2020.

44.     These responding Defendants do not have sufficient knowledge or information to admit or deny conversations between Wayne Taylor and Dahl.

45.     It is admitted that Jane Doe 3 came to the Johnson City Police Department on December 15, 2020 at the behest of Dahl and was cooperative in providing an interview.  It is

denied that Jane Doe 3 provided a statement on December 15, 2020 that she had been raped, but admitted she repeated her prior statement that she had been sexually assaulted, but not that she had been subjected to penetration as she had initially reported to responding officers.

46. The allegations contained in paragraph forty-six (46) of the *Amended Complaint* are admitted in part and denied in part. It is admitted that on June 2, 2020, a female called 911 in extreme distress resulting in the dispatch of officers to the vicinity of the call. It is admitted that the female caller encountered Johnson City police officers, but it is denied that such was in the downstairs lobby of Williams' apartment. All remaining allegations are denied.

47. It is denied that Dahl is capable of exercising professional judgment, especially under circumstances where she does not correctly state the facts. Further answering, Dahl engages in reckless and frivolous speculation regarding a matter in which she does not understand the basic facts of what occurred related to the interaction between Jane Doe 3, her mother, and officers of the Johnson City Police Department.

48. These responding Defendants are without sufficient knowledge or information to admit or deny the allegations directed to Captain Peters' comments related to an assault victim's Facebook profile.

49. With respect to the allegations in paragraph forty-nine (49), on December 15, 2020, Chief Turner sent AUSA Wayne Taylor an email with a list of cases requesting a status report from Dahl. Further answering, these responding Defendants are without sufficient knowledge or information to admit or deny any communications between Dahl and her supervisor, Wayne Tayor, on December 15, 2020.

50. It is denied that Chief Turner distributed to AUSA Taylor a list of Dahl's cases for which he wanted indictments, to the contrary, he simply requested status information as to those

cases. It is denied that the list was unusual since it served to confirm complaints from investigative officers who had expectations Dahl would proceed with the prosecution of their cases or otherwise respond regarding their cases to quantify the extent of the backlog. The remaining allegations contained in paragraph fifty (50) of the *Amended Complaint* assert issues of law to which no response is required or made. The Plaintiff's characterization of lacking access to a Federal Grand Jury is denied based on the deposition testimony of her supervisor, Wayne Taylor.

51.     Admitted that Dahl, at a time when she was upset regarding criticism of her job performance, contacted the identified CID (SIS) officers, but denied any officers stated they "did not know why Chief Turner had made [an] allegation [expressing concerns about her job performance]." Answering further, it is admitted the officers were not candid with Dahl as to their knowledge of Dahl's shortcomings with respect to timely moving their case files forward or otherwise being responsive.

52.     Denied.

53.     These responding Defendants cannot admit or deny due to a lack of sufficient knowledge or information that Dahl obtained credible information or statements regarding Williams since such was never shared with JCPD to determine if they were actionable.

54.     Denied, except and only to the extent that it was generally known that Dahl hoped to continue to seek evidence of alleged sexual assaults before obtaining a federal indictment for felon in possession on Sean Williams.

55.     Denied. Further answering, with respect to the quotes in paragraph fifty-five (55) of the *Amended Complaint*, these Defendants cannot admit or deny those allegations and because they are not attributed to these responding Defendants.

56. Denied that "Dahl reasonably became concerned and confused by Johnson City's failure to investigate Williams" because Dahl had no training or experience investigating rape and sexual assault cases, including what would be necessary for a successful prosecution. With respect to the alleged quotation from an unidentified "male investigator," throughout her *Complaint* Dahl provides quotes and intentionally does not disclose the identity of the alleged speaker. Therefore, these responding Defendants cannot admit or deny such quoted statements.

57. Denied. Moreover, Dahl had offered to assist Detective Sparks with the language in the search warrant affidavit, but she never did so. In fact, she did not begin reviewing Detective Sparks's draft search warrant until a month after he sent it, which is consistent with her pattern of not timely responding to persons as testified to in the deposition of her supervisor, AUSA Wayne Taylor.

58. It is denied Chief Turner called AUSA Taylor to simply complain about Dahl's job performance, but rather was requesting specific information about Dahl's lack of response to assisting in obtaining a search warrant. Dahl's communication with AUSA McCauley – as demonstrated by their email correspondence – indicates that both she and AUSA McCauley did not believe there was sufficient evidence to obtain a search warrant. Dahl's attempt to recharacterize her communications with AUSA McCauley are demonstrably false as shown by the available email communications.

59. It is admitted that Dahl requested investigators obtain a certified copy of Williams' earlier felony judgment conviction from the 1990s in North Carolina. It turned out that that conviction was so old that it was difficult to obtain as demonstrated by Dahl's own emails with North Carolina Court officials. It is denied that an Investigator did not attempt to obtain what he thought Dahl needed from the archives of a Court located in North Carolina.

