UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| KATERI LYNEE DAHL, | ] | |
|---|---|---|
| Plaintiff, | ] | |
| v. | ] | No. 2:22-cv-00072-KAC-CRW |
| CHIEF KARL TURNER, and CITY OF JOHNSON CITY, TENNESSEE, | ] | |
| Defendants. | ] | |

**REPLY BRIEF OF JOHNSON CITY, TENNESSEE
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Johnson City, Tennessee ("Johnson City") replies to the Response of Kateri Lynne Dahl ("Dahl") [Doc. 82] as set forth below. In addition, Johnson City continues to rely on all arguments made in its Motion for Summary Judgment and opening brief.

**I. TENNESSEE PUBLIC PROTECTION ACT ("TPPA") CLAIM**

A. <u>Dahl cannot prove that she was an employee of Johnson City</u>

In Dahl's Response she argues that her MOU is governed by the Intergovernmental Personnel Act. This is correct. The MOU states that: "the purpose of this agreement is to detail Kateri Dahl of the State of Tennessee to the United States Attorney's Office for the Eastern District of Tennessee, pursuant to the Intergovernmental Personnel Act, 5 U.S.C. § 3371 et seq." And more specifically, the MOU states: "Assistant District Attorney Kateri Dahl is being detailed by District Attorney Ken Baldwin to the USAO to act as a Special Assistant U.S. Attorney to assist the city of Johnson City …." *Doc. 56-2, PageID #: 816.* Dahl's position that the MOU controls does not result in a determination that she was an employee of Johnson City, Tennessee. Instead, it results in a determination that she was an employee or independent contractor of the State of Tennessee.

Dahl cannot rely on the language of the MOU when it suits her purpose, and then otherwise ignore it.

Next, Dahl's Response asserts in footnote 17 that in addition to the TPPA definition of employee that Johnson City relied upon in its opening brief, there is another definition that applies to Dahl, which is Tennessee Code Annotated § 50-1-304(a)(2)(C). *Doc. 82, PageID #: 2134.* But that definition is addressing when the *federal government* is an employer under the TPPA. To the extent that Dahl is relying on that definition, she has failed to state a claim against Johnson City because the plain meaning of the statute is that an employee may sue his or her employer. An assertion by Dahl that her employer was the federal government merely negates her TPPA claim against Johnson City. This is not only the fair reading of the statute, but more importantly, even if this Court found that the question was ambiguous, Johnson City would still be entitled to summary judgment because the strict construction standard applies to questions of removal of sovereign immunity as addressed in the City's opening brief. Otherwise, Johnson City continues to rely upon the arguments made in its opening brief on the issue of whether Dahl was an employee of Johnson City, especially the "right to control" issue, which is most important.

  B. <u>Dahl cannot prove that she was "discharged or terminated"</u>

In Dahl's Response she argues that this Court should not rely on the Tennessee Court of Appeals decision cited in the City's opening brief because:

> … in the Sixth Circuit, federal district courts have more recently held that non-renewal of a contract constitutes an adverse employment action for purposes of a retaliation analysis for a TPPA claim. *Herron v. Trenton Special Sch. Dist.*, No. 1:19-cv-01034-STA-jay, 2020 WL 3003050, at *7, 13-15 (W.D. Tenn. June 4, 2020).

*Doc. 82, PageID #: 2137.*

Dahl's representation to this Court is incorrect. Federal District Courts have not held that a non-renewal is a discharge or termination under the TPPA. In *Herron*, *supra*, the defendant *chose* not to contest the issue. The Federal District Court did not analyze the issue. *Id.* at *7. The only Court to analyze the issue was the Tennessee Court of Appeals, and Johnson City's position is even stronger than the Tennessee Court of Appeals decision because Johnson City is entitled to have the TPPA interpreted under a strict construction standard because the statute involves the removal of sovereign immunity (as explained in the City's opening brief).

C. <u>Dahl cannot prove that she refused to remain silent about or refused to participate in illegal activities</u>

On the issue of whether she refused to remain silent about illegal activities, Dahl acknowledges in her Response that she did not report her concerns to Turner or Peters, but she asserts that that was because her complaints "were *about* Johnson City management." *Doc. 82, PageID #: 2139*. Dahl's statement is misleading. At best, her concerns were about the Johnson City Police Department ("JCPD"). However, she did not report any illegal activities to "Johnson City management," such as the City Attorney, Sunny Sandos or the City Manager, Pete Peterson as explained in the City's opening brief.

