UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| KATERI LYNEE DAHL, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | No. 2:22-cv-00072-KAC-JEM |
| | ] | JURY DEMAND |
| CHIEF KARL TURNER, and | ] | |
| CITY OF JOHNSON CITY, TENNESSEE, | ] | |
| | ] | |
| Defendants. | ] | |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE TESTIMONY AND EVIDENCE RELATED TO CERTAIN
ALLEGED EVENTS AFTER THE NON-RENEWAL OF MS. DAHL'S CONTRACT**

This Memorandum Brief is in support of the Motion in Limine filed by the City of Johnson City, Tennessee ("Johnson City") and Karl Turner ("Chief Turner"), in his individual capacity, seeking to exclude testimony and evidence regarding certain allegations related to events that occurred after the non-renewal of Ms. Dahl's contract under Federal Rules of Evidence 402 and/or 403.

**I. CERTAIN ALLEGATIONS RELATED TO EVENTS THAT OCCURRED AFTER THE NON-RENEWAL OF MS. DAHL'S CONTRACT SHOULD BE EXCLUDED UNDER FEDERAL RULES OF EVIDENCE 402 AND/OR 403.**

**A. Law**

Under Federal Rule of Evidence 402, relevant evidence is generally admissible and irrelevant evidence is not admissible. The test for relevant evidence is set forth in Rule 401:

> **Rule 401. Test for Relevant Evidence**
>
> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

With respect to the concept of "unfair prejudice," Federal District Court Judge Greer has explained:

> The phrase "unfair prejudice," when used in the context of Rule 403, "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014) (quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)). *See also Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (quoting Fed. R. Evid. 403 advisory committee's note)). Moreover,
>
>> [a]pplying Rule 403 necessarily contemplates a balance that is weighted in favor of admissibility, with the countervailing forces being the strength of the evidence's legitimate value and the tendency of the evidence's improper purpose(s) to overwhelm it. Evaluation of legitimate probative value requires consideration of the strength of the evidence itself, whether the evidence may be the only available proof of a material point, and whether the focus of the proof is genuinely in issue, among other things.
>
> *United States v. Duval*, 865 F. Supp. 2d 803, 809 (E.D. Mich. 2012). The test is strongly weighted toward admission. *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). A district court has broad discretion in determining whether the danger of admitting evidence substantially outweighs that evidence's probative value. *Id.* Defendant contends that if the video recording were admitted he "will suffer dramatically from unfair prejudice, causing the jury to not consider the facts and the law with a fair and impartial mindset, and instead render a verdict tethered to emotion and passion." [Doc. 129 at 2]. Defendant maintains that the probative value of the video recording would be substantially outweighed by the dangers of unfair prejudice. [*Id.*].

Under Rule 403, this Court must balance the evidence's probative value against it's potential for unfair prejudice. The Court finds that the video interview's probative

2

> value is high. Defendant is charged with multiple crimes from his alleged conduct with the minor interviewed. In the interview, the minor speaks to and describes her relationship with the defendant, the alleged pictures he sent her, and the alleged images she sent him. She also confirms her age and alleges that she previously had told defendant her age. The content of the interview goes to the heart of the crimes charged, and as such it is highly probative. *See* 18 U.S.C. §§ 1470, 2422(b), 2251(a), (e), 2252A(a)(2)(A), (a)(5)(B), (b)(1), (b)(2).
>
> The minor's interview is prejudicial to defendant. However, virtually all evidence is prejudicial, or it is not material; the prejudice must be "unfair." *Gibbs*, 182 F.3d at 430. The defendant has not pinpointed any specific instances of how the minor's interview is unfairly prejudicial and how it would have "an undue tendency to suggest decision on an improper [emotional] basis." Fed. R. Evid. 403 (advisory committee notes). The Court cannot find that the minor's interview's probative value is outweighed by the danger of unfair prejudice.

*United States v. Hayek*, 2021 WL 3161469, at *3-4 (E.D. Tenn. July 26, 2021).

With respect to "confusing the issues," that concept has been defined as follows:

> Broadly speaking, a risk of "confusing the issues" means that the evidence creates a significant possibility that the jury may misunderstand how to apply the law to the facts of the case.

*United States v. Kaye*, 2022 WL 860380, at *3 (S.D. Fla. Mar. 23, 2022), *aff'd*, 2024 WL 164810 (11th Cir. Jan. 16, 2024). And in the specific context of this case, the concept of "misleading the jury," would substantially overlap with the concept to "confusing the issues" because by confusing the issues, the jury is likely to be misled.

### B. <u>Analysis of post-event allegations</u>

In her lawsuit, Ms. Dahl's legal claims against Chief Turner are: (1) First Amendment retaliation and (2) Fourteenth Amendment procedural due process. With respect to Johnson City, there are two whistleblower claims: (1) Tennessee Public Protection Act ("TPPA") and (2) National Defense Authorization Act ("NDAA"). All claims are based on what occurred up to the point of the non-renewal of Ms. Dahl's contract in June of 2021. Except for the procedural due process claim, all of these claims have the same basic elements: (1) did Ms. Dahl engage in activity

3

that would be protected under the Constitution or the particular statute at issue, (2) were the decisionmakers aware of her protected activity, and (3) did the decisionmakers retaliate against her for engaging in protected activity by not renewing her contract in June of 2021.

