UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| KATERI LYNEE DAHL, | ] |
| Plaintiff, | ] |
| v. | ] No. 2:22-cv-00072-KAC-CRW |
| CHIEF KARL TURNER, and | ] |
| CITY OF JOHNSON CITY, TENNESSEE, | ] |
| Defendants. | ] |

**SUPPLEMENTAL BRIEF REGARDING SEALED DAIGLE DEPOSITION**

Come now the Defendants, City of Johnson City and Karl Turner, in his individual capacity to file a *Supplemental Brief* at the direction of the Court's *Order* dated March 12, 2024 [Doc. 92] to address whether Eric Daigle's deposition transcript should remain sealed.

I. **Standards and Mandatory Procedures Governing Sealing Confidential Information in the Eastern District of Tennessee**

Magistrate Judge Christopher H. Steger established and clarified the Local Rule in the Eastern District of Tennessee governing the filing of sealed documents in the case of <u>Reed v. Kiran Transport, LLC</u>, Case No. 1:22-CV-00183, E.D. Tenn. August 11, 2023.

The mandatory procedures applicable to all movants seeking leave to file information under seal include:

**A. Procedures Applicable to All Movants seeking Leave to File Information Under Seal**

In filing this motion, the moving party MUST comply with Rule 26.2 of the Local Rules for the Eastern District of Tennessee and Rule 12.2 of the Electronic Case Filing Rules and Procedures. (emphasis on original) *Id* at 5.

With respect to the issue now before this Court regarding the Daigle deposition, the following provision in the Local Rule applies:

### B. Additional Procedures Required to File Another Party's or Non-Party's Confidential Information Under Seal

1. If a protective order entered in this case requires that a party seeking to file ("the filing party") another party's or non-party's information which the party or nonparty has designated as confidential (each referred to as "the designating party"), *then before the filing party files a motion to seal, the filing party and designating party shall meet and confer to determine exactly which documents the designating party asserts meet the Sixth Circuit's sealing standards.* The filing party may move to seal only those confidential-designated documents that the designating party asserts meet the sealing standards. *The motion to seal MUST contain a certification by counsel for the filing party that the filing party and the designating party have met and conferred in good faith to determine which documents the designating party asserts merit sealing.* The Meet and Confer Certification shall be prominently placed on the first page of the motion to seal as the first paragraph and shall contain the following: (emphasis added)  *Id* at 6.

### *Meet and Confer-Certification*

**I,** (*undersigned attorney*)**, counsel for** (*moving party*)**, do hereby certify that I have met and conferred with counsel for** (*the designating party*) **in good faith to determine which documents** (*designating party*) **asserts merit sealing. This motion to seal pertains only to those documents so identified by** (*designating party*)**.** (emphasis on original)

## II. Filing of the Daigle Deposition Under Seal Did Not Comply With Either the Mandatory Local Rule Procedure or the Terms of the Joint Protective Order [*Plaintiff's Motion to Seal,* Doc. 77, PageID #: 1769]

Even though the Plaintiff seems to recognize it was the burden of the filing party to establish compliance when filing a sealed document, "Dahl does not believe that either the Daigle deposition transcript or exhibits thereto qualify for sealing . . ."  [Plaintiff's Motion, Doc. 72, PageID #: 1595-96, ¶ 4]

Dahl seeks to lodge the entire 248 page Daigle deposition and exhibits "in connection with her opposition to . . . *Defendants Motion for Summary Judgment*".   *Id* ¶ 3.

While it is not difficult to recognize the Plaintiff's interest in brandishing about the Daigle

2

deposition, the exuberance spotlighting this post non-renewal of Dahl's MOU criticism of the City does not justify non-compliance with the Local Rules or the *Joint Protective Order.*

### III. The Daigle Deposition is Subject to a Court Approved "*Joint Protective Order"* [Doc. 26, PageID #: 254] and Should Not Have Been Needlessly Filed Under Seal

Counsel to the parties in this case have worked successfully for nearly a year and a half on matters involving discovery and non-disclosure of sensitive documents, including sexual assault case files and named victims. Daigle's deposition contains Exhibits 194, 195, 196 and 197 that are case file descriptions with references, by name, of the sexual assault victims. [Daigle Deposition, p. 3, (Index) pp. 189, 203, 205 (exhibits)]. Testimony as to each exhibit followed.

