UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| KATERI LYNEE DAHL, | ] | |
|---|---|---|
| Plaintiff, | ] | |
| v. | ] | No. 2:22-cv-00072-KAC-JEM |
| | ] | JURY DEMAND |
| CHIEF KARL TURNER, and | ] | |
| CITY OF JOHNSON CITY, TENNESSEE, | ] | |
| Defendants. | ] | |

## RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE

The City of Johnson City, Tennessee ("Johnson City") and Karl Turner, in his individual capacity, ("Chief Turner") respond to the plaintiff's Motions in Limine (Doc. 95) as follows:

**Plaintiff's Motion No. 1:**

Undisclosed or Surprise Witnesses and/or Evidence. Dahl moves to prohibit Defendants from (a) calling undisclosed witnesses and (b) offering undisclosed documents or other evidence, for such witnesses and/or evidence would violate the Scheduling Order, and Dahl would be unprepared to respond to such undisclosed or surprise witnesses or evidence.

<u>Defendants' Response</u>: The defendants oppose this Motion. This Court will require that both sides comply with the Final Pretrial Order. But it is impossible to know in advance whether any rebuttal witnesses or evidence, including documents, will be needed.

**Plaintiff's Motion No. 2:**

Retirement or Ongoing Work. Any assertion that a verdict against defendant Chief Turner will negatively affect his retirement, or affect Johnson City's ongoing police work would be irrelevant.

<u>Defendants' Response</u>: The defendants do not oppose this Motion.

**Plaintiff's Motion No. 3:**

Discipline. Any assertion that a verdict against Chief Turner will lead to discipline of

him or other Johnson City officers would be irrelevant. Fed.R.Evid. 401-402.

<u>Defendants' Response</u>: The defendants do not oppose this Motion.

**<u>Plaintiff's Motion No. 4:</u>**

No Charges or Discipline against Defendants. Any statement that Chief Turner or Johnson City did not face charges, penalties, or discipline in connection with the incident(s) at issue in this case are irrelevant. Also, the probative value of such statements on the disputed facts is zero and the prejudicial effect would be significant. Fed. R. Evid. 403; Fed. R. Evid. 401-402.

<u>Defendants' Response</u>: The defendants do not oppose this Motion.

**<u>Plaintiff's Motion No. 5:</u>**

Mitigation of Damages. While a civil rights plaintiff has the duty of any injured tort plaintiff to mitigate, *Feldman v. Philaadelphia Housing Authority*, 43 F.3d 823 (3d Cir. 1994), there is no evidence in this matter that Dahl failed to mitigate her damages, and so any questions or inquiry regarding mitigation would be irrelevant.

<u>Defendants' Response</u>: The defendants oppose this Motion. Ms. Dahl is seeking her full salary as a Special Assistant United States Attorney from the date of her non-renewal through the date of trial. The efforts she has made to secure comparable employment during a period of approximately three (3) years is a legitimate ground for cross-examination.

**<u>Plaintiff's Motion No. 6:</u>**

Comparative fault does not apply to civil rights claims, *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 739 (6th Cir. 2002), and so any inquiry or mention of comparative fault in the context of damages would be irrelevant to the disputed facts, and the prejudicial effect would be significant. Fed. R. Evid. 403.

<u>Defendants' Response</u>: The defendants do not oppose this Motion to the extent that the plaintiff is asserting that for purposes of proving liability, the Court does not apportion fault between the parties as would occur in a negligence action. However, the defendants will seek a jury instruction that the plaintiff cannot obtain a double recovery of compensatory damages by obtaining a judgment against Chief Turner, individually, and Johnson City. Any potential award

would need to be apportioned between her claims, which is a different concept than comparative fault.

**Plaintiff's Motion No. 7:**

Any other civil actions involving Dahl are irrelevant, Fed. R. Evid. 401-402, and, additionally, their probative value on issues in dispute is zero and their prejudicial effect would be immense. Fed. R. Evid. 403.

