UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION
AT GREENEVILLE

| | |
|---|---|
| KATERI LYNNE DAHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22−cv−00072−KAC−JEM |
| | ) |
| CHIEF KARL TURNER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**Joint Proposed Pre-Trial Order**

The parties by counsel state for their Joint Proposed Pre-Trial Order:

1. **Jurisdiction**. The parties agree that the Court has jurisdiction to hear Dahl's civil rights claims brought against Chief Karl Turner pursuant to the First and Fourteenth Amendments to the United States Constitution. The parties agree that the Court has jurisdiction to hear Dahl's claim brought against the City of Johnson City pursuant to the National Defense Authorization Act, and also Tennessee's Public Protection Act if the judge in this case decides to exercise supplemental jurisdiction.

2. **Admissions and Stipulations**. The Parties agree on the following facts set out in numbered paragraphs:

    1. From September 9, 2019 to June 30, 2021, Plaintiff Kateri Lynne Dahl served as a Special Assistant United States Attorney ("SAUSA") in the U.S. Attorney's Office for the Eastern District of Tennessee, pursuant to a Memorandum of Understanding that was for a period of one year, unless renewed. She was detailed to the Johnson City Police Department to assist the

City of Johnson City in its continuing efforts on the Project Safe Neighborhoods program and the Targeted Community Crime Reduction Project (TCCRP) and to bring federal charges for crimes occurring within Johnson City's jurisdiction. The Memorandum of Understanding, first executed as to Dahl in September 2019, for nine months, was renewed in June 2020 for 12 months, ending on June 30, 2021. The Memorandum of Understanding provides that Dahl would work with the Johnson City Police Department under the guidance of the United States Attorney's Office to identify investigations best prosecuted in federal district court with the goals of reducing drug trafficking and violent crime. Dahl holds a Bachelor of Arts undergraduate degree from the University of Memphis and a Juris Doctorate (J.D.) from the University of Tennessee School of Law. She is a member in good standing of the District of Columbia Bar.

2. Dahl was paid $87,000 annually from funds provided by Johnson City distributed bi-monthly to her by Washington County, Tennessee.

3. Defendant Karl Turner was at all relevant times the Chief of Police for the City of Johnson City's Police Department. Chief Turner was employed in the Johnson City Police Department in 1991 and retired on February 28, 2023 after thirty-two (32) years of service.

4. Dahl's Memorandum of Understanding was not renewed on June 30, 2021. However, a thirty (30) day Memorandum of Understanding between Johnson City and Dahl was entered into for a period of thirty (30) days for the limited purpose of allowing Ms. Dahl to assist with the transfer of her case files to other members of the United States Attorney's office.

3. **General Nature of the Claims of the Parties**:

   **(i.) *Plaintiff Dahl's Claims***

   1. For her first claim (Count I – First Amendment Retaliation against Chief Turner individually), Dahl alleges that Chief Turner terminated Dahl's employment by advising Johnson

2

Case 2:22-cv-00072-KAC-JEM   Document 110   Filed 03/28/24   Page 2 of 11   PageID #: 3702

City's Mayor and City Manager not to renew her multi-agency MOU, and by unilaterally sending a letter to Dahl declining to renew her MOU on June 24, 2021. This was shortly after Dahl engaged in First Amendment-protected activities outside of her chain of command, including making statements to the FBI and other DOJ and federal officials, about Johnson City Police Department's failures to investigate and seize Sean Williams, and the substantial likelihood that Johnson City Police Department was either corrupt or plainly incompetent. These statements were outside of Dahl's duties as a prosecutor under the MOU. Dahl asserts that her firing was motivated at least in part by her statements.

2.  For her second claim (Count II – Procedural Due Process Violation by Chief Turner in his individual capacity), Dahl alleges that Dahl had a limited property interest in her MOU under the Tennessee Public Protection Act which prohibits retaliation for whistleblowing. Dahl alleges that Chief Turner used false and pretextual allegations that Dahl failed to communicate with Johnson City officers that are not supported by text and phone records, and falsely alleged she had lied to him about her June schedule as to trial and the Grand Jury, to cover up his retaliatory purpose in firing her. Dahl further asserts that circumstantial and inferential facts show that Chief Turner knew of Dahl's whistleblowing speech and activities concerning Johnson City Police Department's failures to investigate and seize Williams, and the Johnson City Police Department being either corrupt or plainly incompetent.

3.  For her third claim (Count IV – TPPA Retaliatory Discharge against Johnson City), Dahl alleges that she was an employee of Johnson City under the MOU, and that Johnson City terminated Dahl for refusing to participate in, or for refusing to remain silent about, illegal activities, namely Dahl's allegations about Johnson City Police Department's failures to

investigate and seize Williams, and about Johnson City Police Department being either corrupt or plainly incompetent.

