UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION
GREENEVILLE

KATERI LYNNE DAHL,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        No. 2:22-cv-00072-KAC-JEM
                                      )
CHIEF KARL TURNER,                    )
        *in his individual capacity only, et al.,*  )
                                      )
        Defendants.                   )

**<u>Plaintiff's Opposition Brief to Defendants' *Motion in Limine to Exclude Testimony and Evidence Related to Certain Alleged Events Occurring After the Non-Renewal of Ms. Dahl's Contract*</u>**

Plaintiff Kateri Lynne Dahl, by undersigned counsel, states as follows for her Opposition Brief to Defendants' *Motion in Limine to Exclude Testimony and Evidence Related to Certain Alleged Events Occurring After the Non-Renewal of Ms. Dahl's Contract* [Docs. 93 and 94]:

I.      **Introduction**

Defendants have filed a motion *in limine* seeking to exclude testimony and evidence regarding certain allegations related to events that occurred after the non-renewal of Dahl's contract under Federal Rules of Evidence 402 and/or 403. Those bases are relevance (Rules 401 and 402), and, according to Defendants, the concepts of unfair prejudice, misleading the jury, and/or confusing the issues (Rule 403). *See* [Doc. 93] at 1; [Doc. 94] at 3. In sum, Defendants appear to argue that events that occurred after Dahl was fired should not be heard by the jury. The gravamen of their argument appears to be that Ms. Dahl is attempting to try the investigators of the Johnson City Police Department in hopes a jury would find Chief Turner personally liable and/or Johnson City liable for their widespread failures as to Sean Williams' sex crime victims in particular, and sex crime victims generally. They argue that this evidence is irrelevant and prejudicial to Defendants' retaliation in unilaterally firing Dahl in June 2021 by not renewing her employment under a multi-agency Memorandum of Understanding.

Dahl responds that events that occurred after she was fired are relevant. The bar is very low for relevance. The evidence at issue is prejudicial to Defendants, but not unfairly so. That is because their retaliation against Dahl was for her whistleblowing about their baffling failures to investigate or seize Williams, or to adequately investigate his sexual assault victims' complaints. In other words, Dahl's whole theory of her case is that events after her firing confirmed—and tend to prove—that she was correct in her First Amendment speech to the FBI and others. Moreover, these post-termination events in combination suggest a retaliatory motive for Defendants' discharge. Finally, as discussed below, the Sixth Circuit has characterized Rule 403 objections by defendants as a "last harbor," and held that cross-examination and limiting instructions are the better way to cure any concerns about prejudice, confusion or misleading where the evidence is otherwise highly probative.

## II. Discussion

### a. Background

Dahl filed her complaint on June 24, 2022, alleging that she was fired by Johnson City and its then-Police Chief Karl Turner after she spoke out to the FBI and other third parties about Johnson City's failures in investigating and seizing Sean Williams—either because of incompetence or corruption. Since then, it turns out from multiple federal and state court filings that there is probable cause that Williams filmed himself sexually assaulting at least 52 women, and at least two children, inside his prominent downtown Johnson City apartment. Further, Johnson City had myriad failings as to its investigations of Williams' sex crime victims particularly and sexual assault victims generally, as well as a pervasive gender-based bias against women. In other words, the failures of former Chief Turner and Johnson City are baffling and horrific.

After Dahl was fired, both her own continued investigation of Sean Williams, and an audit by police practices expert Eric P. Daigle paid for by Johnson City, found that discrimination based on gender-based stereotypes and bias is responsible in part for the deficiencies in Johnson City's response to

2

sexual assault. That's illegal activity under federal law: *e.g.,* the Equal Protection Clause of the Fourteenth Amendment, *see Whren v. United States,* 517 U.S. 806, 813 (1996); the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141; the Safe Streets Act, 42 U.S.C. § 3789(d); and Title IX of the Education Amendments of 1972.

