UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KATERI LYNNE DAHL,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )        No. 2:22-cv-00072-KAC-JEM
                                  )
CHIEF KARL TURNER,                )
       *in his individual capacity only, et al.,*  )
                                  )
            Defendants.           )

**Plaintiff's Opposition to Defendants' *Motion in Limine to Exclude Testimony and Evidence Related to Eric Daigle and the Daigle Audit***

Plaintiff Kateri Lynne Dahl, by undersigned counsel, states as follows for her Opposition to Defendants' *Motion in Limine to Exclude Testimony and Evidence Related to Eric Daigle and the Daigle Audit* [Docs. 100 and 101]:

**I.      Introduction**

Defendants have filed a motion *in limine* to exclude the testimony of police practices expert Eric Daigle, as well as evidence related to him and his audit of 325 sex crimes investigations by Johnson City Police Department between 2018 and 2022.  Defendants assert that Mr. Daigle is (1) a consulting expert under Federal Rule of Civil Procedure 26(b)(4)(D) and/or (2) the employment of Daigle by Johnson City was a subsequent remedial measure under Federal Rule of Evidence 407.  Defendants also assert that its failure to conduct an Internal Affairs investigation, despite Mr. Daigle's recommendation, should also be excluded.  Defendants do not bring a *Daubert* challenge to Mr. Daigle's qualifications.

Dahl responds that Daigle's audit[1], and Mr. Daigle's testimony about his audit, are squarely admissible and trustworthy under Fed. R Evid. 803(8). Further, the Daigle audit is a publicly-released government report that contains "factual findings from a legally authorized investigation" and that Defendants have failed to "show that the source of information or other circumstances indicate a lack of trustworthiness." *Id.*; *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 164 (1988). Unlike Defendants who have belatedly and untimely sought to designate Mr. Daigle as a consulting expert days after his deposition, and months after releasing his report to the public, Dahl timely designated Mr. Daigle as a non-retained expert under the Scheduling Order in this case. Further, Judge McCook has already rejected Defendants' assertion that Mr. Daigle was retained as a consultant in anticipation of litigation under the meaning of Fed. R. Civ. P. 26(b)(4)(D). *See Memorandum and Order* [Doc. 90] at 12, 20.

## II.    Discussion

### a.    Background

Dahl filed her complaint on June 24, 2022, alleging that she was fired by Johnson City and its then-Police Chief Karl Turner after she spoke out to the FBI and other third parties about Johnson City's failures in investigating and seizing Sean Williams—either because of incompetence or corruption. Since then, it turns out from multiple federal and state criminal prosecution filings that there is probable cause that Williams filmed himself sexually assaulting at least 52 women, and at least two children, inside his prominent downtown Johnson City apartment. Further, Johnson City had myriad failings as to its investigations of Williams

---

[1] Mr. Daigle's audit is entitled *Audit of Sex Related Crimes: Johnson City Police Department,* and it was publicly released on July 18, 2023 including by a post on the City website, available at https://www.johnsoncitytn.org/news_detail_T11_R1585.php (last accessed Apr. 10, 2024). The Daigle audit is known colloquially as the "Daigle Report" in widespread media reports. *See, e.g.* Jeff Keeling , *Expert deposed in JCPD federal lawsuit says sex assault investigation problems rose to top brass,* WJHL (Apr. 3, 2024).

particularly and sexual assault victims generally, as well as a pervasive bias against women.  In other words, the failures of former Chief Turner and Johnson City (and its partners) are baffling and horrific.  As Dahl's amended pleading and summary judgment briefing point out, the Daigle audit found that discrimination based on gender-based stereotypes and bias is responsible in part for the deficiencies in Johnson City's response to sexual assault.  That's illegal activity under federal law: *e.g.,* the Equal Protection Clause of the Fourteenth Amendment, *see Whren v. United States,* 517 U.S. 806, 813 (1996); the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141; the Safe Streets Act, 42 U.S.C. § 3789(d); and Title IX of the Education Amendments of 1972.

When Mr. Daigle was hired by Johnson City, its City Manager Cathy Ball disclaimed any connection between Dahl's lawsuit and Daigle's contract.[2]  Since then, Ms. Ball has shifted her explanation for Mr. Daigle's work, stating in her Affidavit: "[t]he reason that Attorney Daigle was employed to conduct this review was based on the allegations made in Ms. Dahl's lawsuit, those allegations then triggering citizen concerns that the JCPD was not properly conducting sexual assault investigations."  Ball Aff. ¶11 [Doc. 100-1].  In his deposition, however, Mr. Daigle stated that his opinions were limited to how JCPD handled 325 sex crime investigations between 2018 and 2022, and that he had no opinions about Ms. Dahl's performance as a federal prosecutor assigned to Johnson City.  Ex. 1, Daigle Dep. 212.

