UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION
GREENEVILLE

| | | |
|---|---|---|
| KATERI LYNNE DAHL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00072-KAC-JEM |
| | ) | |
| CHIEF KARL TURNER, | ) | |
| *in his individual capacity only, et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's First Amended Motions in Limine**

Plaintiff Kateri Lynne Dahl, by undersigned counsel, states as follows for her First Amended Motions in Limine[1]:

## I. Standard of Review

"Motions in limine allow the Court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration." *United States v. Beane,* No.: 3:17-CR-82-TAV-CCS, at *1 (E.D. Tenn. Jan. 19, 2018) (citing *United States v. Brawner,* 173 F.3d 966, 970 (6th Cir. 1999)). Federal Rule of Evidence 401 defines relevant evidence as that which (1) "has any tendency to make a fact more or less probable than it would be without the evidence," where (2) that fact "is of consequence in determining the action." Rule 402 makes clear that irrelevant evidence is inadmissible. Rule 403 grants the Court discretion to exclude otherwise-relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

[1] The Court ordered the parties to re-file their Motions in Limine when the Court issued an Amended Scheduling Order on the Court's own motion. *See* Doc. 126 at ¶5(a).

needlessly presenting cumulative evidence." As with relevancy rulings, the Sixth Circuit "has consistently held that '[a] district court has very broad discretion in making [Rule 403] determination[s].'" *United States v. LaVictor,* 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau,* 693 F.3d 510, 523 (6th Cir. 2012)). Under Rule 403, however, "it is not sufficient to suggest that the 'legitimate probative force of the evidence' would result in damage to the [movant's] case." *United States v. Poulsen,* 655 F.3d 492, 509 (6th Cir. 2011) (quoting *United States v. Newsom,* 452 F.3d 593, 603 (6th Cir. 2006)). Rather, the movant must show "that the evidence would 'tend[] to suggest [a] decision on an improper basis." *Id.* (alterations in original).

## II. <u>Itemized Motions in Limine</u>

Dahl moves the court to prohibit defendants Chief Turner and Johnson City from either mentioning or referring to the following items in voir dire, opening statement, examination of witnesses, presentation of evidence, or closing argument, or at any other time in the presence of the jury:

1. Undisclosed or Surprise Witnesses and/or Evidence. Dahl moves to prohibit Defendants from (a) calling undisclosed witnesses and (b) offering undisclosed documents or other evidence, for such witnesses and/or evidence would violate the Scheduling Order, and Dahl would be unprepared to respond to such undisclosed or surprise witnesses or evidence. This is particularly directed to Albert Watts, Brett Richardson, Cara Lowe and Sara Proffit, whom Defendants identified for the first time in their initial Final Witness List exchanged in April 2024. Dahl timely filed an Objection to these witnesses. *See* Doc. 119.

Dahl moves in limine to exclude these witnesses' testimony because they were not disclosed as a witness in Defendants' Rule 26(a)(1) Disclosures, and Dahl therefore did not seek

to depose them during the discovery window in this case. While Dahl understands that Albert Watts was a witness to the fall of Jane Doe 1 from Sean Williams's apartment, she had no idea who Brett Richardson was until she filed her Motion to Stay Summary Judgment, and she still has no idea who Cara Lowe even is. Accordingly, Dahl would be prejudiced by Defendants' late identification of these witnesses, and the late disclosure is not harmless. Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also Roberts ex rel. Johnson v. Galen of Va., Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (noting that this sanction "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless[.]" (citation omitted)); *Emanuel v. Cnty. Of Wayne,* No. 15-2094 (6th Cir. Jun. 20, 2016) (unpublished). The burden to show substantial justification or harmlessness is on the potentially sanctioned party. *Roberts,* 325 F.3d at 782.

Given the extensive discovery in which the parties engaged in this case, including multiple rounds of written discovery, a number of document subpoenas, and 18 depositions, there is no justification for the defendants' failure to disclose these witnesses as persons with knowledge in Defendants' Rule 26(a)(1) Disclosures, and the Court should exclude their testimony. *See, e.g., Garren v. CVS Rx Servs.,* No. 3:17-CV-149 (E.D. Tenn. Mar. 1, 2021); *Cosby v. Claiborne Cnty. Bd. Of Educ.,* No. 3:17-CV-278-RLJ-HBG (E.D. Tenn. Jul. 2, 2018).

Granted ____ Denied ____

2. Retirement or Ongoing Work. Any assertion that a verdict against defendant Chief Turner will negatively affect his retirement, or affect Johnson City's ongoing police work would be irrelevant.

