UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION
GREENEVILLE

| KATERI LYNNE DAHL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:22-cv-00072-KAC-JEM |
| CHIEF KARL TURNER, | ) | |
| *in his individual capacity only, et al.,* | ) | |
| Defendants. | ) | |

**<u>Plaintiff's Supplement to her
Motion to Stay Summary Judgment, to Re-open Discovery,
or, Alternatively, to Supplement the Summary Judgment Record</u>**

## I. Introduction

The Court has ordered Plaintiff Kateri Lynne Dahl to supplement her motion [Doc. 128] based on recent mutual Rule 26(e) disclosures on October 9, and to "specifically identify[](1) which precise additional discovery she seeks after all Rule 26(e) supplementation is complete and (2) how each of those precise items 'sheds further light' on an issue that is in dispute in either or both of the pending motions for summary judgment [Docs. 61, 66]." *See* Order dated September 11, 2024 [Doc. 149] at 2.

The parties timely made their Rule 26(e) supplementation as ordered.[1] Notwithstanding Dahl's motion to stay, Defendants have indicated that they will not produce additional discovery beyond the scope of the Court's September 11 Order [Doc. 149] and their Rule 26(e) supplementation obligation.

---

[1] Dahl notes that Chief Turner did not sign or verify his Interrogatory supplement, but expects her undersigned counsel will attempt to resolve that issue with counsel for Chief Turner.

## II. Precise Itemization of Additional Sought Discovery

1. <u>Precise additional discovery sought</u>: City Manager Cathy Ball's texts and other written communications with defendant Police Chief Turner and Ball's real estate agent Shannon Castillo.

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

It has come to light in discovery in the parallel *Does* litigation that City Manager Cathy Ball sought to purchase Sean Williams's penthouse condo in spring 2022.[2] Ball employed Shannon Castillo as her broker, and consulted Chief Karl Turner about the condo. Chief Turner has argued in summary judgment that he has qualified immunity because he did not know about Plaintiff's May 2021 reports to the FBI about Sean Williams, and generally disavowed any knowledge of Williams's condo, a bungled search warrant execution there in September 2020, and a failed attempt to arrest Williams on an outstanding warrant in May 2021 that tipped him off, allowing him to flee. Ball's public statements about her attempted purchase of Williams's condo have been undermined and contradicted by her private statements identified in the *Does* litigation. This discovery—by showing Chief Turner's knowledge of Williams's condo as a crime scene—is necessary to shed further light on Chief Turner's purported denial of knowledge both of Williams's illegal activities and of Dahl's whistleblowing as the same, which are key issues for both summary judgment and qualified immunity. This goes to Chief Turner's motive to fire Dahl for her speech to the FBI and other third parties calling out JCPD's failures as to Williams. That affects elements of both Dahl's claims against Chief Turner (insofar as it suggests a nefarious motive) and against Johnson City (in that it suggests motive to cover up unlawful activities).

---

[2] *Does v. City of Johnson City, et al.*, No. 2:23-cv-71-TRM-CRW (E.D. Tenn.).

2

2. <u>Precise additional discovery sought</u>: 2022 financial records for Sean Williams business associate Jane Doe 14 as to each of Johnson City Police Officer Justin Jenkins and Officer Toma Sparks, and records as to Williams currency seized but not inventoried.

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

Class certification motion practice in the *Does* litigation has identified suspicious cash payments between Williams business associate Jane Doe 14 and each of Officer Justin Jenkins and Officer Toma Sparks.. *See* Doc. 391 in *Does v. Johnson City,* 2:23-cv-00071-TRM-JEM (E.D. Tenn. Oct. 15, 2024).[3] Jenkins and Sparks were involved in the search of Williams's penthouse condo after Jane Doe 1 fell or was pushed by Williams from a window, and the interview of Williams thereafter, as well as the seizure of Williams's safe that contained large amounts of non-inventoried currency. Sparks was directly involved in botching Dahl's attempt to obtain a search warrant for Williams's electronic devices that contained images of child porn and Williams's sexual assaults. Sparks had secret communications with Chief Turner's right hand man Captain Peters about Dahl's efforts to build a case with Williams victim Jane Doe 2, and about the search warrant. Captain Peters was involved in case review meetings with Dahl as to both Williams and the unusual Legault list of cases that pretextually formed the basis for Dahl's firing. Evidence of corruption involving Williams's business associate Jane Doe 14 shows motive by each Defendant to fire Dahl, and drains credibility as to the testimony by Chief

---

[3] For example, the Does plaintiffs presented evidence as to Jenkins showing approximately $400,000 worth of repaid loans between 2020-2022, cash deposits totaling $32,428.04, and a check deposit of $981,284.67. They also show Jane Doe 14 was at the same bank as Sparks on the day she opened a new bank account to which she transferred $11,800, and that Jane Doe 14 was in regular communication with another JCPD officer, who in turn made calls to a JCPD telephone number associated with the police chief. Does Doc. 346 at n. 2, pp. 8-9. The Does also allege payments to Sparks. Does Doc. 391 at 6-7.

3

Turner and Investigator Sparks that Johnson City lacked knowledge as to Dahl's whistleblowing about its failures as to Williams.

3. <u>Precise additional discovery sought</u>: The Mike Little affidavits showing what was on devices seized from Williams' penthouse condo and stored by Johnson City.

