# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE

| | |
|---|---|
| KATERI LYNEE DAHL, | ] |
| Plaintiff, | ] |
| v. | ] No. 2:22-cv-00072-KAC-JEM |
| CHIEF KARL TURNER, and | ] |
| CITY OF JOHNSON CITY, TENNESSEE, | ] |
| Defendants. | ] |

## RESPONSE IN OPPOSITION TO MOTION TO TAKE JUDICIAL NOTICE

The Defendants, City of Johnson City, Tennessee ("Johnson City") and Karl Turner, in his individual capacity, respond as follows in opposition to the Motion of Kateri Dahl ("Dahl") to take judicial notice of a newspaper article and a magazine article. *See Doc. 154, PageID #: 5036.*

### I. JUDICIAL NOTICE WOULD BE IMPROPER

Federal Rule of Evidence 201 provides that a Court may take judicial notice of "a fact that is not subject to reasonable dispute." *Id. at (b)*. Moreover, once the Court takes judicial notice, then in a civil case, "the Court *must* instruct the jury to accept the noticed fact as conclusive." *Id. at (f)(italics supplied)*.

The lawsuit of *B.P. et al., v. City of Johnson City, et al.*, No. 2:23-cv-71-TRM-CRW (E.D. Tenn.) (hereinafter, "Does Lawsuit") has been settled. But as addressed in more detail *infra*, it would be unfairly prejudicial to Johnson City, and Karl Turner, in his individual capacity, to present that as evidence in this lawsuit. Therefore, to the extent that Dahl is seeking "judicial notice" under Rule 201, Dahl's Motion should be denied.

Likewise, Dahl cites to a recent article in the *New Yorker Magazine*. Notably, Dahl herself was featured prominently in this article, and it appears Dahl was interviewed extensively for the article. *See* Doc. 154-2. There are numerous quotes in the article attributable to Dahl that she is now asking the Court to take judicial of. *Id*. She states in her Motion that she "is not asking the Court to take judicial notice of every fact within the *New Yorker* article, particularly those that are not capable of easy verification. *Cf. Cofield v. Alabama Public Service Com'n*, 936 F.2d 512, 517 (11th Cir. 1991)." *Doc. 154, PageID #: 5040 (emphasis in original)*. The defendants do not understand what Dahl is even requesting.

Moreover, the cited case holds as follows:

> To the extent that the district court took judicial notice of the *Montgomery Advertiser* article as proof that Cofield had access to thousands of dollars hidden somewhere, the district court is in error. That a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2).

*Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991). And that Eleventh Circuit decision is entirely consistent with Sixth Circuit law.

In *Platt v. Bd. of Commissioners on Grievances & Discipline of Ohio Supreme Ct.*, 894 F.3d 235 (6th Cir. 2018), the Sixth Circuit addressed the concept of judicial notice:

> Under Federal Rule of Evidence 201(b), a "court may take judicial notice of at least some documents of public record." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). Such notice, however, is limited: a court may take notice of the documents and what they say, but it "[cannot] consider the statements contained in the document for the truth of the matter asserted." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014). This court reviews the district court's refusal to take judicial notice only for an abuse of discretion. *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002).
>
> The district court did not abuse its discretion. For while Platt averred in his motion that he sought notice only of "the existence of these news reports themselves as being in the public domain," he in reality asked for much more. Platt in fact asked the court to consider statements in the articles concerning the disposition of the

> complaint against an Ohio Supreme Court Justice as evidence that "one must guess at the scope of what is permitted and prohibited under [the Code]." That request runs afoul of the rule that notice of public documents is "proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697. As a result, the district court was well within its discretion to deny Platt's request.

*Id.* at 245. There is no basis for taking judicial notice of any fact in the *New Yorker* article, and there is no basis for ever disclosing to a jury the existence of the *New Yorker* article.

## II. ASIDE AND APART FROM JUDICIAL NOTICE, THE SETTLEMENT OF THE *DOES* LAWSUIT DOES NOT SUPPORT REOPENING DISCOVERY

In this section, the City and Turner respond to the arguments made by Dahl. For the convenience of the Court, the defendants will use the same numbering system used by Dahl. *See Doc. 154, PageID #: 5036.*

Paragraph 1: There is nothing additional that the defendants need to address.