60.     It is admitted that in January, 2021, a woman, designated by Ms. Dahl as Jane Doe 4, left a written message on Johnson City's tipline claiming to have been sexually assaulted by Williams.  This resulted in an investigator's effort to solicit further contact and information.  The reporting assault victim did not thereafter respond or identify herself.  These responding Defendants were without knowledge of this anonymous tip at the time of the events in question and they are without sufficient knowledge or information to admit if and when Dahl learned of the anonymous sexual assault report.

61.     It is admitted that sometime in January, 2021, someone wrote the word "rapist" as graffiti on Williams' garage door.  The Defendants cannot admit or deny private conversations between Dahl and an intentionally unidentified Johnson City officer due to a lack of information.

62.     These responding Defendants cannot, due to a lack of information, admit or deny Dahl's receipt of rumors, hearsay, gossip and allegations against Williams from intentionally unidentified individuals.

63.     Denied as stated.  Answering further, it is admitted that Johnson City officers, through their chain of command, expressed an interest in seeing some type of movement toward prosecution as to federal cases that had been sent to SAUSA Dahl.  It is admitted that an updated list of cases that had previously been sent to SAUSA Dahl, including a list of cases the officers had stopped sending to her, was sent to Chief Turner for his information. All other allegations contained in paragraph sixty-three (63) of the *Amended Complaint* are denied.

64.     The allegation against "Johnson City" is denied. Further answering, Dahl had sought to indict Williams in March, 2021, but delayed it for one month due to the fact that his North Carolina conviction was on microfilm. It is admitted that on April 13, 2021, Dahl obtained an indictment against Williams for the "Ammo FIP" charge.  These Defendants deny being aware

15

of any additional evidence that could have been presented to Dahl.

65.     Dahl is cherry picking statements made in two different meetings with Chief Turner to create a story that never existed. On December 8, 2020, Dahl met with Chief Turner and Captain Peters to discuss how she wanted to proceed in the Williams' investigation – *i.e.*, seek a federal indictment first or further investigate sexual assault investigations before seeking a federal indictment. In that meeting, she decided she wanted to wait on seeking the federal indictment, and in that meeting, she told Chief Turner and Captain Peters that Williams would likely be sentenced to four or five years on the federal charge of felon in possession of ammunition. Then, on May 19, 2021, there was a second meeting with Dahl, Chief Turner and Captain Peters wherein Dahl now stated that she had reviewed the federal sentencing guidelines and Williams would likely serve two to three years, but perhaps four. At this point in time, Williams had already been indicted on April 13, 2021. And it was in this May 19, 2021 meeting where Chief Turner – who already had enough years in to retire – indicated that by the time Williams would get out of prison that he, Chief Turner, hoped to be retired. Therefore, Dahl's invented story in paragraph 65 is denied.

66.     These responding Defendants are not aware of any informal policies within the Greeneville United States Attorney's Office and can neither admit nor deny the existence of any such policies at this time. Allegations regarding Johnson City's designation as the responsible agency is neither admitted or denied. It is admitted that the Johnson City Police Department was the investigating agency of Williams and was the agency which had confiscated the ammunition that led to Williams' criminal indictment. These responding Defendants are without sufficient knowledge or information regarding private conversations between Detective Sparks and Dahl and therefore such conversations related to the responsibilities for executing the federal arrest warrant are neither admitted nor denied.

16

67.     Admitted that Dahl, after April 13, 2021, had several communications with Detective Sparks and SIS officers expressing her anxiousness to have Williams arrested. It is denied her concerns were ignored, and admitted officers were attempting to spot Williams out and about in the downtown area instead of staging an apprehension. Again, these responding Defendants do not have sufficient information to admit or deny conversations with unidentified officers that Dahl alleges to have had.

68.     On information and belief, Dahl spoke with Investigator Sparks and Sgt. LeGault on this day about Williams. These responding Defendants are without sufficient knowledge or information to address the content of her conversation with Investigator Sparks. With respect to Sgt. LeGault, there is a secret recording made by Dahl and it is denied that on that recording that Dahl "demanded that someone within the Johnson City Police Department carry out the arrest immediately."

69.     Upon information belief, it is admitted that on May 6, 2021, Dahl received a voice mail from CID Lieutenant Don Shepard. It is further admitted that Lieutenant Shepard communicated that three (3) Johnson City officers had communicated with a person inside Williams' condominium the previous evening. Since Lieutenant Shepard was not relaying information based on his personal knowledge of events, the remaining allegations contained in paragraph sixty-nine (69) of the *Amended Complaint* are denied at this time, with the exception that it is admitted that Detective Sparks did issue a "be on the lookout" (BOLO) email for Williams' arrest on May 5, 2021.

70.     The Defendants had no contemporaneous knowledge of the events of May 5, 2021 on which the allegations in paragraphs 70-78 are based. On information and belief, it is denied that Johnson City K-9 Officer Lewis went to Williams' apartment with the intention of executing an

arrest warrant but was attempting to assess the situation as he had done, according to his deposition testimony, on his own, on hundreds of occasions. Therefore, General Order 200.04A was not applicable under these facts.