Next, on the issue of whether she refused to participate in illegal activities, Dahl's Response asserts that she "has shown that she refused to participate in stonewalling the investigation of Williams' sex crime victims." *Doc. 82, PageID #: 2139* (in that same sentence she goes on to make additional assertions that do not merit a reply on this particular issue). Similarly, on the previous page, Dahl alleges:

> But Dahl can also show the first prong: that she refused to participate in illegal activities. By taking the female victims of Williams seriously, and pushing for a

3

broader investigation, she did as much. Indicia of the first prong include Chief Turner's perception that Dahl arranged the TBI meeting; Dahl pushing for Williams' video and electronic devices to be searched for evidence; Dahl pushing for Williams to be arrested after he was indicted; and Dahl voicing her concerns to DOJ colleagues and ultimately FBI agent Bianca Pearson on May 11, 2021.

*Doc. 82, PageID ##: 2138-39.*

Taking female victims seriously and pushing for a broader investigation is not refusing to participate in illegal activities. Chief Turner's perception that Dahl arranged a TBI meeting is not a refusal to participate in illegal activities. As Turner's Reply Brief explains, Dahl advised Turner that the reason the TBI had been contacted by AUSA Wayne Taylor was because the TBI was investigating a case in Chattanooga involving a female associate of Sean Williams. That is not a refusal to participate in illegal activities. Dahl pushing for a search of electronic devices at a time when Dahl's own opinion was that it was too late based on staleness is not a refusal to participate in illegal activities. Dahl voicing concerns to DOJ colleagues and the FBI is not *refusal to participate* in illegal activities. In summary, Dahl's arguments do not rise to the level of someone who is refusing to participate in illegal activities.

- D.  <u>Dahl cannot prove that the decisionmaker(s) of Johnson City *knew* she refused to participate in or remain silent about illegal activities</u>

- E.  <u>Dahl cannot prove that the decision to not renew her contract was "solely" based on her "refusing to participate in" or "refusing to remain silent about, illegal activities."</u>

- F.  <u>Johnson City is entitled to summary judgment as to the TPPA claim because it possessed a legitimate, non-retaliatory reason for not renewing her contract</u>

As to these three issues "D.", "E.", and "F.", Johnson City adopts the arguments made in Turner's Reply Brief on the issue of notice, the issue of a non-retaliatory reason for the non-renewal of Dahl's contract, and the related issue of pretext. With respect to the issue of notice,

4

Dahl's Response does not assert that Turner, City Attorney Sandos or City Manager Peterson had actual notice that she had refused to participate in or refused to remain silent about illegal activities. On the issue of constructive notice, her only arguments involve gross speculation as explained in Turner's Reply Brief. And finally, Dahl's Response makes several arguments that she believes support a finding of pretext. First, to the extent that Dahl takes issue with Turner's characterization of the May 19, 2021 meeting, the City also adopts by reference Turner's arguments in his Reply Brief. Second, Dahl asserts that even though she was in intensive trial preparation, she did manage to indict one person (not one of the five). This argument has several problems. Most importantly, it is not evidence of pretext. Dahl did not present the five cases she represented she would present and she never reported back to Peters as she agreed to do. The fact that a plea agreement was reached in Dahl's criminal case on June 3, 2021 and six days later she was able to present one case at the June 9, 2021 Grand Jury (that was not on the May 19, 2021 list) is not evidence of pretext.[1] Finally, Dahl asserts as evidence of pretext that some of the cases that she said she would present were never presented. This is not evidence of pretext. In the May 19, 2021 meeting, Dahl chose the cases that she intended to present at the June 2021 Grand Jury. The fact that some of the cases *she chose* were never presented (for whatever reason) is not evidence of pretext regarding Turner's June 2021 recommendation that her contract not be renewed.

In summary, based upon all the evidence on which Johnson City relies, Johnson City is entitled to summary judgment as to Dahl's TPPA claim on any one of these alternative grounds.

---

[1] See *U.S.A. v. Melvin Chism*, No. 2:19-CR-115 at Doc. 116, June 3, 2021 Plea Agreement, PageID #: 502; and see *U.S.A. v. Demetrius Bolden*, No. 2:21-cr-62 at Doc. 3, June 9, 2021 Indictment, PageID ##: 3-4.

## II. NATIONAL DEFENSE AUTHORIZATION ACT ("NDAA") CLAIM

In Dahl's Response she asserts that "[t]he MOU made Dahl an employee under the IPA, 5 U.S.C. § 3374(b)." *Doc. 82, PageID #: 2142*. Dahl made this same argument earlier in her Response. *Id., at PageID #: 2134*. Therefore, Johnson City adopts by reference the arguments made earlier in this Reply Brief as to the TPPA claim. The only difference under the NDAA is that Dahl must be able to prove that she was an employee of a federal "grantee." In this case Johnson City. She cannot make this showing for the reasons expressed earlier. In the alternative, Johnson City continues to rely on its arguments in its opening brief that she was not an employee of Johnson City.