As an overall proposition, Ms. Dahl's allegations after the non-renewal are not admissible under Federal Rule of Evidence 402 because they are not relevant to the Section 1983, TPPA, and NDAA claims (*i.e,*. the whistleblower claims) or the Fourteenth Amendment procedural due process claim. Alternatively, even if there were some basis to assert relevance, any probative value is substantially outweighed by undue prejudice or confusing the issues or misleading the jury. Therefore, such evidence should be excluded under Rule 403.

Below, the defendants will address specific paragraphs in the First Amended Complaint regarding alleged events occurring after the non-renewal of Ms. Dahl's contract in June of 2021.

Post-event allegation: In the First Amended Complaint, Ms. Dahl makes allegations concerning her discovery of Jane Doe 6 on July 1, 2021. Next, still in July 2021, Ms. Dahl makes allegations concerning her discovery of Jane Doe 7. *See Doc. 56, PageID ##: 113-17.* Next, in January of 2022, Ms. Dahl alleges that she discovered Jane Does 8, 9, and 10. *Id. at PageID #: 790 at ¶ 120.*

Defendants' argument: Ms. Dahl's discovery of additional Jane Does after the non-renewal decision is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegation:

4

> 124. After Dahl's filing of her original Complaint in June 2022, a flurry of activities occurred outside of the four corners of this case.
>
> 125. Local community activists pushed Johnson City to fire Chief Turner, who along with other senior police department leadership took retirement incentive packages several months later.

*Id.* at PageID #: 791.

Defendants' argument: The fact that some persons called for the termination of Chief Turner is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegation:

> 126. Details emerged that Williams, after fleeing, was able to sell his apartment as well as two other units in the same building in May 2021 after he had fled and was at large. Williams posted about the sale on Facebook and even communicated about the sale in public Facebook posts with a local official appointed to the Johnson City Development Authority by Johnson City commissioners. As recently as April 2022, Williams had felt safe and comfortable visiting the Washington County Register of Deeds office, where he caused a ruckus over the filing of a deed related to the apartment, and caused office staff there to file a report with the Jonesborough Police Department.

*Id.*

Defendants' argument: The fact that Sean Williams "caused a ruckus" in the Register of Deeds Office in April of 2022 is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

5

Ms. Dahl's allegation:

> 127. On August 24, 2022, Johnson City's City Manager Cathy Ball sent a letter to the local District Attorney in the First Judicial District asking him to open a "preliminary investigation" into police corruption identified by a Jane Doe in the initial Complaint in this suit. A couple weeks later, the newly-elected District Attorney explained in a letter back to Johnson City that there is no such thing as a "preliminary investigation" and that he had not referred the Williams matter to TBI. Johnson City at no point contacted the U.S. Department of Justice to conduct an investigation, which is odd because normally investigation and prosecution of local corruption is conducted by federal law enforcement and federal prosecutors, particularly given the "hand-in-glove" close working nature of local police and prosecutors, the lack of a corruption unit at the District Attorney's Office, and the fact that the local D.A.'s Office had no history of prosecuting corruption in local police departments.[10]

*Id.* at PageID ##: 791-92 (footnote omitted).

Defendants' argument: The fact that the City Manager sent a letter to the District Attorney in August of 2022 is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegation:

> 128. On August 26, 2022, Johnson City issued a press release blaming Dahl for taking five months to indict Williams, and stating that Dahl had caused "unjustifiable damage" to the City, Chief Turner and the Johnson City Police Department.[11]

*Id.* at PageID #: 792 (footnote omitted).

Defendants' arguments: The fact that the City issued a press release in August 2022 is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in

6

violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegations:

Paragraphs 129 through 134 of the First Amended Complaint address the employment of Eric P. Daigle and the resulting Daigle Audit. *Id.* at PageID ##: 792-95 *(footnote omitted).*

Defendants' arguments: The defendants have separately filed a Motion in Limine regarding the admission of Daigle's testimony and evidence related to the Daigle Audit under Rules 402 and 403.

Ms. Dahl's allegations:

> 135. By sheer coincidence and luck, Williams was eventually seized by a campus police officer in North Carolina on April 29, 2023, and finally charged with extreme and heinous sex crimes in this Court and in state court. Video evidence has come to light in search warrant affidavits filed in Washington County Circuit Court showing Williams sexually assaulting 52 incapacitated female adults as well as two children aged eight and one years. It appears from another affidavit filed by a District Attorney Investigator named Mike Little that Johnson City may have had some of that evidence all along in its possession from the 2021 search warrant. (Ex. 7 – Little affidavit.) But because Sparks had waited four months after the apartment search to produce a draft search warrant affidavit for Williams' digital devices, and because what he produced to Dahl was legally insufficient, JCPD presumably never viewed the files on Williams' digital devices.[14]

*Id.* at PageID ##: 795-96 *(footnote omitted).*

Defendants' arguments: The capture of Sean Williams in 2023 and the discovery of information off of computers in his possession at that time is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

7

Ms. Dahl's allegations:

> 136. Since then, nine Jane Doe sexual assault victims of Williams have sued the City in this Court alleging that multiple Johnson City police officers were part of a sex trafficking conspiracy. See generally Jane Does v. Johnson City, 2:23-cv-00071-TRM-CRW.