The Daigle deposition consists of 248 pages. From that, Dahl has identified only two (2) documents she now claims that Daigle identified as being relevant to her First Amendment retaliation claim or due process claim. Those two (2) documents referenced by Daigle of interest to Dahl are (1) handwritten notes (that the Plaintiff contends will contain gender bias information) and (2) spreadsheets that contain information described by Daigle as "criteria that we're evaluating the case for. And . . . we evaluate those criteria . . . [I]f it's a yes or no, more information needed, not able to identify based on the information provided." [Daigle Depo. 192:23-193:8]

This Court has ordered Mr. Daigle (or the City) to provide these two (2) work product documents to Plaintiff's counsel on or before March 20, 2024. [Doc. 92, PageID #: 3480]

As conceded in Plaintiff's *Reply Brief* , [p. 3] "Dahl does not allege in her amended pleading that she was injured by Johnson City's inadequacies and gender based bias as to investigation of sex crimes. Rather she alleges that she was fired for whistleblowing as to the

3

same". *Id.*  Dahl further acknowledges, pursuant to the negotiated agreement among counsel related to the  extension of discovery deadlines that ". . . Dahl is not seeking such underlying case file data.  She's seeking opinions and notes from work product consistent with what was already publicly produced that is responsive to her concerns about gender bias as to female sexual assault victims". [Dahl *Reply Brief* p. 6]   In other words, Daigle's 248 page, six (6) hour deposition contains very limited testimony directed to the topics Dahl believes to have a bearing on her amended pleadings.

Notwithstanding the very limited applicability to the elements of proof in support of Dahl's causes of action, Dahl seeks to file in the record the entire Daigle deposition.  In making the argument to do so, Dahl admits the Daigle deposition contains testimony about sexual assault victims, but suggests limited redactions will suffice.  The defendants disagree.  For example, as part of the compromise agreement between counsel related to the disclosure of Daigle's work product, the City also agreed to provide the correspondence between City Attorney Sandos and Daigle and any draft "Audit" or changes made to the final "Audit" provided by Daigle.  *See*, Daigle Depo., pp. 40-47.

These attorney-client privileged documents were provided pursuant to the negotiated agreement between counsel [Daigle Depo., Exhibits 189,190,191] and should not be subject to public disclosure since the *"Joint Protective Order"* clearly deems such correspondence as protected.

The Daigle deposition includes questions and testimony directed to these attorney-client privileged materials.  [Daigle Depo. pp. 18:8-25; 19:1-25; 20:1-25; 21:1-25; 22:1-25; 23:1-25; 24:1-8; 40-47]   This section, as perhaps several others, deserve some measure of review before

4

the Daigle deposition is simply filed with the record in this case.

An additional consideration as to the filing of the entire Daigle deposition in the public record is the pending criminal charges against Sean Williams in the Federal Court. This also would include the ongoing investigation by the District Attorney of both reported and unreported sexual assaults by Williams. [Case No. 2:21-CR-27; U.S. Dist. Ct., E.D. Tenn] The Daigle deposition deserves a measure of scrutiny to determine if any open investigation involving Williams could be implicated and compromised.

To address these concerns, the Plaintiff should, in customary fashion, identify those portions of the Daigle deposition thought to support her allegations of "gender bias in sex crime investigations" [Ct. Order, Doc. 90, PageID #: 3475]. The parties, during a meet and confer, can then see if an agreement can be reached as to the limited Daigle testimony addressing this identified subject considered important to the Plaintiff i.e., gender bias in criminal investigations.

## IV. Dahl's Additional Daigle Work Product Discovery Request Has Now Been Satisfied

The "handwritten notes" and the "Excel spreadsheets" were distributed to Plaintiff's counsel on March 18, 2024 as directed by this Court's Order.