Defendants' Response: The defendants do not oppose this Motion except and to the extent that if Ms. Dahl should open the door during her proof on this subject, then the defendants would request the right to oppose such evidence.

**Plaintiff's Motion No. 8:**

Opinion Testimony on Ultimate Issues from Defendants' Non-Expert Witnesses. Any opinion from Chief Turner or other non-expert defense witnesses (none of whom have been disclosed as an expert pursuant to Fed. R. Civ. P. 26(a)(2)), that Defendants acted reasonably, acted in good faith, or had constitutional authority to fire Dahl, or any other opinion on an ultimate legal conclusion, would not be helpful to the jury in understanding the witness's testimony or determining a fact in issue. Fed. R. Evid. 701. Further, such testimony would invade the province of the jury from a fact witness. *See* Advisory Committee Notes to Fed. R. Evid. 704, Opinion on Ultimate Issues ("Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.").

Defendants' Response: The defendants oppose this Motion as framed by the plaintiffs. On the one hand, the defendants agree that neither Ms. Dahl nor a witness for the defendants should be allowed to testify on the subject of whether a constitutional violation occurred. But part of the defense to Ms. Dahl's claims is that a reasonable police chief possessing the same information known to Chief Turner could have believed that he was acting reasonably in recommending the non-renewal of Ms. Dahl's contract. Chief Turner is permitted to testify as to what he knew or did not know, and why he made the non-renewal recommendation, including the fact that the City's

Staff Attorney advised him that the better course of action would be to recommend the non-renewal as opposed to the City attempting to terminate a one-year contract early if Ms. Dahl's job performance did not improve. Therefore, the defendants' position is that the Plaintiff's Motion is overly broad, and should be denied.

**Plaintiff's Motion No. 9:**

A Sizeable Damages Verdict Causing Dahl to "Win the Lottery" or "Get Rich". Words by Defendants suggesting that a sizeable damages verdict in favor of Dahl would constitute her "winning the lottery," "getting rich," or other words to that effect, would prejudicially disparage Dahl and are irrelevant to the proceedings. Fed. R. Evid. 403.

Defendants' Response: The plaintiff has taken the position that damages for a civil rights violation are "infinite" and that she will be seeking a seven-figure award. As addressed later in this Response, a civil rights violation, in and of itself, is not a basis for an "infinite award" of damages. To the extent that the plaintiff attempts to claim an exorbitant award of damages – and/or her attorney argues the same – then the defendants should be entitled to make whatever argument they deem necessary to rebut a claim for an exorbitant award of damages. Therefore, the defendants oppose this Motion.

**Plaintiff's Motion No. 10:**

Mention of Defendants' Prior Civil Litigation or Complaints. The only conceivable reason for bringing out that a Defendant has had either no prior civil litigation or complaints, or that such complaints resolved in Defendants' favor, would be to put in the jury's mind that in this case that such Defendant acted consistent with a character trait. Prior acts (or lack thereof) are inadmissible to show conduct consistent therewith, and no exception applies. Fed. R. Evid. 404.

Defendants' Response: The defendants do not oppose this Motion – with the caveat that if the plaintiff opens the door to such evidence, then the defendants should not be barred from presenting evidence on this subject.

**Plaintiff's Motion No. 11:**

4

Mention of Defendants' Commendations and Awards. The only conceivable reason for bringing out that any Defendant has Commendations and Awards would be to convince the jury of the exemplary nature of Defendant's character in order to bolster the jury's belief that in this instance the Defendant acted in a manner consistent with the conduct which was connected to the Commendations and/or Awards. Such evidence, however, is inadmissible under Fed. R. Evid. 404(a)(1). Dahl does not object to reasonable introductory testimony regarding background of any witness, including Defendants, and presumes the Court will allow same for all parties and witnesses.

Defendants' Response: The defendants do not oppose this Motion – with the caveat that if the plaintiff opens the door to such evidence, then the defendants should not be barred from presenting evidence on this subject.