4. For her fourth claim (Count V - National Defense Authorization Act claim against Johnson City, 41 U.S.C. § 4712), Dahl alleges that her job was funded at least in part by a federal grant from the U.S. Department of Justice to Johnson City, as was a pole camera that was used to surveil Williams. Dahl alleges that Johnson City's failures as to Sean Williams—particularly in not searching evidence of sex crimes seized from Williams' apartment, and tipping Williams off as to the sealed federal warrant for his arrest—constituted "a substantial and specific danger to public health or safety." Dahl further alleges that her complaints to the FBI and other DOJ and federal colleagues were a contributing factor in Johnson City's decision to fire Dahl.

**(ii.)** *Chief Turner's and Johnson City's Responses/Defenses to Dahl's Claims*

As to Dahl's First Amendment retaliation claim against Chief Turner, this is based on her allegation that she engaged in protected speech – by complaining to certain Federal officials about the Johnson City Police Department – and that Chief Turner then retaliated against her by recommending to the City Manager that her one-year contract not be renewed. Dahl's claim is without merit for the following reasons. First, Chief Turner did not know that Dahl had made any complaints to Federal officials. Therefore, Chief Turner could not have retaliated against Dahl if he did not know that Dahl had made complaints. Likewise, under the second prong of the qualified immunity test, Chief Turner is entitled to have this claim dismissed as long as a reasonable police chief in his position could have believed that he had not violated Dahl's First Amendment rights where he did not know that she had engaged in any protected activity. Second, even if Dahl could prove that Chief Turner was aware that she had engaged in protected activity, Chief Turner is still entitled to prevail by proving that he would have taken the same action under these facts – or that

4

a reasonable police chief could have believed that taking the same action was not a violation of Dahl's First Amendment rights. This same action defense is based on the following evidence. Beginning in the latter part of 2020, Chief Turner began receiving complaints about Dahl's work performance. This culminated in a meeting on May 19, 2021 with Chief Turner, Captain Peters, and Dahl (that she secretly recorded). In that meeting, they reviewed Dahl's cases and she stated that she was going to present five of the cases – which she identified on the recording – to the Federal Grand Jury in June of 2021. During that meeting, Dahl also agreed to report back to Captain Peters the results of the June Grand Jury. Dahl never presented any of the five cases she identified, and she never reported back. By June of 2021, Dahl's contract was set to expire at the end of the month unless renewed for another year. Chief Turner went to Johnson City's Staff Attorney, Sunny Sandos, and told Attorney Sandos that he wanted to recommend the renewal of Dahl's contract to the City Manager, but he wanted to be sure that if Dahl's work performance did not improve, the one-year contract could be terminated before the year was up. Attorney Sandos advised Chief Turner that the better course of action would be for him to recommend to the City Manager the non-renewal of Dahl's contract now as opposed to the City attempting to get out of a one-year contract early. Chief Turner followed the legal advice of the City's attorney and recommended the non-renewal of Dahl's contract, which is what occurred. Therefore, there was a legitimate reason for Chief Turner to recommend the non-renewal of Dahl's contract. As a result, Chief Turner can prove that he would have taken the same action under these facts. Alternatively, under the second prong of the qualified immunity test, Chief Turner can show that a reasonable police chief under these facts could have believed that it was proper to recommend the non-renewal of Dahl's contract without violating her First Amendment rights.

Dahl's other claim against Chief Turner is that he denied her procedural due process rights before her contract was not renewed. A procedural due process right is a right to a hearing before a decision is made regarding someone's employment. But to be entitled to a hearing, Dahl must prove that she had what is known as a "property interest" in her job. She claims a limited property interest based on her theory that she was an employee of Johnson City who was a whistleblower under the Tennessee Public Protection Act. For reasons addressed below as to the claim against Johnson City under the Tennessee Public Protection Act, she did not have a limited property interest. Therefore, if she did not have a limited property interest, then this claim against Chief Turner must be dismissed. Alternatively, under the defense of qualified immunity, Chief Turner should be dismissed as long as a reasonable police chief could have believed that Dahl did not have a limited property interest – which in this specific case means that a reasonable police chief could have believed that: (1) Dahl was not an employee of Johnson City or (2) that this state statute did not create a limited property interest, or (3) he was not aware of Dahl refusing to remain silent about or participate in "illegal activities" as that term is defined by the Tennessee Public Protection Act.

With respect to Dahl's claim against Johnson City under the Tennessee Public Protection Act, the City is entitled to dismissal based on any one of the following reasons: (1) Dahl was not an employee of Johnson City, (2) Dahl was neither discharged nor terminated by Johnson City, (3) Dahl did not refuse to participate or refuse to remain silent about illegal activities, which is required to make out a claim under the Tennessee Public Protection Act, (4) alternatively, Johnson City did not know that Dahl was refusing to participate in or remain silent about illegal activities, and/or finally, (5) Dahl cannot prove that the sole reason her contract was not renewed was based on retaliation.

6

Case 2:22-cv-00072-KAC-JEM   Document 110   Filed 03/28/24   Page 6 of 11   PageID #: 3706

With respect to Dahl's claim against Johnson City under the National Defense Authorization Act, the City is entitled to dismissal based on any one of the following reasons: (1) Dahl was not an employee of Johnson City, (2) Dahl did not make a complaint about an alleged violation of the National Defense Authorization Act to an "authorized official," (3) there is no proof of retaliation, (4) Dahl did not have a reasonable belief that the National Defense Authorization Act applied to her factual scenario, and (5) to the extent Dahl is relying on making out a National Defense Authorization Act claim based upon alleged fraud or waste related to a federal grant involving a pole camera, she did not exhaust her administrative remedies.