This evidence acquired after Dahl was fired bears out that (a) Dahl was substantially correct in her whistleblowing that Johnson City was violating the law in how it handled at least certain Williams sex crime victim reports particularly, and sex crime investigations generally, and (b) responsibility for those failures squarely on police department management, including Chief Turner. That this evidence supports the truth of Dahl's allegations as to Johnson City's failures and misconduct *increases* the value and public concern of her speech to the FBI and other third parties, and "empties" any governmental interest in regulating the employee's speech. *Lane v. Franks,* 573 U.S. 228, 242 (2014).

### b. Rule 401, Rule 402 and Rule 403 Do Not Prohibit Post-Injury Evidence

Dahl agrees that her First Amended Complaint asserts two § 1983 claims against Chief Turner sounding in First Amendment retaliation and Fourteenth Amendment procedural due process, and two claims against Johnson City sounding in the Tennessee Public Protection Act ("TPPA") and the National Defense Authorization Act. All of Dahl's claims are whistleblower claims. Dahl was fired in June 2021. Defendants appear to argue that anything Dahl said or did after that, or that Defendants knew or came to know, is irrelevant. Alternatively, Defendants argue that even if evidence after June 2021 is probative and relevant, it is unduly prejudicial, confuses the issues, or misleads the jury and so should be excluded under Rule 403.

A motion *in limine* that seeks to exclude broad categories of evidence should rarely be granted. *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975). The better practice is to deal with questions of admissibility of evidence as they arise at trial. *Id.; see also SPX Corp. v. Bartec USA,*

3

No. 06-14888, 2008 WL 3850770, at *3 (E.D. Mich. Aug. 12, 2008) ("Normally, motions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.").

Further, "[t]he standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler,* 588 F.3d 396, 400 (6th Cir. 2009) (citation omitted). Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch,* 588 F.3d at 401. The test is strongly weighted toward admission. *United States v. Asher,* 910 F.3d 854, 860 (6th Cir. 2018). Nothing in the language of Rule 401 or 402 prohibits a wholesale bar to evidence acquired after Dahl was fired.

As to Rule 403, "[u]nfair prejudice does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom,* 452 F.3d 593, 603 (6th Cir. 2006). A district court has broad discretion in making a Rule 403 determination. *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993). The Sixth Circuit has characterized Rule 403 motions as the "last harbor" of parties seeking to exclude evidence damaging to them. *Griffin v. Condon,* No. 17-1931, at *8-9, 744 Fed. Appx. 925 (6th Cir. Aug. 8, 2018). But as Dahl discusses below, the evidence she learned of after she was fired only "prejudices" Defendants the same as other evidence: it shows that the gravamen of Dahl's whistleblowing was substantially correct.

Cases such as these ultimately hinge on a straightforward inquiry: why did Defendants terminate Dahl's employment? Where evidence was not known to the employer at the time it decided to terminate its employee, it cannot be probative of the employer's motivations. *See McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352 (1995); *Brenneman v. Medcentral Health Sys.,* 366 F.3d 412, 416 n.2 (6th Cir. 2004). But where, as here, evidence tends to prove something that Defendants knew or should have

4

known at the time they fired Dahl, then it is admissible. Dahl alleges that when they fired her, Chief Turner and Johnson City did know of additional Sean Williams sexual assault victims, that Defendants failed to notify her about these victims, that Defendants had a wholly inadequate policy or custom of investigating sexual assault victims that was infected with severe gender bias, and that Dahl's whistleblowing as to these serious problems and violations of federal law caused her firing.

Evidence acquired after Dahl was fired also goes to Defendants' purposes in firing Dahl for speaking out about these failures. Fed. R. Evid. 404(b)(2) permits such evidence to be introduced to prove purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Dahl's whole theory of her case is that she was fired for whistleblowing. Defendants' motive and other purposes are highly relevant and probative as to causation.