---

[2] On August 26, 2022, City Manager Cathy Ball stated: "I can see how our community could be very confused," Ball said of the potential for conflating the Dahl lawsuit with the external review. "In our response, we say of the cases around Mr. Voe, those have been reviewed by our attorney (and found to have been handled properly)." Jeff Keeling, *Johnson City Files 'Voe' Federal Lawsuit Response,* WJHL (Aug. 26, 2022), available at https://www.wjhl.com/news/local/sean-williams-case/city-files-voe-lawsuit-response/ (last accessed Nov. 6, 2023).  (Note that Voe was a pseudonym for Williams before he was arrested and his federal indictment unsealed.)

3

Defendants appear to argue that the Daigle audit and testimony are not relevant under Fed. R. Evid. 401 and 402, and that they will cause "unfair prejudice" to Defendants and "mislead[] the jury" and "confuse the issues" under Fed. R. Evid. 403. Defendants particularly argue that this is because Dahl seeks "to introduce the testimony of Daigle and the Daigle Audit for purposes of proving that sexual assault investigations were not properly conducted by the investigators with the Johnson City Police Department." [Doc. 100-1 at 3.] Dahl disagrees with this cramped characterization, however, because the Daigle audit and testimony also show that (a) Dahl was substantially correct in her whistleblowing that Johnson City was violating the law in how it handled at least certain Williams sex crime victim reports particularly, and sex crime investigations generally, and (b) Daigle puts responsibility for those failures squarely on police department management, including Chief Turner. That is, the gravamen of Dahl's speech and conduct for which she was fired (or her multi-agency MOU not renewed) is supported by a government report commissioned by Johnson City. That the Daigle audit and Mr. Daigle's testimony support the truth of Dahl's allegations as to Johnson City's misconduct *increases* the value and public concern of her speech, and "empties" any governmental interest in regulating the employee's speech. *Lane v. Franks,* 573 U.S. 228, 242 (2014).

**b.      Rules 401, 403 and 404 do not bar Daigle evidence**

Defendants first argue that since Daigle's audit and testimony occurred after Dahl was fired, then they are irrelevant under Fed. R. Evid. 401 and 402. But they are not. The Daigle audit and testimony support the gravamen of Dahl's allegations. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler,* 588 F.3d 396, 400 (6th Cir. 2009) (citation omitted). Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the

4

fact is of consequence in determining the action." Fed. R. Evid. 401. "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch,* 588 F.3d at 401.

Second, the Daigle audit itself is admissible under Fed. R. Evid. 803(8)(A)(iii)—an issue that Defendants do not even address, let alone challenge the report's trustworthiness. *Griffin v. Condon,* No. 17-1931, at *6-7, 744 Fed. Appx. 925 (6th Cir. Aug. 8, 2018), quoting *Beech Aircraft,* 488 U.S. at 167 n.11.

Third, Defendants warn that a jury could find them liable for a multiplicity of failed sexual assault investigations, rather than for terminating Dahl. But if Daigle's report and testimony support the truth of Dahl's allegations, then that goes to Defendants' purposes in firing Dahl for speaking out about these failures. Fed. R. Evid 404(b)(2) permits such evidence to be introduced to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." This is equally true for Dahl's claims against Chief Turner sounding in First Amendment retaliation and Fourteenth Amendment procedural due process[3], and her claims against Johnson City under the National Defense Authorization Act and the Tennessee Public Participation Act. The Sixth Circuit affirmed the use of a report that found retaliatory conduct by prison guards generally as proof in a First Amendment retaliation claim by an inmate who spoke with a government investigator, and specifically rejected objections grounded in Fed. R. Evid. 403. *Griffin,* No. 17-1931 at *8-9. In short, the Daigle audit and Mr. Daigle's testimony are highly probative of Dahl's claims even if the factual findings and opinions were made after Dahl was fired. Since the test is strongly weighted toward admission, *United*

---

[3] Indeed, the unilateral role that Chief Turner played in not renewing Dahl's multi-agency MOU, and the highly unusual manner in which he did so, further supports *why* he did so. That Dahl was speaking out about Johnson City and Chief Turner's failures as to Williams sexual assault victims means that Fed. R. Evid. 404(b)(2) applies.