Granted ____ Denied ____

3. Discipline. Any assertion that a verdict against Chief Turner will lead to discipline of him or other Johnson City officers would be irrelevant. Fed. R. Evid. 401-402.

Granted ____ Denied ____

4. No Charges or Discipline against Defendants. Any statement that Chief Turner or Johnson City did not face charges, penalties, or discipline in connection with the incident(s) at issue in this case are irrelevant. Also, the probative value of such statements on the disputed facts is zero and the prejudicial effect would be significant. Fed. R. Evid. 403; Fed. R. Evid. 401-402.

Granted ____ Denied ____

5. Mitigation of Damages. While a civil rights plaintiff has the duty of any injured tort plaintiff to mitigate, *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823 (3d Cir. 1994), there is no evidence in this matter that Dahl failed to mitigate her damages, and so any questions or inquiry regarding mitigation would be irrelevant.

Granted ____ Denied ____

6. Comparative fault does not apply to civil rights claims, *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 739 (6th Cir. 2002), and so any inquiry or mention of comparative fault in the context of damages would be irrelevant to the disputed facts, and the prejudicial effect would be significant. Fed. R. Evid. 403.

Granted ____ Denied ____

7. Any other civil actions involving Dahl are irrelevant, Fed. R. Evid. 401-402, and, additionally, their probative value on issues in dispute is zero and their prejudicial effect would be immense. Fed. R. Evid. 403.

Granted ____ Denied ____

8. Opinion Testimony on Ultimate Issues from Defendants' Non-Expert Witnesses. Any opinion from Chief Turner or other non-expert defense witnesses (none of whom have been disclosed as an expert pursuant to Fed. R. Civ. P. 26(a)(2)), that Defendants acted reasonably, acted in good faith, or had constitutional authority to fire Dahl, or any other opinion on an ultimate legal conclusion, would not be helpful to the jury in understanding the witness's testimony or determining a fact in issue. Fed. R. Evid. 701. Further, such testimony would invade the province of the jury from a fact witness. *See* Advisory Committee Notes to Fed. R. Evid. 704, Opinion on Ultimate Issues ("Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.").

Granted ____ Denied ____

9. A Sizeable Damages Verdict Causing Dahl to "Win the Lottery" or "Get Rich". Words by Defendants suggesting that a sizeable damages verdict in favor of Dahl would constitute her "winning the lottery," "getting rich," or other words to that effect, would prejudicially disparage Dahl and are irrelevant to the proceedings. Fed. R. Evid. 403.

Granted ____ Denied ____

10. Mention of Defendants' Prior Civil Litigation or Complaints. The only conceivable reason for bringing out that a Defendant has had either no prior civil litigation or complaints, or

that such complaints resolved in Defendants' favor, would be to put in the jury's mind that in this case that such Defendant acted consistent with a character trait. Prior acts (or lack thereof) are inadmissible to show conduct consistent therewith, and no exception applies. Fed. R. Evid. 404.

Granted ____ Denied ____

11. Mention of Defendants' Commendations and Awards. The only conceivable reason for bringing out that any Defendant has Commendations and Awards would be to convince the jury of the exemplary nature of Defendant's character in order to bolster the jury's belief that in this instance the Defendant acted in a manner consistent with the conduct which was connected to the Commendations and/or Awards. Such evidence, however, is inadmissible under Fed. R. Evid. 404(a)(1). Dahl does not object to reasonable introductory testimony regarding background of any witness, including Defendants, and presumes the Court will allow same for all parties and witnesses.

Granted ____ Denied ____

12. Johnson City Officers "Flooding the Zone" and Appearing in Court in Uniform and/or With Weapons. If the officers "flood the zone" and appear at trial in uniform, particularly with weapons, then jurors will conclude that building security applied different rules to the officers than to Dahl. The jurors may then conclude that the officers are more trustworthy than Dahl (and/or the jurors themselves). Such a conclusion would be prejudicial to Dahl. Johnson City Officers should therefore be prohibited from appearing in court either in uniform or with weapons. Dahl has no quarrel with officers from Defendant's department or any other department attending the trial.

Granted ____ Denied ____

13. Apology. Defendants, in some civil rights cases, decide that the right approach before the jury is to express an apology to the plaintiff. An apology is irrelevant, and a spontaneous apology would be non-responsive. Dahl's counsel will not open the door. Defendants should therefore be prohibited from apologizing on the stand, whether in response to a question from Defendants' counsel or spontaneously.