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

Evidence of Williams's sex crimes on phones and drives held in storage by Johnson City after its seizure of them in September 2020 shows that the gravamen of Dahl's allegations was correct: Johnson City had possession of evidence of Williams's crimes far more serious than mere possession of ammunition by a felon, and sat on it and botched Dahl's attempts to obtain a warrant for their search. It appears from the testimony of Washington County District Attorney Steve Finney that his investigator Mike Little swore affidavits as to the circumstances around their seized but not searched devices.[4] This goes to each Defendant's motive to fire Dahl for her speech pushing for a broader investigation into Williams.

4. <u>Precise additional discovery sought</u>: Recorded audio and/or video footage of Jane Does other than Jane Doe 2 and Jane Doe 15, particularly Jane Doe 3 and Jane Doe 9.

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

There is a wide gap between the police report for Jane Doe 15 and what her written statement and recorded interview indicate, particularly as to the police report's omission of Jane Doe 15's statements about viewing Williams's penis in the mouths of multiple very young children. There was a suspicious pattern of behavior by Investigator Sparks as to Jane Doe 2, including a secret memo to Chief Turner's right-hand man Captain Peters reporting Dahl's efforts

---

[4] *See* Does Doc. 391 at 5-6.

4

to interview Jane Doe 2 and build a wider sex case against Williams, and failing to follow up on leads from Jane Doe 2 or even interview Williams. Any recordings possessed by Defendants that show their failure to investigate evidence they learned of from the Jane Does would support the gravamen of Dahl's whistleblowing allegations, and show motive by each Defendant to fire Dahl for her speech. Note that Jane Doe 15's interview occurred after Dahl was fired, but for intentional torts (as opposed to negligence) such timing is irrelevant to its probative value to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also id.*, Notes of Committee on the Judiciary, Senate Report No. 93–1277. JCPD had a policy and practice of recording victim interviews, but no such recordings were produced with respect to Jane Does 3 and 9 even though they reported their sexual assaults by Williams to JCPD.

5. <u>Precise additional discovery sought</u>: Police records involving Jane Doe 14

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

As detailed above, the *Does* litigation has identified unusual and suspicious activity between Johnson City officers Jenkins and Sparks and Williams's business associate Jane Doe 14, particularly as to cash payments. Any Johnson City records as to Jane Doe 14that show knowledge of Williams's crimes, potential corruption involving Williams and Johnson City would support the gravamen of Dahl's whistleblowing allegations, and show motive by each Defendant to fire Dahl for her speech. Based on the representations in the recent Doe motion, this likely includes written communications such as text messages involving JCPD officers and Jane Doe 14, Williams, and/or his co-conspirator Alvaro Fernando Diaz-Vargas. *See* Does Doc. 391 at 3-4, 6-7.

5

6. <u>Precise additional discovery sought</u>: Sean Williams's jailhouse diary (Gov. Ex. 6) and notes (Gov. Ex. 7), as well as his call logs with reporters (Gov. Ex. 10a-b-c) (Gov. 14), all government exhibits accepted into evidence at his escape trial where the jury convicted Williams, *United States v. Williams,* No. 2:21-CR-27-JRG-CRW (E.D. Tenn.) [Doc. 181].

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

At his recent trial for escape, the government used Williams's jailhouse diary and notes to suggest that he planned to escape, and audio-video and phone call logs in which Williams discusses the same with third parties. Those exhibits (accepted into evidence in open court) also reference Williams receiving help on the outside. To the extent that a factfinder could infer that such help extended to JCPD officers or Jane Doe 14(given the Does' allegation of coordination), then such evidence shows motive by each Defendant to fire Dahl for her speech.

7. <u>Precise additional discovery sought</u>: Unredacted JCPD officer phone bills and call logs

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

JCPD previously produced heavily redacted and excerpted versions that only showed cell phone calls and texts with Dahl. The full logs (including office landline phones) will show coordination and calls between JCPD officers at the time of Dahl's protected speech. For example, in her deposition in the *Does* case, Jane Doe 14testified that Captain Peters had called her, but then appeared to try to walk back her statement after a break. This goes to motive and credibility for Defendants' proffered reasoning for firing Dahl.

8. <u>Precise additional discovery sought</u>: Depositions of defendant Chief Turner, Captain Kevin Peters, Officer Justin Jenkins, Officer Toma Sparks, Jane Doe 14—each limited to new information obtained well after discovery closed in this case.

6

<u>How this precise item of discovery sheds further light on an issue that is in dispute in either or both of the pending motions for summary judgment</u>

Dahl wishes to take limited depositions only as to new information obtained since discovery closed. She wishes to depose Chief Turner, Captain Peters and Officer Sparks as to their software "views" and "edits" as to particular Jane Doe case files. She also wishes to depose Officer Sparks, Officer Jenkins and Jane Doe 14 as to their communications around Williams, and certain Williams-related financial transactions in which they were involved. These go to motive and credibility, each of which goes to Chief Turner and Johnson City's proffered explanation for firing Dahl after her protected whistleblowing.

Dated: October 16, 2024

Respectfully submitted,

*Counsel for Plaintiff Kateri Lynne Dahl*

/s/ Hugh A. Eastwood
Hugh A. Eastwood, *admitted pro hac vice pursuant to L.R. 83.5(b)(1),*
E.D. Mo. Bar No. 62058MO,
8112 Maryland Ave., Suite 400
St. Louis, Missouri 63105-3700
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

/s/ Alexis I. Tahinci
Alexis I. Tahinci, TN BPR No. 031808
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
(423) 406-1151
(423) 815-1728 Fax
alexis@tahincilaw.com

**Certificate of Service**

The undersigned certifies that on October 16, 2024 that (s)he filed this document with the District Clerk to be served by operation of the Court's CM/ECF system upon all counsel of record.

*/s/ Hugh A. Eastwood*