Paragraph 2: In this paragraph, Dahl is pointing to the recent development of the settlement of the "*Does* lawsuit," which is *B.P., et al. v. City of Johnson City, et al.*, No. 2:23-cv-71-TRM-CRW (E.D. Tenn.). With respect to that recent settlement, from the time that Dahl filed her lawsuit – wherein she asserted (in part) that sexual assault investigations were not being handled properly – Johnson City has tried to do the right thing. First, the Johnson City Police Department ("JCPD") had, years prior to the filing of Dahl's lawsuit, undergone an extensive process to obtain certification from the Commission on Accreditation for Law Enforcement Agencies, Inc. ("CALEA"), whose standards are the "gold standards." *See* https://www.calea.org/ (last visited April 8, 2025); and *Doc. 66-1, Declaration of Karl Turner, PageID #: 1220*. Notwithstanding the fact that the JCPD held CALEA certification, Johnson City made the decision (based on Dahl's allegations) to bring in an outside investigator to examine how JCPD conducts sexual assault investigations. (*Id.*, and *Doc. 100-1, Declaration of Cathy Ball, PageID #: 3577*).

That resulted in a report that was critical of certain aspects of sexual assault investigations, and the City moved to implement all of the subsequent remedial measures recommended with one small exception (*Id. at PageID #: 3578*). Moreover, that report was promptly disseminated when received and remains available to the public on Johnson City's website.

In the summer of 2023, the *Does* lawsuit was filed. The named plaintiffs in the June 2023 filing consisted of: (1) females who had reported sexual assaults, which included three assaults that were allegedly by Sean Williams, and (2) females who never reported sexual assaults by Williams or others. At this point, Johnson City found itself in a perfect storm. Its outside investigator had criticized the manner in which certain sexual investigations had been handled and many victims who had never reported their assaults by Williams started coming forward.

During the course of the *Does* litigation there was another development. Williams (who had been arrested and was incarcerated in Kentucky), had someone post on his Facebook account an accusation that Toma Sparks and other unnamed officers were accepting bribes from him through his business. Williams also made accusations related to Dahl. *See Exhibit A*, which is a Request for Admission to Dahl related to the Facebook post and Exhibit B, which is a copy of the Facebook post, which was attached in the Doe Litigation to the Plaintiffs' Motion to Amend their Complaint. *See B.P., et al. v. City of Johnson City, et al., No. 2:23-cv-71-TRM-CRW (E.D. Tenn.) Doc. 97-4*.

This Facebook post opened the door to discovery as to whether the defendant officers had accepted bribes from Williams (or his business). This discovery included examination of banking records of certain defendants, examination of business and banking records from Williams' business, and the deposition of Williams' business associate who (according to Williams) was the

4

Case 2:22-cv-00072-KAC-JEM    Document 155    Filed 04/08/25    Page 4 of 11
PageID #: 5110

person making the payments.[1]

The position of a law enforcement officer is similar to the position of a judge in one crucial respect. The worst thing you can accuse them of is being corrupt. A law enforcement officer may make a decision on an arrest, and a court may later find it was without probable cause. A judge may make a ruling in a case and get reversed on appeal. Neither example impugns their integrity. But to accuse a law enforcement officer or a judge of corruption is extremely serious.

During the course of the Does Litigation, the Plaintiffs filed a Motion to Compel various financial information, including bank records, for Defendant Karl Turner. Through an Order entered on September 19, 2024, the Court denied Plaintiffs' Motion to Compel as to Defendant Turner, and other Defendants. *See B.P. et al v. City of Johnson City, et al., No. 2:23-cv-71-TRM-CRW (E.D. Tenn.) Doc. 337: Memorandum and Order.* The Court held that the Plaintiffs had not met their burden of showing the discovery was relevant, because there were no specific allegations that Turner ever received any benefit for his actions or inactions. *Id*. at PageID # 8237.

Importantly, in the case at bar, it is Turner who has been sued, in his individual capacity, for First Amendment retaliation. In other words, it is Turner who is the alleged "bad actor." But there was not sufficient evidence or allegations in the Does lawsuit to even allow the Does to engage in discovery as to Turner on the subject to corruption. Moreover, as to the discovery that did occur regarding alleged corruption as to other officers, the Does eventually made the following statement in a publicly-filed pleading:

> The Plaintiffs move to dismiss all TVPA, corruption, bribery, conspiracy, and any deliberate conduct claims and allegations because of the substantial risk of not meeting the applicable burdens

---

[1] Undersigned counsel, K. Erickson Herrin and Emily C. Taylor, are counsel for the City and Turner in the *Does* lawsuit. They represent, as officers of the court, that these were the categories of discovery that occurred in the *Does* lawsuit after the Facebook post to Sean Williams' Facebook account.

of proof based on the evidence which has been adduced through extensive discovery.