71. On information and belief, it is denied that the 911 tapes referenced in paragraph seventy-one (71) of the *Amended Complaint* reflect K9 Officer Jason Lewis knocking on Williams' door around 9:50 p.m. Answering further, Officer Lewis called for backup and has testified about his remembrances, as have the other officers present, as to their remembrances regarding the encounter with a male located within Williams' apartment. It is denied that Officer Lewis described his actions as a "knock" execution of the arrest warrant.

72. These responding Defendants are without sufficient knowledge or information to determine when Officer Lewis knocked on Williams' apartment door, but it is generally admitted that Williams did call 911, as well as his representation to 911 that it was his roommate behind the locked door of his apartment and that he was elsewhere. On information and belief, it is admitted that ultimately Williams spoke directly with Sergeant Talmadge who has testified he could not determine with sufficient certainty to obtain a search warrant if Williams was or was not in his apartment at the time the officers were present.

73-74. There is sufficient confusion regarding the whereabouts of Williams at the time the officers were present at his apartment door that these responding Defendants can neither admit or deny the accuracy of the timing and determinations alleged in paragraphs seventy-three (73) and seventy-four (74) of the *Amended Complaint*, due to a lack of any personal knowledge of the events.

75-76. On information and belief, it is admitted that the communications with a person behind the door of Williams' apartment is commemorated to a limited degree with an available

recording from 911 which has been made available to the parties to this lawsuit. Therefore, the Plaintiff's allegations of various segments from the recording do not convey the most accurate degree of available circumstances and therefore these responding Defendants cannot admit or deny the out of context statements alleged in paragraphs seventy-one (71) through seventy-six (76) of the *Amended Complaint.*

77. The Defendants have no personal knowledge of what occurred. On information and belief, Officer Lewis apparently went on a scouting mission in response to the issuance of a BOLO and he unexpectedly ended up communicating with someone on the other side of Williams' door. If Williams was inadvertently "tipped off" by the chain of events that followed, that has nothing to do with the claims being asserted in this lawsuit against Chief Turner, individually, and Johnson City. And once again, these Defendants had no knowledge that Officer Lewis (or the other officers) would end up at Williams' door, and the Defendants had no knowledge that the officers would withdraw from Williams' door, which was at the direction of a supervisor on duty based upon information that the officers on the scene could not say whether Williams was behind the door or not..

78. On information and belief, the Plaintiffs allegations are denied. In making this denial, these responding Defendants adopt their answer to paragraph seventy-seven (77). Further answering, based on information and belief, Dahl's allegation the officers at the scene voluntarily withdrew even though they allegedly knew Williams was inside is denied. Based on the testimony of those officers during discovery, they did not know if Williams was inside or not. Moreover, on information and belief, Dahl's allegation that this incident was a planned "knock and talk" with no written Threat Assessment Plan is denied. According to the testimony of the officers in the course of this litigation, there was no plan to attempt to arrest Williams. Officer Lewis was on a scouting

19

mission and unexpectedly ended up communicating with someone behind Williams' door.

79.     Denied as stated. It is admitted that Williams fled Johnson City on an unknown date, but it is neither admitted or denied when Williams fled or if any credible, actionable social media posts reflecting his whereabouts exist.  Admitted Williams was arrested on April 29, 2023 in North Carolina by a Western Carolina campus security officer.

80.     Denied that "Johnson City" took any action.

81.     Denied with the exception that it is admitted Williams fled Johnson City and that Dahl was concerned.

82.     The Defendants had no knowledge of any communications Dahl had with Sergeant LeGault or Sergeant Matt Gryder.

83.     As noted in Dahl's secret recording on December 8, 2020 Dahl expressed the likelihood that Williams could easily make bond and would be allowed to do so; therefore the allegations in paragraph eight-three (83) of the *Amended Complaint* are denied.  It is admitted Dahl's MOU contains the quote recited but again Dahl's expectation at the time was that Williams would be able to make bond. Therefore, Dahl's bold citation to the quoted language from the MOU is misleading. The remaining allegations in paragraph eighty-three (83) of the *Amended Complaint* are denied.

84.     These responding Defendants had no knowledge that Dahl had made any report on May 11, 2021 to the local Federal Bureau of Investigation until more than a year and a half later following written discovery and deposition testimony in her lawsuit. These responding Defendants still do not have sufficient information as to the subject matter or substance of the conversation Dahl had with an FBI agent in May, 2021.

85.     It is admitted that on May 19, 2021 Dahl met with Chief Turner and Captain Peters to review a backlog of ongoing criminal cases that had been previously distributed to Dahl for her further handling and potential prosecution.  It is now known that Dahl secretly recorded this meeting and therefore the best evidence of the discussions are the now disclosed secret recording. It is denied that the allegations contained in paragraph eighty-five accurately reflect the substance or tone of this meeting with Dahl.