Next, in Dahl's Response, she asserts that she has also asserted a NDAA claim based on the statutory language of: "a substantial and specific danger to public health and safety." *See Doc. 82, PageID #: 2142*. But under the plain language of the statute, "a substantial and specific danger to public health and safety" must be "related to a Federal contract or grant." *See 41 U.S.C. § 4712(a)(1)*. Dahl's arguments in her Response on the issue of "a substantial and specific danger to public health and safety" make no mention relating "to a Federal contract or grant." Her only possible argument is her assertion that a pole camera (paid for by a federal grant) was aimed at Williams' garage and did not yield any evidence. But that assertion is too tangential to support a NDAA claim. In other words, the failure to obtain evidence from a pole camera is too remote to constitute "a substantial and specific danger to public health and safety" under the NDAA. And finally, as addressed in the City's opening brief (and below), Dahl failed to exhaust her administrative remedies as to the pole camera.

Next, in Dahl's Response, she does not address the City's argument that she has failed to

6

show that she made a complaint to an "authorized official" as required by 41 U.S.C. § 4712(a)(2). In the City's opening brief, it explained that it had not found any definition of who constitutes an "authorized official." Dahl does not cite any authority in her Response.

Next, in the City's opening brief, it asserted that Dahl cannot prove a "reprisal" for making a disclosure. The City now adopts verbatim Turner's Reply Brief on his lack of knowledge that Dahl had engaged in protected conduct, which would include conduct protected by the NDAA.

Next, in the City's opening brief, it asserted that Dahl does not have a reasonable belief that her allegations fall within the protections of 41 U.S.C. § 4712(a). In Dahl's Response, she has now conceded that the Department of Justice, Office of Inspector General, rejected her NDAA claim because her complaints did not constitute a NDAA claim. *Doc. 82, PageID #: 2144.* The reasonable belief test is an objective test. *See Fuerst v. Hous. Auth. of City of Atlanta, Georgia*, 38 F.4th 860, 872-73 (11th Cir. 2022).

Next, in Dahl's Response she addresses the City's argument that she failed to exhaust her administrative remedies regarding her allegation that the federal funds expended on the pole camera constituted government waste. Her Response asserts that "Johnson City offers no legal authority that says an NDAA administrative complaint must reference every last detail with particularity to give notice." *Doc. 82, PageID #: 2144.* To the extent that Dahl is asserting gross mismanagement of a Federal grant or gross waste of Federal funds, she only has two possible avenues of complaint – *i.e.*, grant monies paid for her salary and/or grant money that paid for a pole camera. That is what she has alleged in her First Amended Complaint, and she made no report of management or waste of the pole camera to the OIG. This has nothing to do with failing to

7

"reference every last detail with particularity." What this has to do with is identifying for the OIG why she believes a federal grant was mismanaged.

Next, Dahl's Response cites "generally" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) for the proposition that this Court has jurisdiction to hear NDAA claims. *Doc. 82, PageID #: 2144*. Dahl's use of the signal "generally" is correct because that Supreme Court case did not involve the NDAA. That case merely stands for the proposition that federal courts are courts of limited jurisdiction. *Kokkonen*, *supra*, at 377. More importantly, federal statutes grant the DOJ, OIG power to investigate NDAA claims; and the OIG found that Dahl had not stated a NDAA claim. Johnson City is not asserting that that finding is binding on this Court. But Johnson City is certainly entitled to make this Court aware of the fact that the particular federal office charged with investigating this type of claim found that Dahl had not stated a claim.

In summary, Dahl's NDAA claim fails as a matter of law based on any one of the foregoing arguments in this Reply Brief and/or the City's opening brief.

### III. CONCLUSION

Based on the foregoing, the City of Johnson City is entitled to summary judgment as a matter of law.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN   37605-0629
Phone: (423) 929-7113

Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

| | |
|---|---|
| *s/ Thomas J. Garland, Jr.* | *s/ Emily C. Taylor* |
| Thomas J. Garland, Jr., BPR # 011495 | Emily C. Taylor, BPR # 27157 |
| **MILLIGAN & COLEMAN PLLP** | **WATSON, ROACH, BATSON &** |
| P.O. Box 1060 | **LAUDERBACK, P.L.C.** |
| Greeneville, TN  37744-1060 | P.O. Box 131 |
| Phone: (423) 639-6811 | Knoxville, TN  37901-0131 |
| Fax: (423) 639-0278 | Phone: (865) 637-1700 |
| Email: tgarland@milligancoleman.com | Fax: (865) 525-2514 |
| | Email: etaylor@watsonroach.com |

Attorneys for Defendants, City of Johnson City, Tennessee, and Karl Turner, in his individual capacity

9