*Id.* at PageID #: 796.

Defendants' arguments: The fact that in 2023 Jane Does filed a lawsuit is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegations:

> 137. According to the U.S. Department of Justice, at least one of the sex crimes that Williams has since been charged with—against a child—occurred after Dahl pushed for JCPD to further investigate Williams, and after she was first retaliated against by Chief Turner and JCPD officers for pursuing a TBI investigation into Williams. United States v. Williams, 2:23-cr-00111-JRG-CRW-1 (E.D. Tenn). In other words, Johnson City's failures to adequately investigate Williams's sex crimes permitted him to continue to offend.

*Id.* at PageID #: 796.

Defendants' arguments: In this lawsuit, Chief Turner and Johnson City are not on trial for the adequacy of the investigation into Sean Williams. These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegations:

> 138. Johnson City has tried to pin the blame on Dahl for the delay in seizing Williams, arguing that Dahl should have just indicted Williams on the Ammo FIP charge.[15] This argument misses the mark for several reasons, however.

*Id.* at PageID #: 796.

Defendants' arguments: This is another reference to the August 2022 press release by the City. These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Ms. Dahl's allegations:

> 143. Fifth, Chief Turner's rationale is further questionable since three of the five cases in question were never indicted—that is, either because there was a lack of probable cause, or because the U.S. Attorney's Office (after Dahl's departure) within its discretion declined to prosecute those cases. The other two cases cited by Chief Turner involved a man and woman who possessed enough meth to have intent to distribute.[18] Those cases were not indicted until mid-October 2021, and the woman was not a violent offender and was otherwise in custody. The woman pled to 78 months; the man's case is pending as of this filing. While not insignificant, this drug case paled in comparison to the scope and depravity of the sex crimes of a prominent citizen such as Williams.

*Id.* at PageID #: 798 (footnote omitted).

Defendants' arguments: During the May 19, 2021 meeting with Chief Turner and Captain Peters, Ms. Dahl's own secret recording establishes that she selected five cases to be presented at the June 2021 Grand Jury. The fact that three of those cases were never presented is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead

9

the jury.

> Ms. Dahl's allegations:
>
> 144. Johnson City has since announced that it will play no further role in any case involving sexual assault victims of Sean Williams, after initially having Detective Sparks participate in state sex crime charges filed based on the video evidence discovered in Williams's possession in April 2023.

*Id.* at PageID #: 799.

Defendants' arguments: The allegations related to events in 2023 are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

> Ms. Dahl's allegations:
>
> 145. Since then, the Ammo FIP case indicted by Dahl has been dismissed by the U.S. Department of Justice, on inference because it would rely on the search warrant affidavit and testimony of Detective Sparks, and the prosecution would not want to rely on Detective Sparks as the evidentiary basis for a sound conviction beyond a reasonable doubt.

*Id.* at PageID #: 799.

Defendants' arguments: These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. Moreover, these allegations are based upon gross speculation by Ms. Dahl. Finally, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

> Ms. Dahl's allegations:

> 146. Williams fled custody on October 18, 2023 while being transported to the Greeneville division of this Court. A press conference by the local U.S. Marshal has suggested that Dahl's concerns as to Williams being a flight risk and extreme danger to the community were valid. Since Williams was arrested in April 2023, he has once attempted to flee unsuccessfully (for which he was subsequently charged), and has since fled on October 18, 2023. On inference from the U.S. Marshall's press conference, Williams may have had assistance in fleeing from persons unknown, perhaps insiders.[19] Williams is now back on the lam.

*Id.* at PageID #: 799 (footnote omitted).

<u>Defendants' arguments</u>: These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. Moreover, these allegations are based upon hearsay and Ms. Dahl is attempting to engage in gross speculation by implying that someone with the Johnson City Police Department assisted with Williams' escape even though there is absolutely no evidence whatsoever to support that reckless inference. Finally, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

### C. Summary

Ms. Dahl is essentially seeking to put Chief Turner and Johnson City on trial for how investigators handled the investigations into Sean Williams. Ms. Dahl has not asserted such a claim and has no standing to do so. As set forth above, *based on the claims that Ms. Dahl has brought against Chief Turner and Johnson City*, the cited allegations of Ms. Dahl: (1) are not relevant (Rule 402), and/or (2) should be excluded because any probative value is substantially outweighed by unfair prejudice or the risks of confusing the issues or misleading the jury.

## II. CONCLUSION

Based on the foregoing, the post-event evidence identified in this Brief should be excluded at trial.

11

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN   37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN   37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
Email: tgarland@milligancoleman.com

*s/ Emily C. Taylor*
Emily C. Taylor, BPR # 27157
**WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN   37901-0131
Phone: (865) 637-1700
Email: etaylor@watsonroach.com

*Attorneys for Defendants*