## V. The Daigle Deposition Should Be Removed From Being Sealed and Returned to Plaintiff's Counsel or the Digital Filing Deleted

The *"Joint Protective Order"* applicable to this case was approved by the Court on January 3, 2023. [Doc. 26, PageID #: 254] This *"Joint Protective Order"* has served the parties well for nearly a year and a half. This Court *Order* provides:

> 7. <u>Use of Confidential Information in the Litigation</u>. For purposes of this paragraph, the term "Confidential Information" includes both "Confidential Information" and "Confidential Information – Attorney's Eyes Only." The parties and their counsel may use Confidential Information only for the purpose of

5

reasonable pursuit of this litigation including any appeals and for no other purpose. In addition to the allowable disclosures of Confidential Information previously addressed, allowable disclosures also include persons involved in or necessary to the litigation process such as court reporters and copy services.

      8. <u>Deposition Transcripts</u>. Counsel for the parties shall have thirty (30) days to review deposition transcripts for purposes of designating any information as "Highly Confidential – In Camera Review," "Highly Confidential – Attorney's Eyes Only" or "Confidential Information" before that deposition transcript is finalized.

      16. <u>Meet and Confer Requirement, Remedy for Breach</u>. In the event a party believes another party has breached this Order, that party shall first attempt to resolve the problem informally through a "meet and confer." That requires that counsel actually meet (whether in person, or by videoconference, or telephone) and confer in good faith, consistent with the Local Rules of this Court. If there is no resolution, a party may apply for relief consistent with the Scheduling Order [Doc. 24 ¶ 4(g)], and the Court may in its discretion, top the extent permitted by law, allow the prevailing party in that dispute to request the award of reasonable attorney's fees, costs and expenses, payable forthwith.

During a meet and confer, counsel for the parties can address the issue of the Daigle deposition and those parts of the deposition that are considered essential to Ms. Dahl's retaliatory discharge and due process claims that do not contain information that should remain classified as "confidential – attorney eyes only" or may legitimately be reduced to the lesser classification of "confidential".

## VI. **Defendants' Pending *Motion in Limine* Directed to Trial Testimony Related to Daigle**

Pursuant to the *Scheduling Order* [Doc. 24, PageID #: 236] the Plaintiff and the Defendants, on March 15, 2024, filed several *Motions in Limine* directed to *evidentiary* issues in the Dahl case. *See,* Doc. 93, 95, 98, 100,101. One of these *Motions* filed by the Defendants, is directed to excluding testimony and evidence related to the deposition of Eric Daigle and the Daigle Audit. [Doc. 101]

6

This Court recognized that:

> Defendants' argument that Mr. Daigle's Audit and related documents constitute subsequent remedial measures under Rule 407 is premature and does not preclude disclosure of the information sought by Plaintiff at this stage of the litigation. [Doc. 90, PageID#: 3465]

This Rule 407 evidentiary issue has now been briefed and is before the Court for consideration. [Doc.100, PageID #: 3465]

The Plaintiff, as did the Court, recognized the importance of a decision regarding the "admissibility, rather than discoverability" in her *Reply Brief in Support of Motion to Compel*, p. 11, and the applicability of *Frye v. CSX Transportation, Inc.*, 933 F.3d 591 (6th Cir. 2019).

## VII. Conclusion

Neither the mandatory provisions in the Local Rules nor respect for the agreements contained in the "*Joint Protective Order"* were followed with the filing of the Daigle deposition under seal. [Doc. 26]

For this reason the Daigle deposition should be returned to Plaintiff's counsel (or simply electronically deleted) and counsel to the parties be instructed to meet and confer at a time and manner mutually agreed upon.

7

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN   37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com


| *s/ Thomas J. Garland, Jr.* | *s/ Emily C. Taylor* |
|---|---|
| Thomas J. Garland, Jr., BPR # 011495 | Emily C. Taylor, BPR # 27157 |
| **MILLIGAN & COLEMAN PLLP** | **WATSON, ROACH, BATSON &** |
| P.O. Box 1060 | **LAUDERBACK, P.L.C.** |
| Greeneville, TN   37744-1060 | P.O. Box 131 |
| Phone: (423) 639-6811 | Knoxville, TN   37901-0131 |
| Fax: (423) 639-0278 | Phone: (865) 637-1700 |
| Email: tgarland@milligancoleman.com | Fax: (865) 525-2514 |
|  | Email: etaylor@watsonroach.com |

Attorneys for Defendants, City of Johnson City, Tennessee, and Karl Turner, in his individual capacity

8