**Plaintiff's Motion No. 12:**

Johnson City Officers "Flooding the Zone" and Appearing in Court in Uniform and/or With Weapons. If the officers "flood the zone" and appear at trial in uniform, particularly with weapons, then jurors will conclude that building security applied different rules to the officers than to the (sic) Dahl. The jurors may then conclude that the officers are more trustworthy than Dahl (and/or the jurors themselves). Such a conclusion would be prejudicial to Dahl. Johnson City Officers should therefore be prohibited from appearing in court either in uniform or with weapons. Dahl has no quarrel with officers from Defendant's department or any other department attending the trial.

Defendants' Response: The defendants oppose this Motion. Certain officers wear uniforms on duty and others do not. Depending upon what witnesses are called, some of the officers may be on-duty that particular day and should be permitted to wear the clothes they normally wear to work. As far as weapons, whether an officer has his weapon on him or her will be determined by the United States Marshal's Service.

**Plaintiff's Motion No. 13:**

Apology. Defendants, in some civil rights cases, decide that the right approach before the jury is to express an apology to the plaintiff. An apology is irrelevant, and a spontaneous apology would be non-responsive. Dahl's counsel will not open

the door. Defendants should therefore be prohibited from apologizing on the stand, whether in response to a question from Defendants' counsel or spontaneously.

Defendants' Response: To the extent the Motion is using the term "apology" in the context of either Chief Turner or Johnson City apologizing for allegedly violating some right held by Ms. Dahl, there will be no such apology, spontaneous or otherwise. However, in Southern vernacular, a witness might say: "I'm sorry if she misunderstood _____." That is not an apology for causing alleged harm, and any granting of this Motion should be limited to an apology for being the legal cause of harm, which again, is not going to occur.

**Plaintiff's Motion No. 14:**

Investigation by Washington County. In this case, the City Manager asked the District Attorney of Washington County to investigate Dahl's allegations of possible corruption related to Johnson City Police Department and Sean Williams. The next day, the District Attorney publicly issued a letter declining to do so. The letter and the decision are hearsay and do not fall into any hearsay exception. Fed. R. Evid. 801-807. To the extent that third-party statements are included they are not factual findings and are hearsay. *Jordan v. Binns,* 712 F.3d 1123, 1133-34 (7th Cir. 2013). Nor do the statements fall into the hearsay exception in civil cases for "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii); *Daniel v. Cook Cnty.,* 833 F.3d 728, 739-40 (7th Cir. 2016).

Defendants' Response: At the time of plaintiff's Motion, she is seeking to introduce testimony from Eric Daigle and the Daigle Audit. The defendants have filed a Motion in Limine seeking to exclude this evidence. If either the testimony of Daigle or the Daigle Audit should be admitted into evidence at trial, then any evidence from anyone in the District Attorney's Office that would rebut any such testimony could be relevant and admissible. But such evidence would not include the subject of Plaintiff's Motion No. 14. Therefore, to the extent that the Plaintiff's Motion is limited to the letter from the City Manager to the District Attorney, then the defendants agree that it should be excluded. With respect to any testimony from anyone in the District Attorney's Office, the defendants would only seek to introduce testimony to rebut certain opinions

6

or statements in the Daigle deposition or Audit. Therefore, since no determination has been made on that subject, this Motion is premature.

**Plaintiff's Motion No. 15:**

Wayne Taylor. Dahl seeks to exclude any testimony by her former AUSA Supervisor Wayne Taylor. First, Dahl had a very limited time and scope of two hours to depose Taylor pursuant to DOJ's *Touhy* regulations. Second, Chief Turner and Taylor each testified that Turner had zero knowledge of any of Taylor's concerns when he fired Dahl. Turner Dep. 164-65; Taylor Dep. 128. As a result, admitting any testimony by Taylor—which was limited only as to Dahl's job performance—would be more prejudicial than probative, prohibited character trait evidence as to Turner's proffered reason for firing Dahl, as well as wholly irrelevant. Fed. R. Evid. 403, 404(a)(1). Further, Taylor's testimony came only after Dahl filed her lawsuit, criticized how the Williams case was handled, and Taylor's statements became one of Chief Turner's proffered reasons. Only "[s]tatements consistent with trial testimony given **before** the corrupting influence to falsify occurred are relevant to rebut a claim of contrivance." McCormick on Evidence, § 251, at 119 (4th ed. 1992) (emphasis added); *see also Lust v. Sealy, Inc.,* 383 F.3d 580, 588 (7th Cir. 2004) (Posner, J.) (rejecting after-acquired evidence given the motive to create evidence of nonliability).