4. **Contested Issues of Law**.

1. The parties contest whether Chief Turner is entitled to qualified immunity as to the claims against him under the First and Fourteenth Amendments of the United States Constitution.

2. The parties contest whether Dahl had a limited property interest under the Fourteenth Amendment.

3. The parties contest whether Dahl comes under the protections of the Tennessee Public Protection Act, including whether she was an "employee" of Johnson City under the Memorandum of Understanding ("MOU").

4. The parties contest whether Dahl comes under the protections of the National Defense Authorization Act, including whether she was an "employee" of Johnson City under the MOU and whether she exhausted her administrative remedies.

5. **Novel or Unusual Questions of Law or Evidence**.

1. The issue of whether Daigle's testimony and the Daigle Audit are admissible at trial is currently pending before the Court.

6. **Damages**

   (i.) *Plaintiff's Position*

   The parties cannot stipulate to damages. Dahl has previously timely disclosed her damages in her initial Rule 26 disclosures as follows.

   As to Dahl's civil rights, the value of civil rights secured by the U.S. Constitution is infinite. Dahl will rely on the jury to value her damages as to the violation of her civil rights. Based on her knowledge of verdicts and settlements in comparable cases, Dahl anticipates that the evidence adduced in discovery may likely support a seven-figure jury award of damages for injury to her civil rights. *See, e.g., Greisen v. Hanken,* 925 F.3d 1057 (9th Cir. 2019) (affirming $4,117,488 verdict for police chief who blew the whistle on municipal budget's financial improprieties). Please note that this computation is not admissible as evidence of Dahl's civil rights damages to the Court or the jury, but provides fair notice and warning of what Dahl likely intends to ask the jury as to the same.

   Dahl seeks compensatory damages for emotional distress, but such damages are not susceptible to a precise calculation. *See Williams v. Trader Pub. Co.,* 218 F.3d 481, 487 n.3 (5th Cir. 2000) ("[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury."); *E.E.O.C. v. Wal-Mart Stores, Inc.,* 276 F.R.D. 637, 639 (E.D. Wash. 2011) (collecting cases). The same is true of punitive damages, which Dahl also seeks. *See Burrell v. Crown Cent. Petroleum,* 177 F.R.D. 376, 386 (D. Tex. 1997); *Anderson v. United Parcel Serv.,* 2010 WL 4822564, *10, n. (D. Kan. Nov. 22, 2010) (compiling cases).

   Dahl's special damages are back pay at the rate of $87,000 per year, up to the date of judgment in this case.

Dahl also seeks to recover her taxable and non-taxable costs and reasonable attorney's fees under 42 U.S.C. § 1988, and Tenn. Code Ann. § 50-1-304(d)(2).

**(ii.)** *Chief Turner's and Johnson City's Position*

Dahl is seeking compensatory damages in the form of garden variety emotional distress damages. She is seeking special damages of back pay in the amount $87,000 per year up to the date of judgment. Finally, she is seeking punitive damages. As far as compensatory damages, if Dahl's evidence exceeds what is permissible for a claim of garden variety emotional distress damages, then this will open the door to additional evidence, including her mental health records. Moreover, in the event that Dahl should obtain a judgment, then any award of back pay should be reduced by a failure of Dahl to mitigate her damages or reduced by any earnings she did achieve.

7. **Other Trial Information and Other Matters**.

a) The parties agree that the pleadings are amended to conform to the pretrial order.

b) The parties agree that the estimated length of trial (in eight (8) hour days) is 5 to 10 days.

c) A ruling on pending motions for summary judgment will likely be needed for settlement consideration to occur. Allegations and accusations of corruption by Chief Turner and the City hampers any effort toward a resolution of this case. There have been no settlement negotiations to date.

d) The parties do not currently know of any miscellaneous matters that may contribute to the just, speedy, and inexpensive disposition of the case.

Respectfully submitted,

Counsel for Plaintiff Kateri Lynne Dahl

/s/ Hugh A. Eastwood
Hugh A. Eastwood, E.D. Mo. Bar No. 62058MO,
*admitted pro hac vice pursuant to L.R. 83.5(b)(1)*
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3825
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax


/s/ Alexis I. Tahinci
Alexis I. Tahinci, TN BPR No. 031808
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
(423) 406-1151
(423) 815-1728 eFax
alexis@tahincilaw.com
Counsel for Defendants

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN 37744-1060
Phone: (423) 639-6811
Fax: (423) 639-0278
Email: tgarland@milligancoleman.com

10

                *s/ Emily C. Taylor*
                Emily C. Taylor, BPR # 27157
                **WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.**
                P.O. Box 131
                Knoxville, TN 37901-0131
                Phone: (865) 637-1700
                Email: etaylor@watsonroach.com