Evidence of a post-injury failure to investigate may permit an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom. *Cannon v. Hamilton Cnty., Tenn,* No. 1:06-cv-79, at *32 (E.D. Tenn. Nov. 1, 2007). Although Dahl is not grounding her retaliation allegations in a *Monell* claim, nevertheless the basis of her underlying whistleblowing about Johnson City's failures as to sex crime investigations does reflect a City policy or custom. Evidence that Dahl learned of and/or that occurred after Dahl's firing tends to further prove up Dahl's whistleblowing, is relevant and highly probative, and also tends to show Defendants' motive and other purposes in firing Dahl. Fed. R. Evid. 404(b)(2). (Note that Defendants–or at least Johnson City–undisputedly had notice of much of this evidence before Dahl's firing.) This Rule also allows past-act evidence introduced to prove a continuing plan or scheme. *Griffin,* No. 17-1931, at *8 (citing *United States v. Passarella,* 788 F.2d 377, 384 (6th Cir. 1987)).

Further, to the extent that Defendants' concerns are grounded in Rule 403, this district court has previously held that cross-examination and limiting instructions are the proper way to address concerns about confusing the issues or misleading the jury. *United States v. Hofstetter,* No.: 3:15-CR-27-TAV-DCP

(E.D. Tenn. Oct. 8, 2019) (ordering limiting instruction but otherwise permitting introduction of summary of 700 files); *see also Koloda v. General Motors Parts Division,* 716 F.2d 373, 377-78 (6th Cir. 1983) (citing in part *McCormick's Handbook of the Law of Evidence* § 200 (2d ed. 1972)). To the extent that the Court is willing to entertain such Rule 403 concerns, then Dahl suggests a limiting instruction and cross examination of Mr. Daigle and his audit are the better way to address those concerns since the probative value of the evidence heavily outweighs the Rule 403 factors or concerns for "unfair prejudice." *See also United States v. Hayek,* 2021 WL 3161469, at *3-4 (E.D. Tenn. July 26, 2021).

### c. Defendants' Itemized List of Issues from Dahl's First Amended Complaint

Dahl will now respond to Defendants' itemization and argument about specific paragraphs in her First Amended Complaint regarding alleged events occurring after she was fired by Defendants in June of 2021.

Post-event allegation: In the First Amended Complaint, Ms. Dahl makes allegations concerning her discovery of Jane Doe 6 on July 1, 2021. Next, still in July 2021, Ms. Dahl makes allegations concerning her discovery of Jane Doe 7. *See Doc. 56, PageID ##: 113-17.* Next, in January of 2022, Ms. Dahl alleges that she discovered Jane Does 8, 9, and 10. *Id. at PageID #: 790 at ¶ 120.*

Defendants' argument: Ms. Dahl's discovery of additional Jane Does after the non-renewal decision is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment, TPPA, or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: Dahl's whistleblowing was further supported when, after she was fired, she discovered additional Jane Doe sexual assault victims of Sean Williams that Defendants knew or

should have known of.  As a threshold matter, these victims were sexually assaulted and (in some cases) reported to Johnson City *before* Dahl was fired.  Thus, Defendants' main argument that Dahl's firing is some sort of temporal cutoff does not even apply here to this evidence.

For example, Jane Doe 6 was raped by Williams in January 2021 as Dahl was pushing for Johnson City to investigate Williams.  An anonymous tip was submitted to JCPD in January 2021 from a woman claiming to have been recently drugged and raped by Williams, and at least four other victims had already reported to JCPD by that time that they had been sexually assaulted by Williams under similar circumstances. Jane Doe 7 was drugged by Williams in his apartment and died on November 10, 2020.  Two days later, on November 12, one of Jane Doe 7's sisters reported these events to Johnson City, and was falsely told by an officer that Johnson City lacked jurisdiction.  The next day, Dahl was assigned to the Sean William case, but was never told of Jane Doe 7 by anyone at Johnson City.  Although Jane Does 8, 9 and 10 were not known to Dahl until January 2022, each was sexually assaulted by Williams in his Johnson City apartment during the time that Dahl was assigned to the Williams case.  Jane Doe 8 was known to and reported by Jane Doe 2, who did report to Johnson City.  Jane Doe 9 made a 2019 report to Johnson City.  Thus, these Jane Does were known to the Defendants (or at least Johnson City) *before* Dahl was fired for her whistleblowing.  This evidence is relevant (Rules 401 and 402) and more probative than unfairly prejudicial (Rule 403).  It also goes to Defendants' motive and other purposes in firing Dahl (Rule 404).  Alternatively, any concerns about confusing the issues or misleading the jury can be accomplished with cross examination and perhaps a limiting instruction.