5

*States v. Asher,* 910 F.3d 854, 860 (6th Cir. 2018), then the Court should find the Daigle audit and Mr. Daigle's testimony to be admissible.

### III.     The Daigle audit and Mr. Daigle are not Subsequent Remedial Measures

Defendants also note that Johnson City has adopted all of Mr. Daigle's recommendations in his audit, with the exception that Johnson City failed to open an Internal Affairs investigation into Dahl's allegations about how Williams victims were handled specifically and sex assault cases handled generally. *See* Ball Aff. ¶¶6-9 [Doc. 100-1]. Defendants argue that the Daigle audit and Mr. Daigle's testimony are thus inadmissible subsequent remedial measures under Fed. R. Evid. 407, and that admitting this evidence would "punish" a voluntary "good deed," citing *Frye v. CSX Transportation, Inc.,* 933 F.3d 591, 603-04 (6th Cir. 2019).

But by its own admission, it is Johnson City and not Mr. Daigle that has engaged in certain alleged measures to improve its sexual assault investigations. Mr. Daigle testified that he had "no idea" if Johnson City had implemented any of his recommendations, and that he had "no involvement" in Johnson City's implementation of any recommended measure. Ex. 1, Daigle Dep. 145-46. Although Dahl is heartened that Johnson City may reduce injury or harm to future sexual assault victims generally—even though Johnson City has wholly recused itself from any further role as to the dozens of victims of Sean Williams[4]--the prohibition of Rule 407 is misplaced here because Dahl is not alleging that she was injured by Johnson City's failures to adequately investigate sex crimes. Rather, she alleges that she was fired by Chief Turner and

---

[4] *See, e.g.,* Murry Lee, *City manager: DA's office now lead on Sean Williams case,* WJHL, Aug. 25, 2023, available at https://www.wjhl.com/news/local/sean-williams-case/city-manager-das-office-now-lead-on-sean-williams-case/ (last accessed Apr. 10, 2024) ("After Sean Williams was arrested in North Carolina, we began working with the DA," [City Manager Cathy] Ball said Friday. "As we moved further into it, our chief of police in conjunction with the DA agreed that it would be best and most appropriate for the City of Johnson City to not be involved in those investigations for the purpose of making sure the victims felt safe and that there was no thought of harm done to them or reason that they wouldn't come forward.").

Johnson City for whistleblowing about those failures. Thus, any remedial measures that Johnson City may take—while certainly showing feasibility (making them admissible), and perhaps attempts to comply with federal laws prohibiting gender bias—would *not* have made the injury or harm alleged that Defendants caused *as to Dahl* "less likely to occur." Fed. R. Evid. 407. This is not like the railway crossing in *Frye* where the injury—being struck by a train—is the exact same sort of injury that the remedial measure—resurfacing the railroad crossing—is designed to prevent. 933 F.3d at 604. Nor is this a negligence case where the issue is avoiding future accidents; rather, this is a constitutional and intentional tort case. In a § 1983 case where a Michigan trooper was subsequently found by a supervisor to have violated department training in cocking and discharging his firearm, the Sixth Circuit has rejected Rule 407 and Rule 403 arguments about remedial measures and admitted the supervisor's report under Rule 803(8). *Wilson v. Beebe,* 743 F.2d 342, 346 (6th Cir. 1984), *overruled on other grounds*, 770 F.2d 578 (6th Cir. 1985).

**IV.     The Lack of Internal Affairs Investigation is Admissible Evidence**

Long before Mr. Daigle shared his work product and audit with Johnson City, let alone before the audit was publicly released, Chief Turner testified that Johnson City Police Department was accredited by CALEA as well as other law enforcement organizations such IACP.[5] Turner Dep. 15. Further, Johnson City has a General Order 300.11 that is consistent with

_____

[5] CALEA is the acronym for the Commission on Accreditation for Law Enforcement Agencies, Inc. CALEA is a credentialing authority, based in the United States, whose primary mission is to accredit public safety agencies. *See* www.calea.org. CALEA is widely considered the gold standard in accreditation for local law enforcement. Both Chief Turner and Mr. Daigle reference CALEA. IACP stands for the International Association of Chiefs of Police. *See* www.theiacp.org. Both CALEA and IACP are markers of compliance with constitutional and industry standards in policing that this District Court and others within the Sixth Circuit have considered in § 1983 cases. *See, e.g., Dubose v. City of Knoxville,* 3:22-cv-139-TRM (E.D. Tenn. June 1, 2023); *Woodward v. City of Gallatin, Tenn.,* No. 3:10-1060, 2013 WL 6092224 (M.D. Tenn. Nov. 19, 2013); *Cannon v. Licking Cnty.,* No. 2:17-cv-004, at *29 (S.D. Ohio June 21, 2019). Further, extensive reference to CALEA was made in the First Amended Complaint and