Granted ____ Denied ____

14. Investigation by Washington County. In this case, the City Manager asked the District Attorney of Washington County to investigate Dahl's allegations of possible corruption related to Johnson City Police Department and Sean Williams. The next day, the District Attorney publicly issued a letter declining to do so. The letter and the decision are hearsay and do not fall into any hearsay exception. Fed. R. Evid. 801-807. To the extent that third-party statements are included they are not factual findings and are hearsay. *Jordan v. Binns,* 712 F.3d 1123, 1133-34 (7th Cir. 2013). Nor do the statements fall into the hearsay exception in civil cases for "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii); *Daniel v. Cook Cnty.,* 833 F.3d 728, 739-40 (7th Cir. 2016).

Granted ____ Denied ____

15. Wayne Taylor. Dahl seeks to exclude any testimony by her former AUSA Supervisor Wayne Taylor related to her performance of her duties with the U.S. Attorney's Office. First, Dahl had a very limited time and scope of two hours to depose Taylor pursuant to DOJ's *Touhy* regulations. Second, Chief Turner and Taylor each testified that Turner had zero knowledge of any of Taylor's concerns when he fired Dahl. Turner Dep. 164-65; Taylor Dep. 128. As a result, admitting any testimony by Taylor—which was limited only as to Dahl's job performance within the U.S. Attorney's Office rather than within the Johnson City Police Deparment—would

be more prejudicial than probative, prohibited character trait evidence as to Turner's proffered reason for firing Dahl, as well as wholly irrelevant. Fed. R. Evid. 403, 404(a)(1). For example, Taylor had no knowledge of Dahl's responsiveness to Johnson City officers. Further, Taylor's testimony came only after Dahl filed her lawsuit, criticized how the Williams case was handled, and Taylor's statements became one of Chief Turner's proffered reasons. Only "[s]tatements consistent with trial testimony given **before** the corrupting influence to falsify occurred are relevant to rebut a claim of contrivance." McCormick on Evidence, § 251, at 119 (4th ed. 1992) (emphasis added); *see also Lust v. Sealy, Inc.,* 383 F.3d 580, 588 (7th Cir. 2004) (Posner, J.) (rejecting after-acquired evidence given the motive to create evidence of nonliability).

Granted ____ Denied ____

16. Taking Credit for Sean Williams being Arrested and Brought to Justice. Johnson City did virtually nothing to investigate or seize Sean Williams—the gravamen of Dahl's whistleblowing—and had no role in Williams' eventual seizure. Nevertheless, the City Manager has attempted in her public statements to take credit for bringing Williams to justice. Any argument that Chief Turner or Johnson City had a role in Williams' eventual seizures would confuse and mislead the jury. Fed. R. Evid. 403.

Granted ____ Denied ____

17. Arguing that Dahl Must Prove Corruption as an Element of Any of her Claims. Dahl has alleged that Chief Turner and Johnson City's failures as to Sean Williams indicate either corruption or plain incompetence. But Dahl does not need to prove that either Chief Turner or Johnson City was corrupt as an element of any of her claims. Therefore, Defendants should not be permitted to argue that Dahl must prove corruption to meet her burden of proof, as that would

confuse the jury. Fed. R. Evid. 403. Nor should Defendants be able to say that the absence of evidence of corruption exonerates them from liability for firing Dahl. *Id.*

Granted ____ Denied ____

18. Dahl's Communications with Ronan Farrow or Other Journalists. Dahl contacted journalist Ronan Farrow to share her concerns about Johnson City and Sean Williams, based on Farrow's reputation and Pulitzer Prize for reporting on other perpetrators of sexual assault. Defendants have sought in discovery to imply that (a) Dahl sought undue attention or monetary gain from her contact with Farrow (she neither sought nor gained any), (b) Dahl sought to cry to Farrow or other journalists to establish herself as a victim (she did not cry), or (c) Dahl had bad motives in contacting Farrow. Dahl's communications with Farrow or other journalists had no role in her firing, and argument about Dahl's motives in contacting Farrow would confuse the jury and be more prejudicial than probative. Fed. R. Evid. 403.