*See B.P. et al v. City of Johnson City, et al., No. 2:23-cv-71-TRM-CRW (E.D. Tenn.) Doc. 489, PageID #11281: Unopposed Motion to Dismiss.*

In summary, there are no allegations, much less any proof of corruption by Turner and no proof of corruption as to any other officer. While the settlement of the *Does* lawsuit was for a very large amount, the City viewed it as the right thing to do based on the Daigle Report and the number of victims who came forward. But it would be unfairly prejudicial to Johnson City and Turner, in his individual capacity, for this Court to take judicial notice of the settlement under Federal Rule of Evidence 201. Dahl has made no credible argument as to why judicial notice would be appropriate. Moreover, in order for the City to attempt to counter the unfair prejudice that would occur, it would be necessary to address the Daigle Report – and the position of the defendants is that the Daigle Report (and the corrective actions taken based on the recommendations in that Report) are subsequent remedial measures. This would mean that the defendants would have to introduce evidence that should not be admissible in order to counter the unfair prejudice from introduction of the *Does* settlement. Therefore, to the extent Dahl seeks judicial notice of this settlement under Rule 201, her Motion should be denied.

Paragraph 3: This paragraph references the recent *New Yorker* article. The specific arguments Dahl makes relative to the article are in the following paragraphs.

Paragraph 4.a.: The defendants take issue with Dahl's arguments in two respects. First, the representation is that "Williams then 'received a call from an employee with law-enforcement connections …" *Doc. 154, PageID #: 5037.* So presumably Mr. Farrow is relying on the credibility of Sean Williams – who (as addressed *infra*) also falsely accused Investigator Sparks and other officers of accepting bribes, and who falsely accused Dahl of attending one of his parties. And in

turn, Dahl is relying on the credibility of Williams' Facebook post – even though she disavows his credibility to the extent that that same Facebook post refers to her presence at his condominium.

Second, Dahl asserts that "these facts" shed "further light" on "defendants' motivation to fire Dahl when she pushed to investigate and prosecute a broader case against [Williams]." *Id*. Throughout her litigation, Dahl has sought to litigate the *Does*' case as if she has a constitutional right to pursue that case, which she does not. Dahl has sued Karl Turner, in his individual capacity, for First Amendment retaliation. Her alleged protected activity is that she complained to the FBI about the Police Department's investigation of Williams, and she complained to her colleagues at the United States Attorneys' Office in Greeneville. As previously briefed in support of Turner's qualified immunity motion, neither Turner nor anyone to his knowledge was aware of her allegedly protected complaints. Therefore, this is at least the second attempt of Dahl to expand the concept of her "protected activity." As demonstrated by the December 8, 2020 secret recording that Dahl made of a meeting with her, Chief Turner, and Captain Peters, they were discussing how to proceed with the Williams' investigation – seek federal charges at that point on the ammunition or seek to find additional evidence of sexual assaults. Dahl's claim that she was pushing for a broader investigation is within the context of her employment. These actions were not taken in her role as a private citizen. And she should not be permitted to expand her theory as to her "protected activity" at this juncture. In Turner's Reply Brief in support of his Motion for Summary Judgment, he previously addressed the issue of Dahl belatedly attempting to expand the concept of "protected activity." *See Doc. 86, PageID ##: 3377-78.*

Moreover, in order to find Turner (the alleged bad actor) liable, *this Court would have to find that it was First Amendment retaliation for him to go to the City's Attorney, Sunny Sandos, and say to her that he wanted to renew Dahl's contract, but he wanted the City to be able to*

*terminate the contract if she continued to have job performance problems – and it was the City's Attorney who advised him that the better course of action would be to go ahead and recommend non-renewal.*[2] Therefore, there is nothing in paragraph "4.a." that justifies the relief Dahl is seeking.

Paragraph 4.b.: Dahl's paragraph addresses allegations in the *New Yorker* article implying that Jenkins and Sparks were receiving bribes from Williams. Again, Does' attorneys have acknowledged an inability to prove corruption. Moreover, District Attorney Steve Finney has released a statement to the media that investigations by the FBI and TBI have not substantiated allegations of corruption. *See infra*. The sequence of events beginning on May 19, 2021 were secretly recorded by Dahl or are undisputed. This includes the fact that in June of 2021, Chief Turner went to the City Attorney, Sunny Sandos, starting that he wanted to recommend the renewal of Dahl's contract. A *New Yorker* magazine article is not a basis to reopen discovery under these facts.

Paragraph 4.c.: This paragraph refers to seven boxes of Williams' financial records that were purportedly turned over to the TBI, and an allegation that the Williams' friend who turned over the boxes "witnessed a rapport between Williams and Johnson City officers, which they believe may suggest that he was giving information to the police about drug activity." *Doc. 154, PageID #: 5038.*

Johnson City does not seek judicial notice of a recent media release from District Attorney Steve Finney, but to the extent that this Court is considering the content of a newspaper article or a magazine article in ruling on this Motion, Johnson City provides as Exhibit C District Attorney

---

[2] *See Doc. 134, PageID #: 4836* for a summary of events leading up to the non-renewal decision. *See* Turner's briefing in support of his Motion for Summary Judgment for specific citations to the record.

General Finney's media release that reads in pertinent part as follows:

<u>Media Release by District Attorney Steve Finney dated March 28, 2025</u>

"No credible evidence was found by the TBI to substantiate any allegations of corruption, bribery, or other criminal misconduct by any member of the Johnson City Police Department". "Following the conclusion of the FBI investigation, General Finney met with Agents involved and was advised that their investigation was also concluded without any substantiated evidence of corruption, bribery, or other criminal misconduct".

*See* Exhibit C.

For the same reasons addressed in response to "4.b.," these allegations are not a basis to reopen discovery in Dahl's lawsuit.

Paragraph 4.d.: In this paragraph, Dahl is relying on the *New Yorker* article to criticize the investigations of the FBI and TBI. This is not a basis to reopen discovery as to whether Turner engaged in First Amendment retaliation when he went to the City Attorney wanting to renew Dahl's contract and she recommended otherwise.

Paragraph 4.e.: Dahl claims that the confidential settlement agreement, which she has not obtained a copy of, will gag witnesses in this case. Dahl does not cite to any specific instances of this occurring, nor has Dahl presented any specific language in said settlement agreement that hinders her ability to prosecute her case. Dahl's speculation about the terms of the settlement agreement is not sufficient justification to warrant a re-opening of discovery. Unsigned counsel, who are counsel of record for these same defendants in the Does' lawsuit, represent to the Court that there is no agreement that would prohibit any person from being subpoenaed to trial and testifying truthfully to any question allowed by this Court.

Paragraph 4.f.: Dahl cites the *New Yorker* article for the proposition that her contract was non-renewed because her productivity in securing indictments was low, but a review of her actual indictments was in line with her colleagues. *Doc. 154, PageID #: 5039*. This is a great example

showing how the *New Yorker* article is skewed and biased.

On May 19, 2021, Dahl met with Turner and Captain Kevin Peters to review her list of cases. Dahl secretly tape recorded that meeting. That secret recording is in the record, along with a transcript. Dahl represented that she would seek indictments of five persons on that list at the Federal Court Grand Jury scheduled for early June. Dahl chose the number of persons, and Dahl chose which specific persons. Captain Peters asked Dahl to report directly to him the results because he wanted to make sure that he had accurate information. Dahl agreed – on her secret recording – to report back directly to Peters. It was later discovered that Dahl did not seek the indictment of any of those persons, and Dahl never reported back to Peters (even if just to explain why she had not done so). It was in that context that Turner went to the City Attorney, Sunny Sandos, in June of 2021 and advised her that he wanted to renew Dahl's contract for another year (it was set to expire at the end of June), but he wanted the City to be able to terminate the contract early if Dahl's work performance did not improve. It was at that point that the City Attorney, Sunny Sandos, advised Turner that the better course of action would be for him to recommend the non-renewal of her contract, instead of the City attempting to terminate a contract early – and that is what Turner recommended. All of this is addressed in detail in the summary judgment pleadings of Turner. It is inconceivable how the *New Yorker* article could be a basis for reopening discovery.

Paragraph No. 5: Everything in paragraph 5 has already been addressed in this Response.

Paragraph No. 6: This is the paragraph wherein Dahl asks this Court to take judicial notice of the *Does'* settlement and the *New Yorker* article – which has already been addressed in this Response.

### III. CONCLUSION

All of Dahl's claims against Turner and the City hinge on her First Amendment retaliation claim against Turner. During discovery, Dahl took the deposition of Sunny Sandos, who was the City's Attorney, who confirmed that Turner had come to her wanting to recommend the renewal of Dahl's contract, but it was Attorney Sandos who advised him otherwise. The fact that Turner had legitimate concerns about Dahl's job performance is undisputed based on her own secret recording of the May 19, 2021 meeting with Turner and the undisputed fact that she failed to do the things that she represented she would do in that meeting. Therefore, this current effort by Dahl to "reopen discovery" is without merit. As a result, this Court should deny her request to reopen discovery and/or take judicial notice.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Email: nanette@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495
**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN 37744-1060
Phone: (423) 639-6811
Email: tgarland@milligancoleman.com

*s/ Emily C. Taylor*
Emily C. Taylor, BPR # 27157
**WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN 37901-0131
Phone: (865) 637-1700
Email: etaylor@watsonroach.com
*Attorneys for Defendants*