86.     Again, it is now known that there is a secret recording of this meeting made by Dahl without notifying the participants they were being recorded.  However, the recording serves as the best and irrefutable evidence of what discussions took place. These responding Defendants therefore deny that the allegations contained in paragraph eighty-six (86) of the *Amended Complaint* accurately reflect those discussions.

87.     The allegations are demonstrably false as evidenced by Dahl's own secret recording of the May 19, 2021 meeting, and are therefore denied. Moreover, Dahl decided she would seek indictments on five specific cases and Dahl decided which cases those would be. Finally, Dahl explicitly agreed to directly update Captain Peters with the results of the June Federal Grand Jury, which she failed to do.

88.     At the time of the events in question, the Defendants had no knowledge of the allegations in paragraph eighty-eight (88). Moreover, consistent with her problems with communications experienced by her supervisor AUSA Wayne Taylor, Dahl never reported to Captain Peters that something had allegedly come up that would prevent her for doing what she said she would do in the May 19, 2021 meeting. Finally, on information and belief, it is denied that two days after the May 19, 2021 meeting that Dahl was assigned to participate in the criminal case she is referencing; and even so, that criminal case was resolved on June 3, 2021 – six days

before the Grand Jury convened.

89.     With respect to the allegations in paragraph eighty-nine (89), the assertion that Dahl was assigned in May to participate in the case to be tried in June is denied. Further answering, the Defendants are without knowledge or information sufficient to form a belief as to Dahl's conduct or perceptions in May of 2021.

90.     These responding Defendants cannot admit or deny, due to a lack of knowledge or information, any communications that may have occurred between Dahl and an unidentified assault victim, designated by Dahl as Jane Doe 5, on June 14, 2021.

91.     The allegations contained in paragraph ninety-one (91) of the *Amended Complaint* are denied, there being no rational basis for Dahl's alleged concerns.

92.     With respect to the allegations in paragraph ninety-two (92) of the *Amended Complaint*, the assertions that Dahl's "investigation was consistent with all laws and policies" makes no sense and the allegation is therefore denied.

93.     Admitted Dahl was not tasked under her contract to investigate her speculative allegation of public corruption involving the JCPD. The remaining allegations are denied.

94.     These responding Defendants are without sufficient knowledge or information sufficient to admit or deny that Dahl investigated or attempted to prosecute the Johnson City Police Department, Chief Turner or the officers with whom she worked most closely.  Answering further, it is admitted she was not tasked with such responsibility under her contract.

95.     These responding Defendants are without sufficient knowledge or information from which to admit or deny that Dahl spoke with unidentified third parties or if she described her unfounded concerns regarding the Johnson City Police Department or Chief of Police to them.

96.     These responding Defendants cannot admit or deny, due to a lack of sufficient

information, what Dahl may have communicated to AUSA McCauley or other unidentified federal prosecutors in November and December, 2020 including any responses she may have received regarding her speculative commentary.

97.     These responding Defendants are without sufficient knowledge or information to admit or deny any communications in December, 2020 between Dahl and her three (3) intentionally unidentified female friends.

98.     The Defendants deny that they had any knowledge prior to the decision to not renew Dahl's MOU that she had made any complaint to an FBI agent or AUSA Taylor that was related in any way to these Defendants.

99.     Admitted, with the exception that it is denied the assigned officer as an FBI liaison regularly communicated with Chief Turner.

100.    Denied.

101.    It is admitted that on or about June 25, 2021, Chief Turner called Dahl to inform her that a decision had been made that her contract would not be renewed and that the contract would therefore terminate pursuant to its terms.

102.    Denied, except and to the extent that Dahl's allegations are consistent with the following averments:

      (a)     are without knowledge or information as to Dahl's mindset;

      (b)     admit that Chief Turner had given no previous indication that Dahl's contract might not be renewed, but Chief Turner had a sit down meeting with Dahl on May 19, 2021 to review her list of cases, and in that meeting, Dahl decided that she would take five specific cases to the Grand Jury in June, and Dahl agreed that she would report the results of the June Grand Jury to Captain Peters so that he, in

23

turn, could report to Chief Turner;

(c)     admit that Chief Turner reviewed several of Dahl's cases with her on May 19, 2021, but is not aware if this list constituted her caseload;

(d)     without knowledge or information if Dahl had a trial set in September, 2021;

(e)     Chief Turner did not assure Dahl on May 19, 2021 she could expect a "smooth renewal", however, as of May 19, 2021, Chief Turner expected that Dahl would do what she had represented in the meeting that she was going to do.

103.    These responding Defendants cannot admit or deny any communications Dahl had with third parties regarding the expiration of her contract. It is denied that Chief Turner could have unilaterally decided to not renew her contract. Answering further, it is admitted that no signatory to Dahl's contract outside of Johnson City was notified in advance of Johnson City's decision to not renew Dahl's contract.

104.    Denied that Dahl's contract was terminated and denied that Chief Turner had the authority to make that decision. Answering further, no signatory outside of Johnson City was notified in advance of Johnson City's decision not to renew Dahl's contract.

105.    It is admitted that AUSA Taylor and Johnson City worked out an arrangement so that Dahl could be compensated directly by Johnson City for one month for purposes of allowing time to transition her cases to other Assistant United States Attorneys in the Greeneville Office.

106.    Admitted.

107.    Admitted.

108.    The meeting referenced in paragraph one hundred eight (108) of the *Amended Complaint* is the subject of a secret recording produced by Dahl. Therefore, these responding Defendants submit that the recording is the best evidence of the conversations and that the

24

allegations made by Dahl do not accurately reflect the tone and substance of the meeting and are therefore denied. It is admitted that Johnson City did not communicate with other signatories of Dahl's contract due to the short time frame, and the City Attorney's advice that it was not necessary. All other allegations are denied.

109.	Again, the meeting referenced in paragraph one hundred nine (109) of the *Amended Complaint,* was secretly recorded by Dahl and it is denied that the allegations accurately convey the events that occurred during this now known recorded meeting. Answering further, it is admitted Chief Turner made a phone call to Sergeant LeGault. It is denied the phone call, while not prearranged, was "out of the blue" or pertained to a subject matter about which LeGault was not familiar. It is denied Chief Turner was seeking LeGault's opinion as to Dahl's job performance during a phone call since Chief Turner had previously received a list of criminal case files from LeGault reflecting Dahl's inattention to those cases. It is admitted that LeGault was less than forthright with Dahl at the time of his meeting with her because Dahl was upset and angry and LeGault sought to end his encounter with Dahl as quickly as possible. It is denied that Chief Turner had the authority to either renew or not renew Dahl's one year SAUSA contract and further denied that his recommendation for non-renewal was based on anything other than Dahl's substandard job performance which is now known to have existed in her job performance in the United States Attorney's office as well.

110.	With respect to the first sentence in paragraph one hundred ten (110), these responding Defendants are without knowledge or information as to the nature of the relationship between Dahl and Sergeant Gryder, and they are without knowledge or information as to the exact date of the conversation. Further answering, the Defendants have knowledge that a conversation occurred because Dahl secretly recorded a conversation between herself and Sgt. Gryder. With

respect to the second sentence, it is admitted that Sergeant Gryder told Dahl that Captain Peters had told him that she had lied to Chief Turner about cases she had represented that she would present at the June 2021 Grand Jury.

111.     It is denied that Sergeant Gryder had any knowledge or ability to determine the truth or falsity of Chief Turner's and Captain Peter's discussions of the Johnson City criminal cases with Dahl on May 19, 2021 and Dahl's assurances during this now-known-to-be-recorded meeting.  It is further denied that Sergeant Gryder had actual knowledge of why Dahl had not fulfilled the commitments she had made in the May 19, 2021 meeting.

112.     These responding Defendants can neither admit nor deny conversations Dahl may have had with AUSA Taylor about which they have no knowledge.

## Dahl Finds More Victims

113.     These responding Defendants cannot admit or deny the allegations contained in paragraph one hundred thirteen (113) of the *Amended Complaint* due to a lack of sufficient knowledge or information.

114.     These responding Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph one hundred fourteen (114) of the *Amended Complaint.*

115.     These responding Defendants cannot admit or deny the allegations contained in paragraph one hundred fifteen (115) of the *Amended Complaint* due to a lack of sufficient knowledge or information. Further answering, Johnson City continues to seek any record of a phone call referenced in paragraph (b), and the allegation of wrongful conduct directed to Johnson City officers is denied.

116.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of Dahl's factual allegations as to when she spoke to Jane Doe 7's sister or whether

any officer told Dahl about Jane Doe 7's alleged phone call. Further answering, the unreasonable conclusions recited in paragraph one hundred sixteen (116) of the *Amended Complaint* are denied.

117.    The unreasonable conclusions set forth in paragraph one hundred seventeen (117) of the *Amended Complaint* are denied.

118.    The Defendants deny any knowledge of any officer receiving any money from Williams at any time. Further answering, these responding Defendants cannot admit or deny due to lack of sufficient knowledge or information any conversations between Dahl and Jane Doe 8.

119.    These responding Defendants cannot admit or deny the allegations contained in paragraph one hundred nineteen (119) of the *Amended Complaint* due to a lack of sufficient knowledge or information with the exception that based upon the deposition testimony of Dahl's supervisor, there were concerning issues with Dahl's job performance during her tenure as a SAUSA in the United States Attorney's Office in Greeneville.

120.    These responding Defendants cannot admit or deny the allegations contained in paragraph one hundred twenty (120) of the *Amended Complaint* due to a lack of sufficient knowledge or information.

121.    Denied.

122.    Based on written discovery, these responding Defendants have been provided documents submitted by Dahl to certain offices within the Department of Justice seeking to be considered a whistleblower.

123.    Denied.

## Events After Dahl Filed Her Complaint

124.    It is admitted that after Dahl filed her *Complaint* containing highly speculative and unfounded allegations, activities occurred within the community based on her inflammatory and

false allegations.

125.    Denied, as stated. Chief Turner, along with all City employees who were already eligible for retirement, were offered an incentive to go ahead and retire. Chief Turner was one of many City employees who accepted the offer. It is denied that Chief Turner's acceptance of this offer was related to this lawsuit.

126.    Denied, as stated.

127.    Admitted that Johnson City's City Manager along with Chief Turner sent a letter to the local District Attorney seeking an investigation into certain events described in the original *Complaint*, paragraph ninety-eight (98).    Admitted that the District Attorney declined to initiate an investigation and suggested discovery could be obtained from Dahl during the civil litigation. Otherwise, the unreasonable conclusions of Dahl contained in paragraph one hundred twenty-seven (127) of the *Amended Complaint* are denied.

128.    Denied.

129.    Based on allegations made in Dahl's Complaint and the resulting complaints from certain citizens, it is admitted that City Attorney Sunny Sandos on behalf of Johnson City contracted with the Daigle Law Group ("Daigle") to serve as a consulting expert by evaluating sexual assault investigations conducted by JCPD. Based on Daigle's finding, Johnson City has implemented all but one of the recommended remedial measures to improve its sexual assault investigation practices.  The quotes in press releases referenced in paragraph one hundred twenty-nine (129) of the *Amended Complaint,* are incomplete, but are otherwise accurate.

130.    The Daigle Report which was publicly released speaks for itself, and is not sufficiently or accurately characterized in paragraph one hundred thirty (130) of the *Amended Complaint*, and the allegations are therefore denied as being incomplete.  Answering further, the

admissibility into evidence of the Daigle report is an issue of law to which no response is required or made.

131.     The characterization provided to the Daigle Report in paragraph one hundred thirty-one (131) of the *Amended Complaint* is incomplete and therefore inaccurate so as to be denied as stated.  It is admitted that Daigle did not interview sexual assault victims that were identified in the JCPD sexual assault files, including files involving Sean Williams, to determine if they had declined to participate in a prosecution or otherwise. It is denied that the Daigle Report is incomplete as to alleged victims of Williams or any other perpetrator.

132.     With respect to the allegations in paragraph one hundred thirty-two (132), it is unclear what citizen complaints are being referred to. Further answering, the applicability of General Order 300.08 (4.1.7), *CITIZEN COMPLAINTS TO BE RECORDED* to the Williams cases cannot be admitted or denied due to a lack of a specific factual allegation in this paragraph of the *First Amended Complaint.*

133.   With respect to the allegations in paragraph one hundred thirty-three (133), the Defendants respond as follows as to each sub-section:

     a. It is denied that Daigle found that the City maintained poor record keeping as to over 325 reports of sexual assault.

     b.  It is denied that Daigle found that the City conducted inconsistent, ineffective, and incomplete investigations into over 325 reports of sexual assault.

     c.  It is denied that Daigle found that the City had flaws with the closing of investigations into over 325 reports of sexual assault.

     d.  It is admitted that Daigle made this finding.

     e.  It is admitted that Daigle made this finding.

f. The implication that Daigle made this finding as to all sexual assault investigations is denied. Furthermore, in many instances, the sexual assault investigator was a female officer.

134. The Daigle Report made certain recommendations for improving sexual assault investigations and with one exception, the City had enacted those recommendations. But the City does not adopt all of the conclusions in the Daigle Report. Therefore, this paragraph is denied as stated.

135. It is admitted that Williams was arrested in North Carolina on April 29, 2023 and, based on evidence seized by the North Carolina authorities, was thereafter criminally charged with multiple sexual assaults based on video evidence of incapacitated females being assaulted. With respect to Dahl's allegations regarding that Johnson City may have had similar evidence on Williams's computer, the Defendants do not have sufficient knowledge to respond to that allegation. Further answering, Dahl's brazen attempt at revisionist history – regarding whether officers for JCPD had sufficient evidence in 2020 – is denied. On December 8, 2020, Chief Turner explicitly asked Dahl whether there was sufficient evidence for a search warrant for Williams' computer and Dahl responded that she and her supervisor, AUSA Taylor, were 50/50 on the issue. Dahl then agreed to work with Investigator Sparks to draft a search warrant. Investigator Sparks sent it on January 12, 2021, and Dahl did nothing for approximately one month. When she finally attempted to work on the search warrant, she and AUSA McCauley exchanged emails stating that they thought they had more to go on. If there was not probable cause to seek a search warrant based on information known at the time, then it is disingenuous of Dahl to blame a JCPD investigator for not seeking a search warrant sooner.

136. Admitted that such a lawsuit has been filed with no legitimate factual basis for that

allegation.

137.    Denied as stated.

138.    Denied as stated. Chief Turner and Captain Peters discussed with Dahl on December 8, 2020 an alternative course of seeking the Federal Court indictment of Williams, but acquiesced in Dahl's interest in building a larger case against Williams. These Defendants do not blame Dahl for her aspirations to build a larger case against Williams, but aver that things may have turned out differently had Dahl followed the suggestion of experienced law enforcement officers to charge Williams with the available criminal charge and "work the case backwards", with victims more likely to come forward following his arrest.

139.    The allegations are denied, except and to the extent that it is admitted that police officers do not make prosecutorial decisions.

140.    It is denied that the potential charge against Williams was not within the scope of the MOU. Further answering, Dahl's speculative allegations about what might have happened are not factual allegations that require responsive pleading. To the extent they do require responsive pleading, they are denied as speculation.

141.    The allegations contained in paragraph one hundred forty-one (141) of the *Amended Complaint* are denied.  Answering further, Dahl's MOU was not renewed because Dahl's job performance was substandard and it is now known that JCPD's experience was similar to her  job performance in the United States Attorney's Office.

142.    Denied as stated. On May 19, 2021, in a meeting with Chief Turner and Captain Peters, Dahl decided that she would seek indictments for five specific cases during the June Grand Jury and Dahl agreed that she would then report the results directly back to Captain Peters. Dahl did neither of these things.

143.     Denied as stated. What occurred after the non-renewal decision has no bearing on the non-renewal decision, which is the subject of this lawsuit. Once again, on May 19, 2021, in a meeting with Chief Turner and Captain Peters, Dahl decided that she would seek indictments for five specific cases during the June Grand Jury and Dahl agreed that she would then report the results directly back to Captain Peters. Dahl did neither of these things.

144.     It is admitted that the Johnson City Police Department is no longer participating in the criminal prosecution of Williams so as to avoid any use by Williams of unproven and unfounded allegations in the civil litigation brought by Dahl and the Jane Doe Plaintiffs.

145.     The speculative and unfounded inference in the allegations contained in paragraph one hundred forty-five (145) of the *Amended Complaint* are denied.

146.     On information and belief, it is admitted that Williams escaped custody while being transported from a detention center located in the State of Kentucky.  Williams has now been captured and is back in custody.  The remaining speculative suggestions and inferences contained in the remaining allegations of paragraph one hundred forty-six (146) of the *Amended Complaint* are denied and any factual proof in support is demanded.

## Causation of Damages

147.     Denied as stated. Further answering, Dahl's alleged complaint to the FBI about the JCPD's investigation into Williams could be protected activity under the First Amendment.

148.     Denied.

149.     Denied.

## No Qualifying Immunity

150.     Denied.

151.     Denied. Further answering, there is no legal claim being asserted against Chief

Turner, in his individual capacity, under the Tennessee Public Protection Act.

## No Sovereign Immunity

152.    It is denied that any claim is being asserted against Johnson City under 42 U.S.C. § 1983. Further answering, it is denied that Dahl is entitled to any relief against Johnson City under either the NDAA or the TPPA.

## Damages

153.    Admitted to the extent that Dahl's contract was not renewed at the conclusion of its term, but denied that Dahl "lost" any meaningful paid employment due to any wrongful conduct on the part of the Defendants.

154.    Admitted, upon information belief,  the allegation in the first sentence of paragraph one hundred fifty-four (154) of the *Amended Complaint*.  All remaining allegations are denied.

155.    It is denied that Dahl has suffered emotional distress due to any alleged wrongful conduct on the part of the Defendants.

## Punitive Damages

156.    Denied.

## Attorney Fees and Costs

157-159    It is denied that Dahl is entitled to recover attorney's fees and costs under federal or state law.

## Count I – First Amendment Retaliation Against Chief Turner Individually

160.    These responding Defendants incorporate by reference their answers and defenses to all previous allegations as their response to paragraph one hundred sixty (160) of the *Amended Complaint*.

161.    The allegation contained in paragraph one hundred sixty-one (161) of the *Amended*

*Complaint* is admitted in part and denied in part. It is denied that Chief Turner terminated Dahl's employment, but admitted that Chief Turner recommended to Johnson City's City Manager that Dahl's special prosecutor contract be allowed to conclude by its terms.

162.    Denied.

163.    With respect to Dahl's allegations in paragraph one hundred and sixty-three (163), to the extent that Dahl is alleging that she complained to the FBI about alleged "plain incompetence" or "corruption" related to the Williams investigation, then it is admitted that any such communications were outside her duties as a SAUSA under the MOU. Otherwise, her allegations are denied.

164.    These responding Defendants are not aware of any investigation or alleged "protected communications" that Dahl is claiming to have made regarding Chief Turner or Johnson City and therefore deny such allegation and require proof. The Defendants admit that investigating Chief Turner and Johnson City was not contemplated as a part Dahl's job duties under her contract. Any remaining allegations are denied.

165.    Denied.

166.    Denied, as stated.

167.    Denied.

168.    Denied.

## Punitive Damages

169.    Denied.

## Prayer

Denied that Dahl is entitled to any of the relief sought.

## Count II - Procedural Due Process Violation by Chief Turner in his Individual Capacity

170.     These responding Defendants incorporate by reference their previous responses and defenses to the previous allegations asserted in the *Amended Complaint.*

171.     Admitted.

172.     The allegations contained in paragraph one hundred seventy-two (172) of the *Amended Complaint* asserts a legal conclusion to which no response is required.  To the extent a response may be required, the assertions are denied in that Dahl was never an employee of Johnson City.

173.     The allegation contained in paragraph one hundred seventy-three (173) of the *Amended Complaint* is an assertion of law to which no response is required.  In the event a response is required, it is denied that Dahl had a constitutionally cognizable property interest.

174.     It is denied that Dahl had any constitutional right to due process.

175.     Denied.

176.     Denied.

177.     Denied.

178.     Denied, except and to the extent that it is admitted that no party to the MOU, other than Johnson City, knew in advance of Johnson City's decision to not renew Dahl's contract.

179.     The allegations contained in paragraph one hundred seventy-nine (179) of the *Amended Complaint* are statements of law to which no response is required.  In the event a response is required, the statements are denied. Further answering, in addition to the fact that there was no factual basis for a "name clearing hearing," Dahl never requested such a hearing.

180.     Denied.

181.     Denied that Dahl suffered any injury due to any alleged wrongful conduct on the part of the Defendants.

## Punitive Damages

182. Denied.

## Prayer

Denied Dahl is entitled to a judgment under any of the causes of action asserted and denied she is entitled to recover attorney's fees and costs under federal or state law.

## Count III

## Substantive Due Process Violation Against Chief Turner Individually

183. All responses and defenses previously asserted to the allegations contained in the *Amended Complaint* are incorporated by reference.

184. The allegation contained in paragraph one hundred eighty-four (184) of the *Amended Complaint* is a statement of law to which no response is required or made.

185. Denied.

186. The allegations contained in paragraph one hundred eighty-six (186) is a statement of law to which no response is required or made. Dahl's stipulation is noted.

187. The factual allegations contained in paragraph one hundred eighty-seven (187) are denied; the statement of law contained in paragraph one hundred eighty seven (187) of the *Amended Complaint* requires no response and none is made.

188. Denied.

189. It is denied that Dahl has suffered any injury as the result of the alleged conduct of defendant Chief Turner.

## Punitive Damages

190. Denied.

## Prayer

36

Denied that Dahl is entitled to any recovery under the cause of action asserted or a recovery of attorney's fees and costs under federal or state law.

### Count IV – TPPA Retaliatory Discharge Against Johnson City

191.    All responses and defenses heretofore asserted in response to the allegations contained in the *Amended Complaint* are incorporated by reference.

192.    The allegations contained in paragraph one hundred ninety-two (192) of the *Amended Complaint* are statements of law to which no response is required. To the extent a response may be required, the statement is admitted.

193.    Denied

194.    Admitted that Johnson City provided sufficient funds through a DOJ grant and other sources to fund Dahl's compensation which was paid to her by Washington County which issued to her a 1099 tax form as specified in the MOU.

195.    Denied that Johnson City is an "employer" under the TPPA with respect to Dahl.

196.    Denied.

197.    Denied.

198.    Denied that Dahl suffered any injury as a result of the alleged conduct of the Defendants.

### Prayer

It is denied that Dahl is entitled to recovery under the causes of actions asserted and denied she is entitled to a recovery of attorney's fees or costs under federal or state law.

### Count V

### National Defense Authorization Act Claim Against Johnson City, 41 U.S.C. § 4712

199.    All responses and defenses heretofore made to the allegations contained in the

*Amended Complaint* are incorporated by reference.

200.    Denied.

201.    Admitted.

202.    Admitted.

203.    Denied.

204.    Prior to the decision to non-renew Dahl's contract for legitimate job performance deficiencies, these responding Defendants were unaware of Dahl complaining to third parties about the Defendants and remain unaware of the actual subject matter of her complaints.

205.    Denied.

206.    Denied as stated. It is admitted that Dahl attempted to make a whistleblower complaint with the United States Department of Justice, Office of Inspector General, in June 2022.

207.    Denied as stated.

208.    It is denied that Dahl has suffered any injury as a result of the alleged conduct of the Defendants.

## **Prayer**

It is denied that Dahl is entitled to a recovery under the cause of action asserted and further denied that she is entitled to a recovery of any attorney's fees or costs under state or federal law.

Now having responded to the *Amended Complaint*, these responding Defendants would assert a general denial to any allegation not heretofore expressly admitted.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue

38

P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN 37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
tgarland@milligancoleman.com

*s/ Emily C. Taylor*
Emily C. Taylor, BPR # 27157
**WATSON, ROACH, BATSON &**
**LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN 37901-0131
Phone: (865) 637-1700
Email: etaylor@watsonroach.com

*Attorneys for Defendants*