Defendants' Response: As a starting point, Dahl's Motion seeks to exclude "any testimony" of her former supervisor, Assistant United States Attorney ("AUSA") Wayne Taylor, but then she only argues for the exclusion of testimony related to his criticisms of her job performance as a SAUSA under his supervision. The defendants oppose this Motion – and in doing so, will break down by subject matter the areas on which AUSA Taylor can testify.

First, the defendants address the argument made by Dahl, which seeks to exclude criticisms of her job performance. Dahl has testified that she had two supervisors, Chief Turner at the Johnson City Police Department, and AUSA Taylor at the U.S. Attorney's Office in Greeneville. At trial, Dahl will be attacking Johnson City officers for allegedly falsely accusing her of not being responsive to them. But *at the very same time* that members of the Johnson City Police Department were experiencing issues with Dahl not being responsive, AUSA Taylor, and others in his office, were experiencing the same thing. AUSA Taylor received repeated complaints about Dahl's lack

7

of responsiveness to the point where he expressed to her in writing his concerns about her behavior potentially harming her reputation and the reputation of the U.S. Attorney's Office in Greeneville. *See Doc. 61-5, Deposition of Wayne Taylor, PageID ##: 1049-1057*. In fact, AUSA Taylor found her unresponsiveness to be inexplicable and unacceptable. *See Exhibit A, Deposition of Wayne Taylor, p. 64, lines 4-11*. This is not a situation where these defendants are asserting that Dahl was unresponsive in a *prior job* and therefore they should be allowed to introduce evidence under Federal Rule of Evidence 404(b) that she was unresponsive in a *later job*.

Instead, *the complaints from SIS officers and the complaints being received from AUSA Taylor were occurring at the same time in the same job.* Therefore, if at trial Dahl does not challenge the fact that the SIS officers found her to not be responsive, then AUSA Taylor's testimony on this subject would not come in. But Dahl is going to portray herself as an excellent employee who was very responsive to SIS officers. And when she does so, that clearly opens the door to AUSA Taylor's testimony on this subject under Rule of Evidence 404(b).

Next, on December 15, 2020 Chief Turner forwarded to AUSA Taylor Sgt. LeGault's email with a list of cases. Dahl attempts to characterize this email as an attack on her. AUSA Taylor will testify about this email, and he will testify that in response to this email he advised Dahl that, while the Grand Jury was not in session, she should be working ahead preparing indictments and prosecution reports.

Next, Dahl will testify that she had to fight to obtain Grand Jury slots when Grand Jurys began again in late 2020 and early 2021; but AUSA Taylor will testify that slots were available, and in fact that the March 2021 Grand Jury had to be shortened to one-half day because slots were not being filled. In summary, Dahl will be testifying that she could not indict more persons because she could not obtain slots, and AUSA Taylor's testimony will contradict her testimony.

8

Therefore, based on the foregoing, it would be premature at this juncture to rule that AUSA Taylor's testimony on all subjects should be excluded from trial.

**Plaintiff's Motion No. 16:**

Taking Credit for Sean Williams being Arrested and Brought to Justice. Johnson City did virtually nothing to investigate or seize Sean Williams—the gravamen of Dahl's whistleblowing—and had no role in Williams' eventual seizure. Nevertheless, the City Manager has attempted in her public statements to take credit for bringing Williams to justice. Any argument that Chief Turner or Johnson City had a role in Williams' eventual seizures would confuse and mislead the jury. Fed. R. Evid. 403.

Defendants' Response: The defendants oppose this Motion as presented. On the one hand, the defendants agree that any argument that Chief Turner or Johnson City were involved in the eventual arrest of Sean Williams is not relevant. But as part of Motion in Limine No. 16, the plaintiff asserts that "Johnson City did virtually nothing to investigate or seize Sean Williams." To the extent that the plaintiff is allowed to introduce evidence at trial to support her theory that officers "did virtually nothing to investigate or seize Sean Williams," then the defendants are entitled to rebut that evidence.

**Plaintiff's Motion No. 17:**

17. Arguing that Dahl Must Prove Corruption as an Element of Any of her Claims. Dahl has alleged that Chief Turner and Johnson City's failures as to Sean Williams indicate either corruption or plain incompetence. But Dahl does not need to prove that Chief Turner or Johnson City was corrupt as an element of any of her claims. Therefore, Defendants should not be permitted to argue that Dahl must prove corruption to meet her burden of proof, as that would confuse the jury. Fed. R. Evid. 403. Nor should Defendants be able to say that the absence of evidence of corruption exonerates them from liability for firing Dahl. *Id.*

Defendants' Response: The defendants oppose Ms. Dahl's Motion. Ms. Dahl has sued the City of Johnson City under the Tennessee Public Protection Act. She makes the following allegations in paragraph 196 of the First Amended Complaint:

196. Johnson city terminated Dahl for refusing to participate in, or for refusing to

remain silent about, illegal activities, namely Dahl's allegations about Johnson City Police Department's failures to investigate and seize Williams, and about Johnson City Police Department being either corrupt or plainly incompetent.

See Doc. 56, PageID #: 808. Officers allegedly being "plainly incompetent" is not an "illegal activity" under the Tennessee Public Protection. Act. Therefore, this claim is going to fail unless Dahl can prove her corruption allegation. As a result, this Motion in Limine should be denied. In addition, Dahl has made allegations of corruption – without supporting evidence – in this action, and the defendants are entitled to rebut any such allegations made at trial.

**Plaintiff's Motion No. 18:**

18. Dahl's Communications with Ronan Farrow or Other Journalists. Dahl contacted journalist Ronan Farrow to share her concerns about Johnson City and Sean Williams, based on Farrow's reputation and Pulitzer Prize for reporting on other perpetrators of sexual assault. Defendants have sought in discovery to imply that (a) Dahl sought undue attention or monetary gain from her contact with Farrow (she neither sought nor gained any), (b) Dahl sought to cry to Farrow or other journalists to establish herself as a victim (she did not cry), or (c) Dahl had bad motives in contacting Farrow. Dahl's communications with Farrow or other journalists had no role in her firing, and argument about Dahl's motives in contacting Farrow would confuse the jury and be more prejudicial than probative. Fed. R. Evid. 403.

Defendants' Response: The defendants do not oppose this Motion as long as Dahl is excluded from presenting such evidence.

**Plaintiff's Motion No. 19:**

19. AUSA McCauley Text Messages with Dahl, and Inappropriate Allegations about Dahl and McCauley's Friendship. Dahl had produced in discovery her post-termination text messages with her AUSA mentor Tom McCauley who is also a good friend. Some of them are critical of Johnson City, Chief Turner, and/or their general failures—combined with the USAO—as to Williams. These are private, personal communications that were unknown to any Defendant at any relevant time. Some of them mock Chief Turner and others at Johnson City as to their failures as to Williams. Any such texts are more prejudicial than probative, irrelevant as they were unknown by any Defendant at the time of Dahl's termination (indeed they were only created afterward), and would only serve to distract if not mislead the jury. Further, without any foundation, Defendants have repeatedly implied that Dahl had an inappropriately romantic personal relationship with her

AUSA mentor McCauley. Dahl denies this and there is zero evidence to support this allegation. Gratuitous and unfounded attacks on Dahl's character and sexual history should be excluded, and are extremely offensive and prejudicial. Fed. R. Evid. 403. Moreover, the parties were prevented by DOJ from deposing AUSA McCauley under *Touhy*, and therefore the parties have had no opportunity to question AUSA McCauley about any of these text messages.

Defendants' Response: The defendants agree that these text messages are not admissible on the issue of liability. But as addressed in response to "Plaintiff's Motion No. 21," Dahl is apparently seeking a seven-figure award of emotional distress damages. Her text messages provide great insight into her purported level of emotional distress. The McCauley text messages were exchanged between them after Dahl was no longer working as a SAUSA attorney. The relevancy on the issue of her emotional state far exceeds any prejudicial effect. To exclude these messages would bar the jury from seeing the real Kat Dahl, which would be grossly unfair to the defendants.

**Plaintiff's Motion No. 20:**

Sgt. Legault's Subordinates' Statements about Dahl. In depositions, some of Sgt. Legault's subordinates, who had no supervisory authority over Dahl, claimed that Dahl had poor job performance. *See, e.g.,* Saulsbury Dep. 119. None of this made its way to Chief Turner before he fired Dahl, who testified that he relied only on Sgt. Legault and Captain Peters. Turner Dep. 63-64. Therefore, such after-acquired evidence should be excluded as both irrelevant to the issues before the jury and more prejudicial than probative. Fed. R. Evid. 403.

Defendants' Response: The defendants oppose this Motion. The Motion mischaracterizes the evidence. Sgt. LeGault was the supervisor over the SIS officers. Their complaints about Ms. Dahl's work performance were funneled through Sgt. LeGault to Captain Peters and Chief Turner. For example, see Sgt. LeGault's deposition wherein he testified about the creation of the December 11, 2020 list of cases that he sent to Chief Turner and Captain Peters:

Q. Did you speak with other people in developing this list?

A. Yes.

Q. Your men?

> A. Yes.
>
> Q. Which men?
>
> A. Saulsbury and Stillwagon.
>
> Q. Anybody else?
>
> A. Barron.

*See Doc. 82-28, Deposition of Jeff LeGault, PageID #: 2579.* Saulsbury, Stillwagon, and Barron were SIS investigators under Sgt. LeGault. Therefore, the representation that the complaints of Saulsbury, Stillwagon, and Barron constitute after-acquired evidence is incorrect. Likewise, Chief Turner was made aware of the fact that Dahl was not responsive to Barron regarding her initial agreement to obtain a complaint as to a dangerous felon, Dalvin Robinson. *See Doc. 61-1, Declaration of Karl Turner, PageID ##: 984-986 at ¶¶ 19-21.* In summary, Dahl's Motion in Limine should be denied because evidence of which Chief Turner was aware is not after-acquired evidence.

Finally, even as to evidence that Chief Turner was not aware, it is anticipated that Dahl will open the door to the admissibility of that evidence. Dahl is expected to testify that the SIS officers misrepresented whether she was responsive, and that this somehow proves that Chief Turner's decision to recommend her non-renewal was pretextual. To the extent that Dahl attacks the credibility of the SIS officers, then evidence of Dahl not being responsive to them is relevant because Dahl has opened the door to that evidence. Therefore, this Motion in Limine should be denied on that ground as well.

### Plaintiff's Motion No. 21:

> Dahl's Medical Records, her ADHD, and particularly the Effects of Dahl's Medications in relation to her Garden Variety Emotional Distress. Millions of Americans, including Dahl, take medication for anxiety and depression. Dahl also suffers from ADHD. Dahl is not claiming any special damages for her anxiety and

12

depression, nor her ADHD, nor is she claiming a causal link between her garden variety emotional distress damages and her medical conditions. No party has produced any expert testimony as to the effects of Dahl's medications. Therefore any evidence of Dahl's medical records, or the effects of her medications, would be speculative, more prejudicial than probative, and would lack foundation. Fed. R. Evid. 403.

Defendants' Response:

On the one hand, Ms. Dahl wants to assert that she is only seeking "garden variety emotional distress" damages, but on the other hand she apparently seeks an enormous award in emotional distress damages.

This Court has addressed the concept of garden variety emotional distress damages as follows:

**D. DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING EMOTIONAL DISTRESS DAMAGES ABOVE "GARDEN VARIETY" EMOTIONAL DISTRESS [DOC. 48].**

Pursuant to Fed. R. Evid. 602, 701, and 702, Defendants move to preclude McTaggart from arguing or introducing evidence of "purported emotional distress damages beyond 'garden variety' emotional distress." [Doc. 48, pg. 1]. Defendants argue that anything more than "the usual and customary" emotional distress related to losing one's job would require expert testimony from a medical professional, and McTaggart has disclosed no such expert [Doc. 48, pg. 2]. Defendants state that McTaggart's own testimony about his emotional distress is "conclusory" and "closely tracks the definition of garden variety distress." [*Id.*]. Particularly, Defendants seek to exclude McTaggart's statements that he "believes the termination contributed to an increase in his medication dosage...." [Doc. 48, pg. 3]. Defendants argue that McTaggart "is not a therapist, psychologist, psychiatrist" or any other mental health professional and has not designated himself or anyone else as an expert witness in this area [*Id.*] Defendants ask the Court to limit McTaggart's emotional distress claim to "garden variety distress" which would preclude him from testifying to any "perceived connection between his termination and his prescription dosage." [*Id.*]. McTaggart did not file a response to this motion.
**\*4** In the context of an emotional distress claim, "the definition of [garden variety] is, at best, nebulous." *Butler v. Rue 21, Inc.*, No. 1:11-CV-9, 2011 WL 1484151, at \*2 (E.D. Tenn. Apr. 19, 2011). One district court defines "garden variety" emotional distress as "the usual and customary emotional distress that results from a workplace termination, such as anger, sadness, and humiliation." *Cottrell v. Costco Wholesale Corp.*, 2012 WL 3779143, at \*2 (D. Minn. Aug. 31, 2012). In "garden variety" emotional distress claims, "the evidence of mental suffering is

13

> generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." *Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 292 (2d Cir. 2010).
>
> McTaggart has disclosed no medical expert to opine on any mental health diagnosis and causation, nor has he alleged any extraordinary mental condition flowing from his termination that would require medical examination. For this reason, the Court agrees that any damages flowing from McTaggart's emotional distress are of the "garden variety" type. Without any alleged extraordinary medical condition, any medical proof would likely be inadmissible regardless. *See Butler v. Rue 21, Inc.*, 2011 WL 1484151 at *3 ("... a plaintiff who merely claims she has suffered the sort of damages that would ordinarily flow from the alleged wrong has not placed her actual mental condition at issue, and medical discovery is therefore unlikely to lead to admissible evidence."). For these reasons, Defendants' motion *in limine* to preclude evidence or argument regarding emotional distress damages above "garden variety" emotional distress [Doc. 48] is GRANTED. Specifically, McTaggart may testify regarding his own perceptions of emotional distress related to his employment and termination but is barred from testifying that his termination bears any connection to his medical prescription dosage for any mental health diagnosis, including depression and anxiety.

*See McTaggart v. Cath. Health Initiatives*, No. 1:19-CV-00088-DCLC, 2021 WL 3291963, at *3-4 (E.D. Tenn. Aug. 2, 2021).

But compare the concept of limiting one's claim of emotional distress damages to "garden variety emotional distress damages" with Ms. Dahl's calculation of damages set forth in her Rule 26 Initial Disclosures wherein Ms. Dahl asserts:

> The value of civil rights secured by the U.S. Constitution is infinite. Plaintiff will rely on the jury to value her damages as to the violation of her civil rights. Based on comps for verdicts and settlements, Plaintiff anticipates that the evidence adduced in discovery may likely support a seven-figure jury award of damages for injury to her civil rights. *See, e.g., Greisen v. Hanken,* 925 F.3d 1057 (9th Cir. 2019) (affirming $4,117,488 verdict for police chief who blew the whistle on municipal budget's financial improprieties). Please note that this computation is not admissible as evidence of Plaintiff's civil rights damages to the Court or the jury, but provides fair notice and warning of what Plaintiff likely intends to ask the jury as to the same.
>
> Some of Plaintiff's damages, however, are not susceptible to the type of calculation contemplated by Rule 26(a)(1)(A). *See Williams v. Trader Pub. Co.*, 218 F.3d 481,

> 487 n.3 (5th Cir. 2000) ("[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury.").
>
> Plaintiff also seeks punitive damages, but calculation of punitive damages is premature, and also not susceptible to the type of calculation contemplated by Rule 26(a)(1). *See Burrell v. Crown Cent. Petroleum*, 177 F.R.D. 376, 386 (D.Tex. 1997).
>
> Plaintiff's special damages are back pay at the rate of $87,000 per year, up to the date of judgment in this case.

*See Ms. Dahl's Rule 26 Disclosures.*

Ms. Dahl's representation that the value of rights secured by the United States Constitution is "infinite" is simply incorrect. As this Court has explained:

> "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). Therefore, "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury."
>
> *Id.* In such cases, plaintiffs may only be entitled to an award of nominal damages. *See id.*; *see also Damages*, Black's Law Dictionary (11th ed. 2019) (defining "nominal damages" as "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated").

*See Klaver v. Hamilton Cnty., Tennessee*, 2022 WL 16731735, at *10 (E.D. Tenn. Feb. 2, 2022), *aff'd*, 2022 WL 16647970 (6th Cir. Nov. 3, 2022), *cert. denied sub nom. Wilkey v. Klaver*, 143 S. Ct. 1004, 215 L. Ed. 2d 139 (2023).

In summary, Ms. Dahl's assertion of entitlement of a seven-figure award can only refer to emotional distress damages because her "special damages" are $87,000 per year and she asserted that a calculation of punitive damages is premature. In other words, Ms. Dahl is attempting to hide behind the protections provided to a plaintiff who is only seeking "garden variety emotional distress" damages while she is actually seeking an award far beyond garden variety emotional distress damages.

15

With respect to this Court's ruling on this Motion is Limine, it is difficult to know how to respond without knowing how this Court will instruct the jury on this issue and what testimony will be allowed from Ms. Dahl (and perhaps other witnesses that she will call). Therefore, if the following assumptions are correct, then the defendants do not oppose the plaintiff's motion:

1. The jury will be instructed that Ms. Dahl is only suing for garden variety emotional distress damages – with that phrase being defined as the sort of damages that would "ordinarily flow from the alleged wrong." *Id.*

2. Ms. Dahl will not testify as to her medication levels, any mental health diagnosis or any visits with mental health professionals.

3. Ms. Dahl will not call other witnesses to testify as to her alleged emotional distress.

However, to the extent that any of the following assumptions are incorrect, then the defendants' position is that they are entitled to introduce her mental health records and question Ms. Dahl about those records.

**Plaintiff's Motion No. 22:**

> Dahl's Parents' Marital Issues. Dahl briefly testified in her deposition about marital issues in her parents' marriage. Defendants have not produced any causation evidence to link this to her garden variety emotional distress for being fired for being a whistleblower. Accordingly, such evidence should be excluded as confusing, misleading, and more prejudicial than probative. Fed. R. Evid. 403.

Defendant's Response: The defendants oppose this Motion. During the time period when Ms. Dahl's alleged emotional distress occurred, she has been living at home with her parents. It is impossible to know what Ms. Dahl's testimony will be at trial – even under a "garden variety emotional distress" claim. To the extent that Ms. Dahl's testimony goes beyond what one would expect from a reasonable person's reaction to having her contract not renewed, then other stressors in her life may need to be explored on cross-examination. Therefore, without knowing Ms. Dahl's

16

testimony (and/or any testimony from others), it would be premature to exclude a source of emotional distress that had been occurring within the household where Ms. Dahl resides.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN   37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN   37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
Email: tgarland@milligancoleman.com

*s/ Emily C. Taylor*
Emily C. Taylor, BPR # 27157
**WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN   37901-0131
Phone: (865) 637-1700
Email: etaylor@watsonroach.com

*Attorneys for Defendants*