Ms. Dahl's allegation:

124.  After Dahl's filing of her original Complaint in June 2022, a flurry of activities occurred outside of the four corners of this case.

125. Local community activists pushed Johnson City to fire Chief Turner, who along with other senior police department leadership took retirement incentive packages several months later.

*Id. at PageID #: 791.*

Defendants' argument: The fact that some persons called for the termination of Chief Turner is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: There is temporal proximity between the public calls for Chief Turner to resign, and Chief Turner and other senior police department leadership then taking retirement incentive packages several months later. That creates an inference that Chief Turner is culpable for the failures that occurred on his watch as to the victims of Sean Williams particularly and sexual assault victims generally. Dahl's theory of her case is that her whistleblowing played a causal role in her firing. If public pressure subsequently forced out Chief Turner and other senior leadership (such as Captain Kevin Peters), then that affects Chief Turner's credibility as to his proffered reasoning for firing Dahl. *See Gleed v. AT&T Servs., Inc.,* No. 13-12479 (E.D. Mich. Nov. 12, 2015) (holding resignation email relevant and admissible as goes to party's credibility).

Ms. Dahl's allegation:

126. Details emerged that Williams, after fleeing, was able to sell his apartment as well as two other units in the same building in May 2021 after he had fled and was at large. Williams posted about the sale on Facebook and even communicated about the sale in public Facebook posts with a local official appointed to the Johnson City Development Authority by Johnson City commissioners. As recently as April 2022, Williams had felt safe and comfortable visiting the Washington County Register of Deeds office, where he caused a ruckus over the filing of a deed related to the apartment, and caused office staff there to file a report with the Jonesborough Police Department.

*Id.*

Defendants' argument: The fact that Sean Williams "caused a ruckus" in the Register of Deeds Office in April of 2022 is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: Dahl's whistleblowing concerned Sean Williams, whom Johnson City failed to investigate and then failed to seize once Dahl indicted Williams on a relatively minor ammo possession charge, tipping off Williams to the existence of a federal arrest warrant. That a federally indicted suspect "on the lam" felt comfortable going to a government office just miles from Johnson City supports an underlying basis for the truth of Dahl's whistleblowing (that is, Dahl's credibility). It also goes to the pretextual nature of Defendants' proffered reasoning for firing Dahl (their credibility) and their motive and other purposes for firing Dahl (Rule 404(b)(2)).

Ms. Dahl's allegation:

127.    On August 24, 2022, Johnson City's City Manager Cathy Ball sent a letter to the local District Attorney in the First Judicial District asking him to open a "preliminary investigation" into police corruption identified by a Jane Doe in the initial Complaint in this suit. A couple weeks later, the newly-elected District Attorney explained in a letter back to Johnson City that there is no such thing as a "preliminary investigation" and that he had not referred the Williams matter to TBI. Johnson City at no point contacted the U.S. Department of Justice to conduct an investigation, which is odd because normally investigation and prosecution of local corruption is conducted by federal law enforcement and federal prosecutors, particularly given the "hand-in-glove" close working nature of local police and prosecutors, the lack of a corruption unit at the District Attorney's Office, and the fact that the local D.A.'s Office had no history of prosecuting corruption in local police departments.[10]

*Id. at PageID ##: 791-92 (footnote omitted).*

Defendants' argument: The fact that the City Manager sent a letter to the District Attorney in August of 2022 is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021

was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: Dahl agrees that the City Manager's correspondence with the District Attorney in August 2022 is not relevant, since there was no investigation or finding. Dahl does note that the fact that Johnson City never contacted the U.S. Attorney's Office about Dahl's allegations is unusual given that DOJ typically investigates such allegations, and further notes that on information and belief that are multiple ongoing federal and state investigations in Williams and Johnson City based on Dahl's allegations. A limiting instruction can mitigate any concerns for prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403.

Ms. Dahl's allegation:

128. On August 26, 2022, Johnson City issued a press release blaming Dahl for taking five months to indict Williams, and stating that Dahl had caused "unjustifiable damage" to the City, Chief Turner and the Johnson City Police Department.[11]

*Id. at PageID #: 792 (footnote omitted).*

Defendants' arguments: The fact that the City issued a press release in August 2022 is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the nonrenewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: This press release is relevant to and probative of Dahl's pled damages for her firing. Defendants have continued to publicly attack Dahl. This has damaged her reputation.

Ms. Dahl's allegations:

Paragraphs 129 through 134 of the First Amended Complaint address the employment of Eric P. Daigle and the resulting Daigle Audit. *Id. at PageID ##: 792-95 (footnote omitted).*

Defendants' arguments: The defendants have separately filed a Motion in Limine regarding the admission of Daigle's testimony and evidence related to the Daigle Audit under Rules 402 and 403.

Dahl's Response: Dahl has filed a separate Opposition Brief to Defendants' separate Motion in Limine, since Mr. Daigle's audit and testimony are admissible under Rule 803(8), and Rules 401, 402 and 403 do not bar this evidence

Ms. Dahl's allegations:

135. By sheer coincidence and luck, Williams was eventually seized by a campus police officer in North Carolina on April 29, 2023, and finally charged with extreme and heinous sex crimes in this Court and in state court. Video evidence has come to light in search warrant affidavits filed in Washington County Circuit Court showing Williams sexually assaulting 52 incapacitated female adults as well as two children aged eight and one years. It appears from another affidavit filed by a District Attorney Investigator named Mike Little that Johnson City may have had some of that evidence all along in its possession from the 2021 search warrant. (Ex. 7 – Little affidavit.) But because Sparks had waited four months after the apartment search to produce a draft search warrant affidavit for Williams' digital devices, and because what he produced to Dahl was legally insufficient, JCPD presumably never viewed the files on Williams' digital devices.[14]

*Id. at PageID ##: 795-96 (footnote omitted).*

Defendants' arguments: The capture of Sean Williams in 2023 and the discovery of information off of computers in his possession at that time is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: Sean Williams' subsequent capture and the discovery of video evidence of his sexual assaults of dozens of women and children in his Johnson City apartment goes directly to the truth of Dahl's allegations that Johnson City did not investigate video evidence it had already seized when searching Williams' apartment in September 2020. This goes to Dahl's credibility in her whistleblowing

about Defendants' investigatory failures, and the lack of credibility and pretext in Defendants' reasoning for firing Dahl.

Ms. Dahl's allegations:

> 136. Since then, nine Jane Doe sexual assault victims of Williams have sued the City in this Court alleging that multiple Johnson City police officers were part of a sex trafficking conspiracy. See generally Jane Does v. Johnson City, 2:23-cv-00071-TRM-CRW.

*Id. at PageID #: 796.*

Defendants' arguments: The fact that in 2023 Jane Does filed a lawsuit is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: The "Jane Does" sexual assault victims lawsuit specifically references Dahl's original pleading here as the basis for their notice that Defendants protected Sean Williams from investigation and seizure. That goes to the truth and credibility of Dahl's whistleblowing allegations. A limiting instruction can mitigate any concerns for prejudice, confusion of the issues, or misleading the jury. Rule 403.

Ms. Dahl's allegations:

> 137. According to the U.S. Department of Justice, at least one of the sex crimes that Williams has since been charged with—against a child—occurred after Dahl pushed for JCPD to further investigate Williams, and after she was first retaliated against by Chief Turner and JCPD officers for pursuing a TBI investigation into Williams. United States v. Williams, 2:23-cr-00111-JRG-CRW1 (E.D. Tenn). In other words, Johnson City's failures to adequately investigate Williams's sex crimes permitted him to continue to offend.

*Id. at PageID #: 796.*

Defendants' arguments: In this lawsuit, Chief Turner and Johnson City are not on trial for the adequacy of the investigation into Sean Williams. These allegations are not relevant to the issue of

whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: The fact that Williams continued to offend with new sexual assault victims, even after his apartment was searched and evidence seized by JCPD, and while Dahl pushed Johnson City to investigate Williams for sex crimes, is relevant and probative of the truth and credibility of Dahl's whistleblowing. It also undermines the credibility of the pretextual reason that Defendants' proffer for firing Dahl, since the five cases they suggest Dahl promised to indict are relatively minor and non-violent in nature compared to the highly serious, depraved and violent nature of Williams' serial sex crimes.

Ms. Dahl's allegations:

138. Johnson City has tried to pin the blame on Dahl for the delay in seizing Williams, arguing that Dahl should have just indicted Williams on the Ammo FIP charge.[15] This argument misses the mark for several reasons, however.

*Id. at PageID #: 796.*

Defendants' arguments: This is another reference to the August 2022 press release by the City. These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to nonrenew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: Defendants have argued in their Answer, in a press release[1], and in discovery that it was Dahl who was responsible for any delays in the Sean Williams investigation and seizure, and

---

[1] Johnson City press release, *City files response to lawsuit* (Aug. 26, 2022), available at https://www.johnsoncitytn.org/news_detail_T11_R1375.php (last accessed Oct. 5, 2023).

that Dahl should have indicted Williams on a relatively minor ammo possession charge. But, as Dahl pled in her First Amended Complaint, this ignores functional distinctions between investigating and prosecuting, the purpose of Dahl's MOU to target more serious violent, drug and gang offenses, and the reality that Williams would have likely posted bail or bond on this charge and thus been back on the streets. Thus it is important to Dahl's credibility that she can explain how the investigation and indictment process works, and why Defendants' preferred reasoning is not credible.

Ms. Dahl's allegations:

> 143. Fifth, Chief Turner's rationale is further questionable since three of the five cases in question were never indicted—that is, either because there was a lack of probable cause, or because the U.S. Attorney's Office (after Dahl's departure) within its discretion declined to prosecute those cases. The other two cases cited by Chief Turner involved a man and woman who possessed enough meth to have intent to distribute.[18] Those cases were not indicted until mid-October 2021, and the woman was not a violent offender and was otherwise in custody. The woman pled to 78 months; the man's case is pending as of this filing. While not insignificant, this drug case paled in comparison to the scope and depravity of the sex crimes of a prominent citizen such as Williams.

*Id. at PageID #: 798 (footnote omitted).*

Defendants' arguments: During the May 19, 2021 meeting with Chief Turner and Captain Peters, Ms. Dahl's own secret recording establishes that she selected five cases to be presented at the June 2021 Grand Jury. The fact that three of those cases were never presented is not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this postevent evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: Defendants' defense is essentially that Dahl's failure to present these five cases from the May 19, 2021 meeting at the June 2021 Grand Jury is the real reason that Dahl was fired. While Dahl disputes that the recording shows that she selected or promised to indict these five cases at the June

2021 Grand Jury, the fact that three of these cases were never presented or indicted goes to the pretextual nature of Defendants' proffered reasoning for firing Dahl, and thus their credibility.

Ms. Dahl's allegations:

> 144.    Johnson City has since announced that it will play no further role in any case involving sexual assault victims of Sean Williams, after initially having Detective Sparks participate in state sex crime charges filed based on the video evidence discovered in Williams's possession in April 2023.

*Id. at PageID #: 799.*

Defendants' arguments: The allegations related to events in 2023 are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. In addition, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

Dahl's Response: The fact that Johnson City and specifically Detective Sparks have now recused themselves from any further involvement with the Sean Williams cases further supports the truth and credibility of Dahl's whistleblowing as to Johnson City's investigatory failures as to Williams. As such it is relevant and probative to Defendants' motive and other purposes to retaliate against Dahl for her whistleblowing.

Ms. Dahl's allegations:

> 145.    Since then, the Ammo FIP case indicted by Dahl has been dismissed by the U.S. Department of Justice, on inference because it would rely on the search warrant affidavit and testimony of Detective Sparks, and the prosecution would not want to rely on Detective Sparks as the evidentiary basis for a sound conviction beyond a reasonable doubt.

*Id. at PageID #: 799.*

Defendants' arguments: These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the

decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. Moreover, these allegations are based upon gross speculation by Ms. Dahl. Finally, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

    Dahl's Response: The fact that the U.S. Department of Justice has dismissed its one case against Sean Williams that relies on evidence and investigation by Johnson City—even as it brings multiple other indictments against Williams—further supports the truth and credibility of Dahl's whistleblowing as to Johnson City's failures as to Williams. It suggests that DOJ shares concerns about Johnson City's investigation of Williams just as Dahl did. As such it is relevant and probative to Defendants' motive and other purposes to retaliate against Dahl for her whistleblowing.

    Ms. Dahl's allegations:

146. Williams fled custody on October 18, 2023 while being transported to the Greeneville division of this Court. A press conference by the local U.S. Marshal has suggested that Dahl's concerns as to Williams being a flight risk and extreme danger to the community were valid. Since Williams was arrested in April 2023, he has once attempted to flee unsuccessfully (for which he was subsequently charged), and has since fled on October 18, 2023. On inference from the U.S. Marshall's press conference, Williams may have had assistance in fleeing from persons unknown, perhaps insiders.[19] Williams is now back on the lam.

*Id. at PageID #: 799 (footnote omitted).*

    Defendants' arguments: These allegations are not relevant to the issue of whether Ms. Dahl was entitled to procedural due process before the non-renewal decision in June of 2021 – or whether the decision to non-renew in June of 2021 was in violation of the First Amendment retaliation claim, TPPA or NDAA. Moreover, these allegations are based upon hearsay and Ms. Dahl is attempting to engage in gross speculation by implying that someone with the Johnson City Police Department assisted with Williams' escape even though there is absolutely no evidence whatsoever to support that reckless inference. Finally, under Rule 403 this post-event evidence would be unfairly prejudicial, would confuse the issues, and would likely mislead the jury.

<u>Dahl's Response</u>: The fact that the U.S. Marshal believes that Sean Williams had assistance in fleeing custody further supports the truth and credibility of Dahl's whistleblowing as to Johnson City's failures as to Williams. As such it is relevant and probative to Defendants' motive and other purposes to retaliate against Dahl for her whistleblowing.

### III. Conclusion and Prayer

Events that occurred after they fired Dahl are devastating to defendants Johnson City and former Chief Turner—but not unfairly so. This evidence is relevant (Rule 401), not unfairly prejudicial, confusing or misleading (Rule 403), and goes to show Defendants' motive and other purposes in firing Dahl (Rule 404). To the extent that the Court will entertain Rule 403 factors, then cross examination and a limiting instruction are the best way to mitigate any issues with this evidence causing unfair prejudice, confusing the issues or misleading the jury.

WHEREFORE Plaintiff Kateri Lynne Dahl prays this Court to DENY Defendants' *Motion in Limine to Exclude Testimony and Evidence Related to Certain Alleged Events that Occurred After the Non-Renewal of Ms. Dahl's Contract* [Docs. 93 and 94]; alternatively, to permit cross examination and a limiting instruction; and for such other relief as may be just, meet and reasonable.

Dated: April 13, 2024           Respectfully submitted,

Counsel for Plaintiff Kateri Lynne Dahl

/s/ Hugh A. Eastwood
Hugh A. Eastwood, E.D. Mo. Bar No. 62058MO,
*admitted pro hac vice pursuant to L.R. 83.5(b)(1)*
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3825
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

/s/ Alexis I. Tahinci
Alexis I. Tahinci, TN BPR No. 031808
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3

Kingsport, TN 37663
(423) 840-1350
(423) 815-1728 eFax
alexis@tahincilaw.com

**Certificate of Service**

The undersigned certifies that on April 13, 2024 (s)he filed this document with the District Clerk to be served by operation of the Court's CM/ECF system upon all counsel of record.

*/s Alexis I. Tahinci*
Alexis I. Tahinci