7

CALEA accreditation standards 52.0 *et seq.* requiring Internal Affairs investigations into allegations of employee misconduct, as well as reports or accusations made against the Department or Department personnel, from all sources. Thus, the failure to open an Internal Affairs investigation is not just a remedial matter raised by the Daigle audit, but rather a glaring breach of Johnson City and CALEA policies as they existed at the time.

Second, the failure to open an Internal Affairs investigation is relevant under Rule 401, and more probative than prejudicial under Rule 403. Evidence of a post-injury failure to investigate may permit an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom. *Cannon v. Hamilton County, Tenn,* No. 1:06-cv-79, at *32 (E.D. Tenn. Nov. 1, 2007). Although Dahl is not grounding her retaliation allegations in a *Monell* claim, nevertheless the basis of her underlying whistleblowing about Johnson City's failures as to sex crime investigations does reflect a City policy or custom. That the Daigle audit and Mr. Daigle's testimony identify and confirm the same failures as Dahl herself identified tends to prove up her claim, and also tends to show Defendants' motive and other purposes in firing Dahl. Fed. R. Evid. 404(b)(2). Rule 404(b) also allows past-act evidence introduced to prove a continuing plan or scheme. *Griffin,* No. 17-1931, at *8, citing *United States v. Passarella,* 788 F.2d 377, 384 (6th Cir. 1987); McCormick, Evidence, § 190 (2d Ed. 1972); *see also* 2 J. Weinstein and M. Berger, Weinstein's Evidence, ¶ 404[16] (1985). Dahl has alleged a continuing plan or scheme.

Further, to the extent that Defendants' concerns are grounded in Rule 403, this District Court has previously held cross-examination and limiting instructions are the proper way to address concerns about prejudice outweighing probativeness, confusion of the issues, or

discovery, and thus was timely made under the Scheduling Order. *Cf. Cordell v. Hamilton Cnty. Tenn.,* 1:21-CV-00315-DCLC-CHS (E.D. Tenn. Oct. 4, 2023) (excluding defendants' CALEA evidence as untimely produced under Rule 37(c)(1)).

8

misleading the jury. *United States v. Hofstetter,* No.: 3:15-CR-27-TAV-DCP (E.D. Tenn. Oct. 8, 2019) (ordering limiting instruction but otherwise permitting introduction of summary of 700 files); *see also Koloda v. General Motors Parts Division,* 716 F.2d 373, 377-78 (6th Cir. 1983), citing in part *McCormick's Handbook of the Law of Evidence* § 200 (2d ed. 1972). To the extent that the Court is willing to entertain such Rule 403 concerns, then Dahl suggests a limiting instruction and cross examination of Mr. Daigle and his audit are the better way since the probative value of the evidence heavily outweighs the Rule 403 factors or concerns for "unfair prejudice." *See also United States v. Hayek,* 2021 WL 3161469, at *3-4 (E.D. Tenn. July 26, 2021).

## V.     The Daigle audit is Admissible under Fed. R. Evid. 803(8)

Conspicuously absent from Defendants' Motion *in Limine* as to the Daigle audit is any discussion of Rule 803(8). So, Defendants have waived any objection to admissibility of the Daigle audit under Rule 803(8). The Daigle audit as evidence fits neatly into Rule 803(8), which provides that in civil cases, a "record or statement of a public office" that "sets out … factual findings from a legally authorized investigation" is admissible. Fed. R. Evid. 803(8)(A)(iii). The audit was part of a "legally authorized investigation," since City Manager Cathy Ball herself has submitted an Affidavit indicating that she as City Manager and the Johnson City Commission employed Mr. Daigle pursuant to a contract. Ball Aff. ¶3 [Doc. 100-1].

"To determine whether a Rule 803(8) report is trustworthy, [the Sixth Circuit] consider[s] four factors: (1) the timeliness of the investigation upon which the report is based; (2) the special skill or experience of the investigators; (3) whether the agency held a hearing; and (4) possible motivational problems." *Simpkins v. Boyd Cnty. Fiscal Court,* 48 F.4th 440, 453 (6th Cir. 2022) (holding district court abused its discretion in excluding DOJ report). "This list of factors is not

9

exclusive; any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings, must be considered when ruling upon the admissibility of factual findings under this rule." *Id.* at 453-54. The party opposing admission of the public record bears the burden of demonstrating a record is untrustworthy. *Id.* at 453; *see also* Fed. R. Evid. 803(8) advisory committee notes ("Justification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record."). "[G]enerally the courts have been liberal in determining admissibility under Rule 803(8)." *Baker v. Elcona Homes Corp.,* 588 F.2d 551, 557 (6th Cir. 1978). Even evaluative opinions or conclusions that are contained in an investigative report are admissible under Rule 803(8). *Beech Aircraft Corp,* 488 U.S. at 170.

Defendants here have not challenged as to Mr. Daigle either "the timeliness of [his] investigation," "[his] special skill or experience," or "[his] possible motivation problems." *Id.* at 453; Fed. R. Evid. 803(8) advisory committee notes. Accordingly, Defendants have waived any challenge to the Daigle audit's untrustworthiness. Indeed, Defendants explicitly disclaim any *Daubert* challenge to Mr. Daigle or his audit in their Motion in Limine. [Doc. 100] at 1-2.

Mr. Daigle's investigation was timely initiated just weeks after Dahl filed her complaint on June 23, 2022. Johnson City publicly announced on August 4, 2022 that Mr. Daigle was employed to conduct his review of sexual assault investigations by Johnson City. Ball Aff. ¶4 [Doc. 101-1]. Although the Daigle audit was not released until nearly a year later on July 18, 2023, that delay was at least in part because of Mr. Daigle's "frustration" with Johnson City's lack of records and deficient recordkeeping systems. Ex. 1, Daigle Dep. 23, 26.

Mr. Daigle is undoubtedly qualified as an expert, with special skill and experience in assessing constitutional policing at the intersection of policy, supervision, and training. *Id.*,

Daigle Dep. 13.  His expert testimony has been accepted in 67 cases since 2010, *id.* at 14, and he

has particular experience with sexual assault investigations, *id.* at 14-15.  And no party in this

case has raised any questions about Mr. Daigle having "possible motivation problems."

*Simpkins,* 48 F.4th at 453; Fed. R. Evid. 803(8) advisory notes.  In short, the Daigle audit meets

the standards for admission of a government report under Rule 803(8).  *Id.*

### VI.    Conclusion and Prayer

The Daigle audit and Mr. Daigle's testimony are devastating to Johnson City and former

Chief Turner—but not unfairly so.  The citizens and taxpayers of Johnson City paid Mr. Daigle

for a contract to audit 325 sexual assault cases between 2018 and 2022, including those involving

victims of Sean Williams of whom Dahl was aware and formed a basis for her whistleblowing.

This evidence is relevant (Rule 401), not unfairly prejudicial, confusing or misleading (Rule

403), and goes to show Defendants' motive and other purposes in firing Dahl (Rule 404).  And

it's admissible as a trustworthy government report (Rule 803(8)(A)(iii)).  To the extent that the

Court will entertain Rule 403 factors, then cross examination and a limiting instruction are the

best way to mitigate any issues with this evidence confusing the issues or misleading the jury.

WHEREFORE Plaintiff Kateri Lynne Dahl prays this Court to DENY Defendants'

*Motion in Limine to Exclude Testimony and Evidence Related to Eric Daigle and the Daigle

Audit* [Docs. 100 and 101]; alternatively, to permit cross examination and a limiting instruction

as to the Daigle audit and Mr. Daigle's testimony; and for such other relief as may be just, meet

and reasonable.

Dated: April 13, 2024                           Respectfully submitted,

                                                Counsel for Plaintiff Kateri Lynne Dahl

                                                /s/ Hugh A. Eastwood
                                                Hugh A. Eastwood, E.D. Mo. Bar No. 62058MO,

11

*admitted pro hac vice pursuant to L.R. 83.5(b)(1)*
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3825
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

/s/ Alexis I. Tahinci
Alexis I. Tahinci, TN BPR No. 031808
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
(423) 840-1350
(423) 815-1728 eFax
alexis@tahincilaw.com

## Certificate of Service

The undersigned certifies that on April 13, 2024 (s)he filed this document with the District Clerk to be served by operation of the Court's CM/ECF system upon all counsel of record.

/s/ Alexis I. Tahinci
Alexis I. Tahinci

12