Granted ____ Denied ____

19. AUSA McCauley Text Messages with Dahl, and Inappropriate Allegations about Dahl and McCauley's Friendship. Dahl had produced in discovery her post-termination text messages with her AUSA mentor Tom McCauley who is also a good friend. Some of them are critical of Johnson City, Chief Turner, and/or their general failures—combined with the USAO—as to Williams. These are private, personal communications that were unknown to any Defendant at any relevant time. Some of them mock Chief Turner and others at Johnson City as to their failures as to Williams. Any such texts are more prejudicial than probative, irrelevant as they were unknown by any Defendant at the time of Dahl's termination (indeed they were only created afterward), and would only serve to distract if not mislead the jury. Further, without any foundation, Defendants have repeatedly implied that Dahl had an inappropriately romantic

personal relationship with her AUSA mentor McCauley. Dahl denies this and there is zero evidence to support this allegation. Gratuitous and unfounded attacks on Dahl's character and sexual history should be excluded, and are extremely offensive and prejudicial. Fed. R. Evid. 403. Moreover, the parties were prevented by DOJ from deposing AUSA McCauley under *Touhy*, and therefore the parties have had no opportunity to question AUSA McCauley about any of these text messages.

Granted ____ Denied ____

20. Sgt. Legault's Subordinates' Statements about Dahl. In depositions, some of Sgt. Legault's subordinates, who had no supervisory authority over Dahl, claimed that Dahl had poor job performance. *See, e.g.,* Saulsbury Dep. 119. None of this made its way to Chief Turner before he fired Dahl, who testified that he relied only on reports by Sgt. Legault and Captain Peters. Turner Dep. 63-64. Nor is it relevant to the list of cases prepared by Legault. Therefore, such after-acquired evidence should be excluded as both irrelevant to the issues before the jury and more prejudicial than probative. Fed. R. Evid. 403.

Granted ____ Denied ____

21. Dahl's Medical Records, her ADHD, and particularly the Effects of Dahl's Medications in relation to her Garden Variety Emotional Distress. Millions of Americans, including Dahl, take medication for anxiety and depression. Dahl also suffers from ADHD. Dahl is not claiming any special damages for her anxiety and depression, nor her ADHD, nor is she claiming a causal link between her garden variety emotional distress damages and her medical conditions. No party has produced any expert testimony as to the effects of Dahl's medications. Therefore any evidence of Dahl's medical records, or the effects of her medications, would be speculative, more prejudicial than probative, and would lack foundation. Fed. R. Evid. 403.

Granted ____ Denied ____

22. Dahl's Parents' Marital Issues. Dahl briefly testified in her deposition about marital issues in her parents' marriage. Defendants have not produced any causation evidence to link this to her garden variety emotional distress for being fired for being a whistleblower. Accordingly, such evidence should be excluded as confusing, misleading, and more prejudicial than probative. Fed. R. Evid. 403.

Granted ____ Denied ____

23. Dahl's Lack of Tennessee Licensure. Dahl is licensed in the District of Columbia, but not by the Supreme Court of Tennessee. That did not affect her ability to serve as a Special Assistant United States Attorney (SAUSA) in this Court during her employment by Johnson City. Defendants should not be permitted to offer evidence or argument as to Dahl's lack of Tennessee licensure, perhaps to imply that she was somehow unqualified. Such evidence should be excluded as confusing, misleading, and more prejudicial than probative. Fed. R. Evid. 403.

Granted ____ Denied ____

24. Dahl's Alleged Lack of Qualification to Prosecute Sex Crimes. The MOU for the Johnson City SAUSA contemplates that Dahl was to prosecute violent crimes, particularly gang and drug crimes. Although sex crimes such as those committed by Sean Williams are not specifically enumerated in the MOU, nevertheless Johnson City's own expert Eric Daigle testified that sex crimes are violent crimes. Defendants should not be permitted to offer evidence or argument that Dahl as a SAUSA was unqualified to prosecute sex crimes in this Court. Such evidence should be excluded as confusing, misleading, and more prejudicial than probative. Fed. R. Evid. 403.

Granted ____ Denied ____

WHEREFORE Plaintiff Kateri Lynne Dahl prays the Court GRANT Plaintiff's First Amended Motions *in Limine*; and to grant such other relief as may be just, meet and reasonable.

Dated: August 23, 2024

Respectfully submitted,

*Counsel for Plaintiff Kateri Lynne Dahl*

/s/ Hugh A. Eastwood
Hugh A. Eastwood, E.D. Mo. Bar No. 62058MO,
*admitted pro hac vice pursuant to L.R. 83.5(b)(1)*
Attorney at Law
8112 Maryland Ave., Suite 400
St. Louis, Missouri 63105-3700
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

/s/ Alexis I. Tahinci
Alexis I. Tahinci, TN BPR No. 031808
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
(423) 840-1350
(423) 815-1728 eFax
alexis@tahincilaw.com

**Certificate of Service**

The undersigned certifies that on August 23, 2024 that (s)he filed this document with the Clerk to be served by operation of the Court's CM/ECF system upon all counsel of record.

*/s/ Hugh A. Eastwood, 62058